B. JOHN CASEY, OSB No. 120025
john.casey@stoel.com
RACHEL C. LEE, OSB No. 102944
rachel.lee@stoel.com
JACOB GOLDBERG, OSB No. 162565
jacob.goldberg@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380

MATTHEW M. WOLF (*Pro Hac Vice*)
matthew.wolf@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC  20001
Telephone:  202.942.5000

*Attorneys for Defendant The Kroger Company*

(Additional counsel on signature page)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING,<br><br>                Plaintiffs,<br><br>   v.<br><br>THE KROGER COMPANY and ALBERTSONS COMPANIES, INC.,<br><br>                Defendants. | Case No.:  3:24-cv-00347-AN<br><br>DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL<br><br>REQUEST FOR ORAL ARGUMENT<br><br>EXPEDITED HEARING REQUESTED |

Page i –    DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

## I. L.R. 7-1(A) CERTIFICATION

Pursuant to Fed. R. Civ. P. 37(a)(1) and LR 7-1(a) and the Case Management and Scheduling Order ("CMSO"), counsel for Defendants The Kroger Company ("Kroger") and Albertsons Companies, Inc. ("Albertsons") made good faith efforts through a May 14, 2024 teleconference and correspondence with Plaintiffs' counsel to resolve the dispute and obtain the requested discovery without court action, but have been unable to do so. Defendants' counsel also conferred in the same manner with Plaintiffs' counsel regarding the request for expedited hearing. Plaintiffs do not oppose the request for expedited hearing.

## II. MOTION

Pursuant to Fed. R. Civ. P. 37, Defendants Kroger and Albertsons respectfully request that the Court issue an order compelling Plaintiffs the Federal Trade Commission ("FTC"), the States of Arizona, California, Illinois, Maryland, Nevada, New Mexico, Oregon, and Wyoming, and the District of Columbia (together, the "Plaintiff States") to fully and completely respond to Defendants' Interrogatory Nos. 2, 3, and 4. This motion is supported by the Memorandum of Law, the Declaration of Luna N. Barrington ("Barrington Dec."), and the pleadings and papers on file in this action.

### III.  MEMORANDUM OF LAW IN SUPPORT

After a 15-month factual investigation, Plaintiffs filed suit against Kroger and Albertsons, alleging that the proposed merger of Kroger and Albertsons would likely harm competition in specific product and geographic markets in violation of the Clayton Act.  To establish a Clayton Act violation, Plaintiffs must, among other things, provide *facts* that support their alleged relevant product and geographic markets.  In the Complaint, Plaintiffs alleged "supermarkets" and "union grocery labor" as the relevant product markets, alleged more than 100 loosely-defined geographic markets, and alleged that the proposed acquisition "is presumptively illegal" in many of these geographic markets because the merger increases Kroger's market share and the market concentration in these markets beyond certain thresholds, calculated by a measure called the Herfindahl–Hirschman Index ("HHI").  Compl. ¶¶ 56, 87.  Defining relevant markets and calculating the HHIs for any such market requires *facts* about (1) the competitors included in the market and (2) the market's geographic boundaries.  Plaintiffs must have had those facts in their possession when they filed the Complaint in this action.  Defendants accordingly propounded interrogatories on Plaintiffs, asking that they identify the factual bases underlying their allegations, including requesting that Plaintiffs disclose the alleged competitors and geographic boundaries that they allude to in the Complaint.  Plaintiffs refused to provide these core facts.

The contours of the relevant market will be a central disputed issue at the hearing and Plaintiffs' refusal to provide Defendants with basic facts supporting their alleged markets is improper and highly prejudicial.  Defendants anticipate that at the hearing, Plaintiffs will present an antiquated view of consumer behavior, one in which a single member of each household takes a weekly shopping trip to a local grocery store to buy all their family's groceries for the week.  Defendants expect Plaintiffs will ignore how the expansion of dynamic competitors like Costco,

Page 2 –   DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

Amazon, and Aldi; online shopping; and behavioral shifts due to the COVID-19 pandemic have fundamentally changed how shopping occurs today. But without basic facts stating who Plaintiffs allege is in or out of the market and how big those markets allegedly are, Defendants cannot even understand, much less adequately defend themselves, against the allegations in the Complaint.

Plaintiffs have no legal or equitable basis for refusing to provide this basic factual information underlying their Complaint. Indeed, Plaintiffs were required, under Rule 11, to have "evidentiary support" for their "factual contentions" when they made them. Fed. R. Civ. Pro. 11(b)(3). Plaintiffs have been investigating this transaction for nearly 18 months, but in response to Defendants' interrogatories, Plaintiffs refuse to identify the boundaries of any alleged market, the competitors included or excluded from each market, and the market shares before and after the merger, even though they could not have possibly calculated the HHIs referenced in their Complaint without knowing this information. Instead, Plaintiffs claim that asking for the facts underlying their Complaint is premature expert discovery. *See, e.g.*, Barrington Dec., Ex. 2 at 8-9, 11 (Pls. O&Rs). In other words, Plaintiffs refuse to provide basic information they had when filing their Complaint until *after* fact discovery closes and Defendants are no longer able develop the evidence they need to defend themselves.

The position the FTC is taking in this case is also inconsistent with the position the FTC took in another case *this past week*. In that case, the defendants moved for a more definite statement under Rule 12(e), seeking information on the boundaries of the market alleged in the complaint. The FTC opposed, telling the court the "proper way" to obtain this information is to "propound [an] interrogatory" asking for a "list of competitors." *See* Barrington Dec., Ex. 3 at 27:11–17 (Hearing Tr., *FTC v. Tapestry Inc.*, No. 24-cv-3109, at 27:11–17 (S.D.N.Y. May 13, 2024)). Defendants did just that here, yet the FTC has done an about-face and refused to provide

Page 3 –   DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

this information at all. Plaintiffs' position is contrary to both law and practice, and appears designed to prejudice Defendants by running out the clock on fact discovery.

A.      BACKGROUND

This case arises out of Kroger's proposed acquisition of Albertsons, which the parties entered into in order to keep pace with an expanding set of competitors, increase operating efficiency, and lower prices for consumers. Since this transaction was announced on October 14, 2022, Defendants have provided the FTC with millions of documents and large amounts of data, and the FTC has questioned many of Defendants' executive-level employees in formal investigational hearings. During that same period, the FTC also had the opportunity to (and did) compel many third parties to provide additional documents and testimony related to the transaction to which Defendants were not privy.

Plaintiffs filed their Complaint in this Court on February 26, 2024 seeking to enjoin Defendants' transaction because the transaction purportedly may substantially lessen competition in the alleged product markets for "supermarkets" and "union grocery labor" in a number of local geographic markets. Plaintiffs specifically alleged that the transaction would "increase[] the HHI by more than 100 points" and that "Defendants' combined market shares [would] exceed 30 percent" or "the post-merger HHI [would] exceed[] 1800" in over 100 local markets. *See, e.g.*, Compl. ¶¶ 56, 87. Absent, however, are any allegations setting out the underlying *facts* for these allegations that the Plaintiffs relied upon when filing their Complaint, including the bounds of the alleged markets, the companies Plaintiffs have included or excluded from their alleged markets and those companies' respective market shares.

This absence is particularly noteworthy given that Plaintiffs appear to have defined their product market narrowly to exclude key competitors such as Whole Foods, Costco, Lidl, and

Page 4 –     DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

Amazon. *See* Compl. ¶ 48. And it is entirely unclear from the Complaint whether other key competitors—including Trader Joe's, "ethnic" supermarkets (*e.g.*, Cardenas), Smart & Final, Amazon Fresh—are in or out of Plaintiffs' alleged markets.

Nor have Plaintiffs provided any facts defining their geographic markets. Plaintiffs allege that there are "[l]ocalized markets around Defendants' stores," *id.* ¶ 52, vaguely defined as a "radius of several miles around each store," which "may vary somewhat due to local conditions," *id.* ¶ 51. Defendants are asked to guess whether geographic markets spanning "several miles" means 2 miles, 3 miles, 4 miles, 5 miles, or something else. Indeed, it is unclear whether Plaintiffs will insist on the outdated view of grocery customers who shop only at their local grocery market, or whether their Complaint instead considers the modern reality: that consumers today have numerous in-person and online options for their grocery shopping, may be willing to travel further distances for some stores (like Costco) than others, and may do much of their grocery shopping through e-commerce platforms or grocery delivery services.

Finally, Plaintiffs' labor market definition is even more implausible, relying on the notion that there exists a specialized market for union grocery labor, even though the Defendants in reality are small players in the overall labor market and compete for workers with other firms both inside and outside the grocery industry.

To resolve these uncertainties about Plaintiffs' proposed market definition, on April 26, 2024, Defendants jointly served three interrogatories on Plaintiffs seeking the factual bases for their market-related allegations:

- Interrogatory No. 2 seeks information about which companies are included in Plaintiffs' alleged product market of "supermarkets," requesting Plaintiffs to identify the companies they allege compete in the market and which companies they excluded despite their retail sale of food and other grocery products.

Page 5 –   DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

- Interrogatory No. 3 seeks information about the contours of each geographic market for "supermarkets" in which Plaintiffs allege the Acquisition will have an anticompetitive effect, including the specific boundaries those markets, the stores allegedly competing in or excluded from those markets, the market shares of the competitors in those markets, and the concentration level in those markets before and after merger.

- Interrogatory No. 4 seeks much of the same information as Interrogatory No. 3 regarding Plaintiffs' alleged geographic markets for "union grocery labor."

Barrington Dec., Ex. 1, at 9–10

Each of these interrogatories is aimed directly at the factual basis of the allegations Plaintiffs chose to include in their Complaint—namely, what *facts* Plaintiffs rely upon to allege that the merger would increase the HHI or the combined market shares over the specific thresholds in the alleged markets that Plaintiffs identified. Nonetheless, Plaintiffs objected to each of these interrogatories on May 10, 2024, and refused to provide the requested information, stating that "[t]he exact contours and constituents" of Plaintiffs' proposed product and geographic markets are "the subject of ongoing fact and expert discovery," and that "Plaintiffs will provide expert opinions and analyses in accord with the CMSO." Barrington Dec., Ex. 2 at 8-9, 11.

The FTC contradicted that position just one business day later, in another merger litigation before the Southern District of New York. The defendants in that case moved the court to require the FTC to provide a more definite statement of the FTC's alleged product market. In response, the FTC argued to the Court that "defendants could have, but did not, serve [a]n interrogatory that said identify each person you have included as a competitor … in the relevant antitrust market in your complaint. . . . [I]f defendants have propounded this interrogatory . . . they would have these answers on Wednesday." Barrington Dec., Ex. 3 at 21:3–14. The FTC further represented:

Page 6 –   DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

> If they propound interrogatory like most defendants do asking for the information, *certainly with the list of competitors, we'd provide that*. That's what was done in the *IQVIA* [litigation]. It was done in the *Meadow* litigation in the Northern [District] of California. I think that's the proper way to go about doing those things. *Competitors in our complaints*.

*Id.* at 27:12–17 (emphases added).

**B.     ARGUMENT**

    **1.     The Information Sought by Defendants Is Relevant and Discoverable**

Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and Plaintiffs—as the resisting party—"carr[y] the heavy burden of showing why discovery should be denied," *Rust-Oleum Corp. v. NIC Indus., Inc.*, 2020 WL 9072855, at *1 (D. Or. May 4, 2020). There can be no question that the market-related factual information that Defendants request is relevant and discoverable. Plaintiffs' alleged product and geographic markets are at the heart of this litigation. *FTC v. Microsoft Corp.*, 681 F. Supp. 3d 1069, 1085 (N.D. Cal. 2023). In fact, "[a] threshold step in any antitrust case is to accurately define the relevant market." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020). Without an accurate understanding of the relevant market, "there is no way to measure [the defendant's] ability to lessen or destroy competition" or to analyze the "anticompetitive effects in the market where competition is [allegedly] being restrained." *Id.* (alterations in original) (internal quotation marks omitted).

Here, Plaintiffs included in their Complaint specific allegations regarding the impact of the transaction on various alleged markets. But the Complaint did not include the underlying facts on which the FTC relied to define these markets. For example, the Complaint is silent as to the competitors included in the alleged market or the geographic bounds of any local market. The allegations refer to a product market of "supermarkets" and claim that the proposed merger "is presumptively illegal" in more than 100 different localized geographic markets across 19 different

Page 7 –     DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

states. Compl. ¶¶ 52, 56. To support this allegation, Plaintiffs claimed that the "proposed acquisition is presumed likely to create or enhance market power—and is presumptively illegal—in each of these local geographic markets because the merger increases the HHI [(a measure of market concentration)] by more than 100 points and (i) Defendants' combined market shares exceed 30 percent or (ii) the post-merger HHI exceeds 1800." Compl. ¶ 56. Likewise, with respect to labor markets, Plaintiffs alleged that (1) "the combined firm will enjoy a market share of over 30 percent and the merger increases the HHI of the market by more than 100 points" in "many local CBA areas," (2) that "the Defendants have a combined share of union grocery labor exceeding 65% in [the included non-exhaustive list of] local CBA areas," and (3) that "the proposed acquisition would be a merger to monopsony in approximately half of the [listed] local CBA areas." *Id.* ¶ 87.

The facts underlying each of these allegations go directly to the market definition issues central to this case—namely, how the relevant markets are to be defined and which firms compete in those markets. The factual predicates for specific allegations Plaintiffs chose to include in their complaints are the proper subject of interrogatories, not privileged work-product. *See, e.g.*, *Moore v. Dollar Tree Stores, Inc.*, 2014 WL 2039995, at *5 (E.D. Cal. May 16, 2014) (citing cases for the proposition that "[t]he plain language of Rule 26 limits the scope of the attorney work product doctrine to documents and tangible things, not the underlying facts"); Barrington Dec., Ex. 3 at 21:3–14, 27:12–17.

2.  **Defendants' Interrogatories Do Not Seek Premature Expert Discovery**

Plaintiffs' position that "[t]he exact contours and constituents of the 'supermarket' market" and "the relevant geographic markets in this action" constitute expert discovery is meritless. Barrington Dec., Ex. 2 at 8-9. Plaintiffs undeniably based their allegations about the market

Page 8 –   DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

concentration and market share in their alleged markets on information in their possession at the time they filed their Complaint—including the very contours and constituents in the "supermarket" market and the geographic markets they identified. The factual bases for these allegations—which Plaintiffs possessed *before this lawsuit even began*—do not constitute expert discovery.

Plaintiffs could not have included these allegations in their Complaint unless they had already analyzed the relevant product and geographic markets and the effect the transaction would have in each of these purportedly relevant markets. This would have required identifying the bounds of each alleged geographic market, the companies included in the market, the market shares of these companies, and the HHI or market concentration of each market before and after the transaction. Under Federal Rule of Civil Procedure 11(b)(3), Plaintiffs could only have included these "factual contentions [if they] ha[d] evidentiary support" when they filed their Complaint. The factual basis supporting Plaintiffs' allegations is precisely what Defendants seek in Interrogatory Nos. 2, 3, and 4. *See E.E.O.C v. Bank of Am.*, 2014 WL 7240134, at *4 (D. Nev. Dec. 18, 2014) ("If facts support a complaint's allegations they are discoverable as a matter of law, . . . the failure to produce those facts in response to a proper discovery request is sanctionable.").

Plaintiffs' decision to conduct additional fact and expert discovery related to market definition in this litigation does not transform the discoverable facts underlying the allegations in their Complaint into "premature expert discovery." As Defendants explained on the Parties' May 14, 2024, meet and confer, Defendants' interrogatories seek only the factual bases for the specific allegations that Plaintiffs included in the Complaint about the purported relevant geographic and product markets.[1] The fact that Plaintiffs' experts may opine on market definition

---

[1] Plaintiffs also object to these interrogatories under Local Rule 33-1(d), but Defendants seek highly specific information about the factual bases for Plaintiffs' alleged markets. These are not "[b]road general interrogatories" that seek "all facts" underlying Plaintiffs' claims. *Id.*

Page 9 –   DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

does not allow Plaintiffs to withhold information they relied on in the Complaint. "It may be that a party's experts will rely on facts to support the party's contentions, but it is not a valid objection to claim that interrogatories asking about facts and contentions constitute 'premature' expert discovery." *FTC v. Meta Platforms, Inc.*, No. 20-3590, 2023 WL 3092651, at *2 (D.D.C. Apr. 26, 2023).

Notably, in the FTC's contemporaneous merger litigation against Tapestry, the FTC is taking the opposite position it is taking here and has expressly conceded that the boundaries of a market are a proper subject for interrogatories. On May 13, 2024, the FTC represented to that court that an interrogatory requiring the FTC to "identify each person you have included as a competitor … in the relevant antitrust market" would be an appropriate vehicle for discovery. Barrington Dec., Ex. 3 at 21:3–7. The FTC further explained that "we'd provide that" and "that's the proper way to go about doing these things." *Id.* 27:11–17. Yet the interrogatory the FTC stated would have been appropriate in *Tapestry*—requiring a list of the competitors identified by the FTC—is nearly identical to Defendant's Interrogatory 2, which asked the FTC to "[id]entify all companies (and their specific banners or store types) that You allege to be in the market for 'supermarkets' … and all companies (and their specific banners or store types) who engage in the retail sale of food and other grocery products You nonetheless exclude from that market." Barrington Dec., Ex. 1, at 9. In response to this interrogatory, the FTC has refused to provide this information, stating that "[t]he exact contours and constituents of the 'supermarket' market are the subject of ongoing fact and expert discovery." Barrington Dec., Ex. 2 at 8. This is not a defensible position, as the FTC recognized in *Tapestry*.

Page 10 –   DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

### 3. Plaintiffs' Failure to Provide the Factual Basis for the Alleged Markets is Highly Prejudicial

Plaintiffs' unjustified refusal to disclose the factual basis for the markets alleged in their Complaint severely limits Defendants' ability to defend themselves. Plaintiffs' delay undercuts Defendants' efforts to pursue non-party discovery and expert testimony targeted at the claims asserted by Plaintiffs. To give just one example, Plaintiffs' refusal to provide a list of their alleged third-party competitors unfairly prevents Defendants from efficiently or effectively seeking discovery from those competitors or other companies that Plaintiffs did *not* include in their markets to show that those companies do, *in fact*, compete with Kroger and Albertsons. Because Plaintiffs refuse to disclose the factual basis and contours of the markets they have alleged in the Complaint, Defendants are left to guess about which evidence they need to develop to counter Plaintiffs' claim.

Plaintiffs' position that they need not produce this factual information until they provide their expert reports is a ploy to limit Defendants' ability to develop necessary evidence. Plaintiffs have had more than a year of investigation to fully develop their claim and facts to support it. In contrast, Defendants have only the expedited discovery period available in this litigation. Plaintiffs cannot continue to hide the facts underlying their allegations until after fact discovery closes.

### 4. An Expedited Hearing Is Necessary

Defendants request an expedited hearing on this matter because fact discovery closes in just over three weeks, and Defendants need the information sought by these interrogatories to inform their party, third-party, and expert discovery.

### IV. CONCLUSION

Defendants respectfully request that the Court order Plaintiffs to fully respond to Interrogatories No. 2, 3, and 4 within seven calendar days pursuant to Section B.17 of the CMSO.

DATED: May 19, 2024

| ANGELI LAW GROUP LLC | STOEL RIVES LLP |
|---|---|
| *s/ Kristen Tranetzki* | *s/ B. John Casey* |
| KRISTEN TRANETZKI, OSB No. 115730 | B. JOHN CASEY, OSB No. 120025 |
| kristen@angelilaw.com | john.casey@stoel.com |
| DAVID H. ANGELI, OSB No. 020244 | RACHEL C. LEE, OSB No. 102944 |
| david@angelilaw.com | rachel.lee@stoel.com |
| PETER D. HAWKES, OSB No. 071986 | JACOB GOLDBERG, OSB No. 162565 |
| peter@angelilaw.com | jacob.goldberg@stoel.com |
| 121 SW Morrison Street, Suite 400 | |
| Portland, OR 97204 | AND |
| Telephone: 503.954.2232 | |

ANGELI LAW GROUP LLC — (left column continues)

AND

DEBEVOISE & PLIMPTON LLP

EDWARD D. HASSI (*Pro Hac Vice*)
thassi@debevoise.com
801 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: 202.942.5000

MICHAEL SCHAPER (*Pro Hac Vice*)
mschaper@debevoise.com
SHANNON ROSE SELDEN (*Pro Hac Vice*)
srselden@debevoise.com
J. ROBERT ABRAHAM (*Pro Hac Vice*)
jrabraham@debevoise.com
NATASCHA BORN (*Pro Hac Vice*)
nborn@debevoise.com
66 Hudson Boulevard
New York, NY 10001
Telephone: 212.909.6000

AND

WILLIAMS & CONNOLLY LLP

ENU A. MAINIGI (*Pro Hac Vice*)
emainigi@wc.com
JONATHAN B. PITT (*Pro Hac Vice*)
jpitt@wc.com
A. JOSHUA PODOLL (*Pro Hac Vice*)

ARNOLD & PORTER KAYE SCHOLER LLP

MATTHEW M. WOLF (*Pro Hac Vice*)
matthew.wolf@arnoldporter.com
SONIA K. PFAFFENROTH (*Pro Hac Vice*)
sonia.pfaffenroth@arnoldporter.com
JOSHUA M. DAVIS (*Pro Hac Vice*)
joshua.davis@arnoldporter.com
KOLYA D. GLICK (*Pro Hac Vice*)
kolya.glick@arnoldporter.com
JASON C. EWART (*Pro Hac Vice*)
jason.ewart@arnoldporter.com
MICHAEL E. KIENTZLE (*Pro Hac Vice*)
michael.kientzle@arnoldporter.com
MATTHEW M. SHULTZ (*Pro Hac Vice*)
matthew.shultz@arnoldporter.com
DAVID B. BERGMAN (*Pro Hac Vice*)
david.bergman@arnoldporter.com
MICHAEL L. WALDEN (*Pro Hac Vice*)
mike.walden@arnoldporter.com
YASMINE L. HARIK (*Pro Hac Vice*)
yasmine.harik@arnoldporter.com
ALLISON GARDNER (*Pro Hac Vice*)
allison.gardner@arnoldporter.com
BARBARA H. WOOTTON (*Pro Hac Vice*)
barbara.wootton@arnoldporter.com
CHRISTIAN SCHULTZ (*Pro Hac Vice*)
christian.schultz@arnoldporter.com
DAVID EMANUELSON (*Pro Hac Vice*)
david.emanuelson@arnoldporter.com
MEI-WAH LEE (*Pro Hac Vice*)
mei-wah.lee@arnoldporter.com

Page 12 –   DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

| | |
|---|---|
| apodoll@wc.com<br>THOMAS W. RYAN (*Pro Hac Vice*)<br>tryan@wc.com<br>TYLER INFINGER(*Pro Hac Vice*)<br>tinfinger@wc.com<br>WILLIAM ASHWORTH (*Pro Hac Vice*)<br>washworth@wc.com<br>680 Maine Avenue SW<br>Washington, DC 20024<br>Telephone: 202.434.5000<br><br>AND<br><br>DECHERT LLP<br><br>JAMES A. FISHKIN (*Pro Hac Vice*)<br>james.fishkin@dechert.com<br>MICHAEL COWIE (*Pro Hac Vice*)<br>mike.cowie@dechert.com<br>ELENA KAMENIR (*Pro Hac Vice*)<br>elena.kamenir@dechert.com<br>1900 K Street NW<br>Washington, DC 20006<br>Telephone: 202.261.3300<br><br>HOWARD. M. ULLMAN (*Pro Hac Vice*)<br>howard.ullman@dechert.com<br>45 Fremont St, 26th Floor<br>San Francisco, CA 94105<br>Telephone: 415.262.4500<br><br>ROSS UFBERG (*Pro Hac Vice*)<br>ross.ufberg@dechert.com<br>YOSEF WEITZMAN (*Pro Hac Vice*)<br>yosi.weitzman@dechert.com<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA 19104<br>Telephone: 215.994.2422<br><br>*Attorneys for Defendant Albertsons Companies, Inc.* | WILSON DELOSS MUDGE (*Pro Hac Vice*)<br>wilson.mudge@arnoldporter.com<br>601 Massachusetts Avenue, NW<br>Washington, DC  20001<br>Telephone:  202.942.5000<br><br>AND<br><br>ARNOLD & PORTER KAYE SCHOLER LLP<br><br>JOHN A. HOLLER (*Pro Hac Vice*)<br>john.holler@arnoldporter.com<br>250 W 55th Street<br>New York, NY  10019<br>Telephone:  212.836.8000<br><br>BRIAN K. CONDON (*Pro Hac Vice*)<br>brian.condon@arnoldporter.com<br>777 S. Figueroa Street, 44th Floor<br>Los Angeles, CA  90017<br>Telephone: 213.243.4000<br><br>JEREMY T. KAMRAS (*Pro Hac Vice*)<br>jeremy.kamras@arnoldporter.com<br>Three Embarcadero Center, 10th Floor<br>San Francisco, CA  94111<br>Telephone:  415.471.3100<br><br>AND<br><br>WEIL, GOTSHAL & MANGES LLP<br><br>MARK A. PERRY (*Pro Hac Vice*)<br>mark.perry@weil.com<br>LUKE SULLIVAN (*Pro Hac Vice*)<br>luke.sullivan@weil.com<br>JASON N. KLEINWAKS (*Pro Hac Vice*)<br>jason.kleinwaks@weil.com<br>2001 M Street, NW, Suite 600<br>Washington, DC  20036<br>Telephone:  202.682.7000<br><br>LUNA N. BARRINGTON (*Pro Hac Vice*)<br>luna.barrington@weil.com<br>767 Fifth Avenue<br>New York, NY  10153 |

Page 13 –   DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL

Telephone: 212.310.8000

SARAH M. STERNLIEB (*Pro Hac Vice*)
sarah.sternlieb@weil.com
700 Louisiana Street, Suite 3700
Houston, TX  77002
Telephone: 713.546.5000

BAMBO OBARO (*Pro Hac Vice*)
bambo.obaro@weil.com
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  650.802.3000

THOMAS B. FIASCONE (*Pro Hac Vice*)
tom.fiascone@weil.com
REBECCA SIVITZ (*Pro Hac Vice*)
rebecca.sivitz@weil.com
100 Federal Street, Floor 34
Boston, MA  02110
Telephone:  617.722.8314

*Attorneys for Defendant The Kroger Company*

Page 14 –   DEFENDANTS THE KROGER COMPANY'S AND ALBERTSONS COMPANIES, INC.'S MOTION TO COMPEL