```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   FEDERAL TRADE COMISSION,

 4                  Plaintiff,

 5            v.                          24 Civ. 3109 (JLR)

 6   TAPESTRY INC., CAPRI HOLDINGS
     LIMITED,
 7                                        Remote Oral Argument

 8                  Defendants.

 9   ------------------------------x
                                          New York, N.Y.
10                                        May 13, 2024
                                          3:00 p.m.
11
     Before:
12
                     HON. JENNIFER L. ROCHON,
13
                                          District Judge
14
                          APPEARANCES
15
     FEDERAL TRADE COMMISSION
16        Attorneys for Plaintiff
     BY:  ABBY L. DENNIS
17        DANIELLE C. QUINN

18   LATHAM & WATKINS LLP
          Attorneys for Defendant Tapestry
19   BY:  AL PFEIFFER, JR.
          AMANDA P. REEVES
20

21   WACHTELL, LIPTON, ROSEN & KATZ
          Attorneys for Defendant Capri
22   BY:  JONATHAN M. MOSES
          ELAINE P. GOLIN
23

24

25
```

1              (Case called)

2              THE COURT:  Good afternoon, everyone.  Before we

3    begin, let me just place a few things on the record.  This

4    conference is being conducted through video conferencing on

5    Microsoft Teams.  As everyone knows, court proceedings are

6    public proceedings and therefore there was a listen-only line

7    that has been noted on the docket for anyone who wishes to

8    join.  We will not hear when people do join.  They just join

9    that listen-only line, so please presume that this is an open

10   forum.  I understand that we have several people, many people

11   on the line right now.

12             And on the line from my part there is my deputy, my

13   clerks, and we also have a court reporter who is transcribing

14   this proceeding.  And as a reminder, under the local civil

15   rules, no one other than court personnel are allowed to record,

16   rebroadcast, or disseminate this proceeding.  And that is for

17   the benefit of everyone who is on this call or video here

18   today.  No one is permitted to do that.  So we will first take

19   appearances.

20             Can I have appearances for the FTC first, please.

21             MS. DENNIS:  Yes, your Honor.  Good afternoon, Abby

22   Dennis for the Federal Trade Commission, and with me I have my

23   colleague Danielle Quinn.

24             THE COURT:  Good afternoon.  And, Ms. Dennis, will you

25   be handling the argument today or will Ms. Quinn be doing so?

1          MS. QUINN:  I will be doing so, your Honor.
2          THE COURT:  Thank you.  And then who do we have here
3   from Tapestry?
4          MR. PFEIFFER:  Good afternoon, your Honor.  Alfred --
5          THE COURT:  Oh, you're on mute.
6          MR. PFEIFFER:  That was clumsy handwork by me.  Sorry.
7   Al Pfeiffer of Latham & Watkins on behalf of Tapestry.  Also
8   with me, my partner Amanda Reeves.
9          THE COURT:  And will you be handling the argument,
10  Mr. Pfeiffer?
11         MR. PFEIFFER:  Yes, your Honor.
12         THE COURT:  Thank you.  Good afternoon, Ms. Reeves, as
13  well.  Who do we have here from Capri Holdings?
14         MR. MOSES:  Good afternoon, your Honor.  Jonathan
15  Moses on behalf of Capri, and with me is my parter Elaine
16  Golin.
17         THE COURT:  Thank you.  And will you be handling the
18  argument, Mr. Moses?
19         MR. MOSES:  To the extent there's anything for us to
20  add, we will chime in.  But I anticipate Mr. Pfeiffer will take
21  the lions share of it.
22         THE COURT:  Thank you very much, and good afternoon
23  all.
24         We are holding this conference virtually for the
25  convenience of the parties.  I know people would be traveling

1   in for this, D.C., California, etc., but I just want to place
2   out there at the outset of this case, if at any time the
3   parties wish to come in for any conference that I set, I am
4   happy to do that. And certainly if I need you to come in, I
5   will order that as well. But I'm doing this for your
6   convenience. I'm always happy to have you here in person if
7   you would like.
8           Okay. This motion, we are here for oral argument on
9   the motion for more definite statement or in the alternative
10  the request that plaintiff answer one contention interrogatory.
11  This is defendant's motion, so I will start with defendants and
12  hear from you.
13          I assume it's you, Mr. Pfeiffer, then I'll hear from
14  Ms. Dennis. And then if you have a reply that you would like
15  to put forward, Mr. Pfeiffer, I'm happy to hear it. I don't
16  have strict time limits for argument, but I ask that you be
17  reasonable. I wouldn't imagine that either side needs anything
18  more than 15 minutes or so to argue. You can assume great
19  familiarity with the papers on my behalf, and certainly feel
20  free to highlight anything that you need to highlight or wish
21  to highlight.
22          I do think that we should all be able to speak around
23  sealed specifics as far as I'm concerned. That should be
24  possible during this argument. If you want to direct me to
25  something in the complaint that I can look at without divulging

any sealed information, I'm happy to look there, but I think we can all manage to keep this proceeding open to the public without opening up any sealed or redacted information.

So why don't we start with you, Mr. Pfeiffer. I'm happy to hear from you now.

MR. PFEIFFER: Thank you, your Honor. And of course we're most interested in addressing whatever concerns or questions you have. So I hope and assume you won't be shy about letting me know.

THE COURT: I won't.

MR. PFEIFFER: In the meantime, I'll kick it off with kind of our perspective on this. And from our perspective, I think it's both puzzling and kind of concerning that the FTC has spent 20 pages in their opposition brief setting out all kinds of reasons why they shouldn't have to provide us just a simple intelligible statement of what they say the market is so that we can know who and what they claim are in and out of the market. It's puzzling to start there because we know the FTC absolutely has in mind what's in and out of the market in their view in their market definition.

We know that precisely because they've included allegations about post-merger market shares and market concentration levels in the complaint. They obviously had to have a good faith, a good-faith basis rather, to say those things under Rule 11 and we fully assume they did. But you

can't calculate market shares or market concentration figures without making a decision, without making a call about what's in the market and what's not because it's just math.

There's a numerator, which is us, the parties, and then there's the denominator, which is us plus everything else that they say makes up the total market. They calculated those figures, they say so in the complaint. So they know what they used as the denominator for the total market. So it's not a question of them not knowing what the market definition is. It's a matter of them refusing to tell us. And they frankly have been kind of blunt about that. They've told us in writing, and I think in meetings beforehand, that it's really a matter for experts in their view. And that's where I think it gets kind of concerning. Because in practical effect what they're saying is pretty remarkable.

They're saying, we are going to tell you more about the market, what our market definition means, but not until later. Much later from our perspective. Specifically when they serve their opening expert report, which is the same day fact discovery closes, which is July 26th. And that's just about ten day before we have to submit our own expert report.

That to us is concerning and kind of remarkable that we won't even know what they say is in and out of the market. We won't have that kind of definition until we're done with discovery, until our expert reports are basically done.

1          There isn't time for this, your Honor.  The prejudice
2    to us we think is very clear.  As the FTC has certainly pointed
3    out this is a preliminary injunction proceeding, it's
4    proceeding on a very fast schedule.  The fact discovery, as I
5    said, ends on July 26th.  We don't have the luxury of waiting
6    for an expert to offer an opinion after fact discovery is over.
7    We need to know now what they say the basic parameters of this
8    market are so we can conduct our own discovery efficiently.
9    And frankly, effectively.  We want to be able to defend
10   ourselves.  We want to catch up to the seven-month head start
11   that the FTC has had during their investigation.  And we're
12   seeing real effects from this already, your Honor.

13          The third parties are as confused as we are.  Not just
14   in the Trade Press, which we've cited to you in our papers and
15   I won't belabor, but we've been hearing it from people, third
16   parties who we've served subpoenas on.  They don't know what we
17   mean when we say, you know, provide us information about
18   handbags.  What are you really looking at?  What parts of our
19   business are really at issue here?  We don't know what to say.
20   Either based on, you know, manufacturer or brand or price range
21   or customers, because the FTC won't tell us what they say is in
22   the market and out.

23          In fact, it's kind of telling that even in the own FTC
24   subpoenas that they have sent out in this litigation, they
25   still won't say.  In the second request process they had a

1    questions after you respond to Ms. Dennis.

2              Ms. Dennis.

3              MS. DENNIS:  Good afternoon, your Honor.

4              Your Honor, as defendants note, and why they brought

5    the *IQVIA* case, in nearly every merger case, the parties

6    dispute the adequacy of the government's market definition.

7    They say the boundaries aren't discernible enough or they're

8    not clear enough.  They say the dividing lines are arbitrary.

9    They make all these same arguments that defendants do in their

10   briefs.  These arguments go to the proof and they go to the

11   merits.  They do not provide the basis of a Rule 12(e) motion.

12             Defendants say every FTC complaint in modern history

13   provides this information about exactly what is in the relevant

14   market and what is out.  But they don't cite to a single

15   complaint in their papers.  Mr. Pfeiffer did mention *IQVIA* to

16   you, noteworthy in the *IQVIA* complaint, we don't list who's in

17   and out of the market.  We don't list the competitors.

18             So there's a reason why we do not cite anything

19   because it's just not true.  And we're happy to provide the

20   Court with additional FTC complaints.  We have also attached a

21   copy of a recent DOJ complaint in the *Bertelsmann* case.

22             But, in any event, if defendants thought the

23   allegations in the complaint were insufficient, the recourse

24   was to file a Rule 12(b)(6) motion and they could have filed

25   one of those motions in the Part 3 administrative proceeding as

1   well.  While Part 3 does not allow for motions for a more

2   definite statement, it does allow respondents to file motions

3   to dismiss the complaint.

4              Defendants did not do that here.  Instead, they filed

5   a Rule 12(e) motion seeking information about the FTC's market

6   definition.  What information they seek on market definition is

7   a bit of moving target.  But they've asked for a lot of

8   different things in their briefing.  And we've counted at least

9   eight different items of information.

10             Mr. Pfeiffer here today talked about the methodology

11  by which we determine our market shares.  Their briefs also say

12  what specific products and brands are an accessible luxury

13  handbag market.  Again, the methodology the FTC relied upon

14  assigned to suit:  A price range for accessible luxury

15  handbags; how the FTC arrived at its calculations of market

16  shares; the set of patterns underlying those shares; the

17  relevant metrics for those shares, such as sales, units, etc;

18  the list of competitors who constrain defendant's pricing and

19  who has recently or might enter the market to compete.

20             But the lack of any of that information does not make

21  the complaint unintelligible.  And that they can't answer the

22  complaint.  And the proper means by which to give this

23  information is through discovery which started on May 1st.

24             Now, it is true that some of the information that

25  defendants seek is protected work product or premature expert

1   discovery as explained in the anthem case.  I think that's true
2   of what Mr. Pfeiffer was asking for as far as methodology.  But
3   some of the things they ask for are not.  For instance, on
4   May 1st defendants could have, but did not, serve on
5   interrogatory that said identify each person you have included
6   as a competitor of Coach, Michael Kors, and Kate Spade in the
7   relevant antitrust market in your complaint.
8            The *IQVIA* defendants did that long before the time for
9   contention interrogatories and the FTC answered that long
10  before the time for contention interrogatories.
11           Notably, if defendants have propounded this
12  interrogatory, and if they accepted the 14-day deadline for
13  interrogatory responses the FTC proposed, in which they
14  rejected, they would have these answers on Wednesday.  And in
15  the meantime, the FTC would have the benefit of defendant's
16  answers and more fulsome Rule 26 disclosures, both of which the
17  defendants unilaterally have put on pause due to this motion,
18  making it harder for the FTC to conduct discovery on
19  defendant's defenses.
20           Instead, defendants have served no discovery requests
21  to the FTC at all.  We are here where defendants asked this
22  Court through Rule 12(e) motion for an overbroad contention
23  interrogatory.  That's improper under Rule 12(e), under the
24  local rules, and under the CMSO to which the parties stipulated
25  just two days prior to this instant motion.

         MS. DENNIS:  Sure.  We are of course, your Honor, worried about burdening third parties as well as I mentioned during the conference two weeks ago.  Two responses to that.  One is defendants in all these cases think our market is too narrowly defined.  They will subpoena anybody that they can think of to put in that market.  I doubt -- you know, even if they propound interrogatory asking us to include the competitors in the market, which they have not done yet, they're going to be satisfied with that answer and they'll go beyond it.

         Second, I'm not sure why they need the data that they've said they need from these parties.  There's industry-wide data that the parties rely on in the ordinary course.  They use it in board presentations.  They use it internally to make business decisions.  I understand that they might want to attack that data, but it's not necessary to get data from every single third party.

         THE COURT:  Okay.  What is your response to defendants' argument that the FTC has a clearer and more definite definition of what the market is based on analyses of market concentration and other things articulated in the complaint that they are just simply not sharing with the defendant?

         MS. DENNIS:  Your Honor, I think the case law is pretty clear.  A lot of that is attorney work product and

1  expert discovery.  We do have preliminary analyses that we've

2  done to generate those preliminary numbers.  Normally when

3  defendants ask for that information, we object on privilege

4  grounds or we fight it out in contention interrogatories, but

5  that's something for later on in the process generally.

6          THE COURT:  Oh, I don't mean the sharing of the actual

7  methodology.  What I mean is that if there are particular

8  competitors or parameters of the market that are utilized in

9  those expert analyses, is that more information that you have

10 that you have not included in this complaint?

11         MS. DENNIS:  That information is not in the complaint,

12 your Honor.  But again, if they propound interrogatory like

13 most defendants do asking for the information, certainly with

14 the list of competitors, we'd provide that.  That's what was

15 done in the *IQVIA*.  It was done in the *Meadow* litigation in the

16 Northern State of California.  I think that's the proper way to

17 go about doing these things.  Competitors in our complaints.

18         THE COURT:  And you do agree, don't you, Ms. Dennis,

19 that I will have to assess likelihood of success on the merits

20 here, and that that would entail an analysis of whether you are

21 able to likely succeed in showing that there is a relevant

22 market that's been adversely impacted?  Not necessarily prove

23 it in front of me, but that you're likely to succeed and so I

24 will have to be analyzing ultimately your relevant market and

25 the parameters around that market in order to do my preliminary

1     MS. DENNIS:  Yes, your Honor.  Thank you.

2     THE COURT:  Thank you very much.  And Mr. Pfeiffer,
3  all clear?

4     MR. PFEIFFER:  All clear.  We appreciate the guidance,
5  your Honor.  Thank you.

6     THE COURT:  Thank you very much.  Anything further,
7  Mr. Moses?

8     MR. MOSES:  No.  Thank you, your Honor.  Thank you
9  very much for this afternoon.

10    THE COURT:  No, thank you all for being here.  And
11 again, I appreciate the very well-done papers.  And I'll see
12 you if there's another issue that need resolving.  Otherwise,
13 good luck as you proceed through discovery, and court is
14 adjourned.  Thank you.

15    (Adjourned)

22    I hereby certify that the foregoing is a true and
23 accurate transcript, to the best of my skill and ability, from
24 my stenographic notes.

25

O5DAFtcC

_____
           Official Court Reporter
           U.S. District Court