B. JOHN CASEY, OSB No. 120025
john.casey@stoel.com
RACHEL C. LEE, OSB No. 102944
rachel.lee@stoel.com
JACOB GOLDBERG, OSB No. 162565
jacob.goldberg@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380

MATTHEW M. WOLF (*Pro Hac Vice*)
matthew.wolf@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC  20001
Telephone:  202.942.5000

*Attorneys for Defendant The Kroger Company*
(Additional counsel on signature page)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING,<br><br>    Plaintiffs,<br><br> v.<br><br>THE KROGER COMPANY and ALBERTSONS COMPANIES, INC.,<br><br>    Defendants. | Case No.: 3:24-cv-00347<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE** |

I.  **INTRODUCTION**

Plaintiffs' motion to strike ("Motion") the July 20 corrected report and July 30 surrebuttal report of Defendants' economic expert, Dr. Mark Israel, should be rejected.

*First*, Dr. Israel's July 20 errata corrected computational errors as required by Federal Rule of Civil Procedure ("FRCP") 26(e)(2) and was timely disclosed before Defendants' pretrial disclosures under FRCP 26(a)(3) are due. The corrected report was not a "new analysis" and offered no new opinions; it corrected a calculation error that Dr. Israel discovered in preparing for his deposition that led to the adjustment of certain figures. Apart from being required under FRCP 26(e)(2), these corrections are necessary to provide an accurate analysis for the Court. The corrected report was served as soon as feasible after Dr. Israel identified the error, and Plaintiffs only used the corrected report at his deposition. Plaintiffs seek to deprive the Court of the actual, correct results of Dr. Israel's analysis simply because they do not like what his corrections showed.

*Second*, Dr. Israel's five-page, eight-paragraph surrebuttal report was substantially justified. The surrebuttal analysis was necessary only because Plaintiffs' economic expert, Dr. Nicholas Hill, waited until his rebuttal report to offer a new, misleading margin analysis that could have been included in his initial report, using data the FTC obtained from Defendants more than a year before that initial report. Both parties recognize that margins are a critical input into the parties' analyses of competitive harm, and the margins used – whether gross margins (Dr. Hill) or variable margins (Dr. Israel) – has a significant impact on the results. Indeed, Dr. Hill acknowledged that using Dr. Israel's measure of variable margins instead of his own measure of gross margins reduces Dr. Hill's estimate of competitive harm by more than ▮.[1] Plaintiffs cannot credibly claim prejudice or harm from Dr. Israel's surrebuttal as they were offered

---

[1] Declaration of Sonia Pfaffenroth in Support of Defendants' Opposition to Plaintiffs' Motion to Strike ("Pfaffenroth Decl."), Ex. 1 at ¶¶ 93-95, Figure 16 (Hill Rebuttal Report) ▮

1

– and rejected – the opportunity to further depose Dr. Israel regarding his surrebuttal analysis. The Court should have the full benefit of the experts' analyses on this important issue.

Accordingly, the Court should find Dr. Israel's corrected rebuttal report appropriate under the rules and his surrebuttal report substantially justified, and deny the Motion in its entirety. If necessary, Defendants remain willing to present Dr. Israel for a limited additional deposition related to his surrebuttal report, and would not oppose Dr. Hill preparing a surreply.

## II.     BACKGROUND

On June 1, 2023, Defendants produced to the FTC historical store-level profit and loss data, including data that Dr. Hill relied upon for the first time in his rebuttal analysis of margins. On January 4, 2024, in response to a follow-up request from the FTC during its merger investigation, Defendants provided the FTC updated breakdowns of their variable and fixed costs.[2]

On June 18, 2024, Plaintiffs produced the initial expert report of its economic expert, Dr. Nicholas Hill, which made no reference to the variable cost breakdowns that Defendants had produced six months earlier; instead, he relied exclusively on the parties' (higher) gross margins, which do not account for all the variable costs described in these breakdowns.[3] On July 1, 2024, Defendants produced the rebuttal expert report of their economic expert, Dr. Mark Israel, who criticized Dr. Hill's use of gross margins for competitive effects analyses.[4]

At 12:08 a.m. EDT on July 13, 2024, Plaintiffs produced a rebuttal report from Dr. Hill, which included a new margin analysis related ████████████████████████████████, using data first provided more than six months earlier, purportedly supporting Dr. Hill's use of gross

---

[2] Pfaffenroth Decl., Ex. 2 (E-mail from J. Ewart to C. Dickinson re: Kroger/Albertsons w/ attach: KR-FTC-2R-000030808, Jan. 4, 2024).
[3] Pfaffenroth Decl., Ex. 3 at ¶¶ 188-93, App'x F. (Hill Initial Report).
[4] Pfaffenroth Decl., Ex. 4 at ¶ 155 (Israel Report). On July 5, 2024, Defendants produced the first corrected rebuttal report for Dr. Israel, which reflected necessary corrections because he had not properly coded certain Albertsons stores as Albertsons stores when performing his analysis. Pfaffenroth Decl., Ex. 5 (Israel Dep. Tr. 308:3-309:7). Plaintiffs did not object to the corrected report.

margins to assess the merger's competitive effects.[5] Dr. Israel immediately began investigating Dr. Hill's new margin analysis related to ▮▮▮▮▮ in anticipation of needing to respond to this issue before his deposition. In the days before his scheduled July 19 deposition, Dr. Israel became ill and his deposition was moved to July 22. On July 20, 2024, Defendants produced Dr. Israel's second corrected expert report, which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[6]

At Dr. Israel's deposition on July 22, 2024, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[11]

---

[5] Pfaffenroth Decl., Ex. 1 at ¶¶ 44-49, Figure 5 (Hill Rebuttal Report); Pfaffenroth Decl., Ex. 6 (transmission email for the Hill rebuttal report in Oregon and Part 3, marked as PX7006 and PX7007 respectively). Dr. Hill's initial report analyzed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See Pfaffenroth Decl., Ex. 3 at ¶¶ 177-87, App'x G (Hill Initial Report). Dr. Hill's ability to perform certain analyses ▮▮▮▮▮▮▮▮▮▮▮ in his initial report underscores the inappropriateness of withholding his margin analysis of ▮▮▮▮ until his rebuttal report.
[6] Pfaffenroth Decl., Ex. 5 (Israel Dep. Tr. 309:8-311:24).
[7] Id. at 309:8-311:24.
[8] Id. at 304:13-305:24.
[9] Id. at 304:6-307:11.
[10] Id. at 304:6-307:11.
[11] Id. at 304:6-307:11; Pfaffenroth Decl., Ex. 7 (Israel Surrebuttal Report).

On July 30, 2024, Defendants produced a five-page, eight-paragraph surrebuttal expert report responding only to Dr. Hill's new margin analysis of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[12] In response to Plaintiffs' objections about Dr. Israel's second corrected report and surrebuttal report, on July 31, 2024, Defendants proposed to either (1) make Dr. Israel available for a brief supplemental deposition on the topics in his surrebuttal report or (2) allow Dr. Hill to file a surreply report to Dr. Israel's surrebuttal. Plaintiffs rejected both proposals and filed their Motion.[13]

### III.   ARGUMENT

#### A.   Dr. Israel's Second Corrected Report Was Properly and Timely Produced

Plaintiffs improperly ask the Court to exclude Dr. Israel from offering the opinions reflected in his second corrected rebuttal report principally because the corrected report was produced less than a week before his deposition. FRCP 26(e) requires a party to correct an expert report when it learns "that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Under FRCP 26(e)(2), a corrected report is timely if it is submitted by the time a party's pretrial disclosures under FRCP 26(a)(3) are due – here, August 7, the date the parties will exchange final witness and exhibit lists.

As Dr. Israel explained in his deposition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[12] Pfaffenroth Decl., Ex. 7 (Israel Surrebuttal Report).
[13] Pfaffenroth Decl., Ex. 8 (Email from R. Pai to J. Ewart et al., Aug 1, 2024).

██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████.

The production of Dr. Israel's second corrected rebuttal report comports with Defendants' duty under FRCP 26 to timely inform Plaintiffs of this material mistake. It also comports with the CMSO. Contrary to Plaintiffs' claim, there is no deadline in the CMSO for submitting a "corrected" report. Paragraph 10 of the CMSO applies to "amended" or "supplemental" reports. This report was not a supplement or an amendment; it merely corrected calculation errors. The default FRCP deadline for submitting a corrected report thus applies, and was clearly met. Even if *arguendo* the corrected report was untimely under the CMSO, the untimeliness was justified and Plaintiffs were not prejudiced by the date of its submission: as Dr. Israel explained, ████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████.

Finally, Plaintiffs argue that Dr. Israel's second corrected rebuttal report does more than "merely correct aspects of Dr. Israel's prior report." Motion at 8. Plaintiffs are wrong. The change was merely ███████████████████████████████████
██████████████████████████, not any "new analysis." This correction was not made to "strengthen or deepen" Dr. Israel's opinion; it corrected a calculation error. While Plaintiffs may

---

[14] Pfaffenroth Decl., Ex. 5 (Israel Dep. Tr. 309:11-310:14 (emphasis added)).

not like that Dr. Israel's second corrected report further undermines their purported structural presumptions, that does not make his corrected analysis inappropriate or subject to exclusion. In any event, Plaintiffs cannot reasonably claim prejudice when Plaintiffs questioned Dr. Israel about the second corrected rebuttal report at his deposition, and have ample time before trial to further prepare for his cross-examination on this report.

### B. Plaintiffs' Untimely Disclosure of Dr. Hill's New Margin Analysis Renders Dr. Israel's Surrebuttal Report Substantially Justified

Plaintiffs' failure to timely disclose Dr. Hill's margin analysis related to ▮▮▮▮ in his initial report opened the door to a surrebuttal analysis by Dr. Israel. Rule 26 was designed to forestall "sandbagging" by a party with the burden of proof by "using a rebuttal report as a backdoor to introduce analysis that could have been included in the opening report." *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, No. 18-CV-07591-CRB, 2022 WL 1203075, at *2 (N.D. Cal. Apr. 22, 2022); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 1351040, at *12 (N.D. Cal. Apr. 4, 2014) (noting that courts do not allow plaintiffs to "'sandbag' Defendants with new analysis that should have been included . . . in [an expert's] opening merits report."). Given the expert discovery schedule in this matter, it was impossible for Dr. Israel to produce a supplemental report to address Dr. Hill's flawed margin analysis before his deposition. Nevertheless, Dr. Israel put Plaintiffs on notice of his supplemental analysis at his deposition and produced his finalized analysis shortly thereafter. Plaintiffs were given the opportunity to depose Dr. Israel about this surrebuttal analysis or to have Dr. Hill offer a surreply to this analysis, but rejected both options. In these circumstances, and given the Court's discretion to allow expert testimony, especially at a bench hearing, Defendants submit that the Court should allow Dr. Israel's surrebuttal report to stand.

While the CMSO in this case allowed the parties to produce supplemental reports a week in advance of an expert's deposition, CMSO at 4 ¶10, it was impossible for Dr. Israel to supplement his rebuttal report to meet this deadline. Dr. Hill served his rebuttal report on July 13, but Plaintiffs insisted on deposing Dr. Israel less than a week after it was served.

Even if Dr. Israel's surrebuttal report were deemed untimely under the CMSO, the decision to allow expert testimony falls within the discretion of the Court, and Plaintiffs' primary case makes clear that courts permit surrebuttal expert reports when such disclosures are "either substantially justified or harmless." *PUMA SE v. Brooks Sports, Inc.*, No. 2:23-CV-00116-LK, 2024 WL 2091382, at *4 (W.D. Wash. May 9, 2024). Two cases are instructive on this topic: *Pacific Steel Grp. v. Com. Metals Co.*, No. 20-CV-07683-HSG, 2024 WL 3171832 (N.D. Cal. June 25, 2024) and *Sancom, Inc. v. Qwest Comm. Corp.*, 683 F. Supp. 2d 1043 (D.S.D. 2010).

In *Pacific Steel*, plaintiff's expert presented new, previously undisclosed economic analysis in his reply report that he did not include in his opening report. *Pacific Steel Grp.*, 2024 WL 3171832, at *5. Although the court's scheduling order did not contemplate additional expert filings, defendants filed an out-of-time declaration by its expert to rebut plaintiff's "updated and wholly new calculations and methods" contained in its reply report. *Id*. Plaintiffs moved to strike defendant's expert declaration, arguing – as Plaintiffs are likely to do in this case – that its new analysis merely supported the conclusions its expert described in his initial report. *Id*. The court rejected plaintiff's motion, citing several cases for the proposition that "basic fairness" disallows parties with the burden of proof to "raise new…analyses" for the first time in reply "because this practice makes a fair response impossible." *Id*. at 5 (citing cases); *see also id.* at 6 n.2 ("Courts have cited this element of simple fairness in allowing similar supplemental expert filings")(citing additional cases). Indeed, the court in *Pacific Steel* questioned why plaintiff's expert reply report

7

containing its new analysis should not be stricken and ordered additional briefing on the subject. *Id*. at 6 n.3.

Similarly in *Sancom*, plaintiff Sancom raised new issues in its rebuttal report that were not addressed in Qwest's initial or rebuttal expert reports. *Id*. at 1064. After deposing plaintiff's expert, defendant Qwest's expert produced a surrebuttal report to address arguments set forth for the first time in Sancom's rebuttal report. *Id*. Chief Judge Schreier found that the timing of Qwest's surrebuttal report was substantially justified because Qwest's expert "did not have an opportunity to respond" to theories expressed for the first time in Sancom's expert's rebuttal report. *Id*. The court further found the late disclosure of Qwest's surrebuttal report — three months after receiving Sancom's rebuttal report and forty-eight days after deposing Sancom's expert — to be harmless because Sancom knew it was forthcoming. *Id*. Finally, the court rejected the argument that Sancom would be prejudiced because the arguments put forth by Qwest's expert in his surrebuttal report would be part of Qwest's cross-examination of Sancom's expert, *id*., noting that Qwest's surrebuttal report did not contain any new opinions. *Id*. at 1065.

These cases mirror the present fact pattern. Defendants provided the FTC with the margin data used for Dr. Hill's analysis in June 2023 and January 2024. In Dr. Hill's initial expert report, Plaintiffs chose not to have Dr. Hill analyze this margin data in relation to ▮▮▮▮▮▮▮▮▮▮ Instead, Plaintiffs waited until his rebuttal report to include wholly new calculations and methods related to the ▮▮▮ to justify his use of gross margins, disallowing Dr. Israel any way to respond under the CMSO. To test this new analysis, Dr. Israel analyzed the same data Dr. Hill relied upon, using a different, longer-term event. Dr. Israel discussed this analysis at his July 22 deposition and Defendants then produced the surrebuttal report on July 30, only eighteen days after service of Dr. Hill's rebuttal report. Dr. Israel then prepared a short, eight-paragraph surrebuttal report that squarely (and only) addresses the flaws in Dr. Hill's new margin analysis.

8

As in *Pacific Steel* and *Sancom*, the timing of Dr. Israel's surrebuttal report is substantially justified because Plaintiffs' inclusion of wholly "new calculations and methods" for the first time in its rebuttal report made "a fair response impossible." *Pacific Steel Grp.*, 2024 WL 3171832, at *5. Until receiving Dr. Hill's rebuttal report, Dr. Israel "did not [otherwise] have an opportunity to respond" to Dr. Hill's new analysis, *Sancom*, 683 F. Supp. 2d at 1064. Further, Plaintiffs will not be harmed by Defendants presenting Dr. Israel's surrebuttal analysis: Plaintiffs already anticipated and asked Dr. Israel if there would be a "surreply" report at his deposition, and the flaws in Dr. Hill's new margin analysis will be explored when Dr. Hill is cross-examined at trial. *Sancom*, 683 F. Supp. 2d at 1065. Moreover, Defendants have offered (and remain willing) to make Dr. Israel available for a short additional deposition to explore his surrebuttal or, alternatively, to allow Dr. Hill to file a surreply to Dr. Israel's surrebuttal. Plaintiffs rejected both proposals, rendering any assertion of prejudice specious.

Dr. Israel's surrebuttal was submitted to address clear flaws in Dr. Hill's new margin analysis and present a counter-analysis using the same data that indicates that Dr. Israel's variable margins are the appropriate margins to analyze the likely competitive effects of this merger. Striking Dr. Israel's surrebuttal report would deny the Court of the full universe of analyses related to this important margin issue. Given that the preliminary injunction hearing is a bench hearing and in light of the Court's inherent discretion to allow surrebuttal analyses where appropriate, the Court should reject Plaintiffs' request to strike Dr. Israel's surrebuttal report. If any remedy is warranted, the Court can afford Plaintiffs the opportunity to take a short deposition of Dr. Israel on his surrebuttal report or have Dr. Hill prepare a surreply that responds to Dr. Israel's surrebuttal report, both of which Defendants offered and Plaintiffs refused.

### C. Plaintiffs' Part III Production Argument Has No Legal Support

Plaintiffs make a novel argument that this Court should preclude Defendants from offering Dr. Israel's second corrected expert report and surrebuttal analysis at the preliminary injunction hearing because these materials theoretically could be excluded from the FTC's Part III administrative proceeding due to the timing of their production in that proceeding. But the FTC has not moved to exclude these reports in the Part III proceeding and the FTC's Chief Administrative Law Judge has not ruled on any such hypothetical motion. As here, Dr. Hill's new margin analysis justified the supplement in Part III. In any event, the FTC offers no legal authority to support its argument. Accordingly, the Court should disregard it.

### D. If the Court Strikes Dr. Israel's Surrebuttal Report, Defendants Will Move to Strike Dr. Hill's Untimely Rebuttal Margin Analysis ▌

For the reasons set forth above, the Court should not strike Dr. Israel's surrebuttal report. In the event the Court does so, Defendants will move to strike Dr. Hill's untimely margin analysis related to ▌ as it was improperly offered for the first time in his rebuttal report. *See, e.g., In re High-Tech Emp. Antitrust Litig.*, 2014 WL 1351040, at *12 (striking plaintiff's expert report and holding that "[p]laintiffs will not be allowed to 'sandbag' Defendants with new analysis that should have been included [in its expert's] opening merits report."); *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 160 (S.D. Ind. 2009) (striking expert's reply report that contained "a host of new detailed analyses…none of which was developed in the original report").

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion in its entirety.

| | |
|---|---|
| ANGELI LAW GROUP LLC | STOEL RIVES LLP |
| */s/ David H. Angeli* | */s/ B. John Casey* |
| DAVID H. ANGELI, Bar No. 020244 | B. JOHN CASEY, OSB No. 120025 |
| david@angelilaw.com | john.casey@stoel.com |
| PETER D. HAWKES, Bar No. 071986 | RACHEL C. LEE, OSB No. 102944 |
| peter@angelilaw.com | rachel.lee@stoel.com |
| 121 SW Morrison Street, Suite 400 | JACOB GOLDBERG, OSB No. 162565 |
| Portland, OR 97204 | jacob.goldberg@stoel.com |
| Telephone: 503.954.2232 | |

ANGELI LAW GROUP LLC

*/s/ David H. Angeli*
DAVID H. ANGELI, Bar No. 020244
david@angelilaw.com
PETER D. HAWKES, Bar No. 071986
peter@angelilaw.com
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: 503.954.2232

AND

DEBEVOISE & PLIMPTON LLP

EDWARD D. HASSI (*Pro Hac Vice*)
thassi@debevoise.com
801 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: 202.942.5000

MICHAEL SCHAPER (*Pro Hac Vice*)
mschaper@debevoise.com
SHANNON ROSE SELDEN (*Pro Hac Vice*)
srselden@debevoise.com
J. ROBERT ABRAHAM (*Pro Hac Vice*)
jrabraham@debevoise.com
NATASCHA BORN (*Pro Hac Vice*)
nborn@debevoise.com
66 Hudson Boulevard
New York, NY 10001
Telephone: 212.909.6000

AND

WILLIAMS & CONNOLLY LLP

ENU A. MAINIGI (*Pro Hac Vice*)
emainigi@wc.com
JONATHAN B. PITT (*Pro Hac Vice*)
jpitt@wc.com
A. JOSHUA PODOLL (*Pro Hac Vice*)
apodoll@wc.com
THOMAS W. RYAN (*Pro Hac Vice*)
tryan@wc.com
TYLER INFINGER(*Pro Hac Vice*)
tinfinger@wc.com

STOEL RIVES LLP

*/s/ B. John Casey*
B. JOHN CASEY, OSB No. 120025
john.casey@stoel.com
RACHEL C. LEE, OSB No. 102944
rachel.lee@stoel.com
JACOB GOLDBERG, OSB No. 162565
jacob.goldberg@stoel.com

AND

ARNOLD & PORTER KAYE SCHOLER LLP

MATTHEW M. WOLF (*Pro Hac Vice*)
matthew.wolf@arnoldporter.com
SONIA K. PFAFFENROTH (*Pro Hac Vice*)
sonia.pfaffenroth@arnoldporter.com
JOSHUA M. DAVIS (*Pro Hac Vice*)
joshua.davis@arnoldporter.com
KOLYA D. GLICK (*Pro Hac Vice*)
kolya.glick@arnoldporter.com
JASON C. EWART (*Pro Hac Vice*)
jason.ewart@arnoldporter.com
MICHAEL E. KIENTZLE (*Pro Hac Vice*)
michael.kientzle@arnoldporter.com
MATTHEW M. SHULTZ (*Pro Hac Vice*)
matthew.shultz@arnoldporter.com
DAVID B. BERGMAN (*Pro Hac Vice*)
david.bergman@arnoldporter.com
MICHAEL L. WALDEN (*Pro Hac Vice*)
mike.walden@arnoldporter.com
YASMINE L. HARIK (*Pro Hac Vice*)
yasmine.harik@arnoldporter.com
ALLISON GARDNER (*Pro Hac Vice*)
allison.gardner@arnoldporter.com
BARBARA H. WOOTTON (*Pro Hac Vice*)
barbara.wootton@arnoldporter.com
CHRISTIAN SCHULTZ (*Pro Hac Vice*)
christian.schultz@arnoldporter.com
DAVID EMANUELSON (*Pro Hac Vice*)
david.emanuelson@arnoldporter.com
MEI-WAH LEE (*Pro Hac Vice*)
mei-wah.lee@arnoldporter.com
WILSON DELOSS MUDGE (*Pro Hac Vice*)
wilson.mudge@arnoldporter.com

| | |
|---|---|
| WILLIAM ASHWORTH (*Pro Hac Vice*)<br>washworth@wc.com<br>680 Maine Avenue SW<br>Washington, DC 20024<br>Telephone: 202.434.5000<br><br>AND<br><br>DECHERT LLP<br><br>JAMES A. FISHKIN (*Pro Hac Vice*)<br>james.fishkin@dechert.com<br>MICHAEL COWIE (*Pro Hac Vice*)<br>mike.cowie@dechert.com<br>ELENA KAMENIR (*Pro Hac Vice*)<br>elena.kamenir@dechert.com<br>1900 K Street NW<br>Washington, DC 20006<br>Telephone: 202.261.3300<br><br>HOWARD. M. ULLMAN (*Pro Hac Vice*)<br>howard.ullman@dechert.com<br>45 Fremont St, 26th Floor<br>San Francisco, CA 94105<br>Telephone: 415.262.4500<br><br>ROSS UFBERG (*Pro Hac Vice*)<br>ross.ufberg@dechert.com<br>YOSEF WEITZMAN (*Pro Hac Vice*)<br>yosi.weitzman@dechert.com<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA 19104<br>Telephone: 215.994.2422<br><br>*Attorneys for Defendant Albertsons Companies, Inc.* | 601 Massachusetts Avenue, NW<br>Washington, DC 20001<br>Telephone: 202.942.5000<br><br>JOHN A. HOLLER (*Pro Hac Vice*)<br>john.holler@arnoldporter.com<br>250 W 55th Street<br>New York, NY 10019<br>Telephone: 212.836.8000<br><br>BRIAN K. CONDON (*Pro Hac Vice*)<br>brian.condon@arnoldporter.com<br>777 S. Figueroa Street, 44th Floor<br>Los Angeles, CA 90017<br>Telephone: 213.243.4000<br><br>JEREMY T. KAMRAS (*Pro Hac Vice*)<br>jeremy.kamras@arnoldporter.com<br>Three Embarcadero Center, 10th Floor<br>San Francisco, CA 94111<br>Telephone: 415.471.3100<br><br>AND<br><br>WEIL, GOTSHAL & MANGES LLP<br><br>MARK A. PERRY (*Pro Hac Vice*)<br>mark.perry@weil.com<br>LUKE SULLIVAN (*Pro Hac Vice*)<br>luke.sullivan@weil.com<br>JASON N. KLEINWAKS (*Pro Hac Vice*)<br>jason.kleinwaks@weil.com<br>2001 M Street, NW, Suite 600<br>Washington, DC 20036<br>Telephone: 202.682.7000<br><br>LUNA N. BARRINGTON (*Pro Hac Vice*)<br>luna.barrington@weil.com<br>767 Fifth Avenue<br>New York, NY 10153<br>Telephone: 212.310.8000<br><br>SARAH M. STERNLIEB (*Pro Hac Vice*)<br>sarah.sternlieb@weil.com<br>700 Louisiana Street, Suite 3700<br>Houston, TX 77002<br>Telephone: 713.546.5000 |

BAMBO OBARO (*Pro Hac Vice*)
bambo.obaro@weil.com
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  650.802.3000

THOMAS B. FIASCONE (*Pro Hac Vice*)
tom.fiascone@weil.com
REBECCA SIVITZ (*Pro Hac Vice*)
rebecca.sivitz@weil.com
100 Federal Street, Floor 34
Boston, MA  02110
Telephone:  617.722.8314

*Attorneys for Defendant The Kroger Company*