# Exhibit A

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202 | |
| STATE OF COLORADO, *ex rel.* PHILIP J. WEISER, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>v.<br><br>THE KROGER CO.; ALBERTSONS COMPANIES, INC.; and C&S WHOLESALE GROCERS, LLC,<br><br>Defendants. | ▲   COURT USE ONLY   ▲<br><br>Case No.  24CV30459 |
| Kristen L. Mix – Special Master<br><br>Judicial Arbiter Group, Inc.<br>1601 Blake Street, Suite 400<br>Denver, Colorado 80202<br>Phone:  303-572-1919<br>Facsimile:  303-571-1115 | JAG Case No. 2024-0894S |
| **SPECIAL MASTER'S INITIAL ORDER ON PLAINTIFF'S MOTION TO COMPEL** | |

This matter is before the Special Master on Plaintiff's Motion to Compel Documents and Testimony Re Amended Divestiture Remedy Plan (the "Discovery Motion").   The Discovery Motion is granted in part as explained further below.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The parties and Court are well familiar with the background of this case, so I won't belabor it here.  In October of 2022, Defendants Kroger Co. ("Kroger") and Albertsons Companies, Inc. ("Albertsons") executed a primary merger agreement which would result in single corporate

ownership of grocery stores accounting for 50% of supermarket sales in Colorado and a monopoly in markets across the state, according to the Colorado Attorney General. In December of 2022, the State of Colorado indicated its intent to challenge the merger due to concerns about potential antitrust violations. In an attempt to address those concerns, Kroger and Albertsons announced a divestiture plan in September of 2023 under which certain stores and assets would be sold to Defendant C&S Wholesale Grocers, LLC ("C&S"). Unsatisfied with the divestiture plan, in February of 2024 the State of Colorado filed suit to enjoin the merger and sale pursuant to the Colorado Antitrust Act of 2023. On April 22, 2024, the Defendants announced an amended divestiture plan, which they contend should resolve the State's antitrust concerns and, hence, allow the deal to close.

Although only tangentially important, it is worth noting that this case is not the only legal battle over the proposed merger at issue here. In January of 2024, prior to the filing of Colorado's lawsuit, the State of Washington filed suit seeking to enjoin the merger there. Within one week after the filing of Colorado's lawsuit, the Federal Trade Commission filed suit in federal court and Part III to enjoin the merger. Hence, much of Defendants' legal activity relating to divestiture has occurred either in anticipation of or after commencement of litigation. Indeed, because the filing of this suit in February of 2024 was followed by Defendants' execution of the amended divestiture agreement in April of 2024, Defendants have asserted that the lion's share of communications related to the amended divestiture agreement occurred during active litigation. Naturally, these circumstances gave rise to robust use by Defendants of the attorney-client privilege and attorney work product doctrine to shield production of protected information in discovery. Defendants' execution of a common interest agreement in August of 2023 likewise led to their robust use of the common interest privilege to shield production of protected information in discovery.

Defendants' assertions regarding protected documents are at the heart of the Discovery Motion and are discussed in more detail below.

In the FTC case, the government filed an initial Motion to Compel production of allegedly privileged and protected information on May 13, 2024.  In this case, Kroger produced non-privileged material to Colorado on May 17, 2024, followed by production of a privilege log on May 24, 2024.  Albertsons and C&S also produced documents and provided privilege logs to the State.  On May 29, 2024, the government filed a renewed Motion to Compel in the FTC case.  Depositions of executives of Kroger and C&S took place in early June of 2024.  On June 11, 2024, the FTC Administrative Law Judge denied the FTC's Motion to Compel.

Brewing discovery disputes led this Court to appoint the Special Master to address those issues on June 18, 2024.  After a hearing held by the Special Master on June 26, 2024, Colorado filed its Motion to Compel (at the direction of the Special Master) on June 28, 2024.  In its opening brief, Colorado identified for potential *in camera* review 26 documents listed by Defendants' privilege logs as protected by the attorney-client privilege, work product protection and/or common interest privilege.  Briefing occurred through July 19, 2024.  The Special Master held a hearing on the Discovery Motion on July 23, 2024 and ordered the Defendants to produce the 26 documents for *in camera* review on July 25, 2024.  In response, Defendants "de-designated" 12 of the documents and provided them to Colorado as non-privileged.  The Special Master reviewed the 26 initially designated documents and held a further hearing on July 30, 2024.  This Order sets forth the Special Master's preliminary conclusions regarding the Discovery Motion.

## II.    THE PARTIES' ARGUMENTS

In short, Colorado contends that Defendants are trying to hide negotiations and discussions that might show C&S cannot successfully compete in the grocery store business in Colorado.  The State asserts that it is entitled to understand the Defendants' assumptions and beliefs about the effect of the amended divestiture plan on the competition and that therefore business-related divestiture discussions must be disclosed. The common interest privilege does not protect business-related aspects of the divestiture negotiations, nor is it proper for Defendants to use divestiture as a sword against antitrust claims while shielding materials needed to test their assertion that divestiture is an appropriate "remedy."  As for the attorney work-product doctrine, the State's substantial need for the materials overcomes that protection.  The State must be able to produce evidence at trial "of Defendants' business evaluations and concerns regarding the Amended Divestiture, but Defendants have withheld it by saying it is intertwined with the legal concern of 'structuring an expanded divestiture package that would enable [them] to prevail in litigation and close the transaction.'"  Plaintiff's Reply Brief, at p. 15.

Defendants jointly assert that Colorado should not be permitted to obtain privileged negotiation materials that have no bearing on the actual agreement that legally binds them.  The State's categorical request for all business documents related to negotiation of the amended divestiture agreement is overbroad and unfounded.  Moreover, Defendants do not assert a defense that is dependent on the protected materials; instead, their defense depends on the details of the actual agreements. Further, they assert that the "composition of assets within the divestiture involved legal analysis that cannot be clearly disentangled from business considerations." Defendants' Joint Opposition, at p. 25.

### III.    ANALYSIS

A.  Attorney-client privilege

The attorney-client privilege protects "communications between attorney and client relating to legal advice." *DCP Midstream, LP v. Anadarko Petroleum Corp.,* 303 P.3d 1187, 1198 (Colo. 2013). "Confidential matters communicated by or to the client in the course of obtaining . . . advice . . . [or] direction with respect to the client's rights or obligations" are protected. *In re People in the Int. of J.P.,* 538 P.3d 337, 343 (Colo. 2023) (cit. om.). The privilege can be waived when the client discloses privileged communications to a third party or puts them at issue by asserting a defense that depends on privileged information. *Id.*

B.   Attorney work product doctrine

Pursuant to C.R.C.P. 26(b)(3), information prepared by an attorney in anticipation of litigation is protected by the work product doctrine. The doctrine also extends to party representatives, like consultants or agents. *Id.* Nevertheless, a party can obtain discovery of attorney work product on a showing that: (1) the party seeking discovery has substantial need of the materials in the preparation of the case and (2) is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Substantial need requires a showing that "the material requested contains critical factual information necessary to prove the party's case." *Cardenas v. Jerath,* 180 P.3d 415, 422 (Colo. 2008).

C.   Common interest privilege

"The common interest privilege . . . is an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to third parties." *Black v. Sw. Water Conservation Dist.,* 74 P.3d 462, 469 (Colo. App. 2003). It may also be applied as an exception to the work product doctrine. See, e.g., *Ritter v. Jones,* 207 P.3d 954, 960 (Colo. App. 2009). The party seeking to invoke the common interest doctrine must: (1) establish that

the communicated information would otherwise be protected from disclosure by a claim of privilege; and (2) demonstrate that the communication was made in pursuit of common legal claims or defenses. *Waymo LLC. v. Uber Techs., Inc.,* 870 F.3d 1350, 1359-60 (Fed. Cir. 2017).

Importantly, regardless of the application of the privileges and doctrine discussed above, non-privileged, factual information contained within privileged communications is discoverable. See, e.g., *Jordan v. Terumo BCT, Inc.,* 2024 CO 38, ¶ 42 (Colo. 2024); *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981); *10X Genomics, Inc. v. Celsee, Inc.,* 505 F. Supp. 3d 334, 337 (D. Del. 2020).

D.  Nature of the merger transaction

Defendants generally describe the merger transaction as follows:

> "To address concerns raised by the State and other regulators, Kroger and Albertsons have agreed to divest hundreds of stores to C&S Wholesale Grocers – a multi-billion dollar company that is one of the leading grocery distributors in the country. Kroger and Albertsons originally agreed in September 2023 to divest 413 stores (including 52 stores in Colorado), but the State sued to enjoin the transaction, arguing that the divestiture package was insufficient.  The parties thereafter executed an Amended Divestiture Agreement on April 22, 2024 that increased the number of divested stores to 579 (including 91 stores in Colorado) – with the result that Kroger will be acquiring only *14 Albertsons stores* in Colorado if the transaction closes.  The Amended Divestiture Agreement addresses any legitimate concerns advanced by the States regarding the divestiture."

Defendants' Joint Opposition, at 10 (emphasis in original).

Defendants make clear that they "negotiated and signed the Amended Divestiture Agreement because of active litigation," *Id*. at 11, and that the purpose of that agreement was to "satisfy the regulators' concerns about the 413-store package—as set forth in court complaints—and enable the parties to consummate the transaction." *Id.,* at 14, citing Declaration of Cosset at ¶ 14.  Counsel explained that because Defendants were doing the work of responding to the regulators' concerns in the process of litigation, they necessarily

had to "make litigation decisions with a business overlay."  According to defense counsel, for example, Defendants addressed the regulators' concerns about the concentration and re-bannering of the stores to be divested and the subsequent effect of the divestiture on competition by involving the lawyers directly in choosing the 579 stores finally identified in the amended divestiture agreement.  In other words, that decision at the heart of the transaction—like many others—was made jointly by lawyers and business people.  As described by defense counsel, the process of addressing the regulators' concerns involved having the "litigators ask the right questions about those concerns, the business people do the work [in other words, fact and data gathering and compiling], and then take it to the litigators for review and comment."  This process, necessitated by the fact that litigation had already commenced, is the source of Defendants' contention that the legal analysis inherent in drafting the amended divestiture agreement cannot be separated from business considerations. Hence, according to Defendants, many documents are protected from disclosure.

The concept of blended business and legal advice and communications is not new in the law.  Because facts are discoverable even when the attorney-client privilege, attorney work product doctrine or common interest privilege protects certain communications, courts must be extremely careful in applying the appropriate analysis to ensure that unprotected information is not left behind under cover of those protections.  The parties have not sufficiently addressed the nuances of discovery in situations involving blended business and legal advice and communications in their briefs, so as to facilitate the careful review required to adjudicate the State's Discovery Motion.

Moreover, Defendants' contention that the amended divestiture agreement tells the whole story here (e.g., "the Amended Divestiture Agreement addresses any legitimate concerns advanced by the State regarding the divestiture") is troubling. Defendants' Joint Opposition, at 1-2. Defendants repeatedly insist that the State can rely on the terms of the amended investiture agreement itself to attempt to prove that antitrust violations occurred. Because their defenses "depend on the non-privileged details of the *actual* Amended Divestiture Agreement," Defendants essentially argue that the State's mere interest in the negotiations does not justify discovery into those communications. Defendants' Joint Opposition, at 17-18 (emphasis in original). This argument defies logic. If scrutiny of corporate mergers for antitrust violations was limited to the information contained within the four corners of merger agreements, without discovery of information about negotiations over deal points that were proposed but rejected, for example, it seems obvious that regulators would be hamstrung in attempting to prove the anti-competitive nature of such transactions. Significantly, Defendants have cited no legal authority supporting their argument about the narrow field of available discovery in antitrust cases.

E. The *in camera* review

As mentioned above, the Special Master reviewed each of the 26 documents selected by the State for *in camera* review and addressed questions about the documents to defense counsel. Eight of the documents had been withheld by Kroger; 10 of the documents had been withheld by Albertsons, and eight of the documents had been withheld by C&S. One of the Kroger documents listed was a duplicate of another, thus the review encompassed 25 unique documents. Of those 25 documents, several were de-designated by Defendants prior to review: two of Kroger's, four of Albertsons' and five of C&S's. Hence, on further review of the

privilege issue by defense counsel prior to submission of documents for *in camera* review, forty-four percent (44%) of the initially designated documents were deemed to no longer justify attorney-client, work product and/or common interest privilege protection.

On careful review of the withheld documents, the Special Master reached two conclusions.  First, each of the de-designated documents is not subject to any available privilege or protection and should not have been withheld and placed on a privilege log. Second, at least one of the cited privileges or protections is <u>likely</u> applicable to each of the remaining 14 documents and they were probably, therefore, appropriately withheld from production.  My uncertainty stems from the parties' lack of development of the law about mixed business and legal communications and the discoverability of facts regardless of the applicability of legal privileges.

In light of these conclusions, the Special Master has two concerns.  First, the number of de-designated documents raises serious questions about the extent to which each of the Defendants misapplied legal protections and improperly withheld documents that should have been produced.  Although an error or two among 25 documents might be excused, improper designation and withholding of 44% of the documents randomly selected by Plaintiff from the privilege logs is problematic.  Second, as discussed above, the parties have not adequately briefed the issue of the application of the attorney-client, work product and common interest privileges on the <u>facts</u> involved in intermingled legal and business communications. For those reasons, the Special Master concludes that *in camera* review of all or a portion of the remaining privileged documents is necessary.  Accordingly, the Special Master will hold a Zoom hearing on **Tuesday, August 13, 2024 at 9:00 am Mountain Daylight Time** to address the following issues:

(1) How many documents are listed on each of the Defendants' privilege logs;

(2) What steps Defendants must take to de-designate improperly withheld documents prior to *in camera* review of the remainder by the Special Master;

(3) What steps the parties may take to streamline the Special Master's remaining *in camera* review;

(4) What sanctions, if any, may be imposed for inadequate efforts to de-designate improperly withheld documents from the Defendants' privilege logs; and

(5) The need for additional briefing on discovery of facts inherent in documents which reflect mixed business and legal communications.

Counsel will receive a Zoom link for the hearing by email on Monday, August 12, 2024.

Dated: August 12, 2024

_____
Kristen L. Mix
Special Master

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of August, 2024, a true and correct copy of the foregoing *Special Master's Initial Order on Plaintiff's Motion to Compel*, was served, via CCE, on the following:

All Counsel of Record.

<u>*Original Signature on File*</u>
Jon Marie James, Administrative Clerk
Judicial Arbiter Group, Inc.

# Exhibit B

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit C

## UNITED STATES OF AMERICA
## FEDERAL TRADE COMMISSION
### OFFICE OF ADMINISTRATIVE LAW JUDGES

|  |  |  |
|---|---|---|
| In the Matter of | ) | |
|  | ) | |
| The Kroger Company, | ) | |
|  | ) | Docket No. 9428 |
| and | ) | |
|  | ) | |
| Albertsons Companies, Inc., | ) | |
|  | ) | |
| Respondents. | ) | |

## ORDER DENYING COMPLAINT COUNSEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND REVISED PRIVILEGE LOG

### I.

On May 29, 2024, Federal Trade Commission ("FTC") Complaint Counsel filed a renewed motion to compel Respondent The Kroger Company ("Respondent" or "Kroger") to produce documents and to provide a revised privilege log ("Motion"). Kroger filed an opposition to the Motion on June 5, 2024 ("Opposition"). As set forth below, the Motion is DENIED.

### II.

The Complaint in this matter, issued on February 26, 2024, challenges a proposed merger between Kroger and Albertsons under Section 7 of the Clayton Act and Section 5 of the FTC Act. On September 8, 2023, prior to the issuance of the Complaint, Respondents announced an agreement to divest certain assets to C&S Wholesale Grocers, LLC ("C&S"). On April 22, 2024, Respondents and C&S signed an amended divestiture agreement ("Amended Divestiture Agreement").

On May 6, 2024, Complaint Counsel filed a motion to compel, *inter alia*, production of documents from Respondents in response to Complaint Counsel's first request for production of documents, served April 2, 2024. Specifically, Complaint Counsel sought to compel production of various categories of documents related to the negotiation of the Amended Divestiture Agreement ("Negotiation Documents").[1] Kroger responded that it would produce non-privileged

---

[1] Complaint Counsel defined the requested "Negotiation Documents" as (1) communications between Respondents and C&S, whether through businesspeople or counsel, in which the composition of the divestiture asset package was

Negotiation Documents, objected to producing some of the requested Negotiation Documents on the basis of various privileges and asserted it would produce a privilege log listing any withheld materials. On May 16, 2024, an order was issued denying the motion to compel without prejudice, directing Respondents to produce non-privileged Negotiation Documents and to identify any withheld Negotiation Documents on a privilege log "in compliance with" Instruction I9 of Complaint Counsel's First Request for Production of Documents ("Instruction I9") and Rule 3.38A(a). Order of May 16, 2024 at 4 ("May 16 Order").

In the current Motion, Complaint Counsel asserts that Kroger's document production in response to the May 16 Order failed to include certain categories of Negotiation Documents and/or failed to properly log withheld documents on its privilege log. In particular, Complaint Counsel contends: (1) Kroger failed to produce or log any Negotiation Documents exchanged between Kroger's outside counsel and counsel for C&S, and failed to search outside counsel's files; (2) Kroger's privilege log failed to comply with Instruction I9 of Complaint Counsel's request for production and with Rule 3.38A(a) by failing to: log attachments to emails, identify individuals named, and include file names and email subjects; (3) Kroger improperly redacted portions of drafts of the Amended Divestiture Agreement that it produced; (4) Kroger failed to produce or clearly log Kroger's communications with C&S about the composition of the divestiture packages or Kroger's commercial analyses of potential divestiture packages; and (5) Kroger failed to produce correspondence by or between businesspeople at C&S and Kroger that were copied to counsel.

Kroger maintains that the Negotiation Documents that it has withheld are protected by the attorney-client privilege; the attorney work product doctrine; and/or the joint defense (also known as "common interest") privilege. To support its claims, Kroger submits a declaration from Yael Cosset, its Senior Vice President and Chief Information Officer and the principal negotiator for Kroger ("Cosset Decl.") on the Amended Divestiture Agreement, who describes the regulatory and litigation concerns informing the negotiation of the Amended Divestiture Agreement package, and the role of in-house and outside counsel in advising Kroger in the negotiation. In addition, Kroger argues that Complaint Counsel may not compel Kroger to produce communications between its counsel and counsel for C&S because such documents are outside Kroger's possession or control.

Kroger defends its privilege log as complying with the requirements for a privilege log that the FTC and Kroger agreed to in the case management and scheduling order ("CMSO") entered in the parallel injunction proceeding pending in federal court and asserts that Complaint Counsel did not object to applying the CMSO's requirements during the parties' meet and confer discussions regarding Kroger's objections to the additional requirements in Complaint Counsel's instruction 9. Kroger argues further that its privilege log complies with Rule 3.38A(a) because it describes the nature of each document sufficiently to enable assessment of the privilege claims raised.

---

negotiated; (2) drafts of the Amended Divestiture Agreement exchanged between the negotiating parties; and (3) each of Respondents' and C&S's internal analyses of the strengths and weaknesses of potential divestiture packages with respect to post-transaction operation of their respective businesses.

### III.

Rule 3.31(c)(1) states that, as a general rule, "[p]arties may obtain discovery to the extent that it may be reasonably expected to yield information relevant to the allegations of the complaint, to the proposed relief, or to the defenses of any respondent." However, discovery of relevant information "shall be denied or limited in order to preserve the privilege of a witness, person, or governmental agency . . . ." 16 C.F.R. § 3.31(c)(4). To properly present a privilege claim, the party resisting discovery must provide a privilege log "which describes the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that" without disclosing protected information "will enable other parties to assess the claim." 16 C.F.R. § 3.38A(a).

### A.    Adequacy of Kroger's privilege log

Based on a review of Kroger's privilege log, the log is not in strict compliance with the directive of the May 16 Order that the log comply with instruction 9 of Complaint Counsel's first request for production. However, Complaint Counsel did not, in its original motion to compel, call attention to the material facts (1) that it had previously agreed to a considerably narrower privilege log scope in the parallel federal litigation CMSO or (2) that, in meet and confer discussions concerning Kroger's objection to instruction 9, Complaint Counsel appeared to request that Kroger comply with the CMSO in this litigation. Opposition Ex. F at 3 ¶ 8. Moreover, Kroger's privilege log does comply with Rule 3.38A(a) because it is sufficiently detailed to enable assessment of the privilege claims asserted. Rule 3.38A(a) does not require identification of each document's attachments, email subject lines, or file names. Under the totality of the circumstances, the requirements of the Rule must prevail over stricter requirements contained in an instruction in a party's request for production.[2]

### B.    Applicable privileges

#### 1.    Attorney-client privilege

The attorney-client privilege protects confidential communications between attorneys and their clients, which are made for the purpose of obtaining or providing legal advice. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981); *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). In general, where a lawyer is retained, there "is a rebuttable presumption that the lawyer is hired 'as such' to give 'legal advice,' whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (quoting *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)).

---

[2] Complaint Counsel's argument that Kroger violated the May 16 Order by failing to include outside counsel as document custodians for purposes of searching for Negotiation Documents is rejected. The discovery rules obligate Kroger to search for, produce, or log, responsive documents in its "possession, custody, or control." 16 C.F.R. § 3.37(a). A demand for documents held in the files of outside counsel constitutes non-party discovery, which requires subpoenas issued pursuant to Rule 3.34. The May 16 Order did not intend to convey otherwise.

### 2. Attorney work product

The attorney work product doctrine protects materials from disclosure that "can fairly be said to have been prepared or obtained because of the prospect of litigation." *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015); *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004); *see* 16 C.F.R. § 3.31(c)(5); *see also* Fed. R. Civ. P. 26(b)(3). The United States Supreme Court has recognized the importance of the attorney work product doctrine, noting that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Attorney work product is reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Id.* at 511. A document is prepared because of a party's anticipation of litigation if the anticipated litigation is the "driving force" behind the preparation of the documents, irrespective of whether the document also serves "an ordinary business purpose." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009).

### 3. Common interest doctrine

The common interest doctrine allows "attorneys for different clients pursuing a common legal strategy to communicate with each other," and serves as an exception to the rule that disclosing information to third parties waives privilege. *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). To invoke the common interest exception over a particular communication, "the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement – whether written or unwritten." *Id.* Courts have recognized that negotiating counterparties can have an overarching common interest that falls under the doctrine. *See, e.g.*, *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1096 (11th Cir. 2023) (explaining that an "adverse position" between parties during settlement negotiations "d[id] not undermine" their "broader mutual interest"); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987) (finding that the common interest doctrine protected disclosure of attorney's opinion letter to a non-party during attempted negotiation of the sale of a business); *see Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 310 (D.N.J. 2008) ("The weight of case law suggests that, as a general matter, privileged information exchanged during a merger between two unaffiliated business[es] would fall within the common-interest doctrine.").

### 4. Conclusion

The contents of the Negotiation Documents cannot properly be assessed without considering their purpose, which was to structure a transaction that could be defended against the pending litigation and could be consummated. Thus, legal advice, attorney work product, and the common interest of C&S, Kroger, and Albertson's in meeting the concerns of regulators necessarily shaped the Negotiation Documents, including the communications and the drafts of the divestiture agreements exchanged between Respondents and C&S, whether exchanged directly or through counsel. As explained in the Cosset Declaration, "lawyers were involved throughout the negotiations because Kroger's goal was to execute an expanded divestiture package that, while making business sense for Kroger, would satisfy the regulators' concerns . . .

and enable the parties to consummate the transaction." Cosset Decl. ¶ 14. Lawyers were providing "specific guidance on the negotiation positions" Kroger was to take and Kroger's negotiating positions "were informed by legal advice [Kroger] received from counsel about the propriety of different elements of the package from an antitrust perspective. [Cosset] relayed all material information about the negotiations to Kroger's lawyers for their feedback and input for future negotiations." Cosset Decl. ¶ 15.

Moreover, "Kroger, Albertsons, and C&S shared the common goal of executing a divestiture package that would enable the parties to prevail in the litigation and close the transaction." Cosset Decl. ¶ 19. Complaint Counsel contends that, at a minimum, Kroger should be required to produce all Negotiation Documents exchanged between C&S and Kroger in the period from January 25, 2024 to April 22, 2024 (Proposed Order at 1) because C&S and Kroger were adversaries during this period. Complaint Counsel bases this assertion on (1) a February 8, 2024 email in which C&S's Chairman denied telling Kroger that C&S was "committed to completing" a prior offer that was then withdrawn by Kroger and wrote that C&S had no obligation to "move forward with that new proposal" (Motion Ex. R); and (2) an email between employees of a current vendor to both Albertsons and C&S referencing a call at which a "response to Kroger put notice" would be discussed (Motion Ex. S). These out of context, unexplained messages do not demonstrate or prove that C&S and Kroger ceased to share a common goal of satisfying regulators and closing a divestment deal, even though there may have been disagreements over particular issues during the negotiations.

Complaint Counsel argues that Kroger is withholding documents exchanged between businesspeople simply because the documents were also provided to counsel. Motion at 2, 6, citing Exs. C, O. Kroger denies that it is withholding documents merely because they were provided to counsel and represents that, in fact, it produced numerous "communications between Kroger business personnel that included counsel." Opposition at 7. As to Motion Exhibit C, referenced by Complaint Counsel, the Cosset Declaration attests that the redacted material shields the negotiating positions of the parties that reflected the opinions and advice of counsel. Cosset Decl. ¶ 17 b. Motion Exhibit O, according to Cosset, redacted a discussion of specific elements of the divestiture package being negotiated and reflects the opinions, impressions, and direction of Kroger's lawyers about what elements were necessary to include from a legal perspective. *Id.* at ¶ 17 a.

Based on a review of the applicable legal principles, the contents of the privilege log, and the Cosset Declaration, Kroger has sufficiently demonstrated that the withheld Negotiation Documents are protected by the attorney-client privilege, the attorney work product doctrine, and/or the common interest doctrine. Complaint Counsel asserts that, to the extent the work product doctrine applies, it should be overridden because of Complaint Counsel's "substantial need of the materials" and that there is "no way" to obtain "the substantial equivalent of the materials by other means." Motion at 9 (citing 16 C.F.R. § 3.31(c)(5)). However, Complaint Counsel's argument that production of the withheld Negotiation Documents will "test Respondents' claim" in their answer that C&S will have "all the assets and personnel C&S will need to compete" merely restates the potential relevance of the materials and does not establish the requisite "substantial need" for the materials.

PUBLIC

## IV.

After full consideration of the Motion and Opposition, and as set forth above, Complaint Counsel's Renewed Motion to Compel Kroger's production of Negotiation Documents is DENIED.

ORDERED:

D. Michael Chappell
Chief Administrative Law Judge

Date: June 11, 2024

# Exhibit D

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit E

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit F

**UNITED STATES OF AMERICA**
**FEDERAL TRADE COMMISSION**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**

| | |
|---|---|
| **In the Matter of**<br><br>    **The Kroger Company**<br><br>        **and**<br><br>    **Albertsons Companies, Inc.** | Docket No. 9428<br><br>THE KROGER COMPANY'S ANSWER<br>AND AFFIRMATIVE DEFENSES |

**ANSWER AND DEFENSES OF RESPONDENT**
**THE KROGER COMPANY**

Pursuant to Rule 3.12 of the Federal Trade Commission's ("FTC" or the "Commission") Rules of Practice for Adjudicative Proceedings (the "Rules"), Respondent The Kroger Company ("Kroger"), by and through its undersigned counsel, hereby files the following answer to the Commission's Administrative Complaint (the "Complaint") against Kroger.

**INTRODUCTION**

The Commission challenges Kroger's acquisition of Albertsons by distorting the competitive grocery landscape Kroger will face after the merger and introducing a novel "union grocery" labor market that is entirely inconsistent with the labor market in which the parties actually compete. The Commission's challenge should be rejected.

*First,* Kroger entered into the agreement to merge with Albertsons ("Merger") seeking to keep pace with an expanding set of competitors, extend its geographic reach, increase its operating efficiency, and lower its costs. From the outset, Kroger has publicly committed to reinvest the savings generated by the transaction to lower Albertsons' prices, which will directly

benefit consumers across the country. These efficiencies are not just aspirational; they are supported by Kroger's track record of lowering prices for consumers after past acquisitions, which the Commission's Complaint ignores.

*Second,* the Complaint is willfully blind to the realities of current grocery competition, insisting on maintaining its archaic fiction limiting grocery competitors to "supermarkets." In the face of the actual competitive dynamics faced by Kroger in 2024, this purported product market is artificially narrow and legally baseless. To put it more simply, the Complaint's view of the relevant market lacks any basis in the real world. Kroger and Albertsons operate in a fiercely competitive and rapidly evolving retail marketplace. The landscape of grocery shopping has expanded to a diverse assortment of grocery retailers beyond the "traditional supermarket." These options include club stores such as Costco and Sam's Club, big-box retailers like Walmart and Target, hard discounters such as Aldi and Lidl, and competitors like Amazon, which not only owns the natural and organic chain Whole Foods but also sells tens of billions of dollars of groceries through its ecommerce platforms, including Amazon.com. The Complaint's relevant product market, however, artificially excludes these real world options, Compl. ¶ 29, entirely ignoring competition from massive competitors like Costco, Sam's Club, Aldi, and Amazon.

*Third,* Kroger has already agreed to divest at least 413 stores as well as substantial additional assets to C&S Wholesale Grocers ("C&S"), the nation's leading grocery wholesaler. Although the Commission alleges that the "proposed acquisition would eliminate substantial head-to-head competition between Respondents in the communities in which both firms operate today," Compl. ¶ 40, each of the Complaint's allegations about the post-merger world—

including its claims concerning competition, competitors, labor, market shares, and concentration—ignores the divestiture package.  Instead of offering a cogent market analysis accounting for C&S's role in the post-merger world, the Complaint frames the divestiture as irrelevant and bound to fail, citing a rare instance in which a divestiture buyer went bankrupt. But C&S is not a mom-and-pop operation or a risky private equity venture; it is a sophisticated, well-capitalized company with deep industry experience—the eighth-largest privately held company in the U.S. with nearly $35 billion in annual revenue.[1]  And the divestiture package that C&S will acquire is not made up of empty storefronts.  In addition to the physical stores, it includes all the assets and personnel C&S will need to compete, including distribution centers to supply the divested stores, all employees working at the divested stores and distribution facilities in addition to strong teams with local, regional, and subject matter expertise, as well as well-established banners, several private label brands, division headquarters, and robust transition services.

*Fourth,* the Commission also purports to allege a myopic "union grocery" labor market that bears no relation to the market in which Kroger actually competes for talent.  In reality, Respondents are miniscule players in the overall labor market, which includes grocery retailers, non-grocery employers, and non-union employers alike.  Contrary to the assumptions underlying the Complaint's product market, many associates hired by Kroger are entry-level workers with no prior retail grocery experience.  In addition, the Commission ignores the reality that the bargaining leverage of the affected unions with respect to Kroger will likely *increase*

---

[1] *America's Largest Private Companies*, FORBES, Mar. 2023, https://www.forbes.com/lists/largest-private-companies/?sh=3d05a802bac4.

post-Merger as a result of the greater number of those unions' workers employed by Kroger. Finally, C&S will be stepping into the shoes of Albertsons for collective bargaining purposes in the areas in which it is acquiring divested unionized stores and/or distribution centers, meaning that – even crediting the Commission's improper market definition – the number of competitors will not change.

In sum, the Complaint alleges that the transaction is likely to harm competition, but it can only reach that "conclusion" by distorting the actual marketplace in which Kroger will compete.  The harm imagined by the FTC is fanciful not only because it ignores the nation's largest grocery competitors, but also because it pretends that the divestiture package and C&S do not exist and constructs a purported labor market out of whole cloth.  For these and other reasons, the Commission's challenge to the Merger lacks merit and should be rejected.

## GENERAL RESPONSE TO THE COMMISSION'S ALLEGATIONS

Kroger generally denies each and every allegation of the Complaint not expressly admitted.  To the extent Kroger incorporates the Complaint's headings and subheadings into this Answer, Kroger does so for organizational purposes only and does not admit any of the allegations in the Complaint's headings.  To the extent allegations exist in any headings that Kroger does not incorporate into this Answer, Kroger denies the allegations in said headings. Use of certain terms or phrases defined in the Complaint is not an acknowledgement or admission of any characterization the Commission may ascribe to the defined terms.  Kroger additionally denies that the Commission is entitled to any of the relief sought in the Notice of Contemplated Relief on page 24 of the Complaint.  Kroger reserves the right to amend its Answer consistent with the facts discovered in the case as permitted by the Rules.  Each

paragraph below corresponds to the same-numbered paragraph in the Complaint.

## SPECIFIC RESPONSES TO THE COMMISSION'S ALLEGATIONS

### I.    NATURE OF THE CASE

1.    Kroger admits the allegations in sentence 1 of Paragraph 1.  Kroger states that the allegations in sentence 2 of Paragraph 1, including the term "supermarket," are vague and ambiguous and denies the allegations on that basis.  Kroger denies the remaining allegations contained in Paragraph 1.

2.    Kroger denies the allegations in sentence 1 of Paragraph 2.  Kroger states that the selective references to a publicly available document in Paragraph 2 are taken out of context, denies any characterization or description that is inconsistent therewith, and refers the Court to the document itself for its full context.  Kroger denies the remaining allegations contained in Paragraph 2.

3.    Kroger denies the allegations in sentence 1 of Paragraph 3.  Kroger states that the allegations in sentence 2 of Paragraph 3, including the term "traditional supermarket chains," are vague and ambiguous and denies the allegations on that basis.  Kroger admits that as of October 2022, Kroger and Albertsons combined employed over 700,000 workers and operated 4,996 grocery stores and 3,972 pharmacies in 48 states and the District of Columbia; otherwise, Kroger denies the allegation in sentence 3 of Paragraph 3.

4.    Kroger admits that it has acquired companies over the past three decades, but otherwise denies the allegations in sentence 1 of Paragraph 4.  Kroger admits the allegations in sentence 2 of Paragraph 4.

5.    Kroger admits that it competes with Albertsons in some communities, along with many other competitors.  Kroger further admits that it lowers prices and offers quality products and services to compete for customers against a wide range of competitors, of which Albertsons is only one.  Kroger lacks knowledge or information sufficient to form a belief about

the truth or falsity of the allegations in sentence 2 of Paragraph 5 to the extent they relate to Albertsons or are redacted, and on that basis denies these allegations.  Kroger states that the uncited and selective references to Kroger's documents in Paragraph 5 are taken out of context and misleading, and refers the Court to the documents themselves for their full context.  Kroger otherwise denies the allegations in Paragraph 5.

6.    Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 6 to the extent they relate to Albertsons or are redacted, and on that basis denies these allegations.  Kroger states that the uncited and selective references to a Kroger document in Paragraph 6 are taken out of context and misleading, and refers the Court to the document itself for its full context.  Kroger otherwise denies the allegations in Paragraph 6.

7.    Kroger denies the allegations in sentence 1 of Paragraph 7.  Kroger admits that it competes with many other competitors to hire and retain workers, including Albertsons, but denies that this competition is limited to other grocery stores or grocery workers.  Kroger admits that it negotiates with local unions to arrive at collective bargaining agreements, which describe the terms and conditions of employment for workers to whom the collective bargaining agreements apply.  Kroger otherwise denies the allegations in Paragraph 7.

8.    Kroger denies the allegations in sentence 1 of Paragraph 8.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentences 2 through 3 of Paragraph 8 to the extent they relate to Albertsons or are redacted, and on that basis denies these allegations.  Kroger states that the uncited and selective references to a Kroger document in Paragraph 8 are taken out of context and misleading, and refers the Court to the document itself for its full context.

9.    Kroger denies the allegations in Paragraph 9.

10.    Kroger admits that on September 8, 2023, it signed an Asset Purchase

Agreement and Transition Services Agreement with Albertsons and C&S Wholesale Grocers, LLC ("C&S") that includes the divestiture of at least 413 stores nationwide to C&S (the divestiture package remains subject to change), but Kroger denies the remaining allegations in sentence 1 of Paragraph 10.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentences 2 through 5 of Paragraph 10 to the extent they relate to C&S and on that basis denies these allegations.  Kroger states that the selective quotations of publicly available documents in Paragraph 10 are taken out of context, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context.  Kroger otherwise denies the allegations in Paragraph 10.

11.    Kroger denies the allegations in Paragraph 11.

## II.    JURISDICTION

12.    Paragraph 12 contains legal conclusions to which no response is required.  If a response is deemed required, Kroger denies the allegations in Paragraph 12.

13.    Paragraph 13 contains a legal conclusion to which no response is required.  If a response is deemed required, Kroger admits the allegation.

## III.    RESPONDENTS

14.    Kroger states that the allegations in sentence 1 of Paragraph 14, including the terms "traditional supermarket chains" and "union grocery workers," are vague and ambiguous and denies the allegations on that basis.  Kroger admits that as of January 28, 2023, it had over $148 billion in sales, operated approximately 2,726 stores and 2,252 pharmacies in thirty-five states and the District of Columbia.  Kroger further admits that it operates stores under the Kroger, Fred Meyer, QFC, Baker's, City Market, Dillons, Food 4 Less, Foods Co., Fry's, Gerbes, Harris Teeter, JayC, King Soopers, Mariano's, Metro Market, Pay-Less, Pick 'n Save, Ralphs, Ruler, and Smith's banners.  Kroger states that the terms "supermarkets" and "retail

pharmacies" are vague and ambiguous and denies the remaining allegations in sentence 3 of Paragraph 14 on that basis.  Kroger admits that as of January 28, 2023, it had approximately 430,000 full- and part- time employees and that a majority of its employees were covered by over 300 collective bargaining agreements.

15.      Kroger admits that Dillons Companies, including the Dillons, King Soopers, City Market, Fry's, and Gerbes banners, was acquired in 1983.  Kroger admits that JayC, including the JayC and Ruler banners, was acquired in 1999.  Kroger admits that Pay Less was acquired in 1999.  Kroger admits that Fred Meyer, including the Fred Meyer, Ralphs, Food 4 Less, QFC, and Smiths banners, was acquired for ~$13 billion in 1999.  Kroger admits that Baker's was acquired in 2001.  Kroger admits that Harris Teeter was acquired for ~$2.5 billion in 2014.  Kroger admits that Roundy's, including the Roundy's, Pick 'n Save, Metro Markets, and Mariano's banners, was acquired for ~$800 million in 2015.  Kroger states that the selective quotations of a publicly available document in Paragraph 15 are taken out of context, denies any characterization or description that is inconsistent therewith, and refers the Court to the document itself for its full context.  Kroger otherwise denies the allegations in Paragraph 15.

16.      Kroger states that the allegations in sentence 1 of Paragraph 16, including the terms "traditional supermarket chains" and "union grocery workers," are vague and ambiguous and denies the allegations on that basis.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in Paragraph 16 as they relate to Albertsons and on that basis denies these allegations.

17.      Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 17 as they relate to Albertsons, and on that basis denies these allegations.  Kroger otherwise denies the allegations in Paragraph 17.

## IV.    THE ACQUISITION

18.      Kroger admits the allegations in Paragraph 18.

## V.    THE PROPOSED ACQUISITION MAY SUBSTANTIALLY LESSEN COMPETITION IN LOCAL MARKETS FOR THE SALE OF FOOD AND GROCERY PRODUCTS AT SUPERMARKETS

19.      Kroger states that the allegations in sentence 1 of Paragraph 19, including the term "supermarket chains," are vague and ambiguous and denies the allegations on that basis. Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 4 of Paragraph 19 as they relate to Albertsons or are redacted, and on that basis denies these allegations.  Kroger admits that it competes with Albertsons, along with numerous other competitors, but otherwise denies the remaining allegations in Paragraph 19.

20.      Kroger denies the allegation in sentence 1 of Paragraph 20.  Kroger admits that it owns the QFC and Fred Meyer store banners, has manufacturing and distribution networks to support its retail operations, and owns store banners that enjoy local brand recognition, but states that the other allegations in sentence 2 of Paragraph 20, including the terms "supermarkets" and "ecosystem of banners," are vague and ambiguous and denies the remaining allegations on that basis.  Kroger states that the selective quotation of a Kroger document is taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the document itself for its full context.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentences 2 and 4 of Paragraph 20 as they relate to Albertsons or are redacted, and on that basis denies these allegations.  Kroger otherwise denies the remaining allegations in Paragraph 20.

21.      Kroger states that the allegations in sentences 1 and 2 of Paragraph 21, including the terms "supermarkets" and "geographic organizational units," are vague and ambiguous and denies the allegations on that basis.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 21 to the extent they relate to

Albertsons or are redacted, and on that basis denies these allegations.  Kroger admits that its retail stores are organized into "divisions," which have some level of operational autonomy but also benefit from corporate level marketing, pricing and promotional strategies, and that it operates a loyalty program, offers insights products, and has a retail media network.  Kroger further admits that its strategy includes creating a profitable flywheel where it prioritizes investments in lower prices and benefits for customers that will generate the greatest returns, which are then used to invest in additional lower prices and benefits for customers and associates.  Kroger otherwise denies the allegations in Paragraph 21.

22.    Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 22 to the extent they relate to Albertsons and on that basis denies these allegations.  Kroger admits that its pharmacy customers generally visit stores more often and spend more during shopping trips than customers who do not visit pharmacies.  Kroger otherwise denies the allegations in Paragraph 22.

23.    Kroger states that the allegations in sentence 1 of Paragraph 23, including the terms "these networks and services, "head-to-head" and "multiple dimensions," are vague and ambiguous and denies the allegations on that basis.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 2 of Paragraph 23 to the extent they relate to Albertsons or are redacted and on that basis denies these allegations.  Kroger further states that the uncited and selective reference to a Kroger document in Paragraph 23 is taken out of context and misleading, and refers the Court to the document itself for its full context.  Kroger admits that it competes with Albertsons, along with many other competitors.  Kroger otherwise denies the allegations in Paragraph 23.

### A. SUPERMARKETS ARE A RELEVANT PRODUCT MARKET

24.    Kroger denies the allegations in Paragraph 24.

25.    Kroger states that the selective quotations of publicly available documents in

sentences 1 and 2 of Paragraph 25 are taken out of context, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context.  Kroger states that the allegations in Paragraph 25, including the terms "supermarkets" and "other types of food retailers," are vague and ambiguous, and that Kroger lacks information sufficient to form a belief as to the truth or falsity of the allegations as to companies other than Kroger, and on these bases denies the remaining allegations in Paragraph 25.

26.     Kroger states that the allegations in Paragraph 26, including the terms "Supermarkets," "food and grocery shopping requirements," and "substantial," are vague and ambiguous and denies the allegations on that basis.

27.     Kroger states that the allegations in sentences 1, 2, and 3 of Paragraph 27, including the term "Supermarkets," are vague and ambiguous, and that Kroger lacks information sufficient to form a belief as to the truth or falsity of the allegations as to companies other than Kroger, and on these bases denies these allegations.  Kroger admits that it conducts price checks of products offered by many competing retailers, of which Albertsons is one, but otherwise denies the allegations in sentence 4 of Paragraph 27.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 5 of Paragraph 27 as they relate to Albertsons or are redacted and denies these allegations on that basis.

28.     The allegations in Paragraph 28 constitute characterizations of legal analysis and/or conclusions not subject to admission or denial.  If a response is deemed required, Kroger denies the allegations in Paragraph 28.

29.     Kroger admits that there are differences between its stores and other retailers with which it competes to sell grocery products, but otherwise denies the allegations in Paragraph 29.

30.     Kroger denies the allegations in Paragraph 30.

31.     To the extent that the allegations contained in Paragraph 31 relate to third parties, Kroger lacks knowledge or information sufficient to form a belief as to the truth or falsity of these allegations and therefore denies these allegations.   Kroger denies the remaining allegations in Paragraph 31.

### B.  LOCAL AREAS AROUND STORES ARE RELEVANT GEOGRAPHIC MARKETS

32.     Kroger admits that consumers may shop for grocery products at retailers near to where they live or work, but otherwise denies the allegations in sentence 1 of Paragraph 32. Kroger states that the allegations in sentences 2 and 3 of Paragraph 32, including the terms "supermarket," "retail supermarket," and "localized area" are vague and ambiguous and denies the allegations on that basis.  Kroger further states that that the selective reference to Kroger's documents in sentence 4 of Paragraph 32 is taken out of context, denies any characterization or description that is inconsistent therewith, and refers the Court to the document itself for full context.  To the extent that the allegations contained in sentence 4 of Paragraph 32 relate to Albertsons, Kroger lacks knowledge or information sufficient to form a belief as to the truth or falsity of these allegations and therefore denies these allegations.

33.     Kroger states that the allegations in sentences 1 and 2 of Paragraph 33, including the terms "localized markets" and "supermarket," are vague and ambiguous and denies the allegations on that basis.  Kroger denies the remaining allegations in Paragraph 33.

### C.  THE PROPOSED ACQUISITION IS PRESUMPTIVELY UNLAWFUL

34.     The allegations in Paragraph 34 constitute characterizations of legal analysis and/or conclusions not subject to admission or denial.  Such sources speak for themselves, and Kroger denies any characterization or description that is inconsistent therewith.

35.     The allegations in Paragraph 35 constitute characterizations of federal agency guidelines not subject to admission or denial.  Such sources speak for themselves, and Kroger

denies any characterization or description that is inconsistent therewith.

36.    Kroger denies the allegations in sentence 1 of Paragraph 36. The remaining allegations in Paragraph 36 constitute characterizations of federal agency guidelines not subject to admission or denial. Such sources speak for themselves, and Kroger denies any characterization or description that is inconsistent therewith.

37.    Kroger denies the allegations in Paragraph 37.

38.    Kroger denies the allegations in Paragraph 38.

### D. THE PROPOSED ACQUISITION WOULD ELIMINATE HEAD-TO-HEAD COMPETITION BETWEEN RESPONDENTS

39.    Kroger denies the allegations in sentence 1 of Paragraph 39. The allegations in sentence 2 of Paragraph 39 constitute characterizations of legal analysis or federal agency guidelines not subject to admission or denial. Such sources speak for themselves, and Kroger denies any characterization or description that is inconsistent therewith.

40.    Kroger denies the allegations in Paragraph 40.

41.    Kroger states that the allegations in sentences 1, 2, 4, and 5 of Paragraph 41, including the terms "aggressive" and "supermarket," are vague and ambiguous and denies the allegations on that basis. Kroger admits that it checks the prices of many retailers selling grocery products, including Albertsons, and may sometimes change its prices in response to local competitor pricing, but denies the remaining allegations in sentence 3 of Paragraph 41. Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentences 1 through 3 and 5 and 6 of Paragraph 41 to the extent they relate to Albertsons or are redacted, and on that basis denies these allegations. Kroger further admits that it engages in base pricing and promotional pricing competition with many competitors, including Albertsons, but denies the remaining allegations in sentence 6 of Paragraph 41. Kroger denies the allegations in sentence 7 of Paragraph 41.

42.    Kroger states that the uncited and selective references to Kroger's documents in

Paragraph 42 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context. Kroger further states that the allegations in sentence 2 of Paragraph 42, including the term "traditional supermarket," are vague and ambiguous and denies the allegations on that basis. Kroger denies the remaining allegations in Paragraph 42.

43.    Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 43 as they relate to Albertsons or are redacted and therefore denies the allegations.

44.    Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 44 to the extent they relate to Albertsons or are redacted and on that basis denies the allegations. Kroger admits that it offers promotional pricing discounts on products to try to attract customers to Kroger stores and that it monitors the promotional offers of many competing retailers and routinely compares its advertised promotions and whether Kroger won, tied, or lost with respect to multiple retail competitors, not just Albertsons; otherwise, Kroger denies the allegations in Paragraph 44. Kroger further states that the uncited and selective references to Kroger's documents in sentence 4 of Paragraph 44 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context.

45.    Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 45 to the extent they relate to Albertsons or are redacted and on that basis denies the allegations. Kroger states that the allegations in sentence 1 of Paragraph 45, including the term "regular occurrence," are vague and ambiguous and denies the allegations on that basis. Kroger denies the allegations in sentence 5 of Paragraph 45.

46.    Kroger admits that it competes with many retailers selling grocery products,

ANSWER AND AFFIRMATIVE DEFENSES - 14

including Albertsons, regarding the quality and variety of its products and offerings. Kroger states that the uncited and selective quotations of Kroger's documents in sentence 2 of Paragraph 46 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context. Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 3 of Paragraph 46 as they relate to Albertsons or are redacted and therefore denies the allegations. Kroger denies the remaining allegations in Paragraph 46.

47. Kroger admits that it recognizes the importance of freshness and assortment of fresh products to consumers, and that Kroger competes with a variety of competitors in this regard, but otherwise denies the allegations in sentences 1 and 2 of Paragraph 47. Kroger states that the uncited and selective quotations of Kroger's documents in sentence 3 of Paragraph 47 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context. Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 4 of Paragraph 47 as they relate to Albertsons or are redacted and therefore denies the allegations.

48. Kroger admits that it monitors the branded and private-label products of many other retailers selling grocery products, including Albertsons. Kroger states that the uncited and selective quotations of Kroger's documents in sentences 2 and 3 of Paragraph 48 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context. Kroger denies the allegations in sentence 4 of Paragraph 48.

49. Kroger denies that it determines which stores to remodel based on the presence of "robust competition." Kroger lacks knowledge or information sufficient to form a belief

about the truth or falsity of the allegations in sentences 1, 2, and 3 of Paragraph 49 as they relate to Albertsons or are redacted and therefore denies the allegations.  Kroger states that the uncited and selective quotations of Kroger's documents in sentence 4 of Paragraph 49 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context.

50.     Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentences 2, 3, 5, and 8 of Paragraph 50 as they relate to Albertsons or are redacted and therefore denies the allegations.  Kroger states that the uncited and selective quotations of Kroger's documents in sentences 4, 6, and 7 of Paragraph 50 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context. Kroger further states that the allegations in sentence 8 of Paragraph 50, including the term "supermarkets," are vague and ambiguous and denies the allegations on that basis.  Kroger admits that it recognizes the importance of superior customer service, and that Kroger competes with a variety of competitors in this regard, but otherwise denies the remaining allegations in Paragraph 50.

51.     Kroger admits that it competes for customers with various retail competitors, not limited to Albertsons, by offering in-store services such as meat-cutting, bakeries, Starbucks counters, floral counters, and pharmacies.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentences 2 through 4 of Paragraph 51 as they relate to Albertsons or are redacted and therefore denies the allegations.  Kroger states that the uncited and selective quotations of Kroger's documents in sentence 5 of Paragraph 51 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context.

52.     Kroger admits that offering pharmacy services is an important way for it to attract customers and that Kroger competes vigorously with many pharmacies, including but not limited to Albertsons in some geographies, that attracting pharmacy patients can increase revenue for those patients who also are purchasing groceries, and that some pharmacy patients may visit its stores more often, but otherwise denies the allegations in sentences 1 and 3 of Paragraph 52.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentences 2 and 4 of Paragraph 52 as they relate to Albertsons and therefore denies the allegations.  Kroger states that the uncited and selective quotations of Kroger's documents in sentence 5 of Paragraph 52 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context.

53.     Kroger admits that it competes with various other pharmacies, including Albertsons.  Kroger states that the uncited and selective quotations of Kroger's documents in sentences 2 through 4 and 6 of Paragraph 53 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context.  Kroger denies the remaining allegations of Paragraph 53.

54.     Kroger admits that competition from various other pharmacies incentivizes it to offer promotions and adjust pharmacy hours and staffing to be more attractive to patients. Kroger states that the uncited and selective quotations of Kroger's documents in sentence 2 of Paragraph 54 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the documents themselves for their full context.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 54 to the extent they relate to Albertsons and on that basis denies these allegations.

55.    Kroger denies the allegations in Paragraph 55.

56.    Kroger denies the allegations in Paragraph 56.

### VI.    THE PROPOSED ACQUISITION MAY SUBSTANTIALLY LESSEN COMPETITION FOR LABOR

57.    The allegations in Paragraph 57 constitute characterizations of legal analysis or conclusions not subject to admission or denial.  To the extent a response is required, Kroger denies the allegations.

58.    Kroger denies the allegations in sentence 1 of Paragraph 58.  Kroger states that as of October 2022, Kroger and Albertsons combined employed over 700,000 workers across the United States, and that it competes with many employers, including Albertsons, to hire and retain workers, but otherwise denies the allegations in sentence 2 of Paragraph 58.

59.    Kroger admits that it monitors wages and benefits of many employers to attract and retain labor, but otherwise denies the allegations in sentence 1 of Paragraph 59.  Kroger admits that it offers promotions, retention bonuses, and improved hours to retain high-performing workers.  Kroger admits that it competes to hire workers from Albertsons and many other employers, including both retailers selling grocery products and others.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 59 to the extent they relate to Albertsons and on that basis denies these allegations. Kroger otherwise denies the remaining allegations in Paragraph 59.

60.    Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentences 2 and 3 of Paragraph 60 to the extent they relate to Albertsons and on that basis denies these allegations.  Kroger further responds that the selective quotations of uncited Kroger documents in sentence 4 of Paragraph 60 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, and refers the Court to the document itself for its full context.  Kroger denies the remaining allegations of Paragraph 60.

61.     Kroger denies the allegation in sentence 1 of Paragraph 61.  Kroger admits that most of its employees are members of unions, predominantly the UFCW, and that it employs UFCW union members in 30 states.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in sentence 3 and the allegations in sentence 4 of Paragraph 61 to the extent they relate to Albertsons and on that basis denies these allegations.

62.     Kroger lacks knowledge or information sufficient to form a belief as to the truth of the allegations in sentence 1 of Paragraph 62 and denies the allegations on that basis.  Kroger denies the allegations in sentence 2 of Paragraph 62.

### A. UNION GROCERY LABOR IS A RELEVANT MARKET

63.     Kroger denies the allegations in sentence 1 of Paragraph 63 and denies that "Union grocery labor" defines a relevant antitrust market, or any economically meaningful market or set of workers.  Kroger admits that it negotiates collective bargaining agreements with unions every three to five years, and that these agreements cover wages, benefits, and other workplace conditions.  Kroger further admits that union members would not have to restart their five-year vesting requirement for multi-employer pension benefits if they move to another employer covered by the same union, but would lose such benefits if they leave for a non-union employer.  Kroger otherwise denies the allegations in Paragraph 63.

64.     Kroger states that it lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 64 to the extent they relate to third parties and on that basis denies these allegations.  Kroger admits that grocery worker pensions vest after a certain number of consecutive years of employment but otherwise denies the allegations in Paragraph 64.

### B. LOCAL CBA AREAS ARE RELEVANT GEOGRAPHIC MARKETS

65.     Kroger states that the allegations in sentence 1 of Paragraph 65 are vague and

ambiguous, including the terms "defined localized areas" and "union supermarkets", and on that basis denies the allegations.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations of Paragraph 65 to the extent they relate to Albertsons and on that basis denies these allegations.  Kroger admits that it negotiates and enters into CBAs in localized areas of the country and that store-level hiring decisions are typically made locally, but otherwise denies the allegations in Paragraph 65.

66.    Kroger denies the allegations in Paragraph 66.

67.    Kroger denies the allegations in Paragraph 67.

### C.  THE PROPOSED ACQUISITION IS PRESUMPTIVELY UNLAWFUL

68.    Kroger states that the allegations in Paragraph 68 are vague and ambiguous, including the terms "union grocery labor,"  "union grocery employers," "local CBA areas," and "largest" for which no metric of measurement is defined, and denies the allegations on that basis.  Kroger denies that "union grocery labor," "union grocery employers," and "local CBA areas," constitute a relevant antitrust market, or any economically meaningful market or set of workers.  Kroger lacks knowledge or information sufficient to form a belief as to the truth of the allegations in sentences 1 and 2 of Paragraph 68 to the extent they relate to Albertsons and on that basis denies these allegations. Kroger admits that it negotiates with local unions in many states but otherwise denies the remaining allegations in Paragraph 68.

### D.  THE PROPOSED ACQUISITION WOULD ELIMINATE COMPTITION BETWEEN RESPONDENTS FOR UNION GROCERY LABOR

69.    Kroger denies the allegations in Paragraph 69.

70.    Kroger denies the allegations in Paragraph 70.

71.    Kroger states that the allegations in Paragraph 71 are vague and ambiguous, including the terms "union grocery operators," "union grocery workers," and "largest" for which no metric of measurement is defined, and denies the allegations on that basis.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the

allegations of Paragraph 71 to the extent they relate to Albertsons and on that basis denies these allegations. Kroger admits that it negotiates collective bargaining agreements with local unions, that it competes with many employers, including Albertsons, to attract and retain labor, and that it investigates wages and benefits offered by various other employers in conjunction with these negotiations, but otherwise denies the allegations in Paragraph 71.

72.    Kroger states that the allegations in sentence 1 of Paragraph 72 are vague and ambiguous, including the terms "union grocery operations," "simultaneously," and "often" and denies these allegations on that basis. Kroger states that it lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 2 of Paragraph 72 to the extent they relate to unions and/or third parties and on that basis denies the allegations. Kroger denies the allegations in sentence 3 of Paragraph 72. Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 4 of Paragraph 72 to the extent they relate to Albertsons or are redacted and on that basis denies these allegations. Kroger denies the allegations in sentence 5 of Paragraph 72.

73.    Kroger admits the allegations in sentence 1 of Paragraph 73. Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 2 and 4 of Paragraph 73 to the extent they relate to unions, workers and/or third parties and on that basis denies these allegations. Kroger states that the allegations in sentences 2 and 3 of Paragraph 73 are vague and ambiguous, including the term "competing supermarket[s]," and denies the allegations on that basis. Kroger admits that unions leverage the fact that Kroger may lose sales to a broad range of competing retailers, but otherwise denies the allegations in sentence 4 of Paragraph 73. Kroger denies the allegations in sentence 5 of Paragraph 73. Kroger further responds that the selective quotation of an uncited Kroger document in sentence 6 of Paragraph 73 is taken out of context and misleading, denies any characterization or description that is inconsistent therewith, refers the Court to the document

itself for full context, and denies these allegations on this basis.

74.     Kroger denies the allegations in sentence 1 of Paragraph 74.  Kroger admits that in January 2022, UFCW Local 7 struck Kroger's King Soopers stores in the Denver, Colorado area.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 3 of Paragraph 74 to the extent they relate to third parties and on that basis denies these allegations.

75.     Kroger responds that the selective quotation of an uncited Kroger document in sentence 1 of Paragraph 75 is taken out of context and misleading, denies any characterization or description that is inconsistent therewith, refers the Court to the document itself for full context, and denies these allegations on this basis.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 2 of Paragraph 75 to the extent they relate to Albertsons and on that basis denies these allegations.

76.     Kroger responds that the selective reference to an uncited Kroger document in sentence 1 of Paragraph 76 is taken out of context and misleading, denies any characterization or description that is inconsistent therewith, refers the Court to the document itself for full context, and denies these allegations on this basis.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentences 2 and 3 of Paragraph 76 to the extent they relate to Albertsons or are redacted and on that basis denies these allegations.

77.     Kroger admits that it negotiated a new CBA with UFCW Local 7 that resulted in wage increases and safety protections, ending the January 2022 strike.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentences 2 through 4 of Paragraph 77 to the extent they relate to Albertsons and/or third parties and on that basis denies these allegations.

78.     Kroger denies the allegations in sentences 1 and 2 of Paragraph 78.  Kroger lacks

knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 3 of Paragraph 78 to the extent they relate to Albertsons and on that basis denies these allegations.

79.     Kroger denies the allegations in sentence 1 of Paragraph 79.  Kroger further responds that the selective quotation of Kroger's document in sentence 2 of Paragraph 79 is taken out of context and misleading, denies any characterization or description that is inconsistent therewith, refers the Court to the document itself for full context, and denies these allegations on this basis.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 3 of Paragraph 79 to the extent they relate to Albertsons and on that basis denies these allegations.

80.     Kroger responds that the selective quotations of Kroger's document in sentences 2 and 3 of Paragraph 80 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, refers the Court to the document itself for full context, and denies these allegations on this basis.  Kroger denies the remaining allegations in Paragraph 80.

81.     Kroger denies the allegations in sentence 1 of Paragraph 81.  Kroger responds that the selective quotations of Kroger's document in sentences 2 and 3 of Paragraph 81 are taken out of context and misleading, denies any characterization or description that is inconsistent therewith, refers the Court to the document itself for full context, and denies these allegations on this basis.

82.     Kroger denies the allegations in Paragraph 82.

## VII.    LACK OF COUNTERVAILING FACTORS
### A. ENTRY WOULD NOT DETER OR COUNTERACT THE ANTICOMPETITIVE EFFECTS OF THE PROPOSED ACQUISITION

83.     Kroger denies the allegations in Paragraph 83.

84.     Kroger denies the allegations in Paragraph 84.

### B.  RESPONDENTS CANNOT DEMONSTRATE EFFICIENCIES SUFFICIENT TO REBUT THE PRESUMPTION OF HARM

85.     Kroger denies the allegations in Paragraph 85.

### C.  THE PROPOSED DIVESTITURE DOES NOT SUFFICIENTLY MITIGATE THE LIKELY ANTICOMPETITIVE EFFECTS OF THE PROPOSED ACQUISITION

86.     Kroger admits that it announced a divestiture of at least 413 stores and other assets across 17 states and the District of Columbia to C&S Wholesale Grocers, LLC on September 8, 2023 (the divestiture package remains subject to change), but otherwise denies the allegations in Paragraph 86.

87.     Kroger admits that the proposed divestiture to C&S does not include stores in certain local areas where both Kroger and Albertsons currently have stores, because the presence of other competitors will continue to ensure robust competition post-merger, but Kroger otherwise denies the allegations in Paragraph 87.

88.     Kroger denies the allegations in Paragraph 88.

89.     Kroger denies the allegations in sentence 1 of Paragraph 89.  Kroger admits that on September 8, 2023, it signed an Asset Purchase Agreement and Transition Services Agreement with Albertsons and C&S Wholesale Grocers, LLC ("C&S") that includes the divestiture of at least 413 stores nationwide to C&S (the divestiture package remains subject to change), but Kroger denies the remaining allegations in sentence 2 of Paragraph 89.  Kroger further states that the allegation in sentence 3 of Paragraph 89, including the term "ongoing business unit," is vague and ambiguous and denies the allegation on that basis.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 4 of Paragraph 89 to the extent they relate to C&S, Albertsons, or are redacted and on that basis denies these allegations.

90.     Kroger admits that its proposed divestiture to C&S does not include every private label brand, every self-manufacturing facility, every data-analytics capability, or every

regional and corporate support team but otherwise denies the allegations in Paragraph 90.

91.      Kroger denies the allegations in sentence 1 of Paragraph 91.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 2 of Paragraph 91 to the extent they relate to C&S, or are redacted, and on that basis denies these allegations.  Kroger denies the allegations in sentence 3 of Paragraph 91.

92.      Kroger denies the allegations in sentence 1 of Paragraph 92.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentences 2 through 5 of Paragraph 92 to the extent they relate to C&S or are redacted, and on that basis denies these allegations.  Kroger further denies the allegations in sentence 6 of Paragraph 92.

93.      Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 93 to the extent they relate to C&S and/or Albertsons and on that basis denies these allegations.  Kroger admits that C&S has represented that it is a seasoned, well-positioned supermarket operator with an intent to operate any divested stores in the future, but otherwise denies the remaining allegations in Paragraph 93.

94.      Kroger admits that it, Albertsons, and C&S have stated there will be no store closures as a result of the merger.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in Paragraph 94 to the extent they relate to C&S or are redacted and on that basis denies these allegations.

95.      Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in sentence 2 of Paragraph 95 to the extent they relate to C&S or are redacted and on that basis denies these allegations.  Kroger denies the remaining allegations of Paragraph 95.

96.      Kroger denies the allegations in sentence 1 of Paragraph 96.  Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining

allegations in Paragraph 96 to the extent they relate to Albertsons and/or Haggen, or are redacted, and on that basis denies these allegations.

97.    Kroger lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 97 to the extent they relate to Albertsons and/or Haggen and on that basis denies these allegations.

98.    Kroger denies the allegations in Paragraph 98.

## VIII.    VIOLATIONS
### COUNT I - ILLEGAL AGREEMENT

99.    Paragraph 99 is a paragraph of incorporation to which no response is required. To the extent a response is required, Kroger incorporates by reference its answers to the allegations of Paragraphs 1 through 98 of the Complaint.

100.    Kroger denies the allegations in Paragraph 100.

### COUNT II - ILLEGAL ACQUISITION

101.    Paragraph 101 is a paragraph of incorporation to which no response is required. To the extent a response is required, Kroger incorporates by reference its answers to the allegations of Paragraphs 1 through 98 of the Complaint.

102.    Kroger denies the allegations in Paragraph 102.

## AFFIRMATIVE DEFENSES

In asserting the following defenses, Kroger does not assume any burden of proof with respect to any issue where the applicable law dictates the burden of proof rests with the Commission.  Kroger expressly reserves the right to amend or supplement its answer to assert additional defenses as they become known during discovery or otherwise available and does not knowingly or intentionally waive any applicable defense.

1.    The Commission's claims are barred, in whole or in part, because the Commission fails to state a claim upon which relief can be granted.

2.     The Commission's claims are barred, in whole or in part, because the Commission fails to define a relevant product or geographic or labor market or markets.

3.     The Commission's claims are barred, in whole or in part, because the proposed acquisition will not substantially lessen competition in any relevant market, particularly when accounting for the proposed divestitures.

4.     The Commission's claims are barred, in whole or in part, because the efficiencies and other pro-competitive effects resulting from the transaction will benefit consumers.

5.     The Commission's claims are barred, in whole or in part, because the transaction will not harm competition or consumers due to competitor entry and expansion that is timely, likely, and sufficient to replace any competition purportedly lost as a result of the transaction.

6.     The Commission's claims are barred, in whole or in part, because divestitures will eliminate any purported anticompetitive effects.

7.     The Commission's claims are barred, in whole or in part, because filing this administrative action and granting the relief sought are contrary to the public interest.

8.     To the extent that these proceedings are invalid because the Commission both initiated and will adjudicate the Complaint, having already prejudged the merits of the action, these proceedings would violate Kroger's Fifth Amendment Due Process right to adjudication before a neutral arbiter.

9.     To the extent that adjudication of the Complaint by the Administrative Law Judge and Commission violates Article III of the U.S. Constitution and the separation of powers, these proceedings are invalid.

10.     To the extent that constraints on the removal of the Administrative Law Judge and the Commissioners violate Article II of the U.S. Constitution, these proceedings are invalid.

11.     To the extent that these proceedings are invalid because they take place before an Administrative Law Judge rather than an Article III judge, these proceedings would violate Kroger's right to equal protection under the Fifth Amendment.

12.     To the extent that Congress unconstitutionally delegated legislative power to the Commission, these proceedings are invalid.

## NOTICE OF CONTEMPLATED RELIEF

WHEREFORE, Kroger respectfully requests that the Administrative Law Judge enter an order:

1.     Denying the Commission's contemplated relief;

2.     Dismissing the Complaint in its entirety with prejudice;

3.     Awarding Kroger its costs of suit; and

4.     Awarding such other and further relief as the Administrative Law Judge may deem proper.

DATED March 11, 2024                    Respectfully submitted,

By: _____
    Sonia K. Pfaffenroth
    Arnold & Porter Kaye Scholer LLP
    601 Massachusetts Avenue, N.W.
    Washington, D.C. 20001
    Telephone: 202 942 6831

    /s/ Luna Barrington
    Luna Barrington
    Weil, Gotshal & Manges LLP
    767 Fifth Avenue
    New York, NY 10053
    Telephone: 212 310 8421

*Counsel for Respondent The Kroger Company*

## Certificate of Service

I hereby certify that on March 11, 2024, I filed the foregoing document electronically using the FTC's E-Filing System, which will send notification of such filing to:

April Tabor
Secretary
Federal Trade Commission
600 Pennsylvania Ave., N.W., Rm. H-113
Washington, D.C. 20580
ElectronicFilings@ftc.gov

The Honorable D. Michael Chappell
Chief Administrative Law Judge
Federal Trade Commission
600 Pennsylvania Ave., N.W., Rm. H-110
Washington, D.C. 20580

I also certify that I caused the foregoing documents to be served via email to:

| | |
|---|---|
| Charles Dickinson | eblackburn@ftc.gov |
| James H. Weingarten | pfrangie@ftc.gov |
| Emily Blackburn | lhall1@ftc.gov |
| Paul Frangie | jkim3@ftc.gov |
| Laura Hall | klibby@ftc.gov |
| Janet Kim | eolson@ftc.gov |
| Kenneth A. Libby | rpai@ftc.gov |
| Eric Olson | hrothman@ftc.gov |
| Rohan Pai | ateng@ftc.gov |
| Harris Rothman | earens@ftc.gov |
| Albert Teng | jhamburger1@ftc.gov |
| Elizabeth Arens | jsmith3@ftc.gov |
| Jacob Hamburger | kbies@ftc.gov |
| Joshua Smith | kdrummonds@ftc.gov |
| Katherine Bies | lhough@ftc.gov |
| Katherine Drummonds | |
| Lily Hough | *Complaint Counsel* |
| Federal Trade Commission | |

**PUBLIC**

600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Telephone: 202 326 2617
cdickinson@ftc.gov
jweingarten@ftc.gov

James A. Fishkin
Michael G. Cowie
Dechert LLP
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: 202 261 3300
james.fishkin@dechert.com
mike.cowie@dechert.com

Edward D. Hassi
Debevoise & Plimpton LLP
801 Pennsylvania Ave. N.W.
Washington D.C. 20004
Telephone: 202 383 8203
thassi@debevoise.com

Michael Schaper
Shannon Rose Selden
J. Robert Abraham
Natascha Born
Marieugenia Cardenas
Jaime Freilich-Fried
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
Telephone: 212 909 6000
mschaper@debevoise.com
srselden@debevoise.com
jrabraham@debevoise.com
nborn@debevoise.com
mcardenas@devevoise.com
jmfried@debevoise.com

George L. Paul
White & Case LLP
701 13th Street, N.W.
Washington, D.C. 20005
Telephone: 202 626 3656

Matthew M. Wolf
Michael B. Bernstein
Jason C. Ewart
Joshua M. Davis
Matthew M. Shultz
Yasmine Harik
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Telephone: 202 942 5000
matthew.wolf@arnoldporter.com
michael.b.bernstein@arnoldporter.com
jason.ewart@arnoldporter.com
joshua.davis@arnoldporter.com
matthew.shultz@arnoldporter.com
yasmine.harik@arnoldporter.com

John Holler
Arnold & Porter Kaye Scholer LLP
250 W. 55th St.
New York, NY 10019
Telephone: 212 836 7739
john.holler@arnoldporter.com

Mark A. Perry
Luke Sullivan
Weil, Gotshal & Manges LLP
2001 M Street NW Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
mark.perry@weil.com
luke.sullivan@weil.com

*Counsel for Respondent The Kroger
Company*

gpaul@whitecase.com

*Counsel for Respondent
Albertsons Companies, Inc.*

By: _____
        Sonia K. Pfaffenroth
        Arnold & Porter Kaye Scholer LLP
        601 Massachusetts Avenue, N.W.
        Washington, D.C. 20001
        Telephone: 202 942 6831

        /s/ *Luna Barrington*
        Luna Barrington
        Weil, Gotshal & Manges LLP
        767 Fifth Avenue
        New York, NY 10053
        Telephone: 212 310 8421

        *Counsel for Respondent The Kroger
        Company*

PUBLIC

### Certificate for Electronic Filing

I hereby certify that the electronic copy sent to the Secretary of the Commission is a true and correct copy of the paper original and that I possess a paper original of the signed document that is available for review by the parties and the adjudicator.


March 11, 2024                           By:     */s/ Sonia K. Pfaffenroth*
                                                 Sonia K. Pfaffenroth

# Exhibit G

PUBLIC

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL TRADE COMMISSION**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**

In the Matter of:

    **The Kroger Company**

        **and**

    **Albertsons Companies, Inc.**

**DOCKET NO. D-9428**

## ALBERTSONS COMPANIES, INC.'S ANSWER AND AFFIRMATIVE DEFENSES

Edward D. Hassi
Debevoise & Plimpton LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 383-8000

Michael Schaper
Shannon Rose Selden
J. Robert Abraham
Natascha Born
Marieugenia Cardenas
Jaime Freilich-Fried
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000

*Counsel for Respondent Albertsons
Companies, Inc.*

James A. Fishkin
Michael G. Cowie
Dechert LLP
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 261-3300
james.fishkin@dechert.com
mike.cowie@dechert.com

*Co-Counsel for Respondent Albertsons
Companies, Inc.*

PUBLIC

## <u>ALBERTSONS COMPANIES INC.'S ANSWER AND AFFIRMATIVE DEFENSES</u>

Respondent Albertsons Companies, Inc. ("Albertsons") hereby answers Plaintiff Federal Trade Commission's ("FTC") Complaint, related to the proposed merger ("Merger") between itself and The Kroger Company ("Kroger") (collectively with Kroger, "Respondents"), and asserts affirmative and other defenses.

Any allegation in the Complaint that is not expressly admitted below is denied.[1]

## PRELIMINARY STATEMENT

The Commission's claims are premised entirely on the Commission's distortion and willful ignorance of basic but critical facts.  The Commission's challenge to the Merger should be rejected for multiple reasons.

*First*, the Commission entirely ignores the commercial realities of the fiercely competitive landscape in which Respondents participate and the evolution of that landscape in recent years.  The Commission has handcrafted a narrowly defined set of "traditional supermarket" competitors as one of the relevant product markets for the purposes of this litigation, but omits obvious competition from other grocery retailers that public documents and ordinary course business documents confirm are engaged in vigorous competition with Respondents.  These competitors include big box retailers such as Walmart — the largest grocer in the U.S. — and Target, club stores such as Costco — one of Respondents' most fervent competitors — specialty and organic grocers like Trader Joe's and Sprouts, as well as other competitors such as Amazon (which owns Whole Foods and Amazon Fresh and operates a significant online grocery business via Amazon.com) and dollar stores.

---

[1] The Complaint contains section titles and organizational headings to which no response is required.  To the extent that the headings may be construed to contain allegations of fact to which a response is required, Albertsons denies all such allegations.

*Second,* in claiming the Merger will substantially lessen competition, the Commission entirely ignores the impact of Respondents' proposed divestment to C&S Wholesale Grocers ("C&S"), a leading grocery wholesaler.  Indeed, the Commission alleges that the "proposed acquisition would eliminate substantial head-to-head competition between Respondents in the communities in which both firms operate *today*," Compl. ¶ 40 (emphasis added), but fails to account for the hundreds of stores that Defendants have already proposed to divest (and the possibility of additional divestments) — divestitures which will preserve competition in local geographies and address any competitive concerns raised by the Merger.  Instead, the Commission casts aside the proposed divestiture package, ignoring that C&S is a large, sophisticated, and well-financed company with deep grocery industry experience, and is well-positioned to successfully operate the significant assets that it will receive as part of any divestiture package and execute on its business plans.  Contrary to the Commission's allegations, C&S will receive the assets necessary to ensure its success, including physical stores, distribution centers to supply the divested stores, store and management personnel, banner rights, popular private label brands and critical transition services.

The Commission also focuses on previous divestitures made in separate transactions in the past decade or so that bear no resemblance to the robust divestiture package Respondents have proposed here (and which is subject to change and further refinement).  Specifically, the Commission myopically focuses on the limited divestitures to Haggen, made in connection with Albertsons' 2015 acquisition of Safeway, and to Lawrence Bros., made in connection with Albertsons' 2013 acquisition of United Supermarkets, suggesting that the failure of those divestiture plans necessarily means that *any* divestiture to C&S in connection with *this* Merger is necessarily bound to fail.  But contrary to the Commission's allegations, Respondents' proposed

divestiture to C&S bears no resemblance to the 2015 Haggen divestiture or 2013 Lawrence Bros. divestiture, and the Commission's utter failure to account for the proposed divestiture's preservation of any purported loss to local competition is ultimately fatal to its claim.

*Third*, the Commission has also handcrafted a second product market, "union grocery labor."   This unprecedented product market completely ignores the labor market in which Respondents compete, which includes non-union as well as non-grocery retailers, as indicated in Respondents' ordinary course documents.   Moreover, the Commission's allegations regarding the impact of the Merger on the union's bargaining power takes negotiations with the unions out of context and ignores that the Merger is actually likely to increase the union's bargaining power.

Simply put, although the Commission alleges that the Merger is likely to harm competition in both of the alleged relevant product markets, the so-called "facts" it has offered in support of this bold assertion completely ignore the commercial realities of a marketplace that is both highly competitive and rapidly evolving and the actual transaction Respondents seek to close (inclusive of proposed divestitures).   For this and many other reasons, the Commission's challenge to the Merger should fail on its flimsy merits.

Against this backdrop, Albertsons hereby answers the specific allegations in the Complaint.   The Complaint improperly mixes factual averments with legal argument and rhetoric such that admissions or denials of the factual averments are difficult or impossible to make. Moreover, many of the allegations in the Complaint are overbroad, vague, or conclusory, include terms that are undefined and that are susceptible to various interpretations, which Albertsons cannot meaningfully respond to.

Accordingly, by way of a general response, all allegations in the Complaint are denied unless specifically admitted, and any factual averment that is admitted is admitted only as to the

specific facts and not as to any conclusions, characterizations, implications, or the like which are contained in the averment or in the Complaint as a whole.

These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this Answer.

## I.    NATURE OF THE CASE

1.    Albertsons admits that Albertsons and Kroger entered into a merger agreement on October 13, 2022 and refers to the merger agreement for its complete content and context. Albertsons is unable to respond to the allegations in the second sentence of Paragraph 1 because the term "supermarket" is vague and ambiguous.  To the extent a response is required, Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 1 and therefore denies the same.  Albertsons denies the remaining allegations in Paragraph 1.[2]

2.    Albertsons is unable to respond to the allegations in Paragraph 2 because the terms "grocery prices," "food insecure," and "low-income" are vague and ambiguous.  To the extent a response is required, Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies the same.

3.    Albertsons denies the allegations in the first sentence of Paragraph 3.  Albertsons is unable to respond to the allegations in the second sentence of Paragraph 3 because the term "traditional supermarket" is vague and ambiguous.  To the extent a response is required, Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 3 and therefore denies the same.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the

---

[2] References to paragraph numbers in the Complaint correlate to the numbered paragraphs in the Complaint.

third sentence of Paragraph 3 and therefore denies the same, except admits that as of December 2, 2023, Albertsons operated 2,271 stores and 1,726 pharmacies and that as of December 11, 2023, Albertsons employed approximately 285,600 individuals across 34 states and the District of Columbia.

4.      Albertsons denies the allegations of the first sentence of Paragraph 4, except admits that Albertsons has been involved in past mergers.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 4 and therefore denies the same, except admits that it operates stores under the banners Safeway, Vons, Jewel-Osco, Haggen and Carrs, among others.

5.      Albertsons denies the allegations of the first sentence of Paragraph 5, except admits that Albertsons fiercely competes for consumers with numerous other retailers in local geographies, including, but not limited to, Kroger, and for workers with a wide range of union and non-union employers including, but not limited to, retailers of all sizes, formats, and types, distribution centers, factories, delivery services, rideshare companies, pharmacies, and restaurants in the geographies within which it operates.  To the extent the second sentence of Paragraph 5 purports to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents themselves.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 5, including to the extent they are redacted, and therefore denies the same.  Albertsons denies the remaining allegations in Paragraph 5.

6.      Albertsons denies the allegations in the first and last sentences of Paragraph 6.  To the extent the second and third sentences of Paragraph 6 purport to quote from or characterize

documents, Albertsons refers to the documents for their complete content and context. Albertsons denies any characterizations inconsistent with the documents themselves.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 6, including to the extent they are redacted, and therefore denies the same.

7.      Albertsons denies the allegations in the first sentence of Paragraph 7.  Albertsons denies the remaining allegations in Paragraph 7, except admits that Albertsons competes for workers with a wide range of union and non-union employers including, but not limited to, retailers of all sizes, formats, and types, distribution centers, factories, delivery services, rideshare companies, pharmacies, and restaurants in the geographies within which it operates and that it negotiates and enters into collective bargaining agreements ("CBAs") in localized areas of the country, which typically govern wages, benefits and workplace conditions for covered workers.

8.      Albertsons denies the allegations of the first sentence of Paragraph 8.  To the extent the second and third sentences of Paragraph 8 purport to quote from or characterize documents, Albertsons refers to the documents for their complete content and context. Albertsons denies any characterizations inconsistent with the documents themselves.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 8, including to the extent they are redacted, and therefore denies the same.

9.      Albertsons denies the allegations in the first sentence of Paragraph 9.  The second sentence of Paragraph 9 states legal conclusions to which no response is required.  To the extent a response is required, Albertsons denies the allegations in the second sentence of Paragraph 9.

10.　　Albertsons denies the allegations in the first sentence of Paragraph 10, except admits that Kroger has proposed a divestiture package which would transfer hundreds of stores and other assets to C&S Wholesale Grocers, LLC ("C&S"), refers to the proposed divestiture package for its complete content and context, and avers the divestiture package remains subject to change. Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 10 and therefore denies the same.

11.　　Albertsons denies the allegations in Paragraph 11.

## II.　　JURISDICTION

12.　　Paragraph 12 states legal conclusions to which no response is required. To the extent a response is required, Albertsons denies the allegations in Paragraph 12.

13.　　Paragraph 13 states legal conclusions to which no response is required. To the extent a response is required, Albertsons denies the allegations in Paragraph 13.

## III.　　RESPONDENTS

14.　　Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 and therefore denies the same.

15.　　Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and therefore denies the same.

16.　　Albertsons is unable to respond to the allegations in the first sentence of Paragraph 16 in any meaningful way because the terms "traditional supermarket chain" and "union grocery workers" are vague and ambiguous. To the extent a response is required, Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 16 and therefore denies the same. Albertsons denies the remaining allegations in Paragraph 16, except admits: (i) for fiscal year 2022, Albertsons had annual revenues of $77.65 billion; (ii) as of December 2, 2023, Albertsons

8

operated 2,271 stores and 1,726 pharmacies under numerous banners including Albertsons,

Safeway, Haggen, Acme, Andronico's, Amigos, Balducci's Food Lovers Market, Carrs, Jewel-

Osco, Kings Food Markets, Lucky, Market Street, Pavilions, Randalls, Shaw's, Star Market,

Tom Thumb, United Supermarkets, and Vons across 34 states and the District of Columbia; and

(iii) as of December 11, 2023, Albertsons employed approximately 285,600 individuals, many of

whom are covered by collective bargaining agreements.

17.    Albertsons is unable to respond to the allegations in the first sentence of

Paragraph 17 in any meaningful way because the term "serial acquisitions" is vague and

ambiguous.  To the extent a response is required, Albertsons denies the allegations in first

sentence of Paragraph 17, except admits that: (i) Albertsons has been involved in past mergers;

(ii) in 1998, Albertsons acquired American Stores Company and refers to the relevant

transactional documents for their complete content and context; (iii) in 2004, Albertsons

acquired Shaw's Supermarkets and refers to the relevant transactional documents for their

complete content and context; (iv) in 2013, Albertsons acquired United Supermarkets and refers

to the relevant transactional documents for their complete content and context; (v) in 2015,

Albertsons acquired Safeway and refers to the relevant transactional documents for their

complete content and context; and (vi) in 2016, Albertsons acquired Haggen, including certain

stores it had previously divested to Haggen, and refers to the relevant transactional documents

for their complete content and context.

### IV.    THE ACQUISITION

18.    Albertsons admits that Albertsons and Kroger entered into a merger agreement on

October 13, 2022 and refers to the merger agreement for its complete content and context.

## V.    THE PROPOSED ACQUISITION MAY SUBSTANTIALLY LESSEN COMPETITION IN LOCAL MARKETS FOR THE SALE OF FOOD AND GROCERY PRODUCTS AT SUPERMARKETS

19.     Albertsons is unable to respond to the allegations in the first, second and third sentences of Paragraph 19 in any meaningful way because the terms "supermarket," "hundreds of communities" and "substantial head-to-head competition" are vague and ambiguous.  The second sentence of Paragraph 19 also states legal conclusions to which no response is required. To the extent a response is required, Albertsons denies the allegations in the first, second and third sentences of Paragraph 19.  To the extent the last sentence of Paragraph 19 purports to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents themselves.

20.     Albertsons is unable to respond to the allegations in the first sentence of Paragraph 20 in any meaningful way because the phrase "unique in their scale and size" is vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 20.  Albertsons is unable to respond to the allegations in the second sentence of Paragraph 20 in any meaningful way because the terms "ecosystem," "benefit," and "local brand recognition" are vague and ambiguous.  To the extent a response is required, Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 20 and therefore denies the same, except admits that Albertsons operates stores under a number of banners including Safeway.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 20, including to the extent they are redacted, and therefore denies the same.  To the extent the last sentence of Paragraph 20 purports to quote from or characterize

documents, Albertsons refers to the documents for their complete content and context. Albertsons denies any characterizations inconsistent with the documents themselves.

21.    Albertsons is unable to respond to the allegations in the first, second, third and fourth sentences of Paragraph 21 in any meaningful way because the terms "supermarkets," "geographic organizational units," "operational autonomy," "operational division-level," "continuous growth," and "data science capabilities" are vague and ambiguous.  To the extent a response is required, Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, third and fourth sentences of Paragraph 21 and therefore denies the same, except admits that Albertsons has 12 divisions which are organized by region.  To the extent the last sentence of Paragraph 21 purports to quote from or characterize documents, Albertsons refers to the documents for their complete content and context. Albertsons denies any characterizations inconsistent with the documents themselves.

22.    Albertsons is unable to respond to the allegations in the first sentence of Paragraph 22 in any meaningful way because the term "supermarket customers" is vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 22, except admits that Albertsons operates pharmacies and fuel stations in certain locations.  Albertsons denies the remaining allegations in Paragraph 22, except admits that in fiscal year 2022, pharmacies and fuel stations accounted for 8.7% and 6.3% of Albertsons' revenue, respectively.

23.    Albertsons is unable to respond to the allegations in the first and third sentence of Paragraph 23 in any meaningful way because the terms "head-to-head," and "in response to each other" are vague and ambiguous.  To the extent a response is required, Albertsons admits that it fiercely competes for consumers with numerous other retailers in local geographies, including,

11

but not limited to, Kroger, on the basis of price, product quality, product selection, customer service, and loyalty programs, among other things. To the extent the second sentence of Paragraph 23 purports to quote from or characterize documents, Albertsons refers to the documents for their complete content and context. Albertsons denies any characterizations inconsistent with the documents themselves. Albertsons denies the allegations in the last sentence of Paragraph 23.

### A.    SUPERMARKETS ARE A RELEVANT PRODUCT MARKET

24.    Paragraph 24 states legal conclusions to which no response is required. To the extent a response is required, Albertsons denies the allegations in Paragraph 24.

25.    Albertsons is unable to respond to the allegations in the first, third, and fourth sentences of Paragraph 25 in any meaningful way because the terms "supermarkets," "one-stop-shopping," "broad," and "deep" are vague and ambiguous. To the extent a response is required, Albertsons denies the allegations in the first, third, and fourth sentences of Paragraph 25. Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 25 and therefore denies the same.

26.    Albertsons is unable to respond to the allegations in Paragraph 26 in any meaningful way because the terms "supermarkets," "food and grocery shopping requirements," and "substantial" are vague and ambiguous. To the extent a response is required, Albertsons denies the allegations in Paragraph 26.

27.    Albertsons is unable to respond to the allegations in the first, second, third, fourth, and last sentences of Paragraph 27 in any meaningful way because the terms "supermarkets," and "pricing program" are vague and ambiguous. To the extent a response is required, Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in the first, second, third, fourth and last sentences of Paragraph 27 and therefore

denies the same, except admits that Albertsons monitors the pricing decisions of many

competitors in order to inform its pricing decisions.  Albertsons lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in the fifth sentence of Paragraph 27,

including to the extent they are redacted, and therefore denies the same.

28.     Paragraph 28 states legal conclusions to which no response is required.  To the

extent a response is required, Albertsons denies the allegations in Paragraph 28.

29.     Albertsons is unable to respond to the allegations in Paragraph 29 in any

meaningful way because the terms "supermarket(s)," "non-supermarket," "differentiated

customer experience," and "SSNIPT" are vague and ambiguous.  To the extent a response is

required, Albertsons denies the allegations in Paragraph 29, except admits that there are

differences between its stores and other retailers it competes for consumers with.

30.     Albertsons is unable to respond to the allegations in the first and second sentences

of Paragraph 30 in any meaningful way because the term "supermarkets," "non-supermarkets,"

"SSNIPT," and "competitive constraint" are vague and ambiguous.  To the extent a response is

required, Albertsons denies the allegations in the first and second sentences of Paragraph 30.

The last sentence of Paragraph 30 states legal conclusions to which no response is required.  To

the extent a response is required, Albertsons denies the allegations in the last sentence of

Paragraph 30.

31.     The first sentence of Paragraph 31 states legal conclusions to which no response

is required.  To the extent a response is required, Albertsons denies the allegations in the first

sentence of Paragraph 31.  Albertsons lacks knowledge or information sufficient to form a belief

PUBLIC

as to the truth of the allegations in the second and third sentences of Paragraph 31 and therefore denies the same.

### B.    LOCAL AREAS AROUND STORES ARE RELEVANT GEOGRAPHIC MARKETS

32.    Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 32 and therefore denies the same. Albertsons is unable to respond to the allegations in the second and third sentences of Paragraph 32 in any meaningful way because the terms "supermarket," "retail supermarkets," and "localized areas" are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the second and third sentences of Paragraph 32, except admits that competition for grocery sales typically occurs at a local level and varies based on local conditions.  Albertsons denies the remaining allegations in Paragraph 32.

33.    The first sentence of Paragraph 33 asserts legal conclusions to which no response is required.  To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 33.  Albertsons is unable to respond to the remaining allegations in Paragraph 33 in any meaningful way because the terms "localized markets," "SSNIPT" and "supermarkets" are vague and ambiguous.  To the extent a response is required, Albertsons denies the remaining allegations in Paragraph 33.

### C.    THE PROPOSED ACQUISITION IS PRESUMPTIVELY UNLAWFUL

34.    Albertsons denies the allegations in Paragraph 34, except admits that the Merger Guidelines, which are not binding on the FTC or courts, measure market concentration using the Herfindahl-Hirschman Index ("HHI") and that Paragraph 34 summarizes how the "HHI" calculation is described in the Merger Guidelines, and refers to the Merger Guidelines for their complete content and context.

35.    Albertsons is unable to respond to the allegations in Paragraph 35 in any meaningful way because the terms "caselaw" and "widely accepted economic thinking," "analytical frameworks," "economic methodologies," and "court decisions," are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in Paragraph 35, except admits that the Department of Justice and the Federal Trade Commission jointly publish the Merger Guidelines, which are not binding on the FTC or courts, and refers to the Merger Guidelines for their complete content and context.

36.    Albertsons denies the allegations in Paragraph 36 except admits that Paragraph 36 summarizes how the "HHI" calculation is described in the Merger Guidelines, which are not binding on the FTC or courts, and refers to the Merger Guidelines for their complete content and context.

37.    Paragraph 37 asserts legal conclusions to which no response is required.  To the extent a response is required, Albertsons denies the allegations in Paragraph 37.

38.    Paragraph 38 asserts legal conclusions to which no response is required.  To the extent a response is required, Albertsons denies the allegations in Paragraph 38.

### D.    THE PROPOSED ACQUISITION WOULD ELIMINATE HEAD-TO-HEAD COMPETITION BETWEEN RESPONDENTS

39.    Paragraph 39 asserts legal conclusions to which no response is required.  To the extent a response is required, Albertsons denies the allegations in Paragraph 39.  To the extent the last sentence of Paragraph 39 purports to quote from or characterize the Merger Guidelines, which are not binding on the FTC or courts, Albertsons refers to the Merger Guidelines for their complete content and context.

40.    Albertsons denies the allegations in Paragraph 40.

41.    Albertsons is unable respond to the allegations in the first sentence of Paragraph 41 in any meaningful way because the terms "customer base" and "local communities" are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 41, except admits that Albertsons and Kroger compete against each other in certain local geographies and that Albertsons fiercely competes for consumers with other retailers, including, but not limited to, Kroger, on the basis of price, product quality, product selection, customer service, and loyalty programs, among other things.  Albertsons is unable to respond to the allegations in the second, third, fifth, and sixth sentences of Paragraph 41 in any meaningful way because the terms "aggressive price competition," "price check," "tracks," "base pricing," "non-promotional price," "promotional pricing," and "sale price" are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the second, third, fifth, and sixth sentences of Paragraph 41, except admits that Albertsons monitors the pricing decisions of many competitors in order to inform its pricing decisions.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the fourth sentence of Paragraph 41, including to the extent they are redacted, and therefore denies the same.  Albertsons denies the allegations in the last sentence of Paragraph 41.

42.    Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42, including to the extent they are redacted, and therefore denies the same.

43.    Albertsons is unable to respond to the allegations in the first, second, third and last sentences of Paragraph 43 in any meaningful way because the terms "primary competitor," "pricing areas," "high," "low," and "price competition" are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the first, second, third and last

sentences of Paragraph 43, except admits that Albertsons monitors the pricing decisions of many competitors in order to inform its pricing decisions.  To the extent the fourth sentence of Paragraph 43 purports to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents themselves.

44.      Albertsons is unable to respond to the allegations in the first, second, and third sentences of Paragraph 44 in any meaningful way because the terms "promotional pricing discounts," "promotional programs," "discounts," and "promotional offers" are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the first, second, and third sentences of Paragraph 44, except admits that Albertsons monitors the pricing decisions of many competitors in order to inform its pricing decisions.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 44, including to the extent they are redacted, and therefore denies the same.  To the extent the last sentence of Paragraph 44 purports to quote from or characterize testimony from investigational hearings, Albertsons refers to the testimony for its complete content and context.  Albertsons denies any characterizations inconsistent with the testimony itself.

45.      Albertsons is unable to respond to the allegations in the first sentence of Paragraph 45 in any meaningful way because the terms "promotional competition" and "regular occurrence" are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 45, except admits that Albertsons monitors the pricing decisions of many competitors in order to inform its pricing decisions.  To the extent the second, third and fourth sentences of Paragraph 45 purport to quote from or characterize

documents, Albertsons refers to the documents for their complete content and context. Albertsons denies any characterizations inconsistent with the documents themselves.  Albertsons denies the allegations in the last sentence of Paragraph 45.

46.    Albertsons is unable to respond to the allegations in the first sentence of Paragraph 46 in any meaningful way because the terms "quality" and "variety" are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 46, except admits that Albertsons and Kroger compete against each other in certain local geographies and that Albertsons fiercely competes for consumers with other retailers, including, but not limited to, Kroger, on the basis of product quality and product selection, among other things.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 46, including to the extent they are redacted, and therefore denies the same.  To the extent the last sentence of Paragraph 46 purports to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents themselves.

47.    Albertsons is unable to respond to the allegations in the first and second sentences of Paragraph 47 in any meaningful way because the terms "freshest," "highest quality," and "regularly benefit" are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the first and second sentences of Paragraph 47, except admits that Albertsons and Kroger compete against each other in certain local geographies and that Albertsons fiercely competes for consumers with other retailers, including, but not limited to, Kroger, on the basis of product quality and product selection, among other things.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the

18

third sentence of Paragraph 47, including to the extent they are redacted, and therefore denies the same.  To the extent the last sentence of Paragraph 47 purports to quote from or characterize documents, Albertsons refers to the documents for their complete content and context. Albertsons denies any characterizations inconsistent with the documents themselves.

48.    Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, and third sentences of Paragraph 48, including to the extent they are redacted, and therefore denies the same, except admits that Albertsons monitors branded and private-label products sold by other competing retailers, including, but not limited to, Kroger.  Albertsons denies the allegations in the last sentence of Paragraph 48.

49.    Albertsons is unable to respond to the allegations in the first sentence of Paragraph 49 in any meaningful way because the terms "store re-models" and "robust competition," are vague and ambiguous.  To the extent a response is required, Albertsons admits that Albertsons and Kroger compete against each other in certain local geographies and that Albertsons fiercely competes for consumers with other retailers, including, but not limited to, Kroger, on the basis of price, product quality, product selection, customer service, and loyalty programs, among other things.   To the extent the second and third sentences of Paragraph 49 purport to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents themselves.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 49, including to the extent they are redacted, and therefore denies the same.

50.    Albertsons is unable to respond to the allegations in the first and third sentences of Paragraph 50 in any meaningful way because the terms "superior customer services" and

"improved customer services" are vague and ambiguous.  To the extent a response is required, Albertsons admits that Albertsons and Kroger compete against each other in certain local geographies and that Albertsons fiercely competes for consumers with other retailers, including, but not limited to, Kroger, on the basis of price, product quality, product selection, customer service, and loyalty programs, among other things.  To the extent the second and last sentences of Paragraph 50 purport to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents themselves.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth, fifth, sixth, and seventh sentences of Paragraph 50, including to the extent they are redacted, and therefore denies the same, except admits that Albertsons offers curbside pickup.

51.     Albertsons is unable to respond to the allegations in the first sentence of Paragraph 51 in any meaningful way because the terms "supermarket customers" and "robust in-store services" are vague and ambiguous.  To the extent a response is required, Albertsons admits that Albertsons and Kroger compete against each other in certain local geographies and that Albertsons fiercely competes for consumers with other retailers, including, but not limited to, Kroger, on the basis of price, product quality, product selection, customer service, and loyalty programs, among other things.  To the extent the second, third and fourth sentences of Paragraph 51 purport to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents themselves.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 51, including to the extent they are redacted, and therefore denies the same.

52.     Albertsons denies the first sentence of Paragraph 52, except admits (i) that Albertsons operates pharmacies; (ii) that pharmacies made up 8.7% of Albertsons' revenue in fiscal year 2022; and (iii) that Albertsons is in fierce competition with many pharmacies, including, but not limited to Kroger in certain geographies, on the basis of price, product quality, production selection, customer service, and loyalty programs, among other things.  To the extent the second, third and fourth sentences of Paragraph 52 purport to quote from or characterize documents, Albertsons refers to the documents for their complete content and context. Albertsons denies any characterizations inconsistent with the documents themselves.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 52, including to the extent they are redacted, and therefore denies the same.

53.     Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53, including to the extent they are redacted, and therefore denies the same, except admits that in 2023, Albertsons offered customers a discount for grocery items with a new or transferred prescription and that Albertsons is in fierce competition with many pharmacies, including, but not limited to Kroger in certain geographies, on the basis of price, product quality, production selection, customer service, and loyalty programs, among other things.

54.     Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54, including to the extent they are redacted, and therefore denies the same, except admits that Albertsons is in fierce competition with many pharmacies, including, but not limited to Kroger in certain geographies, on the basis of price, product quality, production selection, customer service, and loyalty programs, among other things.

PUBLIC

55.     Albertsons denies the allegations in Paragraph 55.

56.     Albertsons denies the allegations in Paragraph 56.

## VI.    THE PROPOSED ACQUISITION MAY SUBSTANTIALLY LESSEN COMPETITION FOR LABOR

57.     Paragraph 57 states legal conclusions to which no response is required.  To the extent a response is required, Albertsons denies the allegations in Paragraph 57.

58.     Albertsons denies the allegations in Paragraph 58, except admits that Albertsons employed approximately 285,600 individuals across the country as of December 11, 2023 and fiercely competes for workers with a wide range of union and non-union employers, including Kroger in certain local geographies.

59.     Albertsons denies the allegations in Paragraph 59, excepts admits that Albertsons fiercely competes for workers with a wide range of union and non-union employers, including Kroger in certain local geographies, on the basis of compensation, benefits, and other criteria.

60.     Albertsons denies the allegations in the first sentence of Paragraph 60.  To the extent the second and third sentences of Paragraph 60 purport to quote from or characterize documents, Albertsons refers to the documents for their complete content and context. Albertsons denies any characterizations inconsistent with the documents themselves.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 60, including to the extent they are redacted, and therefore denies the same.

61.     Albertsons is unable to respond to the allegations in the first sentence of Paragraph 61 in any meaningful way because the term "union grocery workers" is vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 61.  Albertsons lacks knowledge or information sufficient to form a belief

as to the truth of the allegations in the second, third, and fourth sentences of Paragraph 61 and therefore denies the same, except admits that the majority of Albertsons' in-store associates are represented by United Food and Commercial Workers ("UFCW").

62.     Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 62 and therefore denies the same. Albertsons denies the allegations in the last sentence of Paragraph 62.

### A.     UNION GROCERY LABOR IS A RELEVANT MARKET

63.     The first sentence of Paragraph 63 states legal conclusions to which no response is required. To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 63. Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 63 and therefore denies the same, except admits that Albertsons negotiates and enters into CBAs with local unions representing its associates, and that the CBAs typically govern wages, benefits and workplace conditions for covered workers.

64.     Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 and therefore denies the same, except admits that pension benefits vest as provided in the relevant CBAs.

### B.     LOCAL CBA AREAS ARE RELEVANT GEOGRAPHIC MARKETS

65.     Albertsons is unable to respond to the allegations in Paragraph 65 in any meaningful way because the terms "defined localized areas" and "union supermarkets" are vague and ambiguous. To the extent a response is required, Albertsons denies the allegations in Paragraph 65, except admits that Albertsons negotiates and enters into CBAs in localized areas of the country, Albertsons considers wages and benefits offered by other employers, both union

and non-union, in connection with CBA negotiations, and that store-level hiring decisions are typically made locally.

66.      Paragraph 66 states legal conclusions to which no response is required.  To the extent a response is required, Albertsons denies the allegations in Paragraph 66.

67.      Albertsons is unable to respond to the allegations in Paragraph 67 in any meaningful way because the terms "competing grocery chains," "SSNIPT" and "union grocery stores" are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in Paragraph 67.

### C.      THE PROPOSED ACQUISITION IS PRESUMPTIVELY UNLAWFUL

68.      Albertsons is unable to respond to the allegations in Paragraph 68 in any meaningful way because the terms "union grocery labor," "union grocery employers," "local CBA areas," and "largest" are vague and ambiguous.  To the extent a response is required, Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences in Paragraph 68 and therefore denies the same, except admits that Albertsons negotiates with local unions in many states and that Kroger negotiates with some of the same local unions.  The remaining allegations in Paragraph 68 also state legal conclusions to which no response is required.  To the extent a response is required, Albertsons denies the remaining allegations in Paragraph 68.

### D.      THE PROPOSED ACQUISITION WOULD ELIMINATE COMPETITION BETWEEN RESPONDENTS FOR UNION GROCERY LABOR

69.      Paragraph 69 states legal conclusions to which no response is required.  To the extent a response is required, Albertsons denies the allegations in Paragraph 69.

70.      Albertsons is unable to respond to the allegations in Paragraph 70 because the term "union grocery labor" is vague and ambiguous.  To the extent a response is required,

Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 and therefore denies the same.

71.    Albertsons is unable to respond to the allegations in the first sentence of Paragraph 71 in any meaningful way because the terms "union grocery operators," "union grocery workers," and "largest" are vague and ambiguous.  To the extent a response is required, Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence in Paragraph 71 and therefore denies the same.  Albertsons denies the remaining allegations in Paragraph 71, except admits that Albertsons negotiates and enters into CBAs with unions representing its associates.

72.    Albertsons is unable to respond to the allegations in the first sentence of Paragraph 72 in any meaningful way because the terms "union grocery operations" and "often" are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 72, except admits that it sometimes negotiates CBAs with local unions around the same time that those same unions are in negotiations with Kroger.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 72 and therefore denies the same.  Albertsons denies the allegations in the third sentence of Paragraph 72.  To the extent the fourth sentence of Paragraph 72 purports to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents themselves.  Albertsons denies the allegations in the last sentence of Paragraph 72.

73.    Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 73 and therefore denies the same, except admits that the ability of local unions to strike or threaten to strike is a form of leverage during

CBA negotiations.  Albertsons is unable to respond to the allegations in the second and third sentences of Paragraph 73 in any meaningful way because the terms "competing supermarkets" and "union grocery employer" are vague and ambiguous.  To the extent a response is required, Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 73 and therefore denies the same. Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 73, including to the extent they are redacted, and therefore denies the same.

74.     Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 and therefore denies the same.

75.     Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 75, including to the extent they are redacted, and therefore denies the same.  To the extent the remaining allegations of Paragraph 75 purport to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents themselves.

76.     Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 76, including to the extent they are redacted, and therefore denies the same.  To the extent the remaining allegations of Paragraph 76 purport to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents themselves.

77.    Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in in the first sentence of Paragraph 77 and therefore denies the same. Albertsons denies the remaining allegations in Paragraph 77, except admits that Albertsons negotiates and enters into CBAs with UFCW Local 7.

78.    Albertsons denies the allegations in the first and second sentences of Paragraph 78. To the extent the allegations in the third sentence of Paragraph 78 purport to quote from or characterize documents, Albertsons refers to the documents for their complete content and context. Albertsons denies any characterizations inconsistent with the documents themselves.

79.    Albertsons is unable to respond to the allegations in the first sentence of Paragraph 79 in any meaningful way because the terms "coordinate" and "align" are vague and ambiguous. To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 79, and avers that Albertsons has not engaged with Kroger in CBA negotiations in any illegal or anticompetitive manner. Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 79, including to the extent they are redacted, and therefore denies the same. To the extent the third sentence of Paragraph 79 purports to quote from or characterize documents, Albertsons refers to the documents for their complete content and context. Albertsons denies any characterizations inconsistent with the documents themselves.

80.    Albertsons is unable to respond to the allegations in the first sentence of Paragraph 80 in any meaningful way because the term "coordination efforts" is vague and ambiguous. To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 80, and avers that Albertsons has not engaged with Kroger in CBA negotiations in any illegal or anticompetitive manner. Albertsons lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 80, including to the extent they are redacted, and therefore denies the same.

81.    Albertsons is unable to respond to the allegations in the first sentence of Paragraph 81 in any meaningful way because the phrase "lack of alignment" is vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in the first sentence of Paragraph 81.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 81, including to the extent they are redacted, and therefore denies the same.

82.    Albertsons denies the allegations in Paragraph 82.

## VII.    LACK OF COUNTERVAILING FACTORS

### A.    ENTRY WOULD NOT DETER OR COUNTERACT THE ANTICOMPETITIVE EFFECTS OF THE PROPOSED ACQUISITION

83.    Albertsons denies the allegations in Paragraph 83.

84.    Albertsons is unable to respond to the allegations in Paragraph 84 in any meaningful way because the terms "union grocery employers" and "union grocers" are vague and ambiguous.  To the extent a response is required, Albertsons denies the allegations in Paragraph 84.

### B.    RESPONDENTS CANNOT DEMONSTRATE EFFICIENCIES SUFFICIENT TO REBUT THE PRESUMPTION OF HARM

85.    Paragraph 85 states legal conclusions to which no response is required.  To the extent a response is required, Albertsons denies the allegations in Paragraph 85.

### C.    THE PROPOSED DIVESTITURE DOES NOT SUFFICIENTLY MITIGATE THE LIKELY ANTICOMPETITIVE EFFECTS OF THE PROPOSED ACQUISITION

86.    Albertsons denies the allegations in Paragraph 86, except admits that Kroger has proposed a divestiture package which would transfer hundreds of stores and other assets to C&S,

refers to the proposed divestiture package for its complete content and context, and avers the divestiture package remains subject to change.

87.     Albertsons denies the allegations in Paragraph 87, except admits that divestiture package proposed by Kroger does not include stores in certain local areas where both Kroger and Albertsons currently have stores and avers the presence of other competitors will continue to ensure robust competition post-merger.

88.     Albertsons denies the allegations in Paragraph 88.

89.     Albertsons is unable to respond to the allegations in Paragraph 89 in any meaningful way because the terms "competitive diminution," "outright failure," "ongoing business units," and "scale," among others, are vague and ambiguous, and to the extent the allegations are redacted.  To the extent a response is required, Albertsons denies the allegations in Paragraph 89, except admits that Kroger has proposed a divestiture package which would transfer hundreds of stores and other assets to C&S, refers to the proposed divestiture package for its complete content and context, and avers the divestiture package remains subject to change.

90.     Albertsons is unable to respond to the allegations in the first, second, and third sentences of Paragraph 90 in any meaningful way because the terms "supermarket business," "popular," "self-manufacturing facilities," "established data-analytics capabilities," among others, are vague and ambiguous.  To the extent a response is required, Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, and third sentences of Paragraph 90, including to the extent they are redacted, and therefore denies the same, except admits that Kroger has proposed a divestiture package which would transfer hundreds of stores and other assets to C&S, refers to the proposed divestiture

package for its complete content and context, and avers the divestiture package remains subject to change.  Albertsons denies the allegations in the last sentence of Paragraph 90.

91.    Albertsons is unable to respond to the allegations in the first and last sentences of Paragraph 91 in any meaningful way because the terms "coordinate," "competitively relevant services," "pricing and promotional activities," and "entanglement" are vague and ambiguous. To the extent a response is required, Albertsons denies the allegations in the first and last sentences of Paragraph 91.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 91, including to the extent they are redacted, and therefore denies the same.

92.    Albertsons denies the allegations in the first sentence of Paragraph 92.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second, third, fourth, and fifth sentences of Paragraph 92, including to the extent they are redacted, and therefore denies the same.  Albertsons denies the allegations in the last sentence of Paragraph 92.

93.    Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 93 and therefore denies the same.  Albertsons denies the remaining allegations in Paragraph 93, except admits that C&S has represented that it is a seasoned, well-positioned supermarket operator that has stated its intent to operate any divested stores in the future.

94.    Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94, including to the extent they are redacted, and therefore denies the same, except Albertsons admits it is unaware of any planned store closures in connection with the merger or divestiture plan.  To the extent the first sentence of Paragraph 94

purports to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents themselves.

95.    Albertsons denies the allegations in the first sentence of Paragraph 95.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 95, including to the extent they are redacted, and therefore denies the same. Albertsons denies the allegations in the third sentence of Paragraph 95.

96.    Albertsons denies the allegations in the first sentence of Paragraph 96.  Albertsons denies the allegations in the second sentence of Paragraph 96, except admits that Albertsons acquired United Supermarkets in 2013 and Safeway in 2015 and refers to the relevant transactional documents for their complete content and context.  Albertsons admits that two stores were divested to Lawrence Bros pursuant to a consent order with the Federal Trade Commission entered in connection with Albertsons' acquisition of United Supermarkets. Albertsons lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth and fifth sentences of Paragraph 96 and therefore denies the same, except admits that Albertsons reacquired one of the stores that had been previously divested to Lawrence Bros.  Albertsons denies the allegations in the sixth sentence of Paragraph 96. Albertsons also denies the allegations in the seventh, eighth, and ninth sentences of Paragraph 96, except admits that certain stores were divested to multiple buyers, including Haggen, pursuant to a consent order with the Federal Trade Commission entered in connection with Albertsons' acquisition of Safeway.  To the extent the tenth sentence of Paragraph 96 purports to quote from or characterize documents, Albertsons refers to the documents for their complete content and context.  Albertsons denies any characterizations inconsistent with the documents

themselves.  Albertsons lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in the eleventh and twelfth sentences of Paragraph 96 and therefore denies the

same.  Albertsons denies the last sentence of Paragraph 96, except admits that Albertsons

reacquired from Haggen certain stores that had been divested to Haggen in connection with the

Albertsons-Safeway transaction and that Albertsons acquired certain additional stores from

Haggen as well as rights to the Haggen banner.

97.    Albertsons lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 97 and therefore denies the same.

98.    Albertsons denies the allegations in the first sentence of Paragraph 98 of the

Complaint.  The last sentence of Paragraph 98 states legal conclusions to which no response is

required.  To the extent a response is required, Albertsons denies the allegations in Paragraph 98.

## VIII.  <u>VIOLATIONS</u>

### Count I – ILLEGAL AGREEMENT

99.    Albertsons repeats and incorporates by reference each and every preceding

answer above as if fully set forth herein.

100.    Paragraph 100 states legal conclusions to which no response is required.  To the

extent a response is required, Albertsons denies the allegations in Paragraph 100.

### Count II – ILLEGAL ACQUISITION

101.    Albertsons repeats and incorporates by reference each and every preceding

answer above as if fully set forth herein.

102.    Paragraph 102 states legal conclusions to which no response is required.  To the

extent a response is required, Albertsons denies the allegations in Paragraph 102.

PUBLIC

## <u>NOTICE OF CONTEMPLATED RELIEF</u>

Albertsons denies that the FTC is entitled to any of the contemplated relief sought. Albertsons denies any and all allegations in the Complaint in their entirety that are not specifically admitted above, including any allegations contained in section and subsection headings and footnotes of the Complaint.

## <u>ALBERTSONS' AFFIRMATIVE AND OTHER DEFENSES</u>

Albertsons asserts the following defenses with respect to the causes of action alleged in the Complaint, without assuming the burden of proof or persuasion where such burden rests on the Commission.  Albertsons has not knowingly or intentionally waived any applicable defenses, and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action.  Albertsons reserves the right to supplement its defenses as discovery progresses.

1.      The Commission's claims are barred, in whole or in part, because the Commission fails to state a claim on which relief can be granted.

2.      Granting the relief sought is contrary to the public interest.

3.      The Commission's claims are barred, in whole or in part, because the Commission fails to allege a plausible relevant product market or markets.

4.      The Commission's claims are barred, in whole or in part, because the Commission fails to allege a plausible geographic market.

5.      The Commission's claims are barred, in whole or in part, because the Commission fails to allege undue share in any plausibly defined relevant market.

6.      The Commission's claims are barred, in whole or in part, because the Commission fails to allege any plausible harm to competition particularly when accounting for the proposed divestitures.

7.      The Commission's claims are barred, in whole or in part, because the Commission fails to allege any plausible harm to consumers particularly when accounting for the proposed divestitures.

8.      The Commission's claims are barred, in whole or in part, because the Commission fails to allege any plausible harm to consumer welfare particularly when accounting for the proposed divestitures.

9.      The Commission's claims are barred, in whole or in part, because divestitures will eliminate any purported anticompetitive effects.

10.      Expansion by existing competitors can be swift, likely, and sufficient, such that it will ensure that there will be no harm to competition, consumers, or consumer welfare.

11.      Customers have a variety of tools available to ensure that they receive competitive pricing and terms.

12.      The Merger will be procompetitive and will benefit consumers.  It will result in substantial merger-specific efficiencies, including cost synergies, which will allow Albertsons and Kroger to compete for consumers more effectively that they can alone against competition from other retailers.

13.      The Commission's claims are barred, in whole or in part, because the Complaint reflects improper selective enforcement of the antitrust laws.

14.      These proceedings are invalid because the structure of the Commission as an independent agency that wields significant executive power, and the associated constraints on

removal of the Commissioners and other Commission officials, violates Article III of the U.S. Constitution and the separation of powers.

15.    The Commission's procedures arbitrarily subject Albertsons to administrative proceedings rather than to proceedings before an Article III judge, in violation of Albertsons' right to Equal Protection under the Fifth Amendment.

16.    The Commission's procedures violate Albertsons' right to procedural due process under the Due Process Clause of the Fifth Amendment.

17.    The structure of these administrative proceedings, in which the Commission both initiates and finally adjudicates the Complaint against Albertsons, violates Albertsons' Fifth Amendment Due Process right to adjudication before a neutral arbiter.

18.    These administrative proceedings violate Albertsons' Fifth Amendment Due Process right to adjudication before a neutral arbiter as applied to Albertsons because the Commission has prejudged the merits of the instant action.

19.    The Commission's charges under Section 5 of the Federal Trade Commission Act are unlawful to the extent the Commission purports to apply Section 5 beyond the metes and bounds of the Sherman and Clayton Acts.

PUBLIC

## <u>NOTICE OF CONTEMPLATED RELIEF</u>

WHEREFORE, Albertsons requests that the Administrative Law Judge enter a judgment in its favor as follows:

A.    The Complaint be dismissed with prejudice;

B.    None of the Complaint's contemplated relief issue to the FTC;

C.    Any and all other relief as the Commission may deem just and proper.

Dated: March 11, 2024

Respectfully submitted,

/s/     Edward D. Hassi
Edward D. Hassi
Debevoise & Plimpton LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 383-8000

Michael Schaper
Shannon Rose Selden
J. Robert Abraham
Natascha Born
Marieugenia Cardenas
Jaime Freilich-Fried
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000

*Counsel for Respondent Albertsons Companies, Inc.*

PUBLIC

## CERTIFICATE OF SERVICE

I certify that on March 11, 2024, I filed the foregoing document electronically using the FTC's E-Filing System, which will send notification of such filing to:

> April Tabor
> Secretary
> Federal Trade Commission
> 600 Pennsylvania Ave., N.W., Rm. H-113
> Washington, D.C. 20580
> ElectronicFilings@ftc.gov
>
> The Honorable D. Michael Chappell
> Chief Administrative Law Judge
> Federal Trade Commission
> 600 Pennsylvania Ave., N.W., Rm. H-110
> Washington, D.C. 20580

I also certify that I cause the foregoing documents to be served via email to:

| | |
|---|---|
| Charles Dickinson | James A. Fishkin |
| James H. Weingarten | Michael G. Cowie |
| Emily Blackburn | Dechert LLP |
| Paul Frangie | 1900 K Street, N.W. |
| Laura Hall | Washington, D.C. 20006 |
| Janet Kim | Telephone: (202) 261-3300 |
| Kenneth A. Libby | james.fishkin@dechert.com |
| Eric Olson | mike.cowie@dechert.com |
| Rohan Pai | |
| Harris Rothman | *Co-Counsel for Respondent Albertsons* |
| Katherine Drummonds | *Companies, Inc.* |
| Albert Teng | |
| Joshua Smith | Matthew M. Wolf |
| Jacob Hamburger | Michael B. Bernstein |
| Elizabeth Arens | Sonia Kuester Pfaffenroth |
| Katherine Bies | Joshua M. Davis |
| Lily Hough | Jason C. Ewart |
| | Matthew M. Shultz |
| Federal Trade Commission | Yasmine Harik |
| 600 Pennsylvania Avenue, N.W. | Arnold & Porter Kaye Scholer LLP |
| Washington, D.C. 20580 | 601 Massachusetts Avenue, N.W. |
| Telephone: (202) 326-2222 | Washington, D.C. 20001 |
| cdickinson@ftc.gov | Telephone: (202) 942-5000 |
| jweingarten@ftc.gov | matthew.wolf@arnoldporter.com |
| eblackburn@ftc.gov | michaelb.bernstein@arnoldporter.com |
| pfrangie@ftc.gov | sonia.pffafenroth@arnoldporter.com |

lhall1@ftc.gov
jkim3@ftc.gov
klibby@ftc.gov
eolson@ftc.gov
rpai@ftc.gov
hrothman@ftc.gov
kdrummonds@ftc.gov
ateng@ftc.gov
jsmith3@ftc.gov
jhamburger1@ftc.gov
earens@ftc.gov
kbies@ftc.gov
lhough@ftc.gov

*Complaint Counsel*

joshua.davis@arnoldporter.com
jason.ewart@arnoldporter.com
matthew.shultz@arnoldporter.com
yasmine.harik@arnoldporter.com

John Holler
Arnold & Porter Kaye Scholer LLP
250 W. 55th St.
New York, NY 10019
(212) 836-7739
john.holler@arnoldporter.com

Luna Barrington
Lisa Madalone Pieters
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10053
Telephone: (212) 310-8000
Luna.Barrington@weil.com
Lisa.Pieters@weil.com

Bambo Obaro
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shoes, CA 94065
Telephone: (650) 802-3000
Bambo.Obaro@weil.com

Sarah Sternlieb
Weil, Gotshal & Manges LLP
700 Louisiana St., Suite 3200
Houston, TX 77002
Telephone: (713) 546-5000
Sarah.Sternlieb@weil.com

PUBLIC

Mark A. Perry
Jason Kleinwaks
Luke Sullivan
Weil, Gotshal & Manges LLP
2001 M Street NW Suite 600
Washington, D.C. 20036
Telephone: (202) 682-7000
Mark.Perry@weil.com
Jason.Kleinwaks@weil.com
Luke.Sullivan@weil.com

*Counsel for Respondent The Kroger Company*

Dated: March 11, 2024                    By: */s/     Edward D. Hassi*
                                                     Edward D. Hassi

                                                     *Counsel for Respondent Albertsons Companies, Inc.*

PUBLIC

## CERTIFICATE FOR ELECTRONIC FILING

I hereby certify that the electronic copy sent to the Secretary of the Commission is a true and correct copy of the paper original and that I possess a paper original of the signed document that is available for review by the parties and the adjudicator.

Dated: March 11, 2024

By: */s/     Edward D. Hassi*
Edward D. Hassi

*Counsel for Respondent Albertsons Companies, Inc.*

40

# Exhibit H

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit I

# News Details

<u>VIEW ALL NEWS</u>

## Kroger, Albertsons Companies and C&S Wholesale Grocers, LLC Announce an Updated and Expanded Divestiture Plan

April 22, 2024

*Amended Divestiture Plan Adds Stores, Facilities and Banner Names to
Enhance Competition in Overlap Geographies and to Address Regulator Concerns*

CINCINNATI, April 22, 2024 /PRNewswire/ -- The Kroger Co. (NYSE: KR) and Albertsons Companies Inc. (NYSE: ACI) announced today that they have amended their definitive agreement with C&S Wholesale Grocers, LLC (C&S) for the sale of assets in connection with their proposed merger previously announced on October 14, 2022. This amended package modifies and builds on the initial divestiture package that was announced on September 8, 2023.

The amended divestiture package responds to concerns raised by federal and state antitrust regulators regarding the original agreement. The enhanced divestiture package includes a modified and expanded store set and additional non-store assets to further enable C&S to operate competitively following the completion of the proposed merger. The companies believe the amended divestiture package will bolster their position in regulatory challenges to the proposed merger, including pending court proceedings.

"We have reached an agreement with C&S for an updated divestiture package that maintains Kroger's commitments to customers, associates and communities, addresses concerns raised by regulators, and will further ensure that C&S can successfully operate the divested stores as they are operated today," said Rodney McMullen, Kroger's Chairman and CEO. "Importantly, the updated divestiture plan continues to ensure no stores will close as a result of the merger and that all frontline associates will remain employed, all existing collective bargaining agreements will continue, and associates will continue to receive industry-leading health care and pension benefits alongside bargained-for wages. Our proposed merger with Albertsons will bring lower prices and more choices to more customers and secure the long-term future of unionized grocery jobs."

The proposed merger will create meaningful and measurable benefits for America's consumers, Kroger and Albertsons Cos. associates, and communities that both Kroger and Albertsons Cos. serve by expanding access to fresh,

PX6253-001

affordable food and establishing a more compelling alternative to large, non-union retailers. This updated divestiture plan marks another next step toward the completion of the merger by adding a well-capitalized competitor into new geographies.

"We are confident this expanded divestiture package will provide the stores, supporting assets and expert operators needed to ensure these stores continue to successfully serve their communities for many generations to come," said Eric Winn, CEO of C&S. "C&S is a leader in the grocery industry, and we are excited for this expansion of our current retail business, which is a key part of our long-term growth strategy. We look forward to welcoming storied banners, quality private label brands, and a team of experienced retail associates into the C&S family. This amended agreement enables C&S's heritage of selection, value and customer service to continue our legacy of *braggingly happy customers*."

**Transaction Details**
The updated divestiture package increases the total store count by 166 to include 579 stores that will be sold to, and continue operating as they do today by the new owner, C&S.

It maintains the sale to C&S of the QFC, Mariano's and Carrs banner names. Under the amended agreement, Kroger will also sell the Haggen banner to C&S. Stores currently under these banners that are retained by Kroger will be re-bannered into one of the retained Kroger or Albertsons Cos. banners following the close of the transaction with C&S.

Under the amended agreement, C&S will license the Albertsons banner in California and Wyoming and the Safeway banner in Arizona and Colorado. In these states, Kroger will re-banner the retained Albertsons and Safeway bannered stores following the closing of the merger. Kroger will maintain the Albertsons and Safeway banners in the remaining states.

The number of stores contained in the divestiture plan by geography is as follows:

- WA: 124 Albertsons Cos. and Kroger stores
- CA: 63 Albertsons Cos. stores
- CO: 91 Albertsons Cos. stores
- OR: 62 Albertsons Cos. and Kroger stores
- TX/LA: 30 Albertsons Cos. stores
- AZ: 101 Albertsons Cos. stores
- NV: 16 Albertsons Cos. stores
- IL: 35 Albertsons Cos. and Kroger stores
- AK: 18 Albertsons Cos. stores
- ID: 10 Albertsons Cos. stores
- NM: 9 Albertsons Cos. stores
- MT/UT/WY: 11 Albertsons Cos. stores
- DC/MD/VA/DE: 9 Harris Teeter stores

The above stores (regardless of banner) will be sold by Kroger to C&S following the closing of the merger with Albertsons Cos.

In connection with the additional stores being conveyed to C&S, the updated divestiture package includes increased distribution capacity through a combination of different and larger facilities as well as expanded transition services agreements to support C&S and the addition of one dairy facility.

The amended divestiture package also expands the corporate and office infrastructure provided to C&S given the increased store set to ensure C&S can continue to operate the divested stores competitively and cohesively. All fuel centers and pharmacies associated with the divested stores will remain with the stores and continue to operate.

The amended agreement maintains the divestiture of private label brands Debi Lilly Design, Primo Taglio, Open Nature, ReadyMeals and Waterfront Bistro to C&S. The revised agreement also provides C&S with access to the Signature and O Organics private label brands.

The updated plan will:

- Extend a competitor to new geographies through the sale of stores to a well-capitalized buyer that is led by seasoned operators with a strong balance sheet and a sound business plan;
- Ensure that no stores will close as a result of the merger;
- Maintain all current collective bargaining agreements, which include industry-leading healthcare and pension benefits, bargained-for wages, and ensuring frontline associates remain employed; and

PX6253-002

• Commit to invest in associates and stores for the long term.

Subject to fulfillment of customary closing conditions, including Federal Trade Commission and/or other governmental clearance, and the completion of the Kroger-Albertsons merger, C&S will pay Kroger an all-cash consideration of approximately $2.9 billion, including customary adjustments.

**Merger creates meaningful benefits for customers, associates and communities**
The proposed merger with Albertsons Cos. will produce meaningful and measurable benefits for customers, associates and communities across the country. The combined company committed that no stores, distribution centers or manufacturing facilities will close as a result of the merger.

Customers will benefit from lower prices and more choices following the merger close. Kroger committed to investing $500 million to begin lowering prices day one post-close, and an additional $1.3 billion to improve Albertsons Cos.' stores.

This commitment builds on Kroger's long track record of reducing prices every year, with $5 billion invested to lower prices since 2003. Customers will also have access to more favorite items from their own communities, as Kroger committed to increasing the number of local products in its stores by 10 percent post-close. This merger creates more opportunities for families to access the fresh, affordable foods they love.

As a combined company, Kroger committed to investing $1 billion to raise wages and comprehensive benefits. This builds on the incremental $2.4 billion Kroger invested to improve wages and comprehensive benefits since 2018. To provide the best holistic support for each associate, the company will also extend continuing education and financial literacy benefits to all associates following the merger close. As union membership continues to decline nationwide, especially in the grocery industry, this merger is the best way to secure union jobs. Kroger has added more than 100,000 good-paying union jobs since 2012.

The proposed merger will allow the combined company to invest more deeply to end hunger in communities across America. In 2023, Kroger committed to donating 10 billion meals to families across the U.S. by 2030. Bringing these companies together provides one more step toward achieving communities that are free from hunger and food waste.

Kroger and Albertsons Cos. remain committed to defending the merger in court and unlocking the many benefits it offers.

Read more about the combined company's commitment to customers, associates and communities at www.krogeralbertsons.com

**About Kroger**
At The Kroger Co. (NYSE: KR), we are dedicated to our Purpose: To Feed the Human Spirit™. We are, across our family of companies nearly half a million associates who serve over 11 million customers daily through a seamless digital shopping experience and retail food stores under a variety of banner names, serving America through food inspiration and uplift, and creating #ZeroHungerZeroWaste communities by 2025. To learn more about us, visit our newsroom and investor relations site.

This press release contains certain statements that constitute "forward-looking statements" within the meaning of federal securities laws, including statements regarding the effects of the proposed transaction and updated divestiture plan. These statements are based on the assumptions and beliefs of Kroger and Albertsons management in light of the information currently available to them. Such statements are indicated by words or phrases such as "create," "committed," "expand," "establish," "ensure," "enhance," "extend," "completion," "continue," and "will." Various uncertainties and other factors could cause actual results to differ materially from those contained in the forward-looking statements. These include the specific risk factors identified in "Risk Factors" in each of Kroger's and Albertsons' annual report on Form 10-K for the last fiscal year and any subsequent filings, as well as the following: the expected timing and likelihood of completion of the proposed transaction and updated divestiture plan, including the timing, receipt and terms and conditions of any required governmental and regulatory clearance of the proposed transaction and updated divestiture plan and/or resolution of pending litigation challenging the merger; the impact of the proposed updated divestiture plan; the occurrence of any event, change or other circumstances that could give rise to the termination of the updated divestiture agreement; the outcome of any legal proceedings that may be instituted against the parties and others following announcement of the merger agreement and proposed transaction or updated divestiture plan; the inability to consummate the proposed transaction or updated divestiture plan due to the failure to satisfy other conditions to complete the proposed transaction or updated divestiture plan; risks that the proposed transaction disrupts current plans and operations of Kroger and Albertsons Cos.; the ability to identify and recognize the anticipated benefits of the updated divestiture plan, including but not limited to the ability to enhance competition in overlap geographies and to address regulator concerns, create meaningful and measurable benefits for America's

PX6253-003

consumers, Kroger and Albertsons associates, and communities that both Kroger and Albertsons serve, expand access to fresh, affordable food and establish a more compelling alternative to large, non-union retailers, and commitment that all frontline associates will remain employed, all existing collective bargaining agreements will continue, and associates will continue to receive industry-leading health care and pension benefits alongside bargained-for wages; the ability of the combined company to achieve its commitment that no stores, distribution centers or manufacturing facilities will close as a result of the proposed transaction, to invest $500 million to begin lowering prices post-close, and an additional $1.3 billion to improve Albertsons Cos.' stores; the amount of the costs, fees, expenses and charges related to the proposed transaction or updated divestiture plan; and the ability of Kroger and Albertsons Cos. to successfully integrate their businesses and related operations; the ability of Kroger to maintain an investment grade credit rating; risks related to the potential impact of general economic, political and market factors on the companies or the proposed transaction or updated divestiture plan. The ability of Kroger and Albertsons Cos. to achieve the goals for the proposed transaction may also be affected by their ability to manage the factors identified above.

The forward-looking statements by Kroger and Albertsons included in this press release speak only as of the date the statements were made. Neither Kroger nor Albertsons assumes the obligation to update the information contained herein unless required by applicable law. Please refer to the reports and filings of Kroger and Albertsons with the Securities and Exchange Commission for a further discussion of the risks and uncertainties that affect them and their respective businesses.

C View original content:https://www.prnewswire.com/news-releases/kroger-albertsons-companies-and-cs-wholesale-grocers-llc-announce-an-updated-and-expanded-divestiture-plan-302123299.html

SOURCE The Kroger Co.

VIEW ALL NEWS

PX6253-004

# Exhibit J

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit K

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit L

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit M

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit N

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit O

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit P

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit Q

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit R

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit S

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit T

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit U

CONFIDENTIAL - REDACTED IN ENTIRETY

# Exhibit V

CONFIDENTIAL - REDACTED IN ENTIRETY