THOMAS J. COLLIN OH BAR #0023770
Thomas.Collin@OhioAGO.gov
Office of Ohio Attorney General Dave Yost
30 E. Broad Street, 26th Floor
Columbus, Ohio 43215
Tel: (614) 466-4328

Counsel for State of Ohio


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING, Plaintiffs, v. THE KROGER COMPANY and ALBERTSONS COMPANIES, INC., Defendants. | Case No.: 3:24-cv-00347-AN<br><br>BRIEF OF *AMICI CURIAE* THE STATES OF OHIO, ALABAMA, GEORGIA, AND IOWA IN SUPPORT OF DEFENDANTS'OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

*AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I.      Interest of *Amici Curiae* and Introduction ...............................................1

II.     Summary of Argument. .......................................................................3

III.    The Acquisition Will Not Substantially Lessen Competition for the
        Sale of Food and Grocery Products at Supermarkets. ...............................4

IV.     The Acquisition Will Be Procompetitive and Benefit Consumers. ..................11

V.      Divestiture of Stores in Geographic Areas Where Kroger and
        Albertsons Compete Will Eliminate Any Unilateral Anticompetitive
        Effects. .................................................................................................13

VI.     Conclusion. ...........................................................................................15

*AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO
          MOTION FOR PRELIMINARY INJUNCTION

I.        **Interest of *Amici Curiae* and Introduction.**[1]

As the chief law enforcement officers in the States of Ohio, Alabama, Georgia, and Iowa, the Attorneys General have a strong interest in ensuring that the antitrust laws are enforced for the benefit of their States' consumers.  This interest includes guarding against federal agency actions, such as this one, that disregard the facts, ignore controlling precedent, and threaten harm to consumers.  The Attorneys General submit this Brief because the Federal Trade Commission ("Commission") has paid no attention to market realities or its own case law in seeking to block the acquisition of Albertsons Companies, Inc. ("Albertsons") by The Kroger Co. ("Kroger").  The acquisition would likely increase, not restrain, competition in the market for grocery sales, benefiting consumers.  It promises to strengthen Kroger's ability to compete effectively for consumer dollars in an already crowded field of retailers, and there is no factual or legal basis for the Commission to claim otherwise.

The Commission's Complaint, ECF No. 1, filed February 26, 2024, imagines a retail landscape in which consumers have no practical alternatives to supermarkets as their source for retail groceries and alleges that supermarkets, which it defines to include supercenters like Walmart, constitute a separate relevant market for antitrust analysis.  Since Kroger and Albertsons are both supermarkets, the acquisition, under this logic, violates Section 7 of the Clayton Act (15 U.S.C. § 18).  The Commission advances arguments in support of such a market in its Memorandum of Law in Support of Plaintiffs' Preliminary Injunction Motion ("Plaintiffs'

---

[1] This brief was not authored in whole or part by counsel for a party.  No party or its counsel contributed money that was intended to fund preparing or submitting this brief, and no person other than the *amici curiae* contributed money that was intended to fund preparing or submitting the brief.

Page 1        *AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO
              MOTION FOR PRELIMINARY INJUNCTION

Memorandum of Law"), ECF No. 205, filed July 30, 2024, and the arguments track allegations in the Complaint. This Brief will refer to the allegations in the Complaint.

Common sense and market evidence conclusively refute the Commission's simplistic vision of the retail grocery market, and blocking the acquisition would weaken, not protect, competition among firms vying for consumer grocery purchases. Compounding the error of a false market definition, the Commission refuses even to entertain the parties' plan to preserve competition by divesting stores in geographic markets where they now have overlapping retail operations.

The fallacy in isolating supermarkets as a line of commerce under Section 7 becomes obvious when its implications are considered. Merger of a supermarket chain and a non-supermarket grocery retailer, *e.g.*, a club grocer like Sam's Club, would, under this construct, escape antitrust scrutiny, because the parties are in different lines of commerce. By definition, no horizontal foreclosure could result.

This is a case in which a federal agency is exploiting the antitrust laws in pursuit of a policy goal – prohibition of all mergers of large grocery store chains – devoid of economic justification, and the Attorneys General urge the Court to reject misuse of the Federal Trade Commission and Clayton Acts for this purpose. The success of Kroger as a grocery retailer should be rewarded, not punished, and the antitrust laws must not be enforced to chill the very competition they seek to protect. Blocking this transaction would diametrically conflict with the congressionally mandated duty of the Commission to protect and promote consumer welfare.

Page 2        *AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO
              MOTION FOR PRELIMINARY INJUNCTION

II.    **Summary of Argument.**

The Commission alleges that the proposed acquisition by Kroger of the outstanding shares of Albertsons will, if consummated, violate Section 7 of the Clayton Act because it may substantially lessen competition in a line of commerce.   The Commission alleges that the acquisition will lessen competition in (1) local markets for the sale of food and grocery products at supermarkets and (2) the market for union grocery labor.   It filed this action pursuant to Section 13(b) of the Federal Trade Commission Act (15 U.S.C. § 53(b)) to prevent Kroger and Albertsons from concluding the acquisition prior to adjudication of the administrative complaint it signed on February 26, 2024, *In the Matter of The Kroger Company and Albertsons Companies, Inc*., Docket No. D-9428.

*Supermarkets as a relevant market.*   The Commission alleges that the line of retail commerce affected by the acquisition is traditional supermarkets and supercenters, to which it refers as "supermarkets."   Complaint at ¶ 43.   It alleges that the acquisition would violate Section 7 because it would "create or enhance market power" (*id.* at ¶ 56) in communities in 16 states and the District of Columbia in which Kroger and Albertsons each have stores.   *Id.* at ¶ 52. Supermarkets cannot plausibly be viewed as the retail market relevant to the acquisition, however, and the Commission has previously rejected supermarkets as a relevant market.   The acquisition will, in fact, not lessen competition among firms selling groceries at retail and will not curtail consumer choices.

Since there is no factual or legal basis for a finding that supermarkets are a line of commerce under Section 7, the Commission cannot demonstrate, as Section 13(b) requires, "likelihood of ultimate success" in the administrative proceeding for its claim that the effect of the

acquisition may be substantially to lessen competition in local markets for the sale of food and grocery products at supermarkets.

_Divestiture as a remedy._  Kroger and Albertsons have nationwide operations, but their stores overlap in only a limited number of locales.  The Commission objects to the parties' divestiture plan on the ground that C&S Wholesale Grocers, LLC ("C&S"), the entity that has agreed to buy and operate stores to be divested by Kroger and Albertsons, is not a suitable supermarket operator, but it previously took exactly the opposite position in another recent merger case.  Its objections to C&S are contrived, and divesting stores to C&S where Kroger and Albertsons each now compete will eliminate any issues under Section 7.

_Scope of this Brief._  The Commission filed this action in aid of its administrative complaint, and this Brief addresses its arguments for an injunction pending conclusion of the agency adjudication.  The Attorneys General take no position on the interests or arguments of the States and the District of Columbia that have joined the Commission as plaintiffs.

## III.  <u>The Acquisition Will Not Substantially Lessen Competition for the Sale of Food and Grocery Products at Supermarkets.</u>

To prevail in an action challenging an acquisition or merger under Section 7, the Commission must demonstrate that the effect of the transaction may be substantially to lessen competition in a line of commerce, and the Commission has the burden of proving what the relevant market is and how the transaction may substantially lessen competition in the market. The Commission will be unable to show that supermarkets are a relevant product market.

_The Commission's relevant market: supermarkets._   The Commission points to supermarkets as "one-stop shopping" destinations (Complaint at ¶ 44) and, for this reason, views them as a relevant market for analyzing competitive effects of the acquisition.  It acknowledges

*AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO
           MOTION FOR PRELIMINARY INJUNCTION

that consumers can buy groceries from other categories of vendors – *e.g.*, club stores (Costco, Sam's Club); limited assortment stores (Aldi, Lidl); premium natural and organic stores (Whole Foods); dollar stores (Dollar General, Family Dollar); and online retailers (*id.* at ¶ 48) – but it alleges that these are not realistic supply alternatives.  It alleges that consumers would not, in response to a hypothetical supermarket monopolist implementing a small but significant and non-transitory price increase, shift a significant volume of purchases away from supermarkets.  *Id.*  The allegation is pure invention.  Consumers have already shifted purchases away from supermarkets, but not because of price increases.  They have shifted because of ready access to multiple shopping alternatives.

The error in treating supermarkets as a separate relevant market is proved by its corollary – *i.e.*, merger of a supermarket with a non-supermarket grocery retailer would not be likely substantially to lessen competition, because each party is in a different line of commerce.  Under the market definition the Commission urges here, it would be foreclosed from challenging the merger of a large supermarket chain with an equally large, or larger, non-supermarket grocery retailer, regardless of the impact on consumers.  It would be barred, for example, from objecting to a supermarket chain's acquisition of Amazon's Whole Foods, with $65 billion in grocery sales in 2023.[2]  According to the Commission, Whole Foods has "non-supermarket retail offerings" and "focus[es] on a set of customers that is distinct from supermarket customers."  Complaint at ¶ 48.  Similarly, it could not object to a merger of Costco, with $100 billion in grocery sales in 2023,[3]

---

[2] *See* Solomon Partners, *U.S. Grocery – A Few Things You Might Not Know*, at 10 (Summer 2024).  This report was prepared in support of the Kroger-Albertsons transaction, and it lists examples of retailers by category and size.  It is available at https://www.krogeralbertsons.com under the "Resources" tab and the "Grocery Industry Landscape" title.

[3] *See id.*

*AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION

into a large supermarket chain, because it too has "non-supermarket retail offerings," carries "fewer food and grocery SKUs than supermarkets," and has fewer locations.  Complaint at ¶ 48.  Under the Commission's relevant market taxonomy, these deals would get a free pass.  They could prove to be anticompetitive, but the Commission would never review them, since the merging parties are in separate product markets and, *ipso facto*, no horizontal foreclosure could result.

   *The retail market for groceries.*  Shopping resources available to consumers vary from community to community, but the universe of brick-and-mortar grocery vendors includes supercenters,[4] club grocers,[5] discount grocers,[6] dollar grocers,[7] drug grocers,[8] and regional and national supermarket chains.[9]  Kroger and Albertsons stores face intense competition from retailers other than supermarkets, and Walmart is by far the largest competitor, with three times the annual sales volume of Kroger in 2023.[10]

   Brick-and-mortar stores are not the only source of competition.  Consumers also purchase groceries online. Online grocery sales in the United States totaled $159 billion in 2023, and 28% of American adults shop online at least once a month.[11]  Consumers spent $45.71 billion on groceries purchased online from Walmart in 2023; $35.46 billion on purchases from Amazon; and

---

[4] Walmart, Target, Meijer.  *See id.* at 7.

[5] Costco, Sam's Club, BJ's.  *See id.*

[6] *E.g.*, Aldi, Trader Joe's, Lidl.  *See id.*

[7] Dollar General, Dollar Tree, Family Dollar.  *See id.*

[8] CVS, Walgreens, Rite Aid.  *See id.*

[9] *E.g.*, Kroger, Albertsons, Publix, Ahold Delhaize (Food Lion), Giant Eagle, HyVee, Wegmans, SpartanNash.  *See id.*

[10] *See id.* at 10.  Walmart had $324 billion in grocery sales in 2023, compared to $113 billion for Kroger.

[11] CapitalOne Shopping Research, Online Grocery Shopping Statistics (Jan. 6, 2024), *available at* https://capitaloneshopping.com/research/online-grocery-shopping-statistics/.

*AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

$15.85 billion on purchases from Kroger.[12]  Thirty-nine percent of consumers now buy their groceries through a mix of physical and digital channels,[13] and 37% do not purchase any groceries from physical grocery stores.[14]

Defining the relevant market as supermarkets alone thus has no basis in fact.

_The Commission has rejected supermarkets as a relevant market._  The Commission has itself rejected the very market definition that it urges in this case.  It explained in _The Grand Union Co.,_ 102 F.T.C. 812 (1983), a litigated case with a fully-developed evidentiary record, how the product market is to be defined when the merger of supermarket chains is evaluated under Section 7, and it is not supermarkets.  In _Grand Union_, Grand Union Company operated 474 supermarkets in the Northeast and was the eleventh largest supermarket chain in the country.  _Id._ at 1032-33.  It acquired Colonial Stores in 1978, which operated 378 supermarkets in seven Southeastern states and was the fifteenth largest supermarket chain prior to the merger.  _Id._ at 1033. The Commission sued under Section 7, seeking to unwind the acquisition.

Following an agency hearing, the Administrative Law Judge identified the relevant market as sales by "supermarkets" and defined a "supermarket" as a store greater than 10,000 square feet in size and having annual sales exceeding $1.5 million.  _Id._ at 1042.  On appeal by Grand Union to the Commission, the Commission ruled that the definitional criteria were arbitrary and thereby excluded "an unacceptably large portion of traders from the market analysis needed to assess the

---

[12] _Id._
[13] PYMNTS, Changes in Grocery Shopping Habits and Perceptions (Feb. 2023), _available at_ https://www.pymnts.com/wp-content/uploads/2023/02/PYMNTS-Changes-in-Grocery-Shopping-Habits-and-Perceptions.pdf.
[14] _Id._

legality of the challenged acquisition, and thus do not provide a sound economic framework for that analysis." *Id.* at 1043.

The Commission rejected the argument that the wide range of products offered by supermarkets warranted identifying them as a separate market:

> Under the analysis advanced by complaint counsel and adopted by the ALJ, retail grocery stores carrying several thousand items *identical* to those found in supermarkets would be deemed to exert *no* competitive pressure upon supermarkets selling those items. We believe that the record demonstrates that a considerable degree of competition exists between supermarkets and retail grocery stores selling a significant number of the same items.

*Id*. at 1044 (emphasis in original).

The Commission agreed that supermarkets offer a "cluster of services" that made one-stop shopping possible and that this attribute was preferred by many consumers. *Id.*  It declined to accept the argument that this feature supported recognition of supermarkets as a separate product market, however.  The Commission noted that there likely were customers who patronized supermarkets intermittently, taking advantage of the one-stop advantage but at the same time continuing to shop at box or warehouse stores.  *Id.*  There were no services or products offered by supermarkets that were not available at other grocery stores.  *Id.* at 1045.

The Commission held that the ALJ's finding that supermarkets only compete with other supermarkets – and therefore should be viewed as a separate market – was contradicted by the record.  *Id.*  It concluded by holding that "the appropriate product market approximation must incorporate at least some of the competitive effects exerted by non-supermarket retailers in addition to those competitive effects attributable to supermarkets."  *Id.* at 1046.  It held that the product market definition must include *all retail grocery stores*, excluding military commissaries

*AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

and fast-food outlets.  *Id.*

Facing a retail market offering consumers far more shopping choices and dramatically more fractionated than that which it confronted in *Grand Union*, the Commission now ignores the ruling, citing, instead, a 1988 district court preliminary injunction decision that used a supermarket product definition (Plaintiffs' Memorandum of Law at 24-25).  The Commission was not party to the 1988 litigation, *California by Van De Kamp v. American Stores Co.,* 697 F. Supp. 1125 (C.D. Cal. 1988), *rev'd on other grounds*, 872 F.2d 837 (9th Cir. 1989), *rev'd*, 495 U.S. 271 (1990), and the Ninth Circuit, on appeal, expressed doubt about the district court's market definition, 872 F.2d at 841 ("Were we to evaluate independently the evidence of the relevant product market, we might reach a different conclusion.  But the ultimate determination must await our review of any subsequent permanent injunction. . . .  Indeed, after all evidence is presented at trial, the fact finder may come to a different view of the market.").  The decision has no effect on the continuing validity of *Grand Union*, and citing it without mention of the opposite holding in *Grand Union* invites question as to whether the Commission has satisfied its obligation to bring relevant authority to this Court's attention.

There has been no change in law, and failure by the Commission to follow its own precedent is not a function of inadvertence or institutional amnesia.  Nor is its failure to cite the *Grand Union* holding.  Deviation from *Grand Union* evidences, instead, conscious rejection of careful economic analysis in favor of an outcome-determinative market definition aligning with

the Commission's current merger policy, under which mergers of grocery store chains are presumptively unlawful.[15]

The Commission has long disregarded *Grand Union* as it negotiated consent decrees involving mergers of grocery store chains. In a 1999 complaint challenging acquisition of American Stores Company by what was then known as Albertson's, Inc., the Commission alleged that the relevant line of commerce was the retail sale of food and grocery items in supermarkets.[16] It alleged the same line of commerce in a more recent merger of grocery store chains in the Northeast.[17] Unadjudicated consent decrees are not precedent, however, and no litigated market definition analysis has displaced *Grand Union.*

---

[15] The current Chair of the Commission has credited the view that concentration in the retail grocery market harms consumers. *See* Lina Khan & Sandeep Vaheesan, *Market Power and Inequality: The Antitrust Counterrevolution and Its Discontents*, 11 HARV. LAW & POLICY REV. 235, 255 (2017) ("While grocers often tout efficiencies as a benefit of mergers, little evidence suggests that consumers have actually witnessed lower prices. Instead, concentration seems to have resulted in higher prices." (footnote omitted)). In its press release announcing this action, the Commission echoed this attitude: ". . . [T]he proposed deal will eliminate fierce competition between Kroger and Albertsons, leading to higher prices for groceries and other essential household items for millions of Americans." Press Release, Fed. Trade Comm'n, FTC Challenges Kroger's Acquisition of Albertsons (Feb. 26, 2024).

[16] *See* Fed. Trade Comm'n, Analysis of the Draft Complaint and Proposed Consent Order to Aid Public Comment, at 2, *In the matter of Albertson's, Inc. and American Stores Co.*, File No. 981-0339 (F.T.C. June 22, 1999), *available at h*ttps://www.ftc.gov/sites/default/files/documents/cases/1999/06/alameristoresana.pdf.

[17] *See* Fed. Trade Comm'n, Analysis of Agreement Containing Consent Orders to Aid Public Comment, *In the matter of Golub Corp. and Tops Markets Corp.*, FTC Docket No. C-4753, 86 Fed. Reg 66304, 66305 (Nov. 22, 2021) (stating that the retail sale of food and other grocery products in supermarkets is the relevant market affected by the merger of The Golub Corporation and Tops Markets Corporation, operating, respectively, 131 grocery stores in New York, Connecticut, and Vermont and 162 stores in New York, Pennsylvania, and Vermont, and that the "ability to offer consumers one-stop shopping is the critical difference between supermarkets and other food retailers") [hereinafter cited as *Golub Corp.*].

An agency is not free to ignore its own precedents, but that is what the Commission has done.  By positing supermarkets as a relevant market, it stands squarely in conflict with *Grand Union*.  An agency changing its course "must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored," *NLRB v. CNN Am., Inc.*, 865 F.3d 740, 751 (D.C. Cir. 2017) (citation omitted), and the Commission has failed to do so.  Failure by the Commission in the administrative proceeding to follow *Grand Union* would, if adverse to Kroger and Albertsons, result in an arbitrary and capricious judgment.  *See Ramaprakash v. FAA*, 346 F.3d 1121, 1125 (D.C. Cir. 2003) ("An agency's failure to come to grips with conflicting precedent constitutes 'an inexcusable departure from the essential requirement of reasoned decision making.'" (citation omitted)); *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995) ("Where an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious.").

There is, thus, no basis upon which this Court could conclude that the Commission will likely succeed in its administrative proceedings in proving that supermarkets are the relevant retail product market.

## IV.    The Acquisition Will Be Procompetitive and Benefit Consumers.

The Commission alleges that the acquisition will "destroy" competition between Kroger and Albertsons (Complaint at ¶ 6) and that this destruction "risks raising prices, worsening services, and lowering quality" for consumers "who rely on Kroger and Albertsons for their groceries and other everyday goods." *Id.*  The claim assumes that consumers are walled off from any other sources for groceries and have no alternative but to buy all their needs from either Kroger or Albertsons alone.  The assumption is fanciful, and the Commission's pleading theatrics do not

change the fact that Kroger faces intense competition from multiple quarters.  The acquisition will not lessen this competition.

The acquisition will be procompetitive.  It can be expected to strengthen Kroger's ability to compete more effectively in the wide-open market for consumers' retail grocery dollars.  It will have no effect on competition between Kroger and Albertsons in the vast majority of communities in which only one of them has stores.  Nationwide, the acquisition should enable Kroger to compete more aggressively on price, deliver improved service, and respond better to consumer needs.[18]  In claiming that the acquisition will have exactly the opposite effects, the Commission is oblivious to the plain-as-day economic reality that raising prices, worsening services, and lowering quality – its allegations – would actually weaken Kroger as a retailer and drive consumers into the waiting arms of its many competitors.

Given its own way, the Commission would simply prohibit all mergers of grocery store chains, dispensing with the inconvenient need actually to prove that a merger may substantially lessen competition.  The Clayton Act cannot be used to block a transaction such as this, however, in which consumers will gain from a stronger competitor in the market, and this Court should not aid the Commission in pursuing an economically groundless policy goal.

---

[18] *See, e.g.,* Exhibit 99.1 to Form 8-K of The Kroger Co., filed with the Securities & Exchange Comm'n Oct. 13, 2022 ("Kroger and Albertsons Cos. will be better positioned to relieve the inflationary pressures facing shoppers with a combined portfolio of approximately 34,000 total private label products across premium, natural and organic, and opening price point brands.").

*AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION

## V.    Divestiture of Stores in Geographic Areas Where Kroger and Albertsons Compete Will Eliminate Any Unilateral Anticompetitive Effects.

Kroger and Albertsons plan to divest stores to C&S in communities where their stores overlap,[19] and divestiture is intended to preserve competition in the retail grocery market in these locales.  The Commission has routinely approved divestiture of overlapping stores in the process of consenting to grocery store chain mergers challenged under Section 7,[20] and partial divestiture is an accepted remedy when a merger would impact only limited geographic markets.[21]  The Commission objects, however, to the proposed divestiture to C&S because, according to the Commission, C&S is "poorly positioned to operate these stores successfully."  Complaint at ¶ 107. It alleges that C&S "previously tried and failed to operate other supermarkets successfully, even at a much smaller scale than this vast and complex transaction."  *Id.* at ¶ 111.

---

[19] *See* Exhibit 99.3 to Form 8-K of The Kroger Co., filed with the Securities & Exchange Comm'n Sept. 8, 2023.  The parties' agreement with C&S to sell it stores was amended April 22, 2024 to increase the number of divested stores from 413 to 579.  *See* Exhibit 99.1 to Form 8-K of The Kroger Co., filed with the Securities & Exchange Comm'n April 22, 2024.

[20] *See, e.g., Golub Corp.*, *supra* note 17, 86 Fed. Reg. at 66306 ("The proposed Order, which requires the divestiture of Tops supermarkets in each relevant market to a Commission-approved upfront buyer, C&S, will restore fully the competition that otherwise would be eliminated in these markets as a result of the Merger."); Fed. Trade Comm'n, Analysis to Aid Public Comment, *In the matter of Koninklijke Ahold N.V. and Delhaize Group NV/SA*, FTC Docket No. C-4588, 81 Fed. Reg. 51888, 51891 (Aug. 5, 2016) ("The proposed remedy, which requires the divestiture of either Ahold or Delhaize supermarkets in each relevant market to seven Commission-approved upfront buyers . . ., will restore fully the competition that would otherwise be eliminated in these markets as a result of the Merger.")

[21] *See, e.g., RSR Corp. v. Fed. Trade Comm'n*, 602 F.2d 1317, 1325-26 (9th Cir. 1979) ("The FTC determined that complete divestiture of all pre-merger Quemetco assets would not be necessary to restore competition in the secondary lead market.  The FTC instead proposed that RSR should divest itself of the Indianapolis, Walkill, and City of Industry plants, retaining its Dallas plant and the former Quemetco plant in Seattle. . . .  [W]e believe that the FTC's proposed divestiture plan is a reasonable one.")

*AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Kroger and Albertsons operate more than 5,000 stores throughout the country, and the areas of competitive overlap implicate only a tenth of them.  The Commission's objections to C&S appear calculated to buttress the goal of blocking the acquisition entirely, not reaching an economically satisfactory outcome for an otherwise procompetitive transaction.  When viewed against its previous approval of C&S as a supermarket operator, the objections border on pretextual.

The Commission found C&S to be a suitable buyer for twelve stores operated by Tops Markets Corp. in New York and Vermont to be divested in 2022.  The divestiture was far smaller than what is now proposed, but this Commission endorsement of C&S two years ago as an operator of supermarkets differs strikingly from what it now alleges:

> The proposed buyer [C&S] appears to be a suitable purchaser well-positioned to enter the relevant markets through the divested stores and prevent the increase in market concentration and likely competitive harm that otherwise would have resulted from the Merger.  The supermarkets currently owned by C&S are all located outside the relevant geographic markets in which it is purchasing divested stores.

> C&S is the largest private wholesale grocery store company and is the eleventh largest company in America.  C&S has owned and operated retail stores in the past, including in certain of the relevant markets.  C&S recently expanded its retail operations with the acquisition of eleven Piggly Wiggly Midwest retail stores and hired a former retail grocery executive with significant retail experience to lead retail efforts.  C&S also has sufficient distribution and supply capabilities through its wholesale business, which can efficiently supply the twelve stores.[22]

According to its website, https://www.cswg.com, C&S operates eleven Grand Union supermarkets in New York and Vermont and hundreds of supermarkets under the Piggly Wiggly

---

[22] *Golub Corp.*, *supra* note 17, 86 Fed. Reg. 66306.

*AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

banner in Wisconsin and 17 other states.  It has more than 600 franchised stores in its Piggly Wiggly Carolinas division[23] and 104 stores in Wisconsin in its Piggly Wiggly Midwest division.[24]

Divestiture would address any Section 7 issues in those locales where Kroger and Albertsons have overlapping operations, and the Commission's objections to the divestiture plan should be dismissed.

## VI.   <u>Conclusion.</u>

In evaluating a motion for injunctive relief under Section 13(b) of the Federal Trade Commission Act, the Court must determine the likelihood that the Commission "will ultimately succeed on the merits" of its administrative proceeding against Kroger and Albertsons under Section 7 of the Clayton Act.  *E.g.*, *FTC v. Meta Platforms Inc.*, 654 F. Supp. 3d 892, 910 (N.D. Cal. 2023) (quoting *FTC v. Warner Commc'ns Inc*., 742 F.2d 1156, 1160 (9th Cir. 1984)).  There is no likelihood that the Commission will be able to prove that the effect of the parties' transaction may be substantially to lessen competition in the line of retail commerce it has alleged, and its motion for preliminary injunction should be denied insofar as it stands on supermarkets as the relevant line of commerce.

Dated: August 16, 2024

---

[23] *See* https://www.thepig.net/history.
[24] *See* https://www.shopthepig.com/about-us.

*AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO
        MOTION FOR PRELIMINARY INJUNCTION

THE STATE OF OHIO

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General
SHAWN BUSKEN (0083585)
Deputy First Assistant Attorney General
BETH A. FINNERTY (0055383)
Section Chief, Antitrust Section
T. ELLIOT GAISER (0096145)
Ohio Solicitor General


*/s/ Thomas J. Collin*

THOMAS J. COLLIN (OH BAR 003770)
Principal Assistant Attorney General,
Antitrust Section
30 East Broad Street, 26th Floor
Columbus, Ohio 43215
Telephone: (614) 466-4328
Fax: (614) 995-0266
Thomas.Collin@OhioAGO.gov

*Counsel for the State of Ohio ex rel.*
*Attorney General Dave Yost*

STEVE MARSHALL
Alabama Attorney General

CHRISTOPHER M. CARR
Georgia Attorney General

BRENNA BIRD
Iowa Attorney General

*AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION

**CERTIFICATE OF SERVICE**

In accordance with Fed. R. Civ. P. 5(b)(2)(E) and LR 5-1, I hereby certify that on August 16, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Thomas J. Collin*
Thomas J. Collin (OH Bar #0023770)
Counsel for the State of Ohio ex rel.
Attorney General Dave Yost