Susan A. Musser, DC Bar # 1531486
Laura R. Hall, NY Bar # 4337408
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (202) 326-2122
Tel: (202) 326-3282
*smusser@ftc.gov; lhall1@ftc.gov*

Attorneys for Plaintiff Federal Trade Commission

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING, <br><br> Plaintiffs, <br><br> v. <br><br> THE KROGER COMPANY and ALBERTSONS COMPANIES, INC., <br><br> Defendants. | Case No.: 3:24-cv-00347-AN <br><br> **PLAINTIFFS' MOTION *IN LIMINE* FOR AN ADVERSE INFERENCE** <br><br> **REDACTED VERSION** |

**CERTIFICATION PURSUANT TO LR 7-1(a)(1)**

Plaintiffs have conferred with Defendants regarding this motion, and Defendants oppose the relief sought herein.

**MOTION**

Plaintiffs respectfully request that the Court draw an adverse inference from, and take all reasonable steps necessary to cure any prejudice relating to, Albertsons' failure to preserve text messages relevant to this litigation.

## MEMORANDUM

Four of eight testifying Albertsons witnesses failed to preserve responsive text messages after receiving a preservation hold and numerous reminders.  Although the Court and Plaintiffs will never know the full extent of these lost communications, their destruction serves to obscure internal views about the likely effects of the merger and the proposed divestiture.  At least one thread—although stripped of its full context—still reveals one Albertsons executive's assessment that the merger will likely increase prices.  Because these executives' actions withheld from the Court this critical and candid record, Plaintiffs respectfully request the Court draw an adverse inference from, and take all reasonable steps necessary to cure any prejudice relating to, Albertsons' failure to preserve text messages relevant to this litigation.

## BACKGROUND

On November 3, 2022, Kroger and Albertsons notified the Federal Trade Commission ("FTC") of the parties' intent to merge.  Four days later, the FTC informed Albertsons that the merger was under investigation and specifically requested that "pending completion of this investigation, please cease all document destruction activities with respect to matters that may be of relevance to this investigation," including "the Proposed Transaction," and "the competitiveness of" Albertsons.  Musser Dec., Ex. A at 5.  In response, Albertsons ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████."  Musser Dec., Ex. B at 2-3.

In the ensuing months, the FTC and Albertsons negotiated both a list of custodians as well as the scope of production in response to the FTC's investigatory subpoena.  Relevant here,

the FTC and Albertsons agreed that ███████████████████████████████████
Musser Dec., Ex. C at 1-2.

In October 2023, the FTC first noted that Albertsons' production appeared to omit responsive text messages, highlighting in particular that several text messages involving Todd Broderick—Albertsons' Division President for Colorado—seemed to be missing one side of the conversation.  Musser Dec., Ex. D at 1-2.  On November 7, 2023, Albertsons confirmed that Mr. Broderick's "apparent one-sided conversations were not on this iPhone" and that "this may have been because of settings on the iPhone that automatically delete files after a period of time."  *Id.* at 1.  Prompted by this discovery, a week later Albertsons ███████████████████████
███████████████████████████████████"  Musser Dec., Ex. B at 3.

On January 17, 2024, the FTC requested a detailed accounting from Albertsons about how responsive documents were lost and what efforts had been taken to recover lost documents.  Musser Dec., Ex. E.  Albertsons did not respond for nearly four months.  When they finally responded, they detailed efforts to recover deleted messages from Mr. Broderick's and Vivek Sankaran's phones.  Musser Dec., Ex. F.  Although Albertsons was able to recover approximately 70 text messages from Mr. Sankaran's phone, further efforts proved unsuccessful.  *Id.* at 4.  Weeks later, Albertsons discovered—and eventually disclosed to Plaintiffs—that ██████████████
███████████████████████████████████████████████████
Musser Dec., Ex. B at 7-8.

For months, Plaintiffs have tried to seek information about the extent to which Albertsons' text messages were deleted, obtaining a court order in the Administrative Adjudication requiring production of texts from potential trial witnesses, Musser Dec., Ex. G, and raising repeated inquiries about inexplicably missing documents, *see, e.g.*, Musser Dec, Ex.

PLS' MOTION FOR ADVERSE INFERENCE

H & I.  Albertsons dismissed Plaintiffs' queries, downplaying the seriousness of their failed

preservation efforts and assuring Plaintiffs that responsive text messages had been produced.

*See, e.g.*, Musser Dec., Ex. H at 9.  And yet despite their repeated assurances, Albertsons

continues to produce dribs and drabs of previously unseen text messages, often only after

depositions have occurred and in some instances on the eve of this Court's evidentiary hearing.

*See*, *e.g.*, Musser Dec., Ex. J.  But many remain missing; Albertsons admits it cannot " ███████

███████████████████████ " and that in fact ████████████████████████

█████████████  Musser Dec., Ex. K at 10, 14.

Most notably, the following four[1] Albertsons executives—all of whom appear on either

Plaintiffs' or Defendants' witness lists—continued to delete text messages well after the FTC's

investigation began and ██████████████████████ :

- Todd Broderick, Colorado Division President (Plaintiffs' witness list)
- Carl Huntington, Pacific Northwest Division President (Plaintiffs' witness list)
- Vivek Sankaran, Chief Executive Officer (Defendants' witness list)
- Lisa Kinney, VP of Customer and Market Intelligence (Defendants' witness list)

The FTC and Albertsons agreed that each of these four executives would be among the

document custodians from the outset of the FTC's investigation.  Musser Dec., Ex. N.  And

according to Albertsons, ████████████████████████████

██████████████████████ .  Musser Dec., Ex. B at 3, 14-18.  As

---

[1] Albertsons' struggle to produce responsive text messages is not limited to these four executives. Susan Morris, the company's Chief Operating Officer, testified that ████████████████ ███████ .  Musser Dec., Ex. L at 698-99.  Yet inexplicably, Defendants initially only produced nine text message exchanges from Ms. Morris's custodial file.  *See* Musser Dec., Ex. M at 2-3. After repeated inquiries about the dearth of Ms. Morris's text messages, Albertsons suddenly produced 900 new text message exchanges a week ago, well after Ms. Morris was deposed and just before the evidentiary hearing.  *Id.*  Critically, Ms. Morris appears on Defendants' witness list, and Plaintiffs will be forced to conduct a cross-examination with no opportunity to probe this sizable new production in advance.

PLS' MOTION FOR ADVERSE INFERENCE

detailed below, however, each continued to delete responsive messages, in some instances up until the eve of their depositions in this matter.

_Todd Broderick_. As President of one of the key geographic markets where Kroger and Albertsons compete vigorously head-to-head, Mr. Broderick's testimony will be highlighted in Plaintiffs' case-in-chief.  Mr. Broderick testified that ███████████████████████

███████████████████████████████ Musser Dec., Ex. O at 71, 73, 75, 79.

He admitted, though, that ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████. _Id._ at 229-31.

While Plaintiffs and the Court will never know the exact substance of what Mr. Broderick deleted, the incomplete message threads that Albertsons has produced in this matter reveal that he was texting about the very substance of this litigation.  In one example, Albertsons produced a text message thread involving Mr. Broderick and his Senior Director of Human Resources, Scott Shores.  _See_ Musser Dec., Ex. P.  The exchange occurred in the early evening of November 29, 2022 (two weeks after the preservation notice was issued), _id.,_ ███████████████████

███████████████████████████████████ Musser Dec., Ex. Q at 111, 116-17.  Regrettably, all that remains is Mr. Shores's side of the of the conversation; but even that reveals a great deal.  Speaking about the merger, Mr. Shores wrote:



Musser Dec., Ex. P.  Mr. Shores testified that, ███████████████████████████████

███████████████; those texts appear to have been deleted sometime after November 29,

PLS' MOTION FOR ADVERSE INFERENCE

2022.  Musser Dec., Ex. Q at 112.  In fact, the preserved thread includes several instances where Mr. Shores seemingly responds to a message, though we have no record of what he is responding to.  For example, at 5:18pm Mr. Shores wrote "█████████████" though the produced thread includes no message from Mr. Broderick.  Musser Dec., Ex. P at 2; *see also* Musser Dec., Ex. Q at 118-19.  Later, as shown in the below excerpt, Mr. Shores begins a message with "████████" but again the thread reveals no message from Mr. Broderick that Mr. Shores is responding to.



Musser Dec., Ex. P at 4.  For his part, Mr. Broderick ██████████████████████████████

██████████████████████████████████████████████████

████████████.  Musser Dec., Ex. O at 232-38.  The FTC alerted Albertsons to this missing exchange in November 2023 and requested that Albertsons search Mr. Shores's phone for the full

PLS' MOTION FOR ADVERSE INFERENCE

exchange with Mr. Broderick.  It was not until May 2024, at Plaintiffs' insistence, that Albertsons

finally attempted to retrieve Mr. Broderick's deleted messages from those he texted, including

Mr. Shores.  Musser Dec., Ex. K at 11.  By that time, however, the messages could not be

retrieved because ███████████████████████████████████████████████

███████████████████████  Musser Dec., Ex. Q at 140-50.

        Mr. Broderick and Albertsons claim that ███████████████████████████████

███████████████  but the evidence suggests otherwise.  Mr. Broderick appears to have

preserved his own messages from just days later on December 2, which—perhaps

conveniently—include sentiments defending the proposed merger.  *See* Musser Dec., Ex. R.  If

Mr. Broderick's messages were missing from the November 29 thread with Mr. Shores because

of ███████████████████  his December 2 messages would be missing as well.  Instead,

it appears Mr. Broderick was manually deleting the messages he sent on November 29.

        *Vivek Sankaran*.  As Albertsons' CEO, Mr. Sankaran is a significant witness for

Defendants.  Mr. Sankaran testified that ██████████████████████████████████

█████████████████████████████████  Musser Dec., Ex. S at 54; Ex. T at 425.

Significantly, Mr. Sankaran admitted that he ██████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████  Musser Dec., Ex. T at 437-39.

        Plaintiffs and this Court can only guess as to the substance of Mr. Sankaran's text

messages around the time of the merger agreement and the original divestiture.  Despite

███████████████████████████████████████████████████, Musser Dec., Ex.

T at 429, 431, the FTC learned for the first time during his investigational hearing that ███

█████████████████████████████████████, Musser Dec., Ex. S at 54-55, 57.

*Other Albertsons' Executives.* Lisa Kinney, also on Defendants' witness list, seemed like a possible avenue for recovering some of Mr. Sankaran's messages. Ms. Kinney testified that ██████████████████████████████████. Musser Dec., Ex. U at 101-05. Unfortunately, Ms. Kinney ████████████████████████████████████ ██████████████████. *Id.* at 107-08, 336-37.

Carl Huntington is a President of one of the key geographic markets where Defendants compete, and so his testimony will also be part of Plaintiffs' case-in-chief. Mr. Huntington testified that █████████████████████████████████████" Musser Dec., Ex. V at 255-57. Mr. Huntington claimed ██████████████████████ █████████████████████████████████████████████████████ ███████████████████████. *Id.* at 259-62.

## ANALYSIS

Of the eight Albertsons' executives set to testify at this evidentiary hearing, four exhibited a pervasive practice of deleting business-related text messages. The deletion of text messages occurred well after ██████████████████, after the FTC's investigation began, and in some cases after this Complaint was filed. Facing a severely limited ability to impeach these witnesses, Plaintiffs respectfully request that the Court draw an adverse inference about the content of these missing text messages. In the alternative, Plaintiffs request that the testimony of these four Albertsons' executives—about the likely consequences of the merger and in particular whether █████████████████████████████ or whether the divestiture will remedy the merger's anticompetitive impacts—should be viewed with skepticism.

I.    **The Court May Infer that Albertsons' Deleted Text Messages Were Adverse to Defendants**

The Ninth Circuit provides that "[a] party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (citation omitted); *see also Dallas Buyers Club, LLC v. Doughty*, 2016 WL 1690090, at *6-7 (D. Or. Apr. 27, 2016).  And "[i]n the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Dallas Buyers Club*, 2016 WL 1690090, at *6 (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012)); *see also Leon*, 464 F.3d at 959 ("[B]ecause 'the relevance of . . . destroyed documents cannot be clearly ascertained because the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'" (citation omitted)).

Albertsons' executives' claimed use of an "auto-delete" feature does not change the analysis.  Courts have found that an employer's failure to automatically preserve communications—i.e., an employer's decision to give individual employees discretion to decide how and what to preserve—is sufficient to show willful destruction of evidence.  *See, e.g.*, *In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981 (N.D. Cal. 2023); *United States v. Google LLC*, — F. Supp. 3d —, 2024 WL 3647498, at *133-34 (D.D.C. Aug. 5, 2024) (warning that "[a]ny company that puts the onus on its employees to identify and preserve relevant evidence does so at its own peril," but declining to draw an adverse inference because it would not change the court's decision).

Here, responsive text messages have been lost and cannot be recovered.  Musser Dec., Ex. K at 10, 14.  Despite their duty to preserve such communications, Albertsons' executives "did not take reasonable steps to preserve" these messages.  *Google Play*, 664 F. Supp. 3d at 993.

While it is impossible to know the content of all the deleted texts, at least some of the destroyed messages were highly relevant to the litigation and the price-increasing impact of the merger. *See Leon*, 464 F.3d at 959.  For example, Mr. Broderick's text messages with Mr. Shores about the proposed merger, ███████████████████████████████████████ ████████████████ reveal Albertsons' executives' candid opinions about the competitive impacts the merger will have and appeared to have been manually deleted.  Other Albertsons' executives likewise confirmed that ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████. *See, e.g.*, Musser Dec., Ex. T at 437-39, Ex. U at 101-05, Ex. V at 255-57.  Thus, Plaintiffs respectfully request an inference that Albertsons' deleted text messages went to the merits of this litigation, and that they were adverse to Defendants.

## II.    The Court May Order Relief Necessary to Cure Prejudice to Plaintiffs

In addition to affording Plaintiffs an adverse inference, the Court may also fashion remedies to cure any prejudice to Plaintiffs.  *See Leon*, 464 F.3d at 959 (recognizing that in past decisions, the Ninth Circuit "found prejudice when a party's refusal to provide certain documents forced [the plaintiff] to rely on incomplete and spotty evidence at trial" (cleaned up)).

Courts have recognized that, "[i]n the contemporary world of communications," there is "potential and reality of finding the modern-day litigation equivalent of a 'smoking gun' in text messages."  *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019). Defendants' production of emails does not cure the loss of responsive text messages; both are "internal, contemporaneous communications" that are "plainly relevant."  *Sage Prods., LLC v. Chemrite Copac, Inc.*, 2021 WL 5299789, at *4 (N.D. Ill. Nov. 12, 2021).  Defendants attempted

to evade producing relevant text messages in connection with this matter, arguing to the administrative law judge in the underlying merits proceeding that their production of emails and other files negates any value of text messages. *See* Musser Dec., Ex. G at 3. The administrative law judge found unpersuasive Defendants' attempt to minimize the importance of text messages and granted the FTC's motion to compel production. *See id.* at 3-4.

Here, Plaintiffs must rely on incomplete or spotty evidence at the evidentiary hearing, most notably relating to Defendants' proposed divestiture and efficiencies claims. The record reflects, for example, ███████████████████████████████████████████████

███████. *See* Musser Dec., Ex. P. The record also shows that Mr. Broderick likely responded, but Plaintiffs have no evidence of that response. Similarly, the record suggests that ██████████████████████████████████████████, but none of those messages were preserved, and so Plaintiffs are unable to reconstruct a complete record of Mr. Sankaran's contemporaneous assessment of the proposed divestiture.

Accordingly, and in addition to drawing an adverse inference as described above, Plaintiffs respectfully request that the Court cure this prejudice by granting leeway to examine in depth these four Albertsons' executives practice of deleting work-related text messages. Moreover, Plaintiffs request that the Court treat with skepticism any promises or assertions made by these executives about the planned divestiture or claimed efficiencies, given that the record is irretrievably tainted by Albertsons' failure to preserve related communications.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs ask the Court to draw an adverse inference from, and to take all reasonable steps necessary to cure any prejudice relating to, Albertsons' failure to preserve text messages relevant to this litigation.

Dated: August 14, 2024                    Respectfully submitted,

                                          /s/ Susan A. Musser
                                          Susan A. Musser, DC Bar # 1531486
                                          Laura R. Hall, NY Bar # 4337408

                                          Federal Trade Commission
                                          Bureau of Competition
                                          600 Pennsylvania Avenue, NW
                                          Washington, DC 20580
                                          Telephone: (202) 326-2122
                                          smusser@ftc.gov
                                          lhall1@ftc.gov

                                          *Attorneys for Plaintiff Federal Trade Commission*

PLS' MOTION FOR ADVERSE INFERENCE

/s/ Robert A. Bernheim
Robert A. Bernheim, AZ Bar No. 024664
Jayme L. Weber, AZ Bar No. 032608
Vinny Venkat, AZ Bar No. 038587
Connor Nolan, AZ Bar No. 038088

Arizona Office of the Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
Tel: (602) 542-5025
Robert.Bernheim@azag.gov
Jayme.Weber@azag.gov
Vinny.Venkat@azag.gov
Connor.Nolan@azag.gov

*Attorneys for Plaintiff State of Arizona*

12

/s/ Nicole Gordon
Nicole Gordon, CA Bar No. 224138

State of California
California Department of Justice
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Tel: (415) 510-3458
Facsimile: (415) 703-5480
Nicole.Gordon@doj.ca.gov

*Attorney for Plaintiff State of California*

PLS' MOTION FOR ADVERSE INFERENCE

/s/ C. William Margrabe
C. William Margrabe, DC Bar No. 90013916

Office of the Attorney General for the District of Columbia
400 6th Street, N.W, 10th Floor
Washington, D.C. 20001
Tel: (202) 727-3400
Will.Margrabe@dc.gov

*Attorney for Plaintiff District of Columbia*

PLS' MOTION FOR ADVERSE INFERENCE

/s/ Brian M. Yost
Brian M. Yost, IL Bar No. 6334138
Paul J. Harper, IL Bar No. 6335001
Alice Riechers, IL Bar No. 6272933

Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
Tel: (872) 276-3598
Email: Brian.Yost@ilag.gov
Paul.Harper@ilag.gov
Alice.Riechers@ilag.gov

*Attorneys for Plaintiff State of Illinois*

15

/s/ Schonette J. Walker
Schonette J. Walker, MD Bar No. 0512290008
Gary Honick, MD Bar No. 7806010078
Byron Warren, MD Bar No. 1612140330

Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Tel: (410) 576-6470
swalker@oag.state.md.us
ghonick@oag.state.md.us
bwarren@oag.state.md.us

*Attorneys for Plaintiff State of Maryland*

PLS' MOTION FOR ADVERSE INFERENCE

/s/ Lucas J. Tucker
Lucas J. Tucker, NV Bar No. 10252
Samantha B. Feeley, NV Bar No. 14034

Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100
ltucker@ag.nv.gov
sfeeley@ag.nv.gov

*Attorneys for Plaintiff State of Nevada*

PLS' MOTION FOR ADVERSE INFERENCE

/s/ Julie Ann Meade
Julie Ann Meade, NM Bar No. 8143
Jeff Dan Herrera, NM Bar No. 154030

New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87504
Tel: (505) 717-3500
jmeade@nmag.gov
jherrera@nmag.gov

*Attorneys for Plaintiff State of New Mexico*

PLS' MOTION FOR ADVERSE INFERENCE

/s/ Cheryl F. Hiemstra
Cheryl F. Hiemstra, OSB#133857
Tim D. Nord, OSB#882800
Chris Kayser, OSB#984244
Tania Manners, OSB#140363

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel: (503) 934-4400
Facsimile: (503) 378-5017
Cheryl.Hiemstra@doj.state.or.us
Tim.D.Nord@doj.state.or.us
cjkayser@lvklaw.com
tmanners@lvklaw.com

*Attorneys for Plaintiff State of Oregon*

PLS' MOTION FOR ADVERSE INFERENCE

/s/ William Young
William Young, WY Bar No. 8-6746

Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-7847
William.Young@wyo.gov

*Attorney for Plaintiff State of Wyoming*

20