Barrett Anderson, CA Bar # 318539
Susan A. Musser, DC Bar # 1531486
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (202) 326-2237
Tel: (202) 326-2122
banderson1@ftc.gov; smusser@ftc.gov

Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING, <br><br> Plaintiffs, <br><br> v. <br><br> THE KROGER COMPANY and ALBERTSONS COMPANIES, INC., <br><br> Defendants. | Case No.: 3:24-cv-00347-AN <br><br><br> **PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT RELATING TO DEFENDANTS' PROPOSED DIVESTITURE** <br><br><br> **REDACTED VERSION** |

## CERTIFICATION PURSUANT TO LR 7-1(a)(1)

Plaintiffs have conferred with Defendants regarding this motion, and Defendants oppose

the relief sought herein.


PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

**MOTION**

Plaintiffs respectfully move *in limine* to exclude evidence and preclude argument relating to the proposed divestiture by Defendants The Kroger Company ("Kroger") and Albertsons Companies, Inc. ("Albertsons" and, together with Kroger, "Defendants") to C&S Wholesale Grocers LLC ("C&S").

## MEMORANDUM

There is little dispute that Kroger's proposed acquisition of Albertsons ("Acquisition") would substantially lessen competition in markets across the country.  Defendants' primary defense is that their proposed divestiture to C&S would "fix" the Acquisition's anticompetitive effects.  Defendants claimed the first iteration of the divestiture ("Original Divestiture") would do that.  But Defendants have since replaced that version with a new one ("New Divestiture").  Defendants' negotiations with C&S resulting in the New Divestiture ("Divestiture Negotiations") would, had they been produced, contain each company's assessments of various proposals and assets C&S needed to transform from a wholesale grocery supplier—with limited and unsuccessful supermarket operating experience—into a supermarket competitor.  Courts in merger cases routinely consider such communications in evaluating proposed divestitures.

Defendants have withheld thousands of documents and instructed 16 deposition witnesses not to answer questions touching on Divestiture Negotiations, claiming privilege and work product.[1]  FTC challenged this in the proceeding before Chief Administrative Law Judge D. Michael Chappell ("Administrative Adjudication"); in response, Defendants claimed "[l]awyers were highly involved in the negotiations, and the negotiation strategy was also a litigation strategy."  Musser Dec., Ex. B at 1.  Judge Chappell accepted Defendants' contention that the Divestiture Negotiations were "to structure a transaction that could be defended against the pending litigation," and Kroger, Albertsons, and C&S shared a common interest even when negotiating as counterparties.  Musser Dec., Ex. C at 4-5.  Judge Chappell's decision prevented

---

[1] Defendants and C&S may have over-designated documents relating to Divestiture Negotiations as privileged or work product.  In the parallel Colorado litigation, a Special Master recently found that out of a sample set of 25 previously withheld documents, 44% were improperly withheld.  Musser Dec., Ex. A at 8-9.  Courts have found that an error rate of 25% is "unacceptably high."  *Bonner v. U.S. Dept. of State*, 928 F.2d 1148, 1154 (D.C. Cir. 1991).

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

Plaintiffs from obtaining discovery about Divestiture Negotiations.  And yet Defendants have put forth an expert who opines that ████████████████████████████████████████ ████████████████████████" and ████████████████████████████████████████████ ████████████████  Musser Dec., Ex. D ¶¶ 20, 188.

Plaintiffs therefore move to exclude evidence and argument about the New Divestiture. Defendants would unfairly wield privilege as both sword and shield if allowed to proffer their hand-picked evidence and curated expert opinion while barring Plaintiffs from obtaining contradictory proof.  Because Defendants already deployed the shield, the proper recourse is to sheath the sword—barring the New Divestiture defense.  Short of that, the Court should preclude Defendants from proffering evidence or argument about Divestiture Negotiations or subjective assessments of the New Divestiture, which would present a lopsided view of the alleged "fix."

## BACKGROUND

### I.    THE MERGER AND PROPOSED DIVESTITURES

Kroger's $24.6 billion acquisition of Albertsons—if allowed to close—would be the largest supermarket deal in history.  Redacted Complaint ¶ 1, Dkt. 87.  The combined company would have approximately 5,000 stores and 700,000 employees in 48 states and presumptively unlawful market shares in hundreds of markets across the country.  *Id.* ¶¶ 3, 9.  As Defendants admit, "there is no dispute that ████████████████████████████████████████ ████████████████████████████████████"  Musser Dec., Ex. E at 6.

The divestiture—Defendants' attempt to "fix" the Acquisition's problems—is their principal defense.  In the Administrative Adjudication, they alleged the Original Divestiture— 413 stores and other assets—would "eliminate any purported anticompetitive effects."  Musser Dec., Ex. F at 2, 27.  They also claimed "C&S will receive the assets necessary to ensure its

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

success, including physical stores, distribution centers to supply the divested stores, store and management personnel, banner rights, popular private label brands and critical transition services." Musser Dec., Ex. G at 3. But C&S explained the Original Divestiture's inadequacies to Defendants and Plaintiffs. Musser Dec., Ex. H.

On April 22, 2024, Defendants and C&S announced the New Divestiture, changing the divested assets and adding over 160 stores and licenses to selected store banners. Musser Dec., Ex. I. Defendants now claim that the New Divestiture would resolve the Acquisition's anticompetitive effects. Kroger Answer ¶¶ 10, 105-17, 128-30, 133, Dkt. 90; Albertsons Answer ¶¶ 10, 105-17, Dkt. 91. As explained in Plaintiffs' pre-hearing brief, the New Divestiture is inadequate. Dkt. 205 at 37-46. C&S, a wholesaler that has sold or closed hundreds of supermarkets in the past and lacking the necessary infrastructure, is an inadequate buyer. Moreover, the New Divestiture leaves hundreds of markets unremedied, will underperform the stores' current levels of sales and profitability for years by C&S's projections, and lacks the assets necessary to restore lost competition. Indeed, C&S plans ███████████████████ ██████████ rendering the New Divestiture no remedy at all. Musser Dec., Ex. U at 45.

## II.    DEFENDANTS AND C&S BLOCKED DISCOVERY INTO THE DIVESTITURE NEGOTIATIONS

Plaintiffs repeatedly sought discovery into Divestiture Negotiations to see the parties' true assessments of what C&S needs to operate the acquired stores and transform from a wholesale grocery supplier into a nationwide retail competitor to Defendants' merged supermarket behemoth. But Defendants and C&S blocked these inquires by asserting attorney-client privilege, attorney work product, and the common interest doctrine, to (1) withhold documents, (2) block witness testimony, and (3) shape their expert opinions.

*(1) Documents* – FTC sought documents concerning Divestiture Negotiations from

Defendants and C&S, but each withheld thousands of responsive documents on privilege grounds and refused to log negotiations between outside counsel.  Musser Dec., Ex. J Requests 1, 19, 29, 30; Ex. K; Ex. L Requests 1, 3, 12; Ex. M; Ex. N at 1-2.

FTC moved to compel in the Administrative Adjudication, arguing that "Kroger is withholding relevant documents without logging them, baselessly claiming privilege over communications between businesspeople, and withholding documents without providing sufficient information to permit [FTC] to analyze privilege claims."  Musser Dec., Ex. O at 5.  FTC also contended it was in "'substantial need of the materials' to test [Defendants'] claim that the divestiture includes 'all the asserts and personnel C&S will need to compete.'"  *Id.* at 9 (quoting Kroger Answer at 3 and 16 C.F.R. § 3.31(c)(5)).

In response, Kroger claimed that "[l]awyers were highly involved in the expanded divestiture package negotiations, setting the negotiating priorities and strategy."  Musser Dec., Ex. B at 2.  In a declaration, Yael Cosset (Kroger's "chief business negotiator" and a non-lawyer) admitted "the parties at times had disagreements on various issues in the negotiations that had to be resolved—including, for example, transition timing, which specific private label and other assets would transfer to C&S, and so forth"—but stated those disagreements were in the context of "the parties' shared goal of executing a divestiture package that would facilitate the consummation of the transaction."  *Id.* at 16, 21 (Cosset Dec. ¶¶ 3, 19).

Judge Chappell denied FTC's motion, finding "even though there may have been disagreements over particular issues during the negotiations," Defendants and C&S "share[d] a common goal of satisfying regulators and closing a divestment deal."  Musser Dec., Ex. C at 5.  As such, the FTC was barred from Divestiture Negotiations discovery.

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

*(2) Depositions* – FTC deposed 53 Defendant executives and seven C&S executives. Defendants and C&S asserted the privileges and instructed 16 witnesses—including key negotiators and 30(b)(6) designees on divestiture-related topics—not to answer questions regarding Divestiture Negotiations.

Appendix A compiles a non-exhaustive list of questions witnesses were prohibited from answering, including about asset selection, C&S's requests, divestiture proposal analyses, and areas of dispute.  For example, Mr. Cosset—Kroger's designee on divestiture-related topics— was instructed not to answer "█████████████████████████████████" Musser Dec., Ex. P at 379, or "█████████████████████████████████

█████████████" Musser Dec., Ex. Q at 156-58.  Eric Winn—C&S's CEO, ███████████,

and designee on divestiture-related topics—was instructed not to disclose "████████████████

██████████████" whether C&S requested, but did not receive, "███████████████,"

"███████" "█████████████" "█████████" or "███████" "██████" or "█████████" whether

"███████████████████████████████" and "████████████████████

████████████████" Musser Dec., Ex. R at 216-18, 241, 245-47, 254-57.

*(3) Experts* – Defendants' expert Daniel Galante's July 1, 2024, report opined on "███████

██████████████████████████████████" and "███████████████████████████"

Musser Dec., Ex. D ¶ 11.  Mr. Galante asserted he reviewed "█████████████████████████

██████████████" determining it "███████████████████████████████

███████" and "████████████████████████████████████████████"

*Id.* ¶ 12(c)-(d).  He further opined that C&S ███████████████████████████████

█████████████████████████████" *Id.* ¶ 12(d); *see also id.*

¶ 188 ("███████████████████████████████████").  As Defendants and

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

C&S withheld production of relevant documents and testimony, Plaintiffs were prevented from testing Mr. Galante's opinions with evidence from the Divestiture Negotiations about parties' subjective assessments that might undermine his conclusions.

### III.    FTC MOVED TO STRIKE DEFENDANTS' DIVESTITURE-RELATED DEFENSES IN THE ADMINISTRATIVE ADJUDICATION

FTC filed in the Administrative Adjudication a motion to strike Defendants' affirmative defenses and related denials of liability premised on the New Divestiture ("Divestiture Defenses"). Musser Dec., Ex. S. FTC argued that sword/shield doctrine should preclude Defendants from asserting Divestiture Defenses because they have barred discovery into Divestiture Negotiations. In the alternative, FTC requested that Defendants be precluded from "proffering evidence or argument about their negotiations or subjective assessments of the New Divestiture's efficacy" or that discovery be reopened. *Id.* at 9. Defendants filed an opposition, Musser Dec., Ex. T, and a decision is expected by September 9, 2024. 16 C.F.R. § 3.22(a).

### ARGUMENT

Defendants impermissibly wield privilege as both sword and shield, prejudicing Plaintiffs' ability to challenge the New Divestiture. No litigant should be permitted to assert a self-serving defense at trial after using privilege to block discovery into a critical aspect of that defense. Defendants threaten to turn this proceeding into trial by ambush, where Defendants present a made-for-litigation defense while withholding evidence that would allow Plaintiffs and the Court to properly assess their purported "fix."

"The privilege which protects attorney-client communications may not be used both as a sword and shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Under sword/shield doctrine, "parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials."

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

*Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). Courts exclude evidence and argument pursuant to sword/shield doctrine when a defendant raises a defense, but then "repeatedly invoke[s] the attorney-client privilege throughout discovery" over evidence that, in fairness, must be disclosed to challenge that defense. *Vital Pharms. v. PhD Mktg., Inc.*, 2022 WL 2284544, at *2 (C.D. Cal. Apr. 15, 2022); *see also Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001); *Hasbro, Inc. v. Sweetpea Ent., Inc.*, 2014 WL 12561624, at *2 (C.D. Cal. Mar. 18, 2014).

Parties' contemporaneous communications are crucial for an accurate and complete understanding of a defendant's proposed divestiture. Courts routinely analyze parties' subjective assessments and credit them over in-court arguments. In *FTC v. Sysco*, the court rejected a defense premised on a "divestiture of 11 'strategically located' [] distribution centers," which defendants argued would "'replace any competitive intensity lost as a result of the merger.'" 113 F. Supp. 3d 1, 73 (D.D.C. 2015). The court instead "credit[ed]" evidence showing the buyer believed 13 distribution centers, not 11, was "'the bare minimum'" to "'compete effectively for national business.'" *Id.* at 75-76; *see also United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 68-71 (D.D.C. 2017) (rejecting divestiture defense because court was "more persuaded" by "statements made by [the buyer's] board members and executives prior to litigation . . . [that] undermine the in-court claims about [the buyer's] capabilities").

Here, Defendants and C&S have blocked discovery into the very evidence the *Sysco* and *Aetna* courts found dispositive. They withheld thousands of documents and instructed 16 key witnesses not to answer questions, including about what assets C&S requested but did not receive, that is critical to a fair understanding of the New Divestiture. For example, Mr. Galante's report is premised in part on his review of C&S's due diligence, *i.e.*, its subjective

assessment of the New Divestiture.  *See, e.g.*, Musser Dec., Ex. D ¶¶ 11-12, 188.  Defendants

argue that Mr. Galante did not rely on privileged material, Musser Dec., Ex. T at 7, but that

merely establishes he did not have a complete understanding of C&S's analysis.  His opinions

are skewed by Defendants' selective disclosure and should be discounted accordingly.

Defendants have also curated the evidence in other ways.  C&S recently produced a June 2024

"business plan" that claims C&S was "████████████████████████████████████████

████████████████████████████████████████████" Musser Dec., Ex. U at 2;

*see also id.* at 13, 16, 53, 75.  Defendants withheld evidence that could undermine those

assertions or place them in their proper context.

Defendants' privilege claims rest on litigators' supervision of the Divestiture

Negotiations; they thus concede the New Divestiture and their Divestiture Defenses were crafted

by lawyers.  They are thus akin to advice of counsel and good faith defenses, where a party

"place[s] the privileged communications at issue."  *Klemp v. Columbia Collection Serv., Inc.*,

2014 WL 204013, at *3 (D. Or. Jan. 17, 2014); *SEC v. Honig*, 2021 WL 5630804, at *6-8, *10-

12 (S.D.N.Y. Nov. 30, 2021).  Courts preclude such defenses when the asserting party withholds

evidence needed to fairly dispute them.  *See Vital Pharms.*, 2022 WL 2284544, at *3 (excluding

advice of counsel defense when "assertions of privilege . . . . thwarted Plaintiffs' attempts to

fully investigate the advice Defendant had received"); *Honig*, 2021 WL 5630804, at *7-8, *14

(precluding advice of counsel and good faith defenses when, "[t]hroughout the fact discovery

period, the defendant repeatedly withheld documents and instructed deposition witnesses not to

respond on the basis of the attorney-client privilege"). The same logic applies here.

Defendants argued in the Administrative Adjudication that the sword/shield doctrine is

inapt when a party "does not rely on privileged information in making its arguments."  Musser

Dec., Ex. T at 1.  Not so.  The sword/shield doctrine applies "[w]here a party raises a claim which in fairness requires disclosure of the protected communication."  *Columbia Pictures*, 259 F.3d at 1196.  The critical inquiry is whether "it would be unfair for a party asserting contentions . . . to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contention."  *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011) (cleaned up); *see also Honig*, 2021 WL 5630804, at *8, *14 (rejecting defendant's attempt "to support his good faith defense by relying solely on non-privileged evidence," reasoning his defense "can only be assessed by examination of the privileged communications").[2]  Here, allowing Defendants to deploy privilege to craft a universe of favorable evidence would deprive Plaintiffs of material needed to assess the New Divestiture.

Moreover, Defendants explicitly relied on the Divestiture Negotiations in their pretrial brief in the merits proceeding.  For example, Defendants claim C&S will be an independent competitor because "C&S has been represented by sophisticated counsel in arm's length negotiations and ███████████████████████████████████████████████"  Musser Dec., Ex. V at 41.  They further claim "███████████████████████████████ ███████████████████████████████████"  *Id.* at 42.  Defendants even criticize FTC for relying on C&S's views about the Original Divestiture, contending its perspective evolved during the Divestiture Negotiations.  *Id.*  Defendants' arguments thus rely not just on the assets in the New Divestiture, but the Divestiture Negotiations.

Defendants also contended in the Administrative Adjudication that Plaintiffs must prove

---

[2] Defendants have relied on *In re County of Erie*, 546 F.3d 222 (2d Cir. 2008), to argue that sword/shield doctrine does not apply.  Musser Dec., Ex. T at 8.  But courts applying *Erie* hold that, because "legal advice that a party received may well demonstrate the falsity of its claim of good faith belief, waiver in these instances arises as a matter of fairness."  *Arista*, 2011 WL 1642434, at *3 (cleaned up).

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

the New Divestiture will not replace the competition lost from the Merger.  Musser Dec., Ex. T at 6-7.  But the Fifth Circuit recently held that "the burden of showing the [proposed remedy's] competitive effects [is] on [the defendant] as part of its rebuttal to the [FTC's] prima facie case." *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1055 (5th Cir. 2023).  Regardless of who bears the burden, sword/shield doctrine still applies because assessing the New Divestiture "in fairness requires disclosure of the protected communication[s]."  *Columbia Pictures*, 259 F.3d at 1196.

With fact discovery concluded on June 11 and the evidentiary hearing beginning on August 26, 2024, the correct course is to bar Defendants from proffering evidence or argument related to the New Divestiture.  *See Columbia Pictures*, 259 F.3d at 1196 (preclusion was not abuse of discretion when party asserted privilege "until the 'eleventh hour'"); *QS Wholesale, Inc. v. World Mktg., Inc.*, 2013 WL 12114508, at *7 (C.D. Cal. July 9, 2013) (precluding advice of counsel defense under sword/shield doctrine because trial was imminent).

Short of excluding the New Divestiture in its entirety, Plaintiffs request that the Court preclude Defendants from proffering evidence or argument about Divestiture Negotiations or Defendants' or C&S's subjective assessments of the New Divestiture.  Such an order would permit Defendants to offer evidence or opinion premised on the New Divestiture's composition, but otherwise bar Defendants from asserting that, *inter alia*, C&S believes the New Divestiture is adequate or otherwise addressed its concerns with the Original Divestiture.

## CONCLUSION

Plaintiffs respectfully request the Court grant this motion *in limine* and exclude evidence and argument related to the New Divestiture.  In the alternative, Plaintiffs request the Court preclude Defendants from proffering evidence or argument related to Divestiture Negotiations or subjective assessments of the New Divestiture.

Dated: August 14, 2024

Respectfully submitted,

/s/ Barrett Anderson
Barrett Anderson, CA Bar # 318539
Susan A. Musser, DC Bar # 1531486


Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-2237
banderson1@ftc.gov
smusser@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

/s/ Robert A. Bernheim
Robert A. Bernheim, AZ Bar No. 024664
Jayme L. Weber, AZ Bar No. 032608
Vinny Venkat, AZ Bar No. 038587
Connor Nolan, AZ Bar No. 038088

Arizona Office of the Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
Tel: (602) 542-5025
Robert.Bernheim@azag.gov
Jayme.Weber@azag.gov
Vinny.Venkat@azag.gov
Connor.Nolan@azag.gov

*Attorneys for Plaintiff State of Arizona*

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

/s/ Nicole Gordon
Nicole Gordon, CA Bar No. 224138

State of California
California Department of Justice
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Tel: (415) 510-3458
Facsimile: (415) 703-5480
Nicole.Gordon@doj.ca.gov

*Attorney for Plaintiff State of California*

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

/s/ C. William Margrabe

C. William Margrabe, DC Bar No. 90013916

Office of the Attorney General for the District of Columbia
400 6th Street, NW, 10th Floor
Washington, DC 20001
Tel: (202) 727-3400
Will.Margrabe@dc.gov

*Attorney for Plaintiff District of Columbia*

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

/s/ Brian M. Yost
Brian M. Yost, IL Bar No. 6334138
Paul J. Harper, IL Bar No. 6335001
Alice Riechers, IL Bar No. 6272933

Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
Tel: (872) 276-3598
Email: Brian.Yost@ilag.gov
Paul.Harper@ilag.gov
Alice.Riechers@ilag.gov

*Attorneys for Plaintiff State of Illinois*

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

/s/ Schonette J. Walker
Schonette J. Walker, MD Bar No. 0512290008
Gary Honick, MD Bar No. 7806010078
Byron Warren, MD Bar No. 1612140330

Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Tel: (410) 576-6470
swalker@oag.state.md.us
ghonick@oag.state.md.us
bwarren@oag.state.md.us

*Attorneys for Plaintiff State of Maryland*

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

/s/ Lucas J. Tucker
Lucas J. Tucker, NV Bar No. 10252
Samantha B. Feeley, NV Bar No. 14034

Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100
ltucker@ag.nv.gov
sfeeley@ag.nv.gov

*Attorneys for Plaintiff State of Nevada*

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

/s/ Julie Ann Meade
Julie Ann Meade, NM Bar No. 8143
Jeff Dan Herrera, NM Bar No. 154030

New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87504
Tel: (505) 717-3500
jmeade@nmag.gov
jherrera@nmag.gov

*Attorneys for Plaintiff State of New Mexico*

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

/s/ Cheryl F. Hiemstra

Cheryl F. Hiemstra, OSB#133857
Tim D. Nord, OSB#882800
Chris Kayser, OSB#984244
Tania Manners, OSB#140363

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel: (503) 934-4400
Facsimile: (503) 378-5017
Cheryl.Hiemstra@doj.state.or.us
Tim.D.Nord@doj.state.or.us
cjkayser@lvklaw.com
tmanners@lvklaw.com

*Attorneys for Plaintiff State of Oregon*

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE

/s/ William Young

William Young, WY Bar No. 8-6746

Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-7847
William.Young@wyo.gov

*Attorney for Plaintiff State of Wyoming*

PLS.' MOTION *IN LIMINE* RE DEFS.' PROPOSED DIVESTITURE