Le'Ora Tyree, IL Bar # 6288669
Susan A. Musser, DC Bar # 1531486
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (312) 960-5612
Tel: (202) 326-2122
*ltyree@ftc.gov; smusser@ftc.gov*

Attorneys for Plaintiff Federal Trade Commission

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING, <br><br> Plaintiffs, <br><br> v. <br><br> THE KROGER COMPANY and ALBERTSONS COMPANIES, INC., <br><br> Defendants. | Case No.: 3:24-cv-00347-AN <br><br><br> **PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF G. ROGER KING** <br><br> **REDACTED VERSION** |

PLS.' MOTION *IN LIMINE*
RE DEFS.' EXPERT

## CERTIFICATION PURSUANT TO LR 7-1(a)(1)

Plaintiffs have conferred with Defendants regarding this motion and Defendants oppose the relief sought herein.

## MOTION

Plaintiffs move to exclude the testimony of G. Roger King, Esq., as an expert witness for Defendants because Mr. King's testimony fails to meet the requirements for expert testimony in this circuit.

## MEMORANDUM

Plaintiffs move *in limine* to exclude the testimony of G. Roger King, Esq., a labor lawyer who has spent his career working for large employers. The Kroger Company ("Kroger") and Albertsons Companies, Inc. ("Albertsons") (collectively, "Defendants") proffer Mr. King as an expert witness on whether the acquisition may substantially lessen competition and lead to worse wages and benefits for Defendants' employees. Mr. King's testimony fails to meet the requirements for expert testimony, lacking reliability, relevance, and utility to the trier of fact. Mr. King's use of labor law—his actual area of expertise—to analyze antitrust law not only misses the mark, but also introduces potential misunderstandings of the core issues at hand. In short, Mr. King lacks the qualification and expertise to provide reliable expert opinions on the antitrust matters before the Court.

Mr. King's report and proffered testimony appear designed to obfuscate rather than illuminate, offering no relevant technical expertise to the Court. The admission of such opinions is more likely to mislead than inform. Because Mr. King's analysis neither rests on a "reliable foundation" nor is it "relevant to the task at hand," Defendants fail to meet the thresholds required by Federal Rule of Evidence 702. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Plaintiffs respectfully move this Court to exercise its gatekeeping function and exclude his testimony.

## BACKGROUND

Plaintiffs bring this suit to preliminarily enjoin Kroger's $25 billion dollar acquisition of Albertsons ("Acquisition"). Dkt. 87 ¶ 1. Kroger and Albertsons are the two largest employers of unionized grocery workers in the United States. Dkt. 201-1 ("PI Brief") at 3-4. This Acquisition

1

raises significant antitrust concerns about its impact on hundreds of thousands of union grocery workers. In several states, including Oregon, Washington, California, and Colorado, both companies negotiate with identical local unions. PI Brief at 36. Market participants—including unions, third-party employers, and the Defendants themselves—acknowledge that the competition between Kroger and Albertsons drives the outcomes of union negotiations today. *Id.* at 17-21.

The unions' ability to bargain for better wages, benefits, and working conditions turns in large part on their ability to play Kroger and Albertsons against each other in negotiations. *Id.* Unions can strike (or credibly threaten to strike) one chain to secure a favorable collective bargaining agreement ("CBA") and then use the terms of that CBA to secure a similar agreement with the other chain. *Id.* Kroger and Albertsons are among the few union grocery chains in many areas, so the Acquisition threatens to substantially reduce competition and thus diminish workers' leverage in future labor negotiations. *See* PI Brief at 36. Facing compelling evidence of anticompetitive effects, Defendants attempt to reframe the *antitrust* issues as *labor* issues through Mr. King.

Mr. King is a labor and employment law attorney who has spent a lifetime representing large corporate employers like Defendants. Musser Dec., Ex. A at 20-43. Currently, Mr. King serves as Senior Labor and Employment Counsel for the HR Policy Association of which Kroger is a member. Musser Dec., Ex. B ¶ 1 & n.1, ¶ 2 n.2. The HR Policy Association is a trade association that represents a substantial number of the larger business entities in the country. *Id.* ¶ 1 n.1. The Association's nearly 400 member companies employ approximately ten million employees in the United States—close to nine percent of the private sector workforce—and

PLS.' MOTION *IN LIMINE* RE DEFS.' EXPERT

twenty million employees worldwide. *Id.* ¶ 1 n.1. Mr. King has acknowledged that he is not an antitrust expert, has not reviewed antitrust law materials, and will not offer opinions on the acquisition's competitive effects on the market for union grocery labor. Musser Dec., Ex A at 21, 53, 88.

## <u>LEGAL ANALYSIS</u>

Under *Daubert v. Merrell Dow* and Rule 702, courts are charged with a gatekeeping role. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); Fed. R. Evid. 702. Although Rule 702 affords a court wide latitude to admit expert testimony, such testimony is inadmissible unless it is: (1) based on the specialized knowledge of the expert that will (2) "assist the trier of fact to understand or determine a fact at issue," which includes "a preliminary assessment of whether the reasoning or methodology underlying the testimony . . . can be applied to the facts in issue." *Daubert* 509 U.S. 579, 592-93 (1993). To assist the Court, Mr. King's expert opinion must be reliable and relevant. *Primiano*, 598 F.3d at 564. Mr. King's testimony fails on both counts.

### 1. <u>Mr. King's Opinions Are Not Reliable</u>

Mr. King's testimony does not meet the standard of reliability. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee Notes; *see also, e.g.*, *Sudre v. Port of Seattle*, No. C15-0928JLR, 2016 WL 7035062, at *22 (W.D. Wash. Dec. 2, 2016) (quoting *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (en banc)). At bottom the court's gatekeeping function requires more than simply "taking the expert's word

PLS.' MOTION *IN LIMINE* RE DEFS.' EXPERT

for it."  Fed. R. Evid. 702 Advisory Committee Notes; *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("*Daubert II*") ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability.  Under *Daubert*, that's not enough.").  Throughout Mr. King's report and subsequent deposition testimony, he provides a biased opinion based on his general experience as a labor attorney representing larger employers.  In doing so, Mr. King fails to specifically state how his experience informs his conclusions, why that experience is a sufficient basis for his opinions, or how that experience is reliably applied to the facts of this case.

For example, Mr. King contends that the union's use of the term "whipsaw" is "manufactured" for this litigation and that Plaintiffs fundamentally misunderstand the nature of collective bargaining among entities.  Musser Dec., Ex. A at 171, 186-87; Musser Dec., Ex. B ¶¶ 47-51.  Mr. King neither cites to any record evidence to support his assertion nor does he explain the specific experience that informs his opinion.  Indeed, his claim is at odds with Defendants' documents and testimony.  All witnesses involved in union negotiations with Kroger and Albertsons consistently indicate that unions have, in fact, successfully used "whipsaw" strategies by leveraging the competition between Kroger and Albertsons during contract negotiations.  *See, e.g.*, Musser Dec., Ex. C at 001; *see also* Musser Dec., Ex. D at 150-53; Musser Dec.; Ex. E at 001.  For example, Dan Clay, President of UFCW Local 555 in Portland, Oregon and a witness on both sides' witness lists, described whipsawing as the process of ██████████████████████████████████████████████████████ ████████████████████████████████ Musser Dec., Ex. F at 110.  Mr. Clay further testified that ████████████████████████████████████████████████████████████.  *Id.*

4

at 110-11.  Mr. Clay's testimony is consistent with other UFCW union witnesses who testified in

this case.  *See, e.g.*, Musser Dec., Ex. G at 94-95.

Throughout his expert report, Mr. King offers opinions that stand in stark contrast to the

testimony of fact witnesses with decades of experience in this industry.[1]  The more an expert's

opinion is subjective and ungrounded in the factual record, the more likely the testimony should

be excluded as unreliable.  S*ee O'Conner v. Commonwealth Edison Co*., 13 F.3d 1090,

1105-07 (7th Cir. 1994) (expert testimony based on a completely subjective methodology held

properly excluded).  Mr. King's conclusory statements regarding his experience, without proper

explanation or substantiation, cannot be accepted as a basis for expert opinion in this matter.  *See*

*Hufnagel v. McGraw-Hill Cos.*, No. 2:12-CV-0579-SAB, 2014 WL 12527209, at *4 (E.D. Wash.

July 24, 2014).  Without sufficient evidence and analysis to support his opinion, Mr. King

expects the court to simply "take [his] word for it."  Fed. R. Evid. 702 Advisory Committee

Notes.  As a result, Mr. King's report must be precluded from consideration in this case.

2.  **Mr. King's Opinions Are Not Relevant and Will Not Help a Trier of Fact**

Mr. King must also meet "stringent standards" of relevance set forth in Federal Rules of

Evidence 401, 402, and 403.  Fed. R. Evid. 401-403.  This relevance analysis requires that the

expert opinion "logically advances a material aspect of the proposing party's case."  *Daubert II*,

43 F.3d at 1315.  "[T]he judge in weighing possible prejudice against probative force under Rule

403 . . . exercises more control over experts than lay witnesses."  *Frazier*, 387 F.3d at 1263

(internal quotations omitted).  Mr. King's testimony does not meet these standards.

---

[1]  *See, e.g.*, Musser Dec., Ex. H at 26 (describing her long career in labor relations with UFCW
Local 324, UFCW Local 770, and the NLRB beginning in 1980).  Union witnesses in this case,
collectively, have over a century of experience in labor negotiations.

PLS.' MOTION *IN LIMINE* RE DEFS.' EXPERT

a. *Mr. King's opinions are irrelevant to Plaintiffs' claims under the antitrust laws*

The relevant inquiry is whether this acquisition may substantially lessen competition in violation of the antitrust laws. *See* 15 U.S.C. § 18.  Antitrust laws, of course, are not limited to any particular industry or commodity but rather extend to a variety of goods and services, including labor. *See United States v. Bertelsmann SE & Co.*, 646 F. Supp. 3d 1, 32 (D.D.C. 2022) (blocking merger under Section 7 of the Clayton Act, arguing that the combined entity would create monopsony power that would lower advance payments to authors).

The central antitrust question before the Court relevant to this motion is whether Kroger's acquisition of Albertsons—by removing the latter as a competitor—fundamentally changes the negotiation dynamic between Defendants and their unionized workforce.  As explained by the unions—and Defendants' executives—unions use strikes (or the threat of strikes) to incentivize employers to offer more favorable wages, benefits, and working conditions.  PI Brief at 17-21. When union workers strike a supermarket, that supermarket loses revenues when shoppers go to other stores to fulfill their grocery needs and may indeed lose those shoppers permanently.  PI Brief at 17-18.  During CBA negotiations, unions may threaten to strike or strike either Kroger or Albertsons to secure a favorable CBA from that chain, and then pressure the other chain to match the terms or similarly face a strike threat.  PI Brief at 17-21.  In acquiring Albertsons, Kroger would eliminate the only other major union employer in many communities and would significantly weaken the credibility of the union's strike threat.  Plaintiffs' central allegation is that the elimination of Albertsons as a competitor substantially changes the negotiating dynamic between Kroger and its workforce in violation of antitrust laws.  Plaintiffs make no assertion that the transaction violates the labor laws.

6

Mr. King is a labor lawyer; he has never practiced antitrust law.  Musser Dec., Ex. A at

21, 53, 88.  As such, Mr. King's report does not focus on an antitrust analysis of any labor

market, but rather provides an extensive overview of labor relations, the National Labor

Relations Board's framework, collective bargaining processes, union protections under the

NLRA, bargaining unit scope, various negotiation tools and strike types, and makes sweeping

unsupported conclusions by analyzing antitrust issues through the lens of labor law.  *Id.*  In the

first instance, courts routinely exclude expert testimony offering pure legal opinions.  *See*

*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting

*Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)); *see also Aguilar v. Int'l*

*Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (upholding exclusion of

expert testimony on "matters of law" as "utterly unhelpful").  Second, this comprehensive labor

law exposition fails to address the pertinent antitrust questions at issue described above.

The practice of labor law in the United States primarily focuses on addressing the rights

and protections of workers within the context of the employment relationship.  This legal

framework encompasses a range of critical issues, including workers' rights to collective bargain,

workplace discrimination, and occupational conditions.  National Labor Relations Board,

www.nlrb.gov/about-nlrb/what-we-do (last visited Aug. 13, 2024).  The cornerstone of this

regulatory structure is established by several key pieces of legislation, most notably the National

Labor Relations Act (NLRA) and the Fair Labor Standards Act (FLSA).  NLRA, 29 U.S.C.

§§ 151-169; FLSA, 29 U.S.C. § 201.  These statutes collectively form a legal framework

designed to safeguard workers' rights.  The focus of this collection of laws is not on the

*competitive* dynamics of the labor market, but rather on individual rights of workers, including

the rights of workers to act collectively. 29 U.S.C. § 151; 29 U.S.C. § 202. Put differently, federal labor laws generally address the relationship between an employer and the workers it employs. Labor law does not regulate competition between employers.

Furthermore, being regulated by other federal agencies does not serve as a safe harbor from antitrust laws. For example, in *United States v. Energy Solutions, Inc.*, the district court permanently enjoined a merger after finding it was likely to lessen competition in the market for disposal of nuclear waste despite recognizing that the Nuclear Regulatory Commission "regulates the disposal of radioactive waste." 265 F. Supp. 3d 415, 422, 446 (D. Del. 2017). As such, any analysis of what labor law applies or how labor law regulates a union bargaining is irrelevant to the question of whether Plaintiffs have raised serious and substantial questions going to the antitrust merits. *See FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1162 (9th Cir. 1984).

There is no dispute that labor laws apply before the acquisition and will continue to apply if the acquisition is consummated. Nor is there any allegation that the acquisition will facilitate unfair labor practices or trigger some violation of federal or state labor law. Rather, the "serious and substantial" antitrust question is whether Kroger's acquisition of Albertsons may substantially lessen competition resulting in a reduction in the leverage that union workers have in bargaining with Defendants over wages, benefits, and working conditions. Mr. King's report and proposed testimony does not speak to this question at all. If expert testimony does not "fit" the relevant issues, it is not helpful to the trier of fact and should not be admitted. *United States v. Scholl,* 166 F.3d 964, 970-71 (9th Cir. 1999).

   b.   *The prejudicial impact of injecting an analysis of labor law into an antitrust inquiry outweighs any probative value*

By conflating two areas of law, Mr. King's analysis not only fails to address the relevant antitrust issues but also risks introducing confusion into the proceedings.  For example, Mr. King conducts a legal review of the purchase agreement and divestiture package by interpreting the language of the contract utilizing contract and labor law.  Musser Dec., Ex. B ¶¶ 65-77.  Mr. King concludes that unions would be protected by the proposed merger because C&S and the merged entity agreed to assume the union contracts and the NLRB would protect union rights under the contract.  *Id*.  Mr. King makes a similar argument regarding pensions.  *Id*. ¶¶ 88-102.  Even if one were to assume, arguendo, that Mr. King's legal interpretation is permissible, complete, and accurate, his analysis is still irrelevant because it fails to address the underlying economic conditions underlying Plaintiffs' allegations.  Namely, Mr. King does not assess whether or how these contracts protect against changes in the unions' bargaining leverage post-acquisition (i.e., how the acquisition affects negotiations over future contracts).  *See Concord Boat Corp. v. Bruswick Corp.,* 207 F.3d. 1039, 1056-57 (8th Cir. 2000) (expert's opinion "should not have been admitted because it did not incorporate all aspects of the economic reality").

As another example, Mr. King argues that because CBA Areas are not a labor law concept *per se*, CBA Areas cannot be a properly defined antitrust market.  Musser Dec., Ex B. ¶ 18.  Labor law, however, is not concerned with defining a market in which to assess competitive effects.  Rather, labor laws such as the NLRA are concerned with terms and conditions under which unions may engage in collective bargaining.  29 U.S.C. § 151.  As such, whether labor law imports a specific meaning to the phrase CBA Area is irrelevant to the antitrust market definition question.  Musser Dec., Ex B. ¶ 18.  Consequently, the inclusion of Mr. King's opinions may

9

detract from, rather than contribute to, a clear understanding of the antitrust implications at hand.

## <u>CONCLUSION</u>

Plaintiffs request that this Court exclude Mr. King's expert testimony in its entirety.  Mr. King's proposed testimony fails to meet the admissibility standards set forth in Rule 702 and *Daubert*, rendering it wholly inadmissible.  Moreover, his testimony is irrelevant to the antitrust issues central to this case and would only serve to confuse and mislead.  If the Court is not inclined to exclude Mr. King's testimony completely, Plaintiffs request that this Court strike all testimony pertaining to the NLRB and labor law.  These aspects of his testimony lack both relevance and reliability.

Dated: August 14, 2024              Respectfully submitted,

                                    /s/ Le'Ora Tyree
                                    Le'Ora Tyree, IL Bar # 6288669
                                    Susan A. Musser, DC Bar # 1531486

                                    Federal Trade Commission
                                    Bureau of Competition
                                    600 Pennsylvania Avenue, NW
                                    Washington, DC 20580
                                    Telephone: (312) 960-5612
                                    ltyree@ftc.gov
                                    smusser@ftc.gov

                                    *Attorneys for Plaintiff Federal Trade Commission*

PLS.' MOTION *IN LIMINE* RE DEFS.' EXPERT

/s/ Robert A. Bernheim
Robert A. Bernheim, AZ Bar No. 024664
Jayme L. Weber, AZ Bar No. 032608
Vinny Venkat, AZ Bar No. 038587
Connor Nolan, AZ Bar No. 038088

Arizona Office of the Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
Tel: (602) 542-5025
Robert.Bernheim@azag.gov
Jayme.Weber@azag.gov
Vinny.Venkat@azag.gov
Connor.Nolan@azag.gov

*Attorneys for Plaintiff State of Arizona*

PLS.' MOTION *IN LIMINE* RE DEFS.' EXPERT

/s/ Nicole Gordon
Nicole Gordon, CA Bar No. 224138

State of California
California Department of Justice
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Tel: (415) 510-3458
Facsimile: (415) 703-5480
Nicole.Gordon@doj.ca.gov

*Attorney for Plaintiff State of California*

12

PLS.' MOTION *IN LIMINE* RE DEFS.' EXPERT

/s/ C. William Margrabe
C. William Margrabe, DC Bar No. 90013916

Office of the Attorney General for the District of
Columbia
400 6th Street, N.W, 10th Floor
Washington, D.C. 20001
Tel: (202) 727-3400
Will.Margrabe@dc.gov

*Attorney for Plaintiff District of Columbia*

13

/s/ Brian M. Yost

Brian M. Yost, IL Bar No. 6334138
Paul J. Harper, IL Bar No. 6335001
Alice Riechers, IL Bar No. 6272933

Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
Tel: (872) 276-3598
Email: Brian.Yost@ilag.gov
Paul.Harper@ilag.gov
Alice.Riechers@ilag.gov

*Attorneys for Plaintiff State of Illinois*

14

/s/ Schonette J. Walker
Schonette J. Walker, MD Bar No. 0512290008
Gary Honick, MD Bar No. 7806010078
Byron Warren, MD Bar No. 1612140330

Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Tel: (410) 576-6470
swalker@oag.state.md.us
ghonick@oag.state.md.us
bwarren@oag.state.md.us

*Attorneys for Plaintiff State of Maryland*

PLS.' MOTION *IN LIMINE* RE DEFS.' EXPERT

/s/ Lucas J. Tucker
Lucas J. Tucker, NV Bar No. 10252
Samantha B. Feeley, NV Bar No. 14034

Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100
ltucker@ag.nv.gov
sfeeley@ag.nv.gov

*Attorneys for Plaintiff State of Nevada*

PLS.' MOTION *IN LIMINE* RE DEFS.' EXPERT

/s/ Julie Ann Meade

Julie Ann Meade, NM Bar No. 8143
Jeff Dan Herrera, NM Bar No. 154030

New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87504
Tel: (505) 717-3500
jmeade@nmag.gov
jherrera@nmag.gov

*Attorneys for Plaintiff State of New Mexico*

17

/s/ Cheryl F. Hiemstra
Cheryl F. Hiemstra, OSB#133857
Tim D. Nord, OSB#882800
Chris Kayser, OSB#984244
Tania Manners, OSB#140363

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel: (503) 934-4400
Facsimile: (503) 378-5017
Cheryl.Hiemstra@doj.state.or.us
Tim.D.Nord@doj.state.or.us
cjkayser@lvklaw.com
tmanners@lvklaw.com

*Attorneys for Plaintiff State of Oregon*

18

PLS.' MOTION *IN LIMINE* RE DEFS.' EXPERT

/s/ William Young
William Young, WY Bar No. 8-6746

Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-7847
William.Young@wyo.gov

*Attorney for Plaintiff State of Wyoming*

19