Susan A. Musser, DC Bar # 1531486
Rohan Pai, DC Bar # 1015652
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (202) 326-2122
Tel: (202) 326-2936
*smusser@ftc.gov; rpai@ftc.gov*

Attorneys for Plaintiff Federal Trade Commission

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER COMPANY and ALBERTSONS COMPANIES, INC.,<br><br>Defendants. | Case No.: 3:24-cv-00347-AN<br>**REDACTED VERSION**<br><br>**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EVIDENCE MADE FOR LITIGATION AND EVIDENCE PRODUCED AFTER THE END OF FACT DISCOVERY AND ANY EXPERT TESTIMONY BASED ON SUCH EVIDENCE** |

**CERTIFICATION PURSUANT TO LR 7-1(A)(1)**

Plaintiffs have conferred with Defendants regarding this motion, and Defendants oppose the relief sought herein.

**MOTION**

Plaintiffs respectfully request that the Court exclude evidence made for litigation or produced after the end of fact discovery and any expert testimony based on such evidence, including new evidence relating to the proposed C&S divesture and newly generated efficiencies analyses prepared by Defendants.

**MEMORANDUM**

**I.    SUMMARY OF ARGUMENT**

Defendants concede that ███████████████████████████

████████████████████████████████████████████████████████

*See* Torres Paez Dec.[1] Ex. A at 6.  Defendants nevertheless argue that the loss of competition would be alleviated by a proposed divestiture of 579 stores to C&S Wholesale Grocers, LLC ("C&S")—a company that has a long history of failing to run grocery stores.  Defendants also defend the merger based on purported "efficiencies" generated from the combination of Kroger and Albertsons.  Yet virtually *all* the evidence Defendants rely on to support the divestiture and efficiencies consists of made-for-litigation documents created either in response to Plaintiffs' investigations and Complaint or cherry-picked for disclosure after the close of fact discovery.

In antitrust cases, however, courts routinely hold that "the probative value of [post-

---

[1] "Torres Paez Dec." refers to the Declaration of Estefania Y. Torres Paez in Support of Plaintiffs' Motion to Seal. Unless otherwise indicated, all exhibits cited herein refer to this declaration.

PLS' MOTION TO EXCLUDE

complaint] evidence" is "extremely limited." *United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 504 (1974). Defendants' experts should therefore be barred from relying on evidence Defendants or C&S created and produced after the close of fact discovery, including a new C&S business plan and newly generated efficiency analyses prepared by Defendants in response to Plaintiffs' litigation.

## II.   LEGAL STANDARD

In antitrust merger litigation, courts have long recognized the "extremely limited" value of evidence created while a lawsuit was "threatened or pending." *Gen. Dynamics*, 415 U.S. at 504-05; *see also Alberta Gas Chems. Ltd. v. E.I. Du Pont De Nemours & Co.*, 826 F.2d 1235, 1244 (3d Cir. 1987). To determine whether such evidence lacks probative value, courts ask whether it "*could arguably* be subject to manipulation"; if so, the evidence should be accorded no weight. *Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 434-35 (5th Cir. 2008) (emphasis in original); *see also Hosp. Corp. of Am. v. FTC*, 807 F.2d 1381, 1384 (7th Cir. 1986); *Lektro–Vend Corp. v. Vendo Co.*, 660 F.2d 255, 276 (7th Cir. 1981); *United States v. Bazaarvoice, Inc.*, No. 13-cv-00133, 2014 WL 203966, at *73 (N.D. Cal. Jan. 8, 2014). Courts do not require plaintiffs to demonstrate that the evidence was "actually subject to manipulation." *Chicago Bridge*, 534 F.3d at 435. "These cases embody the common-sense proposition that a firm's behavior undertaken with the aim of persuading a court or the government regarding the legality of a merger may not be predictive of how that firm will behave once the court or the government are no longer engaged." *United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 80 (D.D.C. 2017).

Materials created in such circumstances are not true business records, because "[l]itigation is not a 'regularly conducted business activity,'" and documents prepared with litigation in mind are "dripping with motivations to misrepresent." *AMPAT/Midwest v. Illinois Tool Works. Inc.*,

PLS' MOTION TO EXCLUDE

896 F.2d 1035, 1045 (7th Cir. 1990) (citation omitted); *see also Certain Underwriters at Lloyds, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000).  Records "prepared in anticipation of litigation" often "demonstrate [a] lack of trustworthiness."  2 McCormick on Evid. § 288 (8th ed., July 2022 update); *see also* 4 Christopher B. Mueller & Laird C. Kirpatrick, *Fed. Evid.* § 8:83 (4th ed. 2023) ("If a record was prepared with an eye toward litigation, this fact is an indication of untrustworthiness, as are obvious motives that would incline the preparer toward errors or overstatements that would be detrimental to the objecting party.") (footnotes omitted).  This problem is especially acute in antitrust cases because the defendants are sophisticated businesses represented by experienced antitrust counsel, and the evidence they may create may appear at first blush to reflect ordinary course business judgments.  *See In re Wholesale Grocery Prods. Antitrust Litig.*, 752 F.3d 728, 734 (8th Cir. 2014) ("Perhaps there are aspiring monopolists foolish enough to reduce their entire anticompetitive agreement to writing, which would make the answer easy. But most would-be monopolists probably can be expected to display a bit more guile . . . .").

As a result, documents prepared in preparation for litigation often lack the reliability necessary to be admitted under Rule 803(6).  *See United States v. Casoni*, 950 F.2d 893, 911 & n.10 (3d Cir. 1991) ("Absence of routineness raises lack of motivation to be accurate.") (quoting Fed. R. Evid. 803(6) Advisory Committee note); *see also Ebenhoech v. Koppers Indus., Inc.*, 239 F. Supp. 2d 455, 463 (D.N.J. 2002); *AAMCO Transmissions v. Baker*, 591 F. Supp. 2d 788, 794 (E.D. Pa. 2008).  A document may be held inadmissible when "it was prepared with the knowledge that the event could lead to litigation" and where the document "was not routinely created." *Ebenhoech*, 239 F. Supp. 2d at 463; *see also Palmer v. Hoffman*, 318 U.S. 109, 111-14 (1943); *see also* U.S. Dep't of Justice & Fed. Trade Comm'n, *Merger Guidelines* § 3.3 n.69 (2023) ("Merger

PLS' MOTION TO EXCLUDE

Guidelines") ("In general, evidence related to efficiencies developed prior to the merger challenge is much more probative than evidence developed during the Agencies' investigation or litigation").

Post-litigation evidence is also problematic because it can continually change throughout the course of a litigation. While Rule 26(e) requires parties to supplement their productions, it does not permit them to selectively supplement evidence for use at a trial or hearing after court-ordered discovery deadlines have passed. *See United States v. Dish Network, L.L.C.*, No. 09-3073, 2016 WL 29244, at *10 (C.D. Ill. Jan. 4, 2016) ("Continually producing newly-created evidence only serves to . . . delay [a] case and imposes an undue burden on the parties and the Court."). Courts are particularly loath to admit post-discovery evidence when doing so would require "documents and testimony from multiple . . . custodians . . . as well as document and deposition discovery from third parties" to allow the non-producing party to fully and completely probe and contextualize the selectively-produced documents. *FTC v. Qualcomm Inc.*, No. 17-00220, 2018 WL 6597273, at *5 (N.D. Cal. Dec. 13, 2018) (refusing to reopen discovery to permit defendant to introduce evidence of "current market conditions"); *see also Fusco v. Gen. Motors Corp.*, 11 F.3d 259, 265 (1st Cir. 1993) (excluding videotape created one month before trial that would have required an "expert or experts . . . to explain").

## III.    ARGUMENT

Defendants have selectively produced and relied upon two main categories of made-for-litigation evidence. ██████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████ As the following examples demonstrate, Defendants' experts rely almost exclusively on made-for-litigation evidence to support both of those claims. These

4

documents are unreliable, and, together with the expert opinions based on such unreliable

evidence, should be excluded.

**Example 1: The June 2024 Walnut Business Plan.**[2] █████████████████████

█████████████████████████████████████████████████████████

███████████████████████ *See, e.g.*, Dec. Ex. C (Galante Rpt.) ¶¶ 33 n.50, 35 n.60, 60

nn.103-105, 115 nn.187-188. Against the background of a fact record showing C&S's profound

weaknesses as a potential divestiture buyer, the cherry-picked nature of this document is

unmistakable—C&S only produced this document shortly before Defendants' expert reports

were due, and weeks *after* the close of fact discovery and *after* Plaintiffs' depositions of C&S

witnesses took place. █████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████ *See* Dec. Ex. D (July 8, 2024). ███████████████████

█████████████████████████████████████████████████

█████████████████████████████████████ *See* Dec.

Ex. E ████████████████████████████████████████

█████████████████████████████ *See* Dec. Ex. F ███████████

██████████

Because the June 2024 Walnut Business Plan (Dec. Ex. B) was developed for purposes of

advocacy and not a "regularly conducted activity" of C&S, it is inadmissible as a business

record. *See* Fed. R. Evid. 803(6). Even if it is admitted, the puffery within it makes it

---

[2] Dec. Ex. B (referred to herein as "the June 2024 Walnut Business Plan").

PLS' MOTION TO EXCLUDE

untrustworthy, irrespective of the document's admissibility, *Casoni*, 950 F.2d at 911 & n.10

("Absence of routineness raises lack of motivation to be accurate.") (quoting Fed. R. Evid.

803(6) Advisory Committee note).  The same is true of C&S's October 3, 2023 Walnut Business

Plan (Dec. Ex. E) and the other purported business plans that were developed during the

investigation or litigation. *See*, e.g., Dec. Ex. G (C&S Pharmacy Business Plan, Nov. 6, 2023);

Dec. Ex. H (Walnut Business Plan, June 2024); Dec. Ex. I (Walnut Business Plan, Sept. 12,

2023); and Dec. Ex. J (CS Business Plan, June 26, 2024).[3]  Expert witness testimony based on

these documents should be excluded as unreliable.  *See Daubert v. Merrell Dow Pharms., Inc.*,

509 U.S. 579, 597 (1993) (requiring that expert testimony "rest[] on a reliable foundation" to be

admissible); *Williams v. Illinois*, 567 U.S. 50, 81 (2012) ("[A]n expert's opinion is only as good

as the independent evidence that establishes its underlying premises."), *abrogated on other*

*grounds by Smith v. Arizona*, 144 S. Ct. 1785 (June 21, 2024).

**Example 2: Bain's Fresh Efficiencies Update.**[4]  Defendants have also selectively

produced documents in support of their alleged efficiency claims.  Bain's Fresh Efficiencies

Update (Dec. Ex. K) █████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[3] Plaintiffs may still seek to admit statements contained in these documents as party admissions.
Fed. R. Evid. 801(d)(2).

[4] Dec. Ex. K (GFR Fresh Value Update, June 26, 2024) (referred to herein as "the June 26, 2024
Fresh Efficiencies Update").

PLS' MOTION TO EXCLUDE

████████████████.[5] *See* Dec., Ex. L (Gokhale Rpt.) ¶ 112. ███████████

████████████████████████████████████████████████████████████

████████████████████████████     *See* Dec. Ex. M (Fresh Efficiencies Update, April

2024) at 002; Ex. N (Rowland (Bain) Dep. June 6, 2024 61:04-15, 63:03-12).   █████████

██████████████████████████████████████████████████████████

████████████████████████████     *Compare* Dec. Ex. K (June 26, 2024) at 004-

005 *with* Dec. Ex. M (April 2024) at 003-004.

     A document produced after the close of fact discovery that ███████████

██████████████████████████████████ is unreliable because it "could

arguably be subject to manipulation." *Chicago Bridge*, 534 F.3d at 435.  The Court should

therefore prohibit Mr. Gokhale from relying on Bain's Fresh Efficiencies Update (Dec. Ex. K) as

unreliable made-for-litigation evidence.  Additionally, allowing Defendants to rely on a

document produced after the close of discovery would prejudice Plaintiffs in their preparations

for the hearing, and its late production cannot be justified.  *Yeti by Molly, Ltd. v. Deckers

Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citing Fed. R. Civ. P. 37(c)(1)).  There is

no evidence that the analysis in the June version of Bain's Fresh Efficiencies Update could not

have been included in the April version.  Thus, this document should be excluded, as should

other post-close of fact discovery documents Defendants or their agents have created or

produced (or will in the future), including:

- Dec. Ex. O (Network Efficiency Initiatives, June 2024);

- Dec. Ex. P (Board Update on Efficiencies, June 13, 2024);

---

[5] The Fresh category includes produce, floral, meat, seafood, deli and bakery products. *See* Dec. Ex. L ¶ 112.

PLS' MOTION TO EXCLUDE

- Dec. Ex. Q (June Audit Committee Materials, June 21, 2024);

- Dec. Ex. R (Avocados CY23 Efficiency, June 25, 2024);

- Dec. Ex. S (Beef Muscle Cuts Analysis, June 25, 2024),

- Dec. Ex. T (Efficiencies Model Refresh, June 25, 2024);

- Dec. Ex. U (Floral Efficiency, June 25, 2024);

- Dec. Ex. V (Beef Cuts Analysis Summary, June 25, 2024); and

- Dec. Ex. W (National Brand ("NB") Sourcing Efficiencies, June 25, 2024).

**Example 3: Statements Regarding "Continued Review" of Documents.** ████████

████████████ (Dec. Ex. K) is an example of newly created evidence used to support

Defendants' experts and should be excluded on that basis. But it may not be the last example.

Mr. Gokhale appears intent on updating his opinions with subsequent analyses that Bain

produces. █████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ *See* Dec. Ex. X (Gokhale Dep. 15:23-16:9). ██████████████████

██████████████████████████████████████ *See* Dec. Ex. N.

(Rowland (Bain) Dep. 61:20-23).

These attempts by Defendants (and their consultants) to reserve the right to supplement

the record after the close of discovery "evidence[] a failure to appreciate Rule 26's requirement

of supplementation, as well as the import of court-ordered schedules." *Sandata Techs., Inc. v.

Infocrossing, Inc.*, 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007) (limiting expert's

opinions to those in initial report). "[E]xperts are not free to continually bolster, strengthen, or

improve their reports by endlessly researching the issues they already opined upon, or to

continually supplement their opinions." *Id.* (commenting on expert's reservation of rights to "consider and comment on any additional expert statements and testimony provided by other experts in this matter"); *see also In re Asbestos Prods. Liab. Litig. (No. VI)*, 289 F.R.D. 424, 425 (E.D. Pa. 2013) ("Rule 26(e) is not an avenue to correct failures of omission because the expert did an inadequate or incomplete preparation, add new opinions, or deepen or strengthen existing opinions." (cleaned up)).  Mr. Gokhale should be precluded from offering opinions based on his continued review of the evidence, including evidence created after the close of fact discovery.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to exclude evidence made for litigation and evidence produced after the end of fact discovery, and any expert testimony based on such evidence.

Dated: August 14, 2024                          Respectfully submitted,

/s/ C. William Margrabe
C. William Margrabe, DC Bar No. 90013916
Estefania Y. Torres Paez, DC Bar No. 1742057

Office of the Attorney General for the District of Columbia
400 6th Street, N.W, 10th Floor
Washington, D.C. 20001
Tel: (202) 727-3400
Will.Margrabe@dc.gov

*Attorney for Plaintiff District of Columbia*

9

/s/ Susan A. Musser
Susan A. Musser, DC Bar No. 1531486
Charles Dickinson, DC Bar No. 997153

Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-2122
smusser@ftc.gov
cdickinson@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

10

PLS' MOTION TO EXCLUDE

/s/ Robert A. Bernheim
Robert A. Bernheim, AZ Bar No. 024664
Jayme L. Weber, AZ Bar No. 032608
Vinny Venkat, AZ Bar No. 038587
Connor Nolan, AZ Bar No. 038088

Arizona Office of the Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
Tel: (602) 542-5025
Robert.Bernheim@azag.gov
Jayme.Weber@azag.gov
Vinny.Venkat@azag.gov
Connor.Nolan@azag.gov

*Attorneys for Plaintiff State of Arizona*

PLS' MOTION TO EXCLUDE

/s/ Nicole Gordon
Nicole Gordon, CA Bar No. 224138

State of California
California Department of Justice
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Tel: (415) 510-3458
Facsimile: (415) 703-5480
Nicole.Gordon@doj.ca.gov


*Attorney for Plaintiff State of California*

PLS' MOTION TO EXCLUDE

/s/ Brian M. Yost
Brian M. Yost, IL Bar No. 6334138
Paul J. Harper, IL Bar No. 6335001
Alice Riechers, IL Bar No. 6272933

Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
Tel: (872) 276-3598
Email: Brian.Yost@ilag.gov
Paul.Harper@ilag.gov
Alice.Riechers@ilag.gov

*Attorneys for Plaintiff State of Illinois*

13

PLS' MOTION TO EXCLUDE

/s/ Schonette J. Walker
Schonette J. Walker, MD Bar No. 0512290008
Gary Honick, MD Bar No. 7806010078
Byron Warren, MD Bar No. 1612140330

Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Tel: (410) 576-6470
swalker@oag.state.md.us
ghonick@oag.state.md.us
bwarren@oag.state.md.us

*Attorneys for Plaintiff State of Maryland*

14

/s/ Lucas J. Tucker
Lucas J. Tucker, NV Bar No. 10252
Samantha B. Feeley, NV Bar No. 14034

Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100
ltucker@ag.nv.gov
sfeeley@ag.nv.gov

*Attorneys for Plaintiff State of Nevada*

PLS' MOTION TO EXCLUDE

/s/ Julie Ann Meade
Julie Ann Meade, NM Bar No. 8143
Jeff Dan Herrera, NM Bar No. 154030

New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87504
Tel: (505) 717-3500
jmeade@nmag.gov
jherrera@nmag.gov

*Attorneys for Plaintiff State of New Mexico*

16

PLS' MOTION TO EXCLUDE

/s/ Cheryl F. Hiemstra
Cheryl F. Hiemstra, OSB#133857
Tim D. Nord, OSB#882800
Chris Kayser, OSB#984244
Tania Manners, OSB#140363

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel: (503) 934-4400
Facsimile: (503) 378-5017
Cheryl.Hiemstra@doj.state.or.us
Tim.D.Nord@doj.state.or.us
cjkayser@lvklaw.com
tmanners@lvklaw.com

*Attorneys for Plaintiff State of Oregon*

17

PLS' MOTION TO EXCLUDE

/s/ William Young
William Young, WY Bar No. 8-6746

Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-7847
William.Young@wyo.gov

*Attorney for Plaintiff State of Wyoming*

18

PLS' MOTION TO EXCLUDE