B. JOHN CASEY, OSB No. 120025
john.casey@stoel.com
RACHEL C. LEE, OSB No. 102944
rachel.lee@stoel.com
JACOB GOLDBERG, OSB No. 162565
jacob.goldberg@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380

MATTHEW M. WOLF (*Pro Hac Vice*)
matthew.wolf@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC  20001
Telephone:  202.942.5000

*Attorneys for Defendant The Kroger Company*
(Additional counsel on signature page)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE KROGER COMPANY and ALBERTSONS COMPANIES, INC.,<br><br>    Defendants. | Case No.: 3:24-cv-00347-AN<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT RELATED TO DEFENDANTS' PROPOSED DIVESTITURE**<br><br>**REDACTED** |

**INTRODUCTION**

Plaintiffs make the remarkable request for this Court to exclude all evidence relating to the contracted-for divestiture of assets to non-party C&S Wholesale Grocers ("C&S") because Defendants properly asserted attorney-client privilege and work-product protection over a relatively small amount of information created in connection with negotiations over the amended divestiture package. Plaintiffs never challenged those privilege assertions in this Court, and the administrative law judge overseeing the parallel administrative proceeding twice rejected motions to compel this information, sustaining Defendants' claims of privilege. Granting Plaintiffs' motion would do nothing more than punish Defendants for rightfully asserting privilege and exclude from the case one of the most central issues in dispute.

Plaintiffs' motion is deeply flawed. Defendants are not raising a "defense" of divestiture and do not seek to "fix" the merger. Divestiture has always been a central part of the challenged transaction, and the final divestiture package must be considered in determining the effects (if any) of the transaction on competition in relevant antitrust markets. Defendants are not relying on any privileged materials for any part of their case. Defendants produced tens of thousands of non-privileged documents regarding the divestiture. The mere fact that Plaintiffs believe production of the minority of information withheld as privileged may be *relevant* to their case—a low bar—is not sufficient to invoke the sword/shield doctrine. Were it otherwise, virtually every assertion of privilege would be threatened.

Tellingly, Plaintiffs do not cite a single case in which the relief they seek here—excluding evidence of divestiture—has been granted. Instead, in every case they cite, the opposing party had invoked a claim or defense that expressly required the factfinder to assess the advice provided by counsel (e.g., advice of counsel defense, ineffective assistance of counsel habeas relief). Those

cases have no application here, where Defendants have raised no defense that requires the Court to consider the nature or substance of advice from counsel. Indeed, in the only case from this District Plaintiffs cite, the court withdrew its decision on the sword/shield doctrine after the defendants represented they would not rely on testimony about the advice of counsel and would not raise an advice-of-counsel defense. So too here: Defendants do not and will not rely at the evidentiary hearing on any information withheld as privileged.

Granting Plaintiffs' would erroneously prevent Defendants from presenting to the Court basic facts about the transaction that undermine any claim of anticompetitive effects. And it would set a troubling precedent for future merger litigation, requiring defendants to waive attorney-client privilege if a divestiture is at issue. The motion should be denied.

## BACKGROUND

**A.     The Amended Divestiture Package Was Negotiated in Response to Litigation**

Kroger and Albertsons entered into a merger agreement in October 2022. ███████████████████████████████████████████████████████████████. In September 2023, Kroger and Albertsons entered into a binding agreement to divest at least 413 stores (and potentially more), as well as substantial additional assets, to third-party C&S, the nation's leading grocery wholesaler. Ex. A ("Cosset Decl.") ¶ 5. As the prospective buyer, C&S shared Defendants' interest in reaching a divestiture agreement that would resolve anticipated concerns that may (and did) arise in litigation, and Defendants and C&S memorialized a joint defense agreement in August 2023. *Id.* ¶ 11. Because of threatened—and later actual—litigation, legal counsel "was involved at every step of the negotiations and provided advice regarding the effect of the proposed revisions on the anticipated and actual litigation." *Id.* ¶ 13.

In late 2023, the Federal Trade Commission and state regulators raised concerns with the divestiture package. Cosset Decl. ¶¶ 7–8. In early 2024, while the parties were in the process of negotiating a revised divestiture package in response to those concerns, the Commission filed an administrative proceeding against the merger in its own in-house tribunal, and Plaintiffs filed this action in federal court.[1] While this litigation has been pending, Defendants and C&S reached agreement on an expanded divestiture package. Pursuant to the terms of the amended agreement, executed on April 22, 2024, C&S will purchase 579 stores (███████████████) and many additional non-store assets.

B. **The Commission Unsuccessfully Attempts to Obtain Privileged Documents in the Administrative Proceeding, But Not Here**

In discovery, Plaintiffs sought documents related to the negotiation and development of the revised divestiture package. In response, Defendants produced thousands of non-privileged documents—including all documents related to diligence and the assets being conveyed. Based on a careful, document-by-document review, Defendants and C&S properly asserted (and logged) attorney-client privilege, work-product protection, and the common-interest doctrine over certain documents, such as draft proposals for the divestiture package and communications reflecting legal advice on how best to structure the package in light of the pending challenges. Defendants and C&S also asserted these privileges and protections in response to certain questions at depositions. Witnesses, however, answered dozens of other questions regarding the divestiture. *See* Ex. B.

In the administrative proceeding, the Commission twice moved to compel production of privileged information related to the divestiture package. In its first motion, the Commission sought a categorical ruling that documents and communications exchanged between Defendants

---

[1] Two parallel cases were brought by the state attorneys general of Washington and Colorado.

Page 3 –    DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* RE DIVESTITURE

and C&S regarding the divestiture package were not privileged. The chief administrative law judge overseeing the proceeding denied the motion as premature with respect to Defendants and as procedurally improper with respect to C&S. *See* Ex. C ("1st MTC Order"). Defendants subsequently produced privilege logs. Shortly thereafter, the Commission filed a renewed motion to compel production of divestiture-related privileged materials from Defendants (but not C&S).

The chief administrative law judge denied the Commission's renewed motion. *See* Ex. D ("2nd MTC Order"). Relying on an affidavit from Defendants, the judge observed that the purpose of the negotiations "was to structure a transaction that could be defended against the pending litigation," and that "legal advice, attorney work product, and the common interest of C&S, Kroger, and Albertson's in meeting the concerns of regulators necessarily shaped" the parties' negotiations and communications. *Id.* at 4. The judge concluded that "Kroger has sufficiently demonstrated that the withheld Negotiation Documents are protected by the attorney-client privilege, the attorney work product doctrine, and/or the common interest doctrine." *Id.* at 5.

Plaintiffs never filed any comparable motions in this Court seeking to compel production. Nor to this day have they argued in this Court that Defendants have improperly relied on the asserted privileges and protections. The Commission did file yet another motion in the administrative proceeding, seeking to strike divestiture from the administrative proceeding on the same grounds as those raised here. No ruling has yet issued.

## DISCUSSION

The sword/shield doctrine provides that "[w]here a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). The general rule is that "a party must *rely* on privileged advice from his counsel to make its claim or defense" in order for

Page 4 –    DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* RE DIVESTITURE

the sword/shield doctrine to apply. *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008). "Simply because privileged information is relevant to a claim or defense in the case does not give rise to an implied waiver." *Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, 2016 WL 3042733, at *5 (S.D.N.Y. May 24, 2016).

## I.     Plaintiffs' Motion Is Procedurally Defective

At the outset, Plaintiffs never filed a motion in this Court to compel production of the privileged documents they now claim are essential their arguments. When a court finds that a party's assertion of a claim or defense impliedly waives privilege, the proper course is for the court to "strik[e] a bargain with the holder of the privilege by letting him know how much of the privilege he must waive in order to proceed with his claim," *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003), which means ordinarily, the proper way to make such an argument is to seek to compel production of the withheld documents, *see In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*, 1997 WL 118369, at *3–4 (S.D.N.Y. Mar. 14, 1997). Plaintiffs did not follow that procedure. Instead, Plaintiffs waited until the eve of trial and argue to exclude all evidence on the divestiture because the evidentiary hearing is imminent. *See* Mot. 10. Plaintiffs have known about Defendants' assertion of privilege for *months* and could have moved at any time to compel production of the withheld documents, as the Commission twice did in the administrative proceeding. Having forgone that opportunity, Plaintiffs cannot use the imminence of the trial as a justification for the even more extreme remedy they seek here.

## II.    Defendants Have Not Injected Divestiture Into the Case

In any event, Plaintiffs' motion fails on the merits. The sword/shield doctrine does not apply on its face, because Defendants have not put divestiture "at issue." Plaintiffs are wrong to repeatedly describe the divestiture as a "defense." *See, e.g.*, Mot. 6. Under the *Baker Hughes*

framework for evaluating mergers, the burden first falls on Plaintiffs to "establish a prima facie case that a merger is anticompetitive." *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018) (citation omitted). That requires Plaintiffs to properly define a relevant market and then prove that the merger will result in "undue concentration" in that market. *United States v. Baker Hughes Inc.*, 908 F.2d 981, 982–83 (D.C. Cir. 1990). If Plaintiffs make that showing, the burden of *production* (but not of persuasion) shifts to Defendants to produce evidence that tends to "show that the prima facie case inaccurately predicts the relevant transaction's probable effect on future competition." *Id.* at 991. Finally, the burden of production then shifts back to Plaintiffs "and merges with the ultimate burden of persuasion, which remains with [Plaintiffs] at all times." *Id.* at 983.

Courts have repeatedly rejected efforts by the FTC to exclude divestiture from a merger case by cabining it as a "defense" or a "remedy." Those courts have recognized that tt the first, *prima facie* step of the framework, determining whether a "challenged transaction may substantially lessen competition in violation of Section 7 of the Clayton Act requires the adjudicator to review the <u>entire</u> transaction in question," including any proposed "divestiture" of assets to a third party. *FTC v. Arch Coal, Inc.*, 2004 WL 7389952, at *1 (D.D.C. July 7, 2004). That is because Plaintiffs "must address the circumstances surrounding the merger as they actually exist," *FTC v. Microsoft Corp.*, 681 F. Supp. 3d 1069, 1093 (N.D. Cal. 2023), and ignoring the divestiture in their *prima facie* case would be "tantamount to turning a blind eye to the elephant in the room," *Arch Coal*, 2004 WL 7389952, at *3.

A federal court in the District of Columbia recently came to this same conclusion. There, the government argued that the court should treat the merger and divestiture as "separate transactions," putting the burden on the defendant "to prove, as part of its rebuttal case . . . , that

Page 6 –    DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* RE DIVESTITURE

the divestiture will 'replace the competitive intensity lost as a result of the merger." *United States v. UnitedHealth Grp., Inc.*, 630 F. Supp. 3d 118, 132–33 (D.D.C. 2022), *appeal dismissed*, No. 22-5301, 2023 WL 2717667 (D.C. Cir. Mar. 27, 2023). The court rejected that argument, concluding that the relevant transaction at issue was "the proposed acquisition agreement *including the proposed divestiture*." *Id.* at 134 n.5. The court explained that "treating the acquisition and the divestiture as separate transactions that must be analyzed in separate steps allows the [plaintiff] to meet its *prima facie* burden based on a fictional transaction and fictional market shares." *Id.*

Under this precedent—which Defendants have raised before but which Plaintiffs ignore—the entire premise of Plaintiffs' motion is false. Divestiture is not a "defense" that Defendants have injected into the case; it is part of the transaction that Plaintiffs seek to enjoin.[2] There is accordingly no "sword" being wielded here—by pursuing this litigation, Plaintiffs assumed the burden of proving that the transaction *including the divestiture* is likely to substantially lessen competition. Plaintiffs "cannot unilaterally create an at-issue waiver" by raising a claim they assert implicates privileged information. *Richards v. Kallish*, 2023 WL 8111831, at *8 (S.D.N.Y. Nov. 22, 2023). The sword/shield doctrine simply cannot apply in these circumstances.

## III.    There Is No Implied Waiver

Even if divestiture were properly deemed a "defense," Defendants have not impliedly waived privilege. Under the sword/shield doctrine, "parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker*, 331 F.3d at 719. What this means is that "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications

---

[2] This is true even if divestiture is part of Defendants' rebuttal case, as Plaintiffs contend. *See* Mot. 10. The burden of *persuasion* remains at all times with Plaintiffs, including on rebuttal factors. *See Baker Hughes*, 908 F.2d at 983.

Page 7 –    DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* RE DIVESTITURE

to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182–83 (2d Cir. 2000).

Defendants are not relying on privileged materials for any part of their case, and Plaintiffs do not claim otherwise. In fact, they admit that Defendants' divestiture expert—Daniel Galante—did not rely on privileged materials to form his opinions, arguing instead that this fact "merely establishes he did not have a complete understanding of C&S's analysis." Mot. 8. That does not remotely signify waiver: Plaintiffs may challenge the reliability of Mr. Galante's opinion based on the scope of materials he reviewed, but they may not claim waiver based on the documents he *didn't* review. Moreover, despite accusing Defendants of seeking to "deploy privilege to craft a universe of favorable evidence," Mot. 9, Plaintiffs do not identify a single instance of selective disclosure by Defendants.

Plaintiffs nonetheless urge that disclosure is required because other courts have sometimes considered the parties' subjective assessment of a divestiture when analyzing a merger. *See* Mot. 7. But neither of the cases cited by Plaintiffs involved implied waiver of privilege or the sword/shield doctrine. And both of the examples concern statements by the divestiture *buyer* about the structure and effectiveness of the divestiture package. *See United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 68–71 (D.D.C. 2017) (citing internal emails from buyer); *FTC v. Sysco*, 113 F. Supp. 3d 1, 75–76 (D.D.C. 2015) (citing the buyer's "internal strategy document" and "internal [buyer] communications"). The buyer here is non-party C&S, and the decision by *C&S* to assert privilege over its own internal communications related to the divestiture negotiations does not render the sword/shield doctrine applicable to *Defendants*.

More crucially, though, a party does not waive privilege "merely by taking a position that the [privileged] evidence might contradict." *United States v. Salerno*, 505 U.S. 317, 323 (1992).

Page 8 –    DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* RE DIVESTITURE

"Relevance is *not* the standard for determining whether or not evidence should be protected from disclosure as privileged . . . ." *In re Itron, Inc.*, 883 F.3d 553, 561 (5th Cir. 2018). That is because privileged communications are virtually *always* likely to be relevant to a claim or defense: If a tort defendant tells her attorney she may have been behaving negligently during the relevant event, that information would be highly relevant (and useful) to the plaintiff, but that does not render it discoverable. Instead, for the sword/shield doctrine to apply, the party "must *rely* on privileged advice from his counsel to make his claim or defense." *County of Erie*, 546 F.3d at 229. As Defendants have made clear, they are not relying on privileged advice for any claim or defense.

Recognizing this defect, Plaintiffs try to draw an analogy to "advice of counsel and good faith defenses." Mot. 8. This comparison strains credulity. Unlike the cases on which Plaintiffs rely, Defendants are not invoking a "good faith belief in the lawfulness of [their] actions" as a defense. *SEC v. Honig*, 2021 WL 5630804, at *12 (S.D.N.Y. Nov. 30, 2021); *see also Vital Pharms. v. PhD Mktg., Inc.*, 2022 WL 2284544, at *3 (C.D. Cal. Apr. 15, 2022) (invoking advice of counsel to counter allegation of willful infringement). Such a defense would not even be cognizable, because there is no state-of-mind element under the Clayton Act. *Cf. Byars v. Bluff City News Co.*, 609 F.2d 843, 859 (6th Cir. 1979) (holding it is "clear that what should matter is not the monopolist's state of mind, but the overall impact of the monopolist's practices"). Defendants are not offering curated testimony about the advice received from attorneys, and they are not asserting a defense whose success depends on that advice. The sword/shield doctrine does not apply here.

The only case Plaintiffs cite from this District makes this exact point. *See* Mot. 8. There, the plaintiff brought a claim against a debt collector for wrongful initiation of civil proceedings. *See Klemp v. Columbia Collection Serv., Inc.*, 2014 WL 204013, at *1 (D. Or. Jan. 17, 2024).

Page 9 –    DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* RE DIVESTITURE

Although the defendant disclaimed any advice-of-counsel defense, its 30(b)(6) representative repeatedly testified that he had "relied on privileged communications with [the defendant's] attorney" in order to justify the challenged claims. *See id.* at *3. Because the deponent could not "identify any basis for the [claims] other than communications with [the defendant's] attorney," the Magistrate Judge concluded that the defendant had put otherwise privileged communications at issue. *See id.* But after this ruling, the defendant stipulated that it "would not rely on its communications with counsel at trial" and would "not rely on advice of counsel . . . as a defense to the causes of action presently before the Court." Stipulation & Order at 1–2, *Klemp v. Columbia Collection Serv., Inc.*, No. 13-CV-1577 (D. Or. Feb. 4, 2014), ECF No. 29. Upon receipt of that stipulation, the Magistrate Judge *withdrew* the opinion on which Plaintiffs rely. *See id.* at 2.

As in *Klemp*, Defendants represent that they will not "rely on [their] communications with counsel at trial" and will "not rely on advice of counsel . . . as a defense." That is the end of the matter. There is no "trial by ambush," as Plaintiffs hyperbolically claim. Mot. 6. Every document and piece of testimony Defendants intend to offer at trial has been made available to Plaintiffs and could be challenged (and was challenged) during depositions. *See* Ex. B.

## CONCLUSION

The consequences of Plaintiffs' position cannot be overstated. The issue of divestiture frequently arises in merger litigation. *See supra* p. 8. Where, as is often the case, the divestiture is negotiated in response to threatened or actual litigation, there are likely to be privileged communications relevant to the design of the divestiture. Plaintiffs' approach would require the defendant in such cases to waive privilege simply because privileged information might be helpful to the challenger's case. No court has ever endorsed such a rule, and precedent rejects it. The Court should reject Plaintiffs' effort to win this case through an ill-conceived evidentiary motion.

Page 10 –   DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* RE DIVESTITURE

DATED: August 21, 2024

| | |
|---|---|
| ANGELI LAW GROUP LLC | STOEL RIVES LLP |
| */s/ David H. Angeli* | */s/ B. John Casey* |
| DAVID H. ANGELI, Bar No. 020244 | B. JOHN CASEY, OSB No. 120025 |
| david@angelilaw.com | john.casey@stoel.com |
| PETER D. HAWKES, Bar No. 071986 | RACHEL C. LEE, OSB No. 102944 |
| peter@angelilaw.com | rachel.lee@stoel.com |
| 121 SW Morrison Street, Suite 400 | JACOB GOLDBERG, OSB No. 162565 |
| Portland, OR 97204 | jacob.goldberg@stoel.com |
| Telephone: 503.954.2232 | |
| | AND |
| AND | |
| | ARNOLD & PORTER KAYE SCHOLER LLP |
| DEBEVOISE & PLIMPTON LLP | |
| | MATTHEW M. WOLF (*Pro Hac Vice*) |
| EDWARD D. HASSI (*Pro Hac Vice*) | matthew.wolf@arnoldporter.com |
| thassi@debevoise.com | SONIA K. PFAFFENROTH (*Pro Hac Vice*) |
| 801 Pennsylvania Avenue NW | sonia.pfaffenroth@arnoldporter.com |
| Washington, DC 20004 | JOSHUA M. DAVIS (*Pro Hac Vice*) |
| Telephone: 202.942.5000 | joshua.davis@arnoldporter.com |
| | KOLYA D. GLICK (*Pro Hac Vice*) |
| MICHAEL SCHAPER (*Pro Hac Vice*) | kolya.glick@arnoldporter.com |
| mschaper@debevoise.com | JASON C. EWART (*Pro Hac Vice*) |
| SHANNON ROSE SELDEN (*Pro Hac Vice*) | jason.ewart@arnoldporter.com |
| srselden@debevoise.com | MICHAEL E. KIENTZLE (*Pro Hac Vice*) |
| J. ROBERT ABRAHAM (*Pro Hac Vice*) | michael.kientzle@arnoldporter.com |
| jrabraham@debevoise.com | MATTHEW M. SHULTZ (*Pro Hac Vice*) |
| NATASCHA BORN (*Pro Hac Vice*) | matthew.shultz@arnoldporter.com |
| nborn@debevoise.com | DAVID B. BERGMAN (*Pro Hac Vice*) |
| 66 Hudson Boulevard | david.bergman@arnoldporter.com |
| New York, NY 10001 | MICHAEL L. WALDEN (*Pro Hac Vice*) |
| Telephone: 212.909.6000 | mike.walden@arnoldporter.com |
| | YASMINE L. HARIK (*Pro Hac Vice*) |
| | yasmine.harik@arnoldporter.com |
| AND | ALLISON GARDNER (*Pro Hac Vice*) |
| | allison.gardner@arnoldporter.com |
| WILLIAMS & CONNOLLY LLP | BARBARA H. WOOTTON (*Pro Hac Vice*) |
| | barbara.wootton@arnoldporter.com |
| ENU A. MAINIGI (*Pro Hac Vice*) | CHRISTIAN SCHULTZ (*Pro Hac Vice*) |
| emainigi@wc.com | christian.schultz@arnoldporter.com |
| JONATHAN B. PITT (*Pro Hac Vice*) | DAVID EMANUELSON (*Pro Hac Vice*) |
| jpitt@wc.com | |

Page 11 –   DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* RE DIVESTITURE

A. JOSHUA PODOLL (*Pro Hac Vice*)
apodoll@wc.com
THOMAS W. RYAN (*Pro Hac Vice*)
tryan@wc.com
TYLER INFINGER(*Pro Hac Vice*)
tinfinger@wc.com
WILLIAM ASHWORTH (*Pro Hac Vice*)
washworth@wc.com
680 Maine Avenue SW
Washington, DC 20024
Telephone: 202.434.5000

AND

DECHERT LLP

JAMES A. FISHKIN (*Pro Hac Vice*)
james.fishkin@dechert.com
MICHAEL COWIE (*Pro Hac Vice*)
mike.cowie@dechert.com
ELENA KAMENIR (*Pro Hac Vice*)
elena.kamenir@dechert.com
1900 K Street NW
Washington, DC 20006
Telephone: 202.261.3300

HOWARD. M. ULLMAN (*Pro Hac Vice*)
howard.ullman@dechert.com
45 Fremont St, 26th Floor
San Francisco, CA 94105
Telephone: 415.262.4500

ROSS UFBERG (*Pro Hac Vice*)
ross.ufberg@dechert.com
YOSEF WEITZMAN (*Pro Hac Vice*)
yosi.weitzman@dechert.com
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: 215.994.2422

*Attorneys for Defendant Albertsons Companies, Inc.*

david.emanuelson@arnoldporter.com
MEI-WAH LEE (*Pro Hac Vice*)
mei-wah.lee@arnoldporter.com
WILSON DELOSS MUDGE (*Pro Hac Vice*)
wilson.mudge@arnoldporter.com
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: 202.942.5000

JOHN A. HOLLER (*Pro Hac Vice*)
john.holler@arnoldporter.com
250 W 55th Street
New York, NY 10019
Telephone: 212.836.8000

BRIAN K. CONDON (*Pro Hac Vice*)
brian.condon@arnoldporter.com
777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: 213.243.4000

JEREMY T. KAMRAS (*Pro Hac Vice*)
jeremy.kamras@arnoldporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: 415.471.3100

AND

WEIL, GOTSHAL & MANGES LLP

MARK A. PERRY (*Pro Hac Vice*)
mark.perry@weil.com
LUKE SULLIVAN (*Pro Hac Vice*)
luke.sullivan@weil.com
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: 202.682.7000

LUNA N. BARRINGTON (*Pro Hac Vice*)
luna.barrington@weil.com
767 Fifth Avenue
New York, NY 10153
Telephone: 212.310.8000

SARAH M. STERNLIEB (*Pro Hac Vice*)

sarah.sternlieb@weil.com
700 Louisiana Street, Suite 3700
Houston, TX  77002
Telephone: 713.546.5000

BAMBO OBARO (*Pro Hac Vice*)
bambo.obaro@weil.com
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  650.802.3000

THOMAS B. FIASCONE (*Pro Hac Vice*)
tom.fiascone@weil.com
REBECCA SIVITZ (*Pro Hac Vice*)
rebecca.sivitz@weil.com
100 Federal Street, Floor 34
Boston, MA  02110
Telephone:  617.722.8314

*Attorneys for Defendant The Kroger Company*