B. JOHN CASEY, Bar No. 120025
john.casey@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380

MATTHEW M. WOLF (*Pro Hac Vice*)
matthew.wolf@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: 202.942.5000

MARK A. PERRY (*Pro Hac Vice*)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: 202.682.7000

*Attorneys for Defendant The Kroger Company*
(Additional counsel on signature page)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER COMPANY and ALBERTSONS COMPANIES, INC.,<br><br>Defendants. | Case No.: 3:24-cv-00347-AN<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EVIDENCE ABOUT THE DIVESTITURE AND EFFICIENCIES**<br><br>REDACTED VERSION |

## INTRODUCTION

Plaintiffs urge the Court to exclude certain divestiture and efficiencies evidence they argue is "untrustworthy," "unreliable," or lacks "probative value." Mot. 1–4. But those complaints go to weight, not admissibility. The entire motion should be denied for this reason alone. That is all the more true in a bench trial. The Court is perfectly capable of assessing whether evidence is trustworthy, reliable, or probative. "[I]n the case of a bench trial," therefore, "a threshold ruling is generally superfluous. It would be, in effect, … asking the judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence." *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009).

Even setting those dispositive flaws aside, Plaintiffs' motion misconstrues the record. Plaintiffs assert that the divestiture and efficiencies evidence they want excluded is "made-for-litigation," when the facts show it is not. Significant evidence related to the divestiture and efficiencies existed—and was produced—well before the litigation began. Defendants' divestiture and efficiencies work continued to be developed after Plaintiffs' complaint was filed, as is common in merger cases. The ongoing nature of that work is not a basis to throw out the evidence. Indeed, Plaintiffs' own efficiencies expert relies upon third-party supplier declarations that, unlike the business plans and studies Defendants rely upon, lack any independent business justification and were made solely for litigation.[1] In any event, Plaintiffs do not, and cannot, dispute that they had every opportunity to depose Defendants' employees and experts as well as C&S Wholesale Grocers LLC's ("C&S") employees on the very documents at issue here, rendering any suggestion of prejudice hollow.

---

[1] *See, e.g.*, Pfaffenroth Dec. at Ex. 1 (Rebuttal Report of Aaron Yeater ("Yeater Rebuttal"), PX7011) at ¶ 41.c (citing the May 28, 2024 Decl. of Brian Giroux, Kimberly-Clark (PX5020)).

The reality is that Plaintiffs do not want evidence supporting the divestiture and efficiencies introduced because it shatters their case. But that is no reason to exclude relevant evidence or any expert testimony relying on it. The Court, therefore, should deny Plaintiffs' motion in limine.

## BACKGROUND

Though Plaintiffs argue for the blanket exclusion of a wide swath of evidence, they proceed to identify less than a dozen of Defendants' exhibits. The real focus of their motion, however, is Defendants' divestiture expert, Daniel Galante's, reliance on two business plans relating to the divestiture, and Defendants' efficiencies expert, Rajiv B. Gokhale's, reliance on updated efficiencies information. *See* Mot. 5–7. Plaintiffs' motion omits critical context for these documents and, in any event, ignores that Plaintiffs had every opportunity to question these experts about the materials over several hours of depositions and to test the supposed "puffery" and other purported deficiencies with the documents at that time.

### A.    C&S Business Plans and Expert Reliance on Those Plans

Significant divestitures have been part of the proposed transaction since Defendants announced their merger in late 2022. The merger agreement contemplated a divestiture of up to 650 stores and additional supporting assets. After signing the merger agreement, Defendants conducted an extensive search for a divestiture buyer and ultimately selected C&S.

In September 2023, to address regulators' concerns, Defendants and C&S announced an initial divestiture package including 413 stores and additional supporting assets, with the option to add up to 237 additional stores. C&S developed business plans relating to that divestiture, and compiled those plans in a presentation dated October 3, 2023.[2]

---

[2] Pfaffenroth Dec. Ex. 2 (Oct. 2023 Walnut Business Plan, PX3107). C&S first shared this document with the FTC on October 3, 2023. *See* Pfaffenroth Dec. Ex. 3 (Email Re: C&S Meeting Materials). C&S then produced this document to the FTC on November 3, 2023 as FTC-CS-00002703, over three full months *prior* to the filing of the complaint in this action.

At that time, Plaintiff FTC questioned Eric Winn, C&S's CEO, extensively about the October 2023 business plan in an investigational hearing.[3]  Mr. Winn testified that the business plan was not "prepared for the sole purpose of presenting to the Government."[4]

Thereafter, on February 26, 2024, Plaintiffs filed the present lawsuit seeking to enjoin the merger.  During fact discovery, Plaintiffs deposed seven fact witnesses from C&S.[5]  Despite now suggesting that C&S's October 3, 2023 business plan is critical, Plaintiffs chose not to ask even a single C&S witnesses any questions at deposition about the creation of the business plan or any additional work C&S had completed on the plan.

In April 2024, Defendants and C&S agreed to an updated divesture package including 579 stores and additional supporting assets to address concerns articulated by regulators in the pending litigation.  After agreeing to the updated package, C&S naturally needed to update its business plan to reflect its plans to integrate the divestiture, including the additional assets, into its existing business and operate it going forward.  The updated business plan—which Plaintiffs concede "mirrors many statements" from the October 2023 plan, Mot. 5—was finalized on June 26, 2024, and was produced to Plaintiffs by C&S just three days later.[6]

Defendants' divestiture expert Mr. Galante relied on, among many other documents and materials, the October 2023 and June 2024 business plans.[7]  On July 16, 2024, Plaintiffs deposed Mr. Galante for nearly 8 hours and questioned him about the June 2024 business plan.  Mr. Galante

---

[3] Pfaffenroth Dec. Ex. 4 (Eric Winn IH Transcript, PX4030) at 146:17–236:15.
[4] *Id.* at 147:19–21.
[5] Plaintiffs deposed the following C&S witnesses and in each deposition they never introduced the business plan as an exhibit: Deposition of Richard Cohen (6/13/2024) (PX4115); Deposition Alona Florenz (6/6/2024-6/7/2024) (PX4702 & PX4087); Deposition of Erik Keptner (6/12/2024) (PX4107); Deposition of Sudhakar Lingineni (5/30/2024) (PX4057); Deposition of Mark McGowan (5/31/2024) (PX4050); Deposition of Roxanne Schwans (6/11/2024) (PX4102); Deposition Eric Winn (6/4/2024-6/5/2024)(PX4060 & PX4061).
[6] *See* Pfaffenroth Dec. Ex. 5 (Jun. 2024, Walnut Business Plan, PX3956) (produced as CS-01847869).
[7] *See e.g.* Pfaffenroth Dec. Ex. 6 (Report of Daniel Galante Report, DX 2495) at ¶¶ 17, 33, 35, 37, 45, 60, and Schedule B.

testified that "none of the statements in the document conflict with what I have learned from the record and other evidence that we have incorporated in coming to our conclusions."[8]

Further, Plaintiffs' own expert, Dr. Edward J. Fox, relied on the June 2024 business plan when forming the opinions described in his reply report.[9]

### B.   Efficiencies Updates and Expert Reliance on Those Updates

Obtaining efficiencies is an important goal of the merger and Kroger first began to estimate anticipated efficiencies during the due diligence process before the merger agreement was signed. Based on that diligence, as of August 2022, Kroger estimated that it would achieve ▮▮▮▮ ▮▮▮▮ through the merger, enabling ▮▮▮▮ ▮▮▮▮ at Albertsons stores. After signing the merger agreement, Kroger retained consultants from Bain & Co. ("Bain"), A.T. Kearney, and Boston Consulting Group ("BCG") to analyze and validate its targets. As a result of that work, on January 23, 2024—before Plaintiffs filed this lawsuit—Kroger reported to Plaintiff FTC that, based on the most recent updates to its board, it "currently expects to achieve ▮▮▮▮" and that "Kroger believes that through additional work, it can generate ▮▮▮▮ ▮▮▮▮."[10] Kroger further explained that the anticipated efficiencies would enable it to "▮▮▮▮ at Albertsons' stores."[11]

Kroger's efficiencies estimates have not materially changed since its pre-litigation January 23, 2024 letter. Kroger still intends to make a $1 billion price investment at Albertsons stores, and publicly announced its commitment to do so on August 15, 2024.[12] And while Kroger and its

---

[8] Pfaffenroth Dec. Ex. 7 (Daniel Galante Deposition Transcript, PX4149) at 114:15–115:19.
[9] *See, e.g.*, Pfaffenroth Dec. Ex. 8 (Rebuttal Report of Edward Fox, PX7008) at ¶¶ 17, 23, 25, 31.
[10] Pfaffenroth Dec. Ex. 9 (Letter Re: Updated Synergies Estimates, PX1535) at 1.
[11] *Id.*
[12] Pfaffenroth Dec. Ex. 10 (*Kroger plans to lower prices by $1 billion after Albertsons merger closes*, CNBC (Aug. 15, 2024), https://www.cnbc.com/2024/08/15/kroger-plans-to-lower-prices-by-1-billion-after-albertsons-merger-closes.html.).

5

consultants have conducted additional work to validate its efficiencies targets since then, Kroger has not materially increased its projection beyond what it reported in January 2024 before Plaintiffs filed this action.

The FTC has had a full and fair opportunity to investigate these estimates. Following the January 23, 2024 letter, it conducted an investigational hearing of Kroger's former chief financial officer, Gary Millerchip, which focused entirely on efficiencies and price investments flowing from those efficiencies. Plaintiffs have also deposed a Kroger 30(b)(6) designee on efficiencies topics, Mafaz Maharoof, as well as representatives of Bain, A.T. Kearney, and BCG. Nor can Plaintiffs claim to be surprised that Kroger's efficiencies work has continued following the close of fact discovery in this case. Indeed, during Mr. Maharoof's deposition, Plaintiffs introduced a PowerPoint presentation that discussed Bain's continuing efforts to validate the exact Fresh efficiencies that Plaintiffs take issue with in their motion.[13]

Defendants' efficiencies expert, Mr. Gokhale, relied among many other documents and materials, on the efficiencies updates based on Kroger and its consultants' ongoing work.[14] On July 16, 2024, Plaintiffs deposed Mr. Gokhale for 7 hours, giving them every opportunity to test the claimed efficiencies in the updates. Plaintiffs questioned Mr. Gokhale about the minor change in National Brand efficiencies based on the updates, but declined to use any of the documents in their possession or inquire into the source of the change.[15] While they now suggest that the update was a material change, they barely touched on it in Mr. Gokhale's deposition.[16] Further, Plaintiffs'

---

[13] *See* Pfaffenroth Dec. Ex. 11 (Mafaz Maharoof Deposition Transcript, PX4064) at 94:19–96:22 (introducing PX11104); *see also* Pfaffenroth Dec. Ex. 12 (Sourcing – GFR slide deck, PX11104) at 12.
[14] *See* Pfaffenroth Dec. Ex. 13 (Report of Rajiv Gokhale, DX 2736) at App. B.
[15] Pls.' Torres Paez Dec. Ex. X (Rajiv Gokhale Deposition Transcript) at 136:22–139:20.
[16] Plaintiffs introduced one Fresh factpack in the deposition, but declined to ask about any of the categories they now seek to exclude. *See id.* at 188:18–212:14; (Plaintiffs ask Mr. Gokhale about the "Chicken Sourcing Efficiencies Factpack: Post Close Integration Planning Spring 2024" (PX3481) but no questions concerning any other fresh efficiencies.).

own expert, Aaron Yeater, relied on the efficiency updates in Mr. Gokhale's report when forming the opinions described in his reply report.[17]

## LEGAL STANDARD

Under the Federal Rules of Evidence, "[r]elevant evidence is admissible" unless the Constitution, a statute, or the Rules "provide[] otherwise." Fed. R. Evid. 402. "To exclude evidence on a motion in limine, 'the evidence must be inadmissible on all potential grounds.'" *Karthauser v. Columbia 9-1-1 Commc'ns Dist.*, No. 20-cv-127, 2023 WL 371649, at *1 (D. Or. Jan. 24, 2023) (quoting *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014)). "[A] motion in limine should not be used to resolve factual disputes or weigh evidence and should generally be deferred until trial." *Momtazi Fam., LLC v. Wagner*, No. 19-cv-476, 2021 WL 419611, at *4 (D. Or. Jan. 12, 2021).

## ARGUMENT

Plaintiffs cannot point to any rule, statute, or constitutional provision that would support their stunningly broad request to exclude all "evidence made for litigation or produced after the end of fact discovery and any expert testimony based on such evidence." Mot. 1. None exists, and their motion should be denied on that basis. *See* Fed. R. Evid. 402.[18] Instead, Plaintiffs narrow in on Defendants' expert opinions based on three specific documents and try to cobble together a variety of out-of-context statements and unrelated legal principles to support excluding what they do not dispute is highly relevant evidence. But even the authorities Plaintiffs rely on make clear that their concerns are meritless or, at most, go to the weight rather than the admissibility of the evidence they challenge.

---

[17] *See* Yeater Rebuttal ¶¶ 25–127.
[18] While Plaintiffs' motion seeks to exclude this amorphous generalized category of documents, Plaintiffs identify only a handful of specific documents they claim are objectionable, and thus this opposition responds only to arguments concerning those documents. Plaintiffs have had Defendants' exhibit list for weeks. The Court should therefore deny outright their motion as to unspecified documents.

I.      **Plaintiffs' "Made-for-Litigation" Evidentiary Bar Is Made-Up and Meritless**

Plaintiffs' principal argument is that evidence developed during litigation is inadmissible and unsuitable for expert testimony. Mot. 2–3. But no rule of evidence or antitrust law forbids the consideration of evidence developed "while a lawsuit was 'threatened or pending.'" Mot. 2 (quoting *United States v. Gen. Dynamics*, 415 U.S. 486, 504–05 (1974)). Instead, Plaintiffs mischaracterize the authorities they rely on.

To begin, all the cases they cite dealt with *post-acquisition* evidence—that is, evidence from after the consummation of the merger—not evidence that merely post-dated the filing (or threatening) of a plaintiff's complaint. *See, e.g.*, *Gen Dynamics*, 415 U.S. at 504 ("[T]his Court stated that *postacquisition* evidence tending to diminish the probability or impact of anticompetitive effects might be considered in a Section 7 case. … But … the probative value of such evidence was found to be extremely limited." (emphasis added)); *Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 434–35 (5th Cir. 2008) ("Whether *post-acquisition* evidence is admissible depends on the nature of the evidence." (emphasis added and citation omitted)); *Alberta Gas Chemicals Ltd. v. E.I. Du Pont De Nemours & Co.*, 826 F.2d 1235, 1244 (3d Cir. 1987) (discussing *General Dynamics*' treatment of "*postacquisition* evidence" (emphasis added)); *Hosp. Corp. of Am. v. FTC*, 807 F.2d 1381, 1384 (7th Cir. 1986) ("*Post-acquisition* evidence that is subject to manipulation by the party seeking to use it is entitled to little or no weight." (emphasis added)); *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 276 (7th Cir. 1981) ("*Post-acquisition* evidence is admissible since the probability of anticompetitive effects is judged at the time of trial." (emphasis added)).

As the Supreme Court explained in *General Dynamics*, post-acquisition evidence may be suspect because a firm's behavior immediately following a merger may not reflect how it will behave in the future. *See* 415 U.S. at 504. But Plaintiffs omit this qualifying language and instead

suggest that these cases established a general rule about evidence arising during litigation. *See* Plf. Mot 2. That is false.

In any event, even the cases Plaintiffs rely on—and indeed the FTC's own Merger Guidelines—recognize that this issue goes to weight, not admissibility. Earlier in the same paragraph from *General Dynamics* that Plaintiffs quote, for example, the Supreme Court explained that its cases had repeatedly held that "postacquisition evidence tending to diminish the probability or impact of anticompetitive effects might be considered." 415 U.S. at 504; *see also FTC v. Consol. Foods Corp.*, 380 U.S. 592, 598 (1965) ("The Court of Appeals was not in error in considering the post-acquisition evidence in this case."). Similarly, the Fifth Circuit in *Chicago Bridge* did not hold, as Plaintiffs claim, that such "evidence should be accorded no weight" Mot. 2. It held that post-acquisition evidence "*may* be useful" in some cases and would be of "limited value" in others. *Chicago Bridge & Iron*, 534 F.3d at 434–35. Even the FTC's 2023 Merger Guidelines (which themselves post-date the bulk of the FTC's 18-month, pre-complaint investigation into the Kroger–Albertsons merger) acknowledge that evidence developed during the FTC's investigation or litigation has some probative value. *See* U.S. Dep't of Justice & Fed. Trade Comm'n, *Merger Guidelines* § 3.3 n.69 (2023). In short, far from forbidding the use of evidence developed after the outset of litigation, both binding Supreme Court authority and the FTC's own guidelines hold that such evidence is generally admissible and that criticisms of the probative value and trustworthiness of documents and evidence goes to weight, not admissibility.

Consistent with that precedent, courts routinely consider evidence related to divestures in antitrust litigation—evidence that is almost always developed at least in part while litigation is ongoing. In *FTC v. Libby*, for example, the court considered revised divesture documents finalized while litigation was ongoing, explaining that changes to the divesture were simply an "attempt[] to address the concerns expressed by the FTC," not litigation gamesmanship. 211 F. Supp. 2d 34,

9

46 (D.D.C. 2002); *see also United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 80 n.39 (D.D.C. 2017) (explaining that review of divestiture revisions was appropriate). That makes sense: merging parties are on a contractual clock to close the merger by a date certain and they continue to take all steps necessary—financial, business, legal, and otherwise—to be in a position to close once legal challenges are defeated regardless of the litigation process. To ignore up-to-date documents reflecting the economic reality of the transaction Plaintiffs challenge "would be tantamount to turning a blind eye to the elephant in the room." *Federal Trade Commission v. Arch Coal, Inc.*, No. 04-cv-0534, 2004 WL 7389952, at *3 (D.D.C. July 7, 2004).

### II.    Plaintiffs' Business Records Objection is Meritless

Plaintiffs next half-heartedly contend that "documents prepared in preparation for litigation often lack the reliability necessary to be admitted under Rule 803(6)." Mot. 3. But that is no ground to exclude evidence for which Plaintiffs have not and could not articulate a valid hearsay objection. Rule 803(6) is an exception to the hearsay rule, not an independent basis for the admission of evidence, and Plaintiffs do not even attempt to develop the argument that the documents they seek to exclude are inadmissible hearsay or whether it is being used for hearsay purpose. *See* Mot. 3–4. Nor could they—Plaintiffs broadly seek to exclude all "evidence made for litigation or produced after the end of fact discovery and any expert testimony based on such evidence," a category that has nothing to do with whether a document is hearsay. Mot. 1.

Much of that evidence, including the examples Plaintiffs point to in their motion, would be admissible for a non-hearsay purpose; that is, it has significant probative value regardless of the truth of the matter asserted. C&S's business plans, for example, show C&S's diligent preparation for running the divested stores. And to the extent Plaintiffs seek to exclude contractual agreements related to divestiture, those documents are plainly admissible for their legal effect—a clear non-hearsay purpose. *See, e.g., Loc. 512, Warehouse & Off. Workers' Union v. NLRB*, 795 F.2d 705,

10

713 n.4 (9th Cir. 1986) (out-of-court statements not hearsay when "the statement itself has legal effect"). Plaintiffs' categorical and unsupported assertion that documents developed during litigation lack the reliability necessary to be admitted under Rule 803(6) falls far short of establishing that all of these documents should be excluded as hearsay.

Moreover, Plaintiffs' hearsay arguments are particularly misguided given that Plaintiffs primarily seek to exclude expert testimony, for which Rule 803(6) does not apply. *See* Mot. 1, 5–9. Indeed, all three of the examples of purportedly objectionable evidence Plaintiffs offer relate to "material relied upon by Defendants' [experts]." *Id.* at 6; *see id.* at 5, 8. Under Federal Rule of Evidence 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed," and such facts and data "need not be admissible for the opinion to be admitted." As the Ninth Circuit has explained, Rule 703 "permits such hearsay, or other inadmissible evidence upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261–62 (9th Cir. 1984); *see also Cree v. Flores*, 157 F.3d 762, 773 (9th Cir. 1998) (expert testimony "not subject to the strictures of Federal Rules of Evidence 602 and 803"); *see also* Fed. R. Evid. 705 (permitting expert to state opinion without testifying to the underlying facts and data). Whether particular documents an expert relied on fall within the business-records hearsay exception is thus entirely irrelevant to the admissibility of expert opinions, because the Federal Rules authorize experts to rely on hearsay or otherwise inadmissible evidence.

### III. Plaintiffs' Timeliness Argument is Meritless

Plaintiffs' suggestion that relevant evidence should be excluded as untimely is equally without merit.

Plaintiffs' cite no standard for determining when such evidence would be, in their words, "problematic," much less articulate any basis for excluding *all* evidence produced after the end of

11

fact discovery in this case. *Id.* As Plaintiffs concede, Federal Rule of Civil Procedure 26(e) requires a party to supplement their expert disclosures with any new evidence considered to inform their opinions, even if it was created or produced after the close of fact discovery. *See id.*; *see, e.g.*, *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 396 (C.D. Cal. 2022) ("The duty to supplement continues even after the discovery period has closed." (quotation marks omitted)). Courts routinely permit expert witnesses to rely on evidence up to and including trial testimony in supporting their opinions. *See, e.g.*, *Garcia v. Cnty. of Riverside*, No. 18-cv-839, 2019 WL 4282903, at *16 (C.D. Cal. June 7, 2019). And to the extent Plaintiffs object to an expert "updating his opinions," Mot. 8, the Court is well equipped to address such objection at trial.

Plaintiffs do not even attempt to show any actual burden or prejudice here. With good reason: they had a full opportunity to explore in depositions the evidence they now seek to exclude. They had the opportunity to depose defendants' experts on those very documents. Defendants have known about the divestiture and efficiencies plans since before they filed the litigation, interrogated corporate representatives about them at investigational hearings, and deposed defendants' employees, consultants, and experts extensively about the divestiture and efficiencies. That they barely touched on the materials at those depositions tellingly confirms the true purpose of the motion: they simply do not want to have to face the evidence at trial. That is not a proper ground for excluding relevant factual evidence and expert testimony related to the divestiture and efficiencies, and their motion should be denied.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' motion in limine in its entirety.

| | |
|---|---|
| DATED: August 21, 2024 | Respectfully submitted: |
| ANGELI LAW GROUP LLC | STOEL RIVES LLP |
| */s/ David H. Angeli* | */s/ B. John Casey* |
| DAVID H. ANGELI, Bar No. 020244<br>david@angelilaw.com<br>PETER D. HAWKES, Bar No. 071986<br>peter@angelilaw.com<br>121 SW Morrison Street, Suite 400<br>Portland, OR 97204<br>Telephone: 503.954.2232 | B. JOHN CASEY, OSB No. 120025<br>john.casey@stoel.com<br>RACHEL C. LEE, OSB No. 102944<br>rachel.lee@stoel.com<br>JACOB GOLDBERG, OSB No. 162565<br>jacob.goldberg@stoel.com<br>760 SW Ninth Avenue, Suite 3000<br>Portland, OR 97205<br>Telephone: 503.224.3380 |
| AND | AND |
| DEBEVOISE & PLIMPTON LLP | ARNOLD & PORTER KAYE SCHOLER LLP |
| EDWARD D. HASSI (*Pro Hac Vice*)<br>thassi@debevoise.com<br>801 Pennsylvania Avenue NW<br>Washington, DC 20004<br>Telephone: 202.942.5000<br><br>MICHAEL SCHAPER (*Pro Hac Vice*)<br>mschaper@debevoise.com<br>SHANNON ROSE SELDEN (*Pro Hac Vice*)<br>srselden@debevoise.com<br>J. ROBERT ABRAHAM (*Pro Hac Vice*)<br>jrabraham@debevoise.com<br>NATASCHA BORN (*Pro Hac Vice*)<br>nborn@debevoise.com<br>66 Hudson Boulevard<br>New York, NY 10001<br>Telephone: 212.909.6000 | MATTHEW M. WOLF (*Pro Hac Vice*)<br>matthew.wolf@arnoldporter.com<br>SONIA K. PFAFFENROTH (*Pro Hac Vice*)<br>sonia.pfaffenroth@arnoldporter.com<br>JOSHUA M. DAVIS (*Pro Hac Vice*)<br>joshua.davis@arnoldporter.com<br>KOLYA D. GLICK (*Pro Hac Vice*)<br>kolya.glick@arnoldporter.com<br>JASON C. EWART (*Pro Hac Vice*)<br>jason.ewart@arnoldporter.com<br>MICHAEL E. KIENTZLE (*Pro Hac Vice*)<br>michael.kientzle@arnoldporter.com<br>DAVID B. BERGMAN (*Pro Hac Vice*)<br>david.bergman@arnoldporter.com<br>MICHAEL L. WALDEN (*Pro Hac Vice*)<br>mike.walden@arnoldporter.com<br>YASMINE L. HARIK (*Pro Hac Vice*)<br>yasmine.harik@arnoldporter.com<br>ALLISON GARDNER (*Pro Hac Vice*)<br>allison.gardner@arnoldporter.com<br>BARBARA H. WOOTTON (*Pro Hac Vice*)<br>barbara.wootton@arnoldporter.com<br>CHRISTIAN SCHULTZ (*Pro Hac Vice*) |
| AND | |
| WILLIAMS & CONNOLLY LLP | |

ENU A. MAINIGI (*Pro Hac Vice*)
emainigi@wc.com
JONATHAN B. PITT (*Pro Hac Vice*)
jpitt@wc.com
A. JOSHUA PODOLL (*Pro Hac Vice*)
apodoll@wc.com
THOMAS W. RYAN (*Pro Hac Vice*)
tryan@wc.com
TYLER INFINGER(*Pro Hac Vice*)
tinfinger@wc.com
WILLIAM ASHWORTH (*Pro Hac Vice*)
washworth@wc.com
680 Maine Avenue SW
Washington, DC 20024
Telephone: 202.434.5000

AND

DECHERT LLP

JAMES A. FISHKIN (*Pro Hac Vice*)
james.fishkin@dechert.com
MICHAEL COWIE (*Pro Hac Vice*)
mike.cowie@dechert.com
ELENA KAMENIR (*Pro Hac Vice*)
elena.kamenir@dechert.com
1900 K Street NW
Washington, DC 20006
Telephone: 202.261.3300

HOWARD. M. ULLMAN (*Pro Hac Vice*)
howard.ullman@dechert.com
45 Fremont St, 26th Floor
San Francisco, CA 94105
Telephone: 415.262.4500

ROSS UFBERG (*Pro Hac Vice*)
ross.ufberg@dechert.com
YOSEF WEITZMAN (*Pro Hac Vice*)
yosi.weitzman@dechert.com
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: 215.994.2422

christian.schultz@arnoldporter.com
DAVID EMANUELSON (*Pro Hac Vice*)
david.emanuelson@arnoldporter.com
MEI-WAH LEE (*Pro Hac Vice*)
mei-wah.lee@arnoldporter.com
WILSON DELOSS MUDGE (*Pro Hac Vice*)
wilson.mudge@arnoldporter.com
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: 202.942.5000

JOHN A. HOLLER (*Pro Hac Vice*)
john.holler@arnoldporter.com
250 W 55th Street
New York, NY 10019
Telephone: 212.836.8000

BRIAN K. CONDON (*Pro Hac Vice*)
brian.condon@arnoldporter.com
777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: 213.243.4000

JEREMY T. KAMRAS (*Pro Hac Vice*)
jeremy.kamras@arnoldporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: 415.471.3100

AND

WEIL, GOTSHAL & MANGES LLP
MARK A. PERRY (*Pro Hac Vice*)
mark.perry@weil.com
LUKE SULLIVAN (*Pro Hac Vice*)
luke.sullivan@weil.com
JASON N. KLEINWAKS (*Pro Hac Vice*)
jason.kleinwaks@weil.com
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: 202.682.7000

LUNA N. BARRINGTON (*Pro Hac Vice*)
luna.barrington@weil.com
767 Fifth Avenue
New York, NY 10153

Telephone: 212.310.8000

SARAH M. STERNLIEB (*Pro Hac Vice*)
sarah.sternlieb@weil.com
700 Louisiana Street, Suite 3700
Houston, TX 77002
Telephone: 713.546.5000

BAMBO OBARO (*Pro Hac Vice*)
bambo.obaro@weil.com
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: 650.802.3000

THOMAS B. FIASCONE (*Pro Hac Vice*)
tom.fiascone@weil.com
REBECCA SIVITZ (*Pro Hac Vice*)
rebecca.sivitz@weil.com
100 Federal Street, Floor 34
Boston, MA  02110
Telephone:  617.722.8314

*Attorneys for Defendant The Kroger Company*