**Daniel Brasil Becker**, DC Bar No. 1030989
NATIONAL LABOR RELATIONS BOARD
Contempt, Compliance, and Special Litigation Branch
1015 Half Street, S.E., 4th Floor
Washington, DC 20570
Tel: (202) 208-2255
Email: daniel.becker@nlrb.gov

**Kevin P. Flanagan**, MD Bar (No Bar Number)
NATIONAL LABOR RELATIONS BOARD
Contempt, Compliance, and Special Litigation Branch
1015 Half Street, S.E., 4th Floor
Washington, DC 20570
Tel: (202) 273-2938
Email: kevin.flanagan@nlrb.gov

*Attorneys for Amicus Curiae,
the National Labor Relations Board*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

---

| | |
|---|---|
| **FEDERAL TRADE COMMISSION, ET AL.,** | Case No. 3:24-cv-00347-AN |
| Plaintiffs, | |
| v. | BRIEF OF *AMICUS CURIAE* THE NATIONAL LABOR RELATIONS BOARD IN RESPONSE TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |
| **THE KROGER COMPANY, ET AL.,** | |
| Defendants. | |

## TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

CONCLUSION ............................................................................................................................... 6

## TABLE OF AUTHORITIES

**Cases**

*Brown v. Pro Football, Inc.*,
  518 U.S. 231 (1996) ................................................................................................ 4, 5, 6

*Charles D. Bonanno Linen Serv., Inc. v. NLRB*,
  454 U.S. 404 (1982) ....................................................................................................... 5, 6

*Clarett v. Nat'l Football League*,
  369 F.3d 124 (2d Cir. 2004) ............................................................................................. 4, 5

*Electrical Workers IBEW Local 21 v. NLRB*,
  563 F.3d 418 (9th Cir. 2009) ............................................................................................... 6

*Fibreboard Paper Products Corp. v. NLRB*,
  379 U.S. 203 (1964) .............................................................................................................. 6

*H. K. Porter Co. v. NLRB*,
  397 U.S. 99 (1970) ............................................................................................................ 3, 4

*Hoptowit v. Ray*,
  682 F.2d 1237 (9th Cir. 1982) ............................................................................................. 2

*Machinists v. Northeast Airlines, Inc.*,
  473 F.2d 549 (1st Cir. 1972) ................................................................................................ 6

*McAnary & Welter, Inc.*,
  115 NLRB 1029 (1956) ..................................................................................................... 4, 5

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
  355 F. Supp. 2d 1061 (N.D. Cal. 2005) ............................................................................... 2

*Retail Assocs., Inc.*,
  120 NLRB 388 (1958) ................................................................................................ 2, 5, 6

*Loc.Union No. 189, Amalgamated Meat Cutters v. Jewel Tea Co.*,
  381 U.S. 676 (1965) ............................................................................................................. 6

*United Mine Workers of Am. v. Pennington*,
  381 U.S. 657 (1965) .......................................................................................................... 4, 5

*Van Eerden Co.*,
  154 NLRB 496 (1965) ................................................................................................ 2, 5, 6

**Statutes**

29 U.S.C. § 151 *et seq*...................................................................................................... 1

29 U.S.C. § 151.................................................................................................................. 1

29 U.S.C. § 154........................................................................................................... 1, 3, 4

29 U.S.C. § 157................................................................................................................ 2, 3

29 U.S.C. § 158........................................................................................................ 1, 2, 3, 4

29 U.S.C. § 160........................................................................................................... 1, 2, 3

**Rules**

Fed. R. App. P. 29............................................................................................................ 2

**INTEREST OF AMICUS CURIAE**

The National Labor Relations Board ("NLRB" or "Board") is an independent federal agency created by Congress to enforce and administer the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* In passing the NLRA, Congress stated that it was the "policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." Id. § 151.

The NLRA accomplishes its purpose by among other things, proscribing certain conduct by employers and by labor organizations as unfair labor practices, and empowers the Board to prevent and remedy the commission of such unfair labor practices. Id. § 158, 160. One of these unfair labor practices is the failure by an employer or a union to bargain collectively in good faith. Id. § 158(a)(5), (b)(3), (d); id. § 160. As described below, the duty to bargain imposes obligations that are process oriented, not outcome oriented. Thus, the NLRB has no authority to regulate the substantive terms of parties' agreements, either with respect to how such terms would affect the parties at a single bargaining table, or beyond. Nor is the Board empowered to block a merger between two employers for labor-relations reasons, much less for antitrust reasons. Indeed, the NLRA expressly prohibits the Board from hiring "individuals for the purpose of" conducting "economic analysis," id. § 154(a), including, presumably, the kind needed to answer any of the basic economic questions central to the case at hand.

In its opposition to Plaintiffs' motion for a preliminary injunction, Defendants suggest that labor law is a defense to its proposed merger and that the NLRB is the proper agency to

PAGE 1 – BRIEF OF AMICUS CURIAE NATIONAL LABOR RELATIONS BOARD

regulate bargaining power between unions and employers, rather than the Federal Trade Commission (FTC). ECF Doc. 236 at 11, 48-50. That is why the NLRB has taken an interest in this case and why the uniquely helpful information that the agency can offer this Court in response to Defendants' labor law argument supports the filing of the instant brief by analogy to Rule 29 of the Federal Rules of Appellate Procedure. Fed. R. App. P. 29(a)(2); *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982); *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005). More specifically, this *amicus* brief is intended to provide the Court with information as to what the NLRB does and does not do, as well as to address caselaw cited by Defendants regarding the narrow matter of multiemployer bargaining – a practice that is wholly distinct from merger transactions and that is permitted only to the extent that organized labor consents to the formation of a multiemployer bargaining unit. *Retail Assocs., Inc.*, 120 NLRB 388, 393 (1958) (empowering either management or labor to veto the formation of this voluntary unit); *Van Eerden Co.*, 154 NLRB 496, 499 (1965) ("multiemployer bargaining is" a consensual arrangement serving "bargaining purposes").

## ARGUMENT

The NLRA's core substantive guarantee is contained in NLRA Section 7, which protects certain private-sector employees' rights "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid." 29 U.S.C. § 157. The Board protects these and other rights in two principal fashions. First, the NLRA deems certain employer and union activity to be violative of NLRA Section 7 and, therefore, "unfair labor practices" (or "ULPs") under Section 8 of the Act. *Id.* § 158. NLRA Section 10 empowers the Board as the exclusive public body responsible for preventing and remedying ULPs to adjudicate alleged violations of Section 8, subject to enforcement or review

PAGE 2 – BRIEF OF AMICUS CURIAE NATIONAL LABOR RELATIONS BOARD

in a court of appeals. *Id.* § 160(a), (c), (e), (f). Second, the NLRB protects and effectuates Section 7 rights by conducting union-representation proceedings pursuant to Section 9 of the NLRA. *Id.* § 159. More specifically, under NLRA Section 9, a union becomes an exclusive collective-bargaining representative if designated or selected by the majority of the employees in a unit appropriate for such purposes. *Id*. However, in carrying out either of these functions, the Board is prohibited from "appoint[ing] individuals for the purpose of conciliation or mediation, or for economic analysis." *Id.* § 154(a).

A quintessential example of the interplay between NLRA Sections 7 through 10 appears when an employer fails to bargain in good faith with its employees' exclusive collective-bargaining representative, or vice-versa. The right of employees to form a union for collective-bargaining purposes appears in NLRA Section 7. Upon the due showing of majority support in an appropriate unit, that union becomes the exclusive bargaining representative of all employees in that unit under NLRA Section 9. An employer then violates NLRA Section 8(a)(5) if it fails to bargain in good faith, within the meaning of NLRA Section 8(d), with that union. Likewise, that union would violate NLRA Section 8(b)(3) if it were to refuse to bargain in good faith with the employer. And it is the Board that interprets the meaning of these provisions under NLRA Section 10, subject to review in the courts of appeals.

Notably, while the NLRA empowers the Board "to require employers and employees to negotiate, it is without power to compel a company or a union to agree to any substantive contractual provision of a collective-bargaining agreement." *H. K. Porter Co. v. NLRB*, 397 U.S. 99, 102 (1970). More specifically, to fulfill the duty to bargain created by the NLRA a party must "meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising

PAGE 3 – BRIEF OF AMICUS CURIAE NATIONAL LABOR RELATIONS BOARD

thereunder." 29 U.S.C. § 158(d). But the Board cannot set any substantive terms and conditions, be they economic or noneconomic, between the bargaining parties. *Id*. § 158(d) (stating that the duty to bargain "does not compel either party to agree to a proposal or require the making of a concession"); *H. K. Porter*, 397 U.S. at 102. And given the prohibitions contained in NLRA Section 4, 29 U.S.C. § 154(a), the Board is not well positioned to engage in such economic analysis.

Far from addressing any questions as to the propriety of a proposed merger, the NLRA and the Board instead speak to an employer's bargaining obligations with the union or unions that may represent that employer's employees. None of the cases that Defendants cite in discussing the nonstatutory antitrust exemption for labor activity in their opposition to Plaintiffs' motion for a preliminary injunction is to the contrary. ECF Doc. 236 at 50 (citing *Clarett v. Nat'l Football League*, 369 F.3d 124 (2d Cir. 2004), *Brown v. Pro Football, Inc.*, 518 U.S. 231 (1996), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965)). Neither *Clarett*, 369 F.3d 124, nor *Brown*, 518 U.S. 231 (1996), nor *United Mine Workers*, 381 U.S. 657, ever speak of a merger of two or more businesses into one.

Instead, *Clarett*, *Brown*, and *United Mine Workers* concern an entirely unique phenomenon that is specific to labor relations and is known as multiemployer bargaining.[1] *Brown*, 518 U.S. at 238 ("[T]he question before us is [whether the 'nonstatutory' labor exemption to antitrust applies] to an agreement among several employers bargaining together to implement after impasse the terms of their last best good-faith wage offer."); *id.* at 240

---

[1] Multiemployer bargaining is "a process by which employers band together to *act* as a single entity in bargaining with a common union." *Clarett*, 369 F.3d at 136 (emphasis added). But employers in a multiemployer bargaining unit do not *become* a single employer for all business purposes, as highlighted by their right to disassociate from multiemployer bargaining, *McAnary & Welter, Inc.*, 115 NLRB 1029, 1031 (1956).

PAGE 4 – BRIEF OF AMICUS CURIAE NATIONAL LABOR RELATIONS BOARD

("Multiemployer bargaining itself is a well-established, important, pervasive method of collective bargaining, offering advantages to both management and labor."); *Clarett*, 369 F.3d at 139 ("[T]he NFL teams are permitted to engage in joint conduct with respect to the terms and conditions of players' employment as a multi-employer bargaining unit without risking antitrust liability."); *United Mine Workers*, 381 U.S. at 665 ("We have said that a union may make wage agreements with a multiemployer bargaining unit and may in pursuance of its own union interests seek to obtain the same terms from other employers."). And it is within the unique context of multiemployer bargaining that the Court held that "[t]he labor laws give the Board, not antitrust courts, primary responsibility for policing the collective-bargaining process." *Brown*, 518 U.S. at 242.

To be clear, the Board has long regulated how employers may form or disassociate from a multiemployer bargaining unit and has predicated the existence of that unit on mutual consent. *Retail Assocs.*, 120 NLRB at 393 ("[M]utual consent of the union and employers involved is a basic ingredient supporting the appropriateness of a multiemployer bargaining unit . . . ."); *see also McAnary & Welter*, 115 NLRB at 1031 ("[T]he Board has long held that" an employer may "withdraw from multiemployer bargaining … to pursue an individual course of action . . . ."); *Van Eerden Co.*, 154 NLRB at 499 (explaining that multiemployer bargaining is "dependent upon the real consent of the participants to bind themselves to each other for bargaining purposes"). Board case law also speaks to how unions and employers must conduct themselves during the course of multiemployer bargaining, including after reaching impasse. *Brown*, 518 U.S. at 239; *Charles D. Bonanno Linen Serv., Inc. v. NLRB*, 454 U.S. 404, 412 (1982) ("*Bonanno Linen*").

Ultimately, labor's consent to the formation of a multiemployer bargaining unit is an essential prerequisite to the existence of such a unit. *Retail Assocs.*, 120 NLRB at 393; *Bonanno Linen*, 454 U.S. at 411 ("The Board's approach in *Retail Associates* has been accepted in the courts . . . ."). It exists to afford both labor and management unique benefits to facilitate the collective-bargaining relationship. *Brown*, 518 U.S. at 240; *Bonanno Linen*, 454 U.S. at 409 n.3. The consensual predicate to any multiemployer unit's formation means that multiemployer bargaining does not provide management a unilateral right to combine forces against labor's interests. *Retail Assocs.*, 120 NLRB at 393; *Van Eerden Co.*, 154 NLRB at 499.

In stark contrast to a union's right to veto the formation of a multiemployer unit, labor law does not provide unions with the right to dispute the far broader decision of two or more employers to merge, for all business purposes. *Machinists v. Northeast Airlines, Inc.*, 473 F.2d 549, 556-57 (1st Cir. 1972) (stating that *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203 (1964), "should not be extended to guarantee a union participation in a decision to merge."); *Electrical Workers IBEW Local 21 v. NLRB*, 563 F.3d 418, 422 (9th Cir. 2009) (upholding Board order finding that the employer "was exempted from bargaining over the decision to merge the companies, including the bargaining units, because the merger was a core business decision ... and was not primarily motivated by labor costs"). As such, Defendants are mistaken to suggest that our nation's labor laws grant them unfettered rights "to join forces in collective bargaining *today*." ECF Doc. 236 at 50. Labor law conditions multiemployer bargaining on the consent of organized labor while the antitrust laws apply an entirely framework to scrutinize the far broader question of business mergers.

## CONCLUSION

In sum, labor law and antitrust law address unique concerns. *Loc. Union No. 189, Amalgamated Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 687 (1965) (distinguishing the

PAGE 6 – BRIEF OF AMICUS CURIAE NATIONAL LABOR RELATIONS BOARD

Board's "unfair labor practice charges of refusal to bargain" from "the typical antitrust suit," which "is brought by a stranger to the bargaining relationship, and the complaint is not that the parties have refused to bargain but, quite the contrary, that they have agreed"). The propriety of multiemployer bargaining under the NLRA is wholly distinct from the propriety of a merger transaction under the antitrust laws. Whether the merger of two employers constitutes anticompetitive behavior is a question that goes far beyond the Board's reach, whether before or after a merger occurs. The question of merger, however, is not beyond the FTC's area of expertise or the jurisdiction of this court. This Court should therefore reject Defendants' suggestion that the nonstatutory antitrust exemption for labor activity immunizes their proposed merger from antitrust scrutiny.

Respectfully submitted,

Date: August 21, 2024

JENNIFER A. ABRUZZO
*General Counsel*

PETER SUNG OHR
*Deputy General Counsel*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
MD Bar (No Bar Number)
Tel: (202) 273-2938
Email: kevin.flanagan@nlrb.gov

/s/ Daniel Brasil Becker
DANIEL BRASIL BECKER
*Trial Attorney*
DC Bar No. 1030989
Tel: (202) 208-2255
Email: daniel.becker@nlrb.gov

NATIONAL LABOR RELATIONS BOARD
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570
Fax: (202) 273-4244

PAGE 7 – BRIEF OF AMICUS CURIAE NATIONAL LABOR RELATIONS BOARD

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 2,113 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: August 21, 2024　　　　　　　　　　/s/ Daniel Brasil Becker
　　　　　　　　　　　　　　　　　　　　Daniel Brasil Becker
　　　　　　　　　　　　　　　　　　　　*Attorney*
　　　　　　　　　　　　　　　　　　　　DC Bar No. 1030989
　　　　　　　　　　　　　　　　　　　　Tel: (202) 208-2255
　　　　　　　　　　　　　　　　　　　　Fax: (202) 273-4244
　　　　　　　　　　　　　　　　　　　　daniel.becker@nlrb.gov

　　　　　　　　　　　　　　　　　　　　NATIONAL LABOR RELATIONS BOARD
　　　　　　　　　　　　　　　　　　　　Contempt, Compliance, and Special
　　　　　　　　　　　　　　　　　　　　Litigation Branch
　　　　　　　　　　　　　　　　　　　　1015 Half St. SE, 4th Floor
　　　　　　　　　　　　　　　　　　　　Washington, DC 20003

## CERTIFICATE OF SERVICE

In accordance with Fed. R. Civ. P. 5(b)(2)(E) and LR 5-1, I hereby certify that on August 22, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

Dated: August 22, 2024

/s/ Daniel Brasil Becker
Daniel Brasil Becker
*Attorney*
DC Bar No. 1030989
Tel: (202) 208-2255
Fax: (202) 273-4244
daniel.becker@nlrb.gov

NATIONAL LABOR RELATIONS BOARD
Contempt, Compliance, and Special Litigation Branch
1015 Half St. SE, 4th Floor
Washington, DC 20003