Susan A. Musser, DC Bar # 1531486
Rohan Pai, DC Bar # 1015652
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (202) 326-2122
Tel: (202) 326-2936
*smusser@ftc.gov; rpai@ftc.gov*

Attorneys for Plaintiff Federal Trade Commission

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING, <br><br> Plaintiffs, <br><br> v. <br><br> THE KROGER COMPANY and ALBERTSONS COMPANIES, INC., <br><br> Defendants. | Case No.: 3:24-cv-00347-AN <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' AND C&S'S MOTIONS TO SEAL** <br><br> **REDACTED VERSION** |

The question before the Court is, primarily, to what extent do Kroger and Albertsons compete today—i.e., what will be lost of the merger goes through? Secondarily, Defendants ask the Court to assess a proposed divestiture to C&S—i.e., (1) whether the divestiture (if operated perfectly) is sufficient to cure the competitive harm in the hundreds of markets where Defendants overlap; and, if yes, (2) whether and to what extent will C&S succeed as a buyer of hundreds of retail grocery stores, such that it will mitigate the harm from lost competition between Kroger and Albertsons? Faced with these critical questions, Defendants (along with C&S) now seek sweeping sealing orders that are in equal parts overbroad and at odds with the Ninth Circuit's "strong presumption in favor of access" to judicial records.[1] *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). The public's interest here is particularly strong, given the proposed acquisition's likely impact on a fundamental component of American commerce—groceries. In that context, Defendants and C&S ask this Court to conduct its proceedings in the dark. Plaintiffs respectfully request that the Court direct Defendants and C&S to immediately re-assess their confidentiality designations and provide unredacted (or, in very limited instances, minimally redacted) versions of all documents identified by Plaintiffs for use in direct examinations.

### I.      **Defendants' Confidentiality Assertions are Overbroad and Prejudicial**

The Ninth Circuit provides that a party seeking to seal judicial records must "articulate compelling reasons supported by specific factual findings" to overcome the presumption of public access. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006). A court may then seal records only after it: (1) "finds a compelling reason and articulates

---

[1] Plaintiffs base their review on Defendants' and C&S's motions to seal filed the evening of August 20 (ECF Nos. 319, 322, 327). Plaintiffs' review of Defendants' and C&S's confidentiality designations is ongoing given the scope of their motions to seal.

the factual basis for its ruling, without relying on hypothesis or conjecture"; and (2) "conscientiously balance[s] the competing interest of the public and the party who seeks to keep certain judicial records secret." *Center for Auto Safety*, 809 F.3d at 1096-97. Drawing on these principles, the Court ordered the parties to "address confidentiality in a narrowly tailored way to ensure public access to the hearing."

Defendants have failed to follow that direction, asking this Court to seal hundreds of exhibits likely to be introduced at the preliminary injunction hearing. Moreover, Defendants have not carried their burden to "articulate compelling reasons supported by specific factual findings." *See Kamakana*, 447 F.3d at 1178. Defendants' requests are insufficient for several reasons.

*First*, Defendants continue to over-designate material as confidential. From the outset, Defendants have habitually stamped every document produced as Confidential or Highly Confidential. On the eve of the hearing, and under the Court's order to apply a rigorous assessment of confidentiality, Defendants continue to do the same, seemingly with no regard for whether the particular material is in fact confidential. For example, in PX1282, Kroger has proposed redacting incremental wage increases that Albertsons was negotiating with unions as of April 2022. Musser Dec., Ex. A at 2. But these incremental wage increases are now part of a publicly accessible contract between Albertsons and the union locals. *See* Retail Food, Meat, Bakery, Candy and General Merchandise Agreement at 64 (Nov. 30, 2022), https://ufcw324.org/wp-content/uploads/2022/12/2022-2025-ALBERTSONS-VONS-CBA.pdf (showing the contemplated incremental wage increases applied at the "Thereafter" level for various workers). And in PX1122, Kroger seeks to redact its assessment of how its pricing compares to Albertsons in New Mexico. Musser Dec., Ex. B at 1. While this is critical evidence

of recent head-to-head price competition, whatever competitive sensitivity it held has long since expired since this relates to pricing in December 2020. Albertsons has been no more discerning. In PX2360, they propose redacting a copied and pasted, publicly accessible Facebook post by UFCW Local 7. Musser Dec. Ex. C at 1; *see also* https://www.facebook.com/ufcwinternational/posts/breaking-news-albertsons-and-safeway-have-just-agreed-to-provide-our-ufcw-member/10151995219324945/. These and many other examples reveal that Defendants have, yet again, painted their confidentiality designations with a broad brush when the law calls for surgical precision.

*Second*, Defendants' expansive requests to seal will fundamentally impair Plaintiffs' ability to present their case. Defendants' motions seek to seal from the public approximately 75% of Defendants' documents that Plaintiffs identified as potential exhibits to be used in direct examinations during their case-in-chief. Musser Dec. ¶ 15. And the Court has, rightfully, explained that given the broad public interest in this matter, "[t]he courtroom will not be sealed." Telephonic Status Conference at 15 (Aug. 7, 2024). Plaintiffs are thus left in an uncertain position about how they can adequately examine Defendants' executives about documents, and subject matter, that go to the core of the questions before this Court. For example, Defendants seek to obscure from public view evidence of historic pricing strategies, which reveals that both Kroger and Albertsons have for many years tracked and responded to each other's pricing. *See, e.g.*, Musser Dec., Ex. D (PX1115) (███████████████████████████████████████████████████████████████████); Musser Dec., Ex. E (PX12578) (███████████████████████████████████████████████). Evidence of showing head-to-head pricing competition is table stakes in this proceeding. Plaintiffs contend—supported by long-standing legal precedent—that the elimination of this

3
PLS' OPP. RE DEFS' AND C&S's MOTIONS TO SEAL

head-to-head competition is direct evidence that an acquisition violates the antitrust laws. Pls. Br. 8-9, ECF No. 204

To be clear, Plaintiffs are not categorically opposed to redacting any information and could see good reason to redact certain current or forward-looking non-public information such as margins on a particular product or proposed pricing targets. But that is not what Defendants propose. Defendants ask the Court to seal generalized evidence that they compete with one another. *See, e.g.*, Musser, Ex. F (PX12571) (███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████); Ex. G at 2 (PX2322) (███████████████████████████████████████████████████████████████████████████████████████████████████████████).

If these are the types of documents Defendants seek to seal, then Defendants are functionally asking the Court to hide from the public the very fact that they compete closely with one another. Faced with such overarching claims of confidentiality, Plaintiffs will not be able to examine Defendants' executives, or even present an opening statement, that addresses the fundamental questions before this Court. Defendants' approach is unworkable and should have been avoided under the Court's direction to propose narrow tailoring. Likewise, Defendants' suggestion that Plaintiffs identify with specificity the pages of documents it intends to use in court is not appropriate. Defendants essentially ask Plaintiffs to disclose its entire courtroom strategy, which is well outside the bounds of ordinary discovery and disclosure requirements and would give Defendants a practical veto over Plaintiffs' presentation of the evidence. Instead, the

solution is the same as the Court already ordered: Defendants must propose serious, narrow redactions. That is the only way to ensure Plaintiffs can present its case publicly.

## II.   C&S's Confidentiality Designations Suffer Similar Inadequacies

C&S's confidentiality designations present similar issues. Courts consider the status, and associated limitations, of nonparties to a litigation when protecting the nonparties' confidential business information. *See, e.g., United States v. Dentsply Intern., Inc.*, 187 F.R.D. 152, 160 n.7 (D. Del. 1999); *Fox Broadcasting Co. v. Dish Network*, 2015 WL 12765545, at *3 (C.D. Cal. Jan. 12, 2015). But courts do so where "the owner [of confidential information] was never in a position to accept or reject the risk of disclosure of confidential information." *Dentsply Intern.*, 187 F.R.D. at 160 n.7. C&S is no such nonparty—they willingly inserted themselves into this proceeding by agreeing to purchase hundreds of stores in a proposed divestiture executed months after the commencement of this litigation, and they and Defendants have consistently asserted common interest privilege protections. *See* Defs. Resp. to MIL to Exclude Evidence Regarding Divestiture at 3, ECF No. 359.

The information C&S seeks to seal is essential to the Court's consideration of Defendants' and C&S' made-for-litigation divestiture:[2]

- Defendants characterize C&S as being "much more than a wholesaler" that will be able to "aggressively compete" with Defendants. Defs' Resp. Br. 3, 10, ECF No. 234. Plaintiffs, on the other hand, will show that C&S is a poor divestiture buyer for the stores. *See, e.g.*, Pls. Br. 39-40, ECF No. 204. To do this, plaintiffs plan to put on evidence

---

[2] C&S' designations too are clearly overbroad in some instances. For instance, C&S seeks to seal its CEO's testimony that " ███████████████████████████████████████████ " Musser Dec., Ex. H at 195:22-196:8).

regarding C&S's operations and abilities. But C&S now seeks to seal or redact evidence relevant to their operations and abilities, including basic facts and figures of its operations. Musser Dec., Ex. I at 35:7-36:2; 71:3-20 (███████████████ ███████████████████████████████), 77:16-21 (███████████████ ███████████████████████████████), 58:25-60:4 (███████████████ ███████████████████████████); *see also* Musser Dec., Ex. J at 003 (███████████████████████████); Musser Dec. Ex., H at 337:10-20) (███████████████████████████████████); Musser Dec., Ex. K at 31:6-15 (█████████████████████████████████████████████).

- Defendants also claim that the divestiture package's scope is sufficient, such that the "divestiture will preserve competition in every market in which plaintiffs could conceivably allege competitive harm." Defs' Resp. Br. 3, ECF No. 234. Plaintiffs plan to show that C&S will not be receiving assets to compete effectively, including, *inter alia*, the required banners, private label products, employees, software, and distribution assets. Pls. Br. 40-42, ECF No. 204. C&S, however, seeks to redact information necessary and relevant to each of these arguments. *See, e.g.*, Musser Dec., Ex. H at 45:19-46:5 (private brands C&S is acquiring from Albertsons account for only ███ of Albertsons' private brand sales today); Musser Dec., Ex. K at 261-62 (C&S will have to rebanner ███ stores);[3] Musser Dec., Ex. M (C&S divestiture banner study, almost wholly redacted); *see also* Musser Dec., Ex. I 128:23-130:23 (C&S does not expect to be able to maintain

---

[3] *See also* Musser Dec., Ex. L at 109:21, 227:24-228:1) (███████████████████████████ ███████████████); *but see id.* at 233:25-234:2) (leaving the fact that C&S must rebanner 286 stores unredacted). The redaction of the number of stores C&S must re-banner is overbroad because the specific stores being divested is now public as are the banners being conveyed, so anyone can determine which stores need to be rebannered.

PLS' OPP. RE DEFS' AND C&S's MOTIONS TO SEAL

███████████████████████████████), 109:24-113:19 (discussing ████

██████████████████████████ (TSA)), 114:2-119:8 (TSA provisions related to

████████████), 119:9-125:11 (TSA provisions relating to ████████████████).

- C&S' confidentiality designations also foreclose Plaintiffs' access to other arguments, including (1) C&S' incentives to compete, *see, e.g.*, Musser Dec., Ex. K at 151-52 (divestiture stores' and distribution centers' real estate alone is worth ████████ ██████████████), (2) C&S' readiness to operate the stores, *see, e.g.*, *id.* at 83-84 (████ ██████████████████████████████), (3) C&S' plans for the stores, *see, e.g.*, *id.* at 219-20 (C&S considering rebannering stores in ████████████████████████████ ████████); Musser Dec., Ex. I at 88:23-94:18; 95:13-98:6 (discussing which stores C&S must re-banner and C&S's current plans for which banners it may utilize at those stores); and (4) other risks associated with the divestiture, e.g., Musser Dec., Ex. L at 60:6 (C&S's ████████████████████████████████████████████████████████), 89:3 (C&S will incur ████████ in one-time costs in connection with the divestiture).

Even if Plaintiffs were able to dance around the confidential information C&S claims in some instances, they will not be able to in all instances, and thus will inevitably be prejudiced by being precluded from presenting critical evidence regarding the divestiture. For instance, Plaintiffs' expert Dr. Edward Fox must be able to discuss C&S's current retail capabilities and performance, as well as the specific assets included in the divestiture package, to testify about his conclusions regarding the challenges C&S will face in operating the divested stores. If C&S's motion to seal is granted, Dr. Fox will not be able to testify in open court.

## CONCLUSION

Defendants (along with C&S) have placed Plaintiffs, and the Court, in a challenging yet avoidable situation. Kroger and Albertsons each chose to pursue this transaction with one of their closest competitors. As the aforementioned (and countless more) documents reveal, Defendants did so with full knowledge that this transaction would raise concerns about lost competition. Exhibit after exhibit, and witness after witness, will confirm that the two companies have for years tracked and responded to each other's competitive maneuvers. C&S, too, chose to insert itself into this transaction, offering to purchase hundreds of stores and claiming common interest with Defendants over evidence about whether the proposed divestiture is likely to succeed. The public—including shoppers, grocery workers, journalists, shareholders—have a well-established right of access to these proceedings and warrant an opportunity to hear just how harmful this transaction may be.

If the Court accepts Defendants' (and C&S's) extensive confidentiality designations, Plaintiffs will either be substantially impaired in their ability to present this important case for the Court's consideration, or the Court will need to seal its courtroom for significant portions of the hearing (including Plaintiffs' opening statement). Neither option is acceptable, and thus Plaintiffs respectfully request that Defendants and C&S be ordered to try again. The Court directed the parties to propose narrow tailoring of confidentiality designations once before, and Defendants and C&S should be held to that standard.

| | |
|---|---|
| Dated: August 22, 2024 | Respectfully submitted, |
| | /s/ Susan A. Musser |
| | Susan A. Musser, DC Bar # 1531486 |
| | Rohan Pai, DC Bar # 1015652 |
| | |
| | Federal Trade Commission |
| | Bureau of Competition |
| | 600 Pennsylvania Avenue, NW |
| | Washington, DC 20580 |
| | Telephone: (202) 326-2122 |
| | smusser@ftc.gov |
| | |
| | *Attorneys for Plaintiff Federal Trade Commission* |

/s/ Robert A. Bernheim
Robert A. Bernheim, AZ Bar No. 024664
Jayme L. Weber, AZ Bar No. 032608
Vinny Venkat, AZ Bar No. 038587
Connor Nolan, AZ Bar No. 038088

Arizona Office of the Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
Tel: (602) 542-5025
Robert.Bernheim@azag.gov
Jayme.Weber@azag.gov
Vinny.Venkat@azag.gov
Connor.Nolan@azag.gov

*Attorneys for Plaintiff State of Arizona*

/s/ Nicole Gordon
-----------------------------------
Nicole Gordon, CA Bar No. 224138

State of California
California Department of Justice
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Tel: (415) 510-3458
Facsimile: (415) 703-5480
Nicole.Gordon@doj.ca.gov

*Attorney for Plaintiff State of California*

          /s/ C. William Margrabe
_____
C. William Margrabe, DC Bar No. 90013916

Office of the Attorney General for the District of Columbia
400 6th Street, N.W, 10th Floor
Washington, D.C. 20001
Tel: (202) 727-3400
Will.Margrabe@dc.gov

*Attorney for Plaintiff District of Columbia*

/s/ Brian M. Yost
Brian M. Yost, IL Bar No. 6334138
Paul J. Harper, IL Bar No. 6335001
Alice Riechers, IL Bar No. 6272933

Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
Tel: (872) 276-3598
Brian.Yost@ilag.gov
Paul.Harper@ilag.gov
Alice.Riechers@ilag.gov

*Attorneys for Plaintiff State of Illinois*

        <u>/s/ Schonette J. Walker</u>
        Schonette J. Walker, MD Bar No. 0512290008
        Gary Honick, MD Bar No. 7806010078
        Byron Warren, MD Bar No. 1612140330

        Office of the Attorney General
        200 St. Paul Place, 19th Floor
        Baltimore, MD 21202
        Tel: (410) 576-6470
        swalker@oag.state.md.us
        ghonick@oag.state.md.us
        bwarren@oag.state.md.us

        *Attorneys for Plaintiff State of Maryland*

/s/ Lucas J. Tucker
Lucas J. Tucker, NV Bar No. 10252
Samantha B. Feeley, NV Bar No. 14034

Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100
ltucker@ag.nv.gov
sfeeley@ag.nv.gov

*Attorneys for Plaintiff State of Nevada*

        /s/ Julie Ann Meade
Julie Ann Meade, NM Bar No. 8143
Jeff Dan Herrera, NM Bar No. 154030

New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87504
Tel: (505) 717-3500
jmeade@nmag.gov
jherrera@nmag.gov

*Attorneys for Plaintiff State of New Mexico*

/s/ Cheryl F. Hiemstra
Cheryl F. Hiemstra, OSB#133857
Tim D. Nord, OSB#882800
Chris Kayser, OSB#984244
Tania Manners, OSB#140363

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel: (503) 934-4400
Facsimile: (503) 378-5017
Cheryl.Hiemstra@doj.state.or.us
Tim.D.Nord@doj.state.or.us
cjkayser@lvklaw.com
tmanners@lvklaw.com

*Attorneys for Plaintiff State of Oregon*

                     /s/ William Young
                     William Young, WY Bar No. 8-6746

                     Office of the Wyoming Attorney General
                     109 State Capitol
                     Cheyenne, WY 82002
                     Tel: (307) 777-7847
                     William.Young@wyo.gov

                     *Attorney for Plaintiff State of Wyoming*