IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| FEDERAL TRADE COMMISSION; STATE OF ARIZONA; STATE OF CALIFORNIA; DISTRICT OF COLUMBIA; STATE OF ILLINOIS; STATE OF MARYLAND; STATE OF NEVADA; STATE OF NEW MEXICO; STATE OF OREGON; and STATE OF WYOMING, | Case No.: 3:24-cv-00347-AN |
| Plaintiffs, | |
| v. | OPINION AND ORDER |
| KROGER COMPANY and ALBERTSONS COMPANIES, INC., | |
| Defendants. | |

Plaintiffs Arizona, California, Illinois, Maryland, Nevada, New Mexico, Oregon, Wyoming, and the District of Columbia (collectively, "State Plaintiffs"), along with plaintiff Federal Trade Commission, brought this action pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and the Federal Trade Commission Act, 15 U.S.C. § 53(b), against defendants Kroger Company and Albertsons Companies, Inc., seeking to enjoin a proposed merger of the two companies. On December 10, 2024, this Court granted plaintiffs' motion for a preliminary injunction. The same day, a Washington state court issued an order permanently enjoining the proposed merger pursuant to the Washington Consumer Protection Act. On December 11, defendants called off the proposed merger, effectively mooting further proceedings on the merits in this Court. State Plaintiffs now petition for an award of attorney fees and costs under Section 16 of the Clayton Act. The Court deferred briefing on the amount of fees and heard oral argument on State Plaintiffs' entitlement to fees on June 20, 2025. For the reasons stated herein, State Plaintiffs' motion for fees and costs is GRANTED.

## LEGAL STANDARD

Under the "American Rule," prevailing litigants are usually only entitled to collect attorney's fees from the losing party if a statute authorizes as much. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 608 (2001). The Clayton Act is such a statute, providing that "[i]n any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff." 15 U.S.C. § 26. Under the Clayton Act, an "award of attorney's fees as part of the cost of a successful antitrust suit is mandatory," but the amount of such an award "is within the discretion of the trial court." *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1312 (9th Cir. 1982). The FTC Act, which authorizes the FTC to seek an injunction of antitrust violations, does not contain a similar fee-shifting provision. *See* 15 U.S.C. § 53; *FTC v. Staples, Inc.*, 239 F. Supp. 3d 1, 3 (D.D.C. 2017) ("Unlike the Clayton Act, the FTC Act does not grant attorneys' fees to prevailing plaintiffs.").

## BACKGROUND

On October 14, 2022, defendants publicly announced that they had entered into a merger agreement. *See* Op. & Order of December 10, 2024, ECF 521, at 6. State Plaintiffs immediately launched an investigation into the potential impacts of the merger on consumers, workers, and the states themselves. Decl. of Tim Nord ("Nord Decl."), ECF 564, at ¶¶ 3-10. State Plaintiffs issued civil investigative demands, retained Special Assistants Attorney General, attended FTC investigative hearings, interviewed witnesses, retained experts, and conducted a coordinated review of more than 19 million documents. *Id.* This investigation culminated in an administrative proceeding initiated by the FTC and a civil complaint seeking to enjoin the merger pursuant to the FTC Act and the Clayton Act filed by the FTC and State Plaintiffs in this Court. *See* Compl., ECF 1, ¶¶ 12, 26.

At an initial scheduling conference held on March 11, 2024, the Court proposed holding a preliminary injunction hearing in early May, approximately two months before the administrative hearing scheduled for the end of July. *See* Telephone Status Conference Tr. ("TSC Tr."), ECF 78, at 9:11-16,

14:14-18.  Defendants argued that two months was not enough time to prepare for a hearing that they repeatedly characterized as dispositive.  *See, e.g., id.* at 15:24-16:2 ("Your Honor's preliminary injunction order is not only critical, it is likely the decision that decides whether this merger happens."); 16:11-13 ("To start with, in all but a tiny fraction, a tiny fraction of cases over the last 30 years of FTC challenges, the preliminary injunction decision is dispositive.  It is the whole ballgame, Your Honor."); 17:21-25 ("It's routinely the case that the [administrative] merits hearing is gaveled in and then stayed during a preliminary injunction.  The merits hearing is going to last, if it happens, until mid 2025 at the earliest.  By that point, the merger will be dead and gone.").  Cognizant of the significance of the preliminary injunction proceedings, the Court set the hearing for August 26, 2024, to give all parties sufficient time to prepare their cases.  *See* Minutes of Proceedings of March 11, 2024, ECF 74.

State Plaintiffs represent that they "significantly participated" in all phases of discovery, motions practice, and hearing preparation, including analyzing a pool of more than 28 million documents, issuing 109 subpoenas, and conducting 112 depositions.  *Id.* at ¶¶ 13-14.  The preliminary injunction hearing extended across fifteen days, and included 33 fact witnesses, 10 experts, and more than 200 exhibits.  *Id.* at ¶ 15.  The Court received and considered more than 300 pages of post-hearing merits briefing.  *See* Defs. Post-Hearing Br., ECF 480; Pls. Post-Hearing Br., ECF 481.  After consideration of the full record, this Court granted plaintiffs' motion for preliminary injunction on December 20, 2024.  *See* Op. & Order of December 10, 2024, ECF 521.  Defendants called off the merger the next day, citing this Court's injunction as one of the reasons for terminating the merger.  *See* The Kroger Co. SEC Form 8-K, at 2 (Dec. 11, 2024).

State Plaintiffs now move for attorney fees and costs under Section 16 of the Clayton Act.  Defendants oppose.  Pursuant to the parties' agreement and the Court's February 25, 2025 Order, ECF 562, the question of attorney fees and costs has been bifurcated into two issues: first, entitlement to fees and costs, and second, the amount of such fees and costs.  Oral argument was held on entitlement to fees and costs on June 20, 2025.  *See* Mins. of Proceedings, ECF 574.

## DISCUSSION

Against the backdrop of the American Rule, the parties agree that State Plaintiffs are only entitled to attorney's fees if such fees are authorized by Section 16 of the Clayton Act. The parties' briefing centers on two disputes related to interpreting Section 16. First, the Court must decide whether this is "an[] action under" Section 16 of the Clayton Act. Second, if it is, the Court must decide whether plaintiffs "substantially prevail[ed]" in this action by virtue of the Court's preliminary injunction and defendants' decision to call off the merger. Because the Court concludes that this is an action under the Clayton Act and that State Plaintiffs substantially prevailed, an award of attorney's fees is mandatory under Section 16. *Twin City Sportservice*, 676 F.2d at 1312 ("An award of attorney's fees as part of the cost of a successful antitrust suit is mandatory.").

### A.      Whether the Preliminary Injunction Was Issued in an Action under Section 16

Defendants raise two primary arguments as to why the preliminary injunction was not issued in an action under Section 16. First, defendants argue that this action was brought under the FTC Act—and not also under the Clayton Act—because plaintiffs did not plead a Clayton Act claim. State plaintiffs reject this argument and counter that they could *only* have brought this action under the Clayton Act because the FTC Act does not provide State Plaintiffs a private right of action to bring an FTC Act claim. Second, defendants argue that regardless of the pleadings, the preliminary injunction was not issued in an action under Section 16 because it was not issued under the standards for a Section 16 injunction. State Plaintiffs do not dispute that the Court applied the FTC Act's standards in granting the preliminary injunction, but argue that this does not preclude an award of fees under Section 16 because plaintiffs litigated their Clayton Act claim and received their requested relief. The Court agrees with State Plaintiffs.

####      1.      *Whether This Action Was Brought under Section 16*

"When interpreting a statute, we begin with the text." *Lackey v. Stinnie*, 604 U.S. 192, 199 (2025). The operative statute here is Section 16 of the Clayton Act and the operative phrase is "**any action under**" the Section. 15 U.S.C. § 26. In the practice of law, an "action" is a "civil or criminal judicial proceeding;

esp., lawsuit." *Action*, Black's Law Dictionary (12th ed. 2024).[1]  This uncontroversial definition has been repeatedly embraced by the Ninth Circuit.  *See, e.g.*, *Doe 1-10 v. Fitzgerald*, 102 F.4th 1089, 1101 (9th Cir. 2024) ("The term 'action' in the legal context refers to the entire legal proceeding." (citing Black's Law Dictionary 31 (8th ed. 2004) and Merriam-Webster's Collegiate Dictionary 12 (11th ed. 2003))); *Cann v. Carpenters' Pension Tr. Fund*, 989 F.2d 313, 316 (9th Cir. 1993) ("The word 'action' in its usual legal sense means 'a suit brought in a court; a formal complaint within the jurisdiction of a court of law,' and 'includes all the formal proceedings in a court of justice attendant upon the demand of a right . . . in such court. . .'" (quoting Black's Law Dictionary 26 (5th ed. 1983))).  Defendants contend that the operative term is "under" rather than "action," but fail to identify authority suggesting that "under" should be given anything other than its ordinary meaning of "brought pursuant to" or "alleging violations of."  *See, e.g.*, *In re Tuli*, 172 F.3d 707, 711 (9th Cir. 1999) (observing that "actions under the Bankruptcy Code" include "complaints brought pursuant to [Section 542 of the Bankruptcy Code]"); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 748 (1977) (Brennan, J., dissenting) (describing as a suit alleging violations of Clayton Action Section 4 as an "action under § 4 of the Clayton Act").

With these definitions in mind, the question is thus whether this case is a civil proceeding brought pursuant to (or alleging violations of) Section 16 of the Clayton Act.  A review of each of the filings in this case strongly suggests that it is.  First, plaintiffs pleaded the Clayton Act throughout their complaint.  *See* Compl. ¶¶ 12, 17-26, 36.  Although plaintiffs' complaint does not list distinct claims or causes of action, its gravamen is that defendants' proposed merger violated the Clayton Act and should be enjoined until the merits of that allegation are adjudicated.  *See generally id.*  Next, defendants' answers admit that State Plaintiffs brought this action "pursuant to Section 16 of the Clayton Act" and that each State Plaintiff was "seeking relief pursuant to [the] Clayton Act."  Kroger Answer, ECF 90, at ¶¶ 17-26 (admitting the quoted

---

[1] This definition is more concise but substantially unchanged since the Clayton Act's enactment and subsequent amendment in 1976.  *See Action*, Black's Law Dictionary 27 (1891) ("[A]n ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."); *Action*, Black's Law Dictionary (4th rev. ed. 1968) (same).

allegations in Compl. ¶¶ 17-26); Albertsons Answer, ECF 91, at ¶¶ 17-26 (same).  Other filings in this case lend further support to this view.  For example, plaintiffs included in their preliminary injunction briefing that "Section 16 of the Clayton Act enables the State Plaintiffs to bring this action on behalf of each respective state."  Pl. Prelim. Inj. Mem., ECF 205, at 6.  And, while plaintiffs focus on the FTC Act injunction standard, they still included the irreparable-harm factor, which is a required showing only under Section 16, as an alternative basis for a preliminary injunction in their proposed findings of fact and conclusions of law.  *See* Pl. Post-Hearing Br., ECF 490, at 149.  Finally, the Court itself has described State Plaintiffs as "bring[ing] this action pursuant to . . . the Clayton Act" in its order granting the preliminary injunction motion.  *FTC v. Kroger Co.*, No. 3:24-cv-00347-AN, 2024 WL 5053016, at *1 (D. Or. Dec. 10, 2024).  Each of these filings indicates that this is an action under Section 16 of the Clayton Act.[2]

Additionally, there is no other authority under which State Plaintiffs could have brought this action.  The FTC brought its charge pursuant to the FTC Act and State Plaintiffs brought theirs pursuant to Section 16 of the Clayton Act.  *Compare* Compl. ¶¶ 16, 118 (describing the FTC's authority under the FTC Act) *with id.* ¶¶ 17-26 (providing that State Plaintiffs are seeking "relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26).  Indeed, State Plaintiffs have no standing to bring this case under the FTC Act so, by definition, they could only have brought it under the Clayton Act.  *See O'Donnell v. Bank of Am., N.A.*, 504 F. App'x 566, 568 (9th Cir. 2013) ("[T]he Federal Trade Commission Act . . . doesn't create a private right of action." (citing *Carlson v. Coca–Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973)).  This action was thus brought under both the FTC Act and the Clayton Act.

2.    *Whether Plaintiffs Obtained the Preliminary Injunction in the Action under Section 16*

Having decided that State Plaintiffs brought this action generally under Section 16, the Court must next address whether the preliminary injunction was obtained in State Plaintiffs' action under Section 16.

---

[2] To be sure, it is *also* an action under the FTC Act.  But defendants do not identify, and the Court cannot locate, any authority providing that an action may be maintained under only one statute, or that an action brought under multiple statutes is ineligible for fees.  As discussed below, the weight of authority indicates that is not the case.

It is undisputed that the only relief plaintiffs have obtained in this case is a preliminary injunction.  It is also undisputed that the Court applied the standards laid out in Section 13(b) of the FTC Act—and not Section 16 of the Clayton Act—in granting the preliminary injunction.  The remaining question is whether a preliminary injunction granted under only the FTC Act standards can be obtained in an action brought under Section 16.  Supreme Court and Ninth Circuit precedents support the conclusion that the Court's decision to apply Section 13(b) of the FTC Act in resolving plaintiff's preliminary injunction motion does not transform this case from an action under both the Clayton Act and the FTC Act to one exclusively under the FTC Act.

First, in *Maher v. Gange*, the Supreme Court held that plaintiffs may be awarded fees in actions under 42 U.S.C. § 1983 if they prevail exclusively on a statutory claim so long as they pleaded a "sufficiently substantial" constitutional claim that "remained in the case until the entire dispute was settled." 448 U.S. 122, 131-32 (1980).  There, the plaintiffs secured a consent decree resolving their claims under Section 1983 for violations of the Social Security Act, Equal Protection Clause, and Due Process Clause. *Id.* at 124.  Rejecting defendants' argument that plaintiffs were not entitled to fees pursuant to 42 U.S.C. § 1988(b) because the consent decree did not expressly adjudicate the plaintiffs' constitutional claims (which were the basis for fee-shifting under Section 1988), the Supreme Court held that Section 1988 allows for "the award of fees in a case in which the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim or in one in which both a statutory and a substantial constitutional claim are settled favorably to the plaintiff without adjudication." *Id.* at 132.

Subsequently, in *Carreras v. City of Anaheim*, the Ninth Circuit cited the underlying Second Circuit decision that was affirmed in *Maher* and held that "[w]hen the plaintiff in a civil rights action prevails on a pendent state claim based on a common nucleus of operative fact with a substantial federal claim, fees may be awarded under § 1988." 768 F.2d 1039, 1050 (9th Cir. 1985) (citing *Gagne v. Maher*, 594 F.2d 336, 339-40 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980)); *cf. Davidson v. Deschutes Cnty.*, No. 6:15-cv-00052-TC, 2015 WL 13730888, at *1 (D. Or. Oct. 8, 2015) (citing *Maher* and *Carreras* in holding that, "when the plaintiff in a civil rights action prevails on a pendent state claim based on a common nucleus of operative

fact with a substantial federal claim, fees may be awarded under Section 1988."), *findings and recommendation adopted*, 2015 WL 8490974 (D. Or. Dec. 10, 2015). Thus, under Section 1988(b), "any action or proceeding to enforce a provision of [certain federal civil rights laws]" includes an action in which plaintiff brings at least one non-frivolous claim under the applicable civil rights laws and another claim sharing a common nucleus of operative facts with the civil rights claim, and plaintiff may be awarded fees even if they prevail only under the latter claim.

While *Maher* and *Carreras* addressed Section 1988, their reasoning applies with equal force to the "any action under" language in the Clayton Act. The operative phrase in Section 1988 concerns the awarding of fees "[i]n any action or proceeding to enforce a provision of" the listed civil rights laws. 42 U.S.C. § 1988. Section 16 of the Clayton Act similarly provides, in relevant part, for the awarding of fees "[i]n any action under this section." 15 U.S.C. § 26. Defendants offer no reason that the Court should treat these substantially identical provisions differently. *See Synagogue v. United States*, 482 F.3d 1058, 1062 (9th Cir. 2007) ("If the Supreme Court has already provided a definitive interpretation of the language in one statute, and Congress then uses nearly identical language in another statute, a court should give the language in the latter statute an identical interpretation unless there is a clear indication in the text or legislative history that it should not do so.").[3] Extending the Ninth Circuit's reasoning accordingly, where a plaintiff brings both a non-frivolous claim under Section 16 and a related claim under another law (whether the FTC Act or a state antitrust statute or some other authority), that action is one under Section 16 even if the plaintiff ultimately prevails on the other claim.

This reading of Section 16 finds further support in *ADT Security Services, Inc. v. Lisle Woodridge Fire Protection District*, in which the Northern District of Illinois awarded fees under the Claton Act even

---

[3] As discussed here, the Court is persuaded by State Plaintiffs' argument that there are "clear indication[s]" that the "substantially prevails" language of Section 16 should not be interpreted the same as the "prevailing party" language in Section 1988. Although defendants attempt to distinguish *Maher* and *Carreras* on other grounds, no party contends that "any action under this section," 15 U.S.C. § 26, should be given a different interpretation than "any action or proceeding to enforce a provision of [federal civil rights law]," 42 U.S.C. § 1988(b).

though the "antitrust theories of relief went unadjudicated."  86 F. Supp. 3d 857, 867 (N.D. Ill. 2015).

There, plaintiffs brought claims under the Clayton Act, Section 1983, and state law, and prevailed

exclusively on their state law claim.  *Id.* at 861.  The defendants argued that the plaintiffs were not entitled

to fees absent an "adjudication that particular theories of relief the plaintiff has put forward (i.e., those tied

to fee-shifting statutes) are meritorious."  *Id.* at 864.  The court held that the plaintiffs were entitled to fees

under the Clayton Act, characterizing the defendants' argument as a "cramped view" of the statute and

emphasizing:

> [Section 16] positively mandates that fees be awarded to a party who substantially prevails
> in "***any action*** under this section."  In common legal parlance, "actions" are simply
> lawsuits, and that meaning and its legal significance are not affected by the fact that federal
> plaintiffs regularly put forward numerous theories of relief in a single action even though
> they are not required to do so.

*Id.* (citations omitted).  This reasoning comports with the Ninth Circuit's application of *Maher* in *Carreras*,

which compels the same result here.  There is no argument that plaintiffs' Clayton Act claim was frivolous.

Plaintiffs' FTC Act and Clayton Act claims inarguably share a common nucleus of operative facts.  And

plaintiffs succeeded in obtaining a preliminary injunction.  Therefore, the preliminary injunction was issued

in "an[] action under [Section 16]."  15 U.S.C. § 26; *cf. Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)

("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection

of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what

matters.").

    Defendants' arguments to the contrary are unavailing.  Defendants' strongest argument is that this

Court should follow the two most procedurally similar cases to have reached this issue: *FTC v. Penn State*

*Hershey Medical Center*, 914 F.3d 193 (3d Cir. 2019) and *FTC v. Staples, Inc.*, 239 F. Supp. 3d 1, 4 (D.D.C.

2017).  Both cases involved challenges to proposed mergers.  In both cases, plaintiffs raised claims under

the FTC Act and Clayton Act.[4]  And in both cases, the courts issued preliminary injunctions based on the

---

[4] In *Penn State*, the FTC and a state plaintiff jointly sued "under Section 16 of the Clayton Act, and Section 13(b)" of the FTC Act.  914 F.3d at 194-95.  In *Staples*, the FTC and two state plaintiffs referenced Section 16 three times in their complaint.  239 F. Supp. 3d at 5.

FTC Act standards. Both courts ultimately found, however, that the state plaintiffs were not entitled to attorney's fees under Section 16.

Defendants thus contend that finding for State Plaintiffs will create a circuit split, and they urge the Court to refuse to do so. It is true that the Court declines to follow *Penn State* and *Staples* in finding that State Plaintiffs are entitled to fees. However, it appears that there is already a split between the Third Circuit's narrow application of *Maher*, articulated and relied upon in *Penn State*, and the Ninth Circuit's more expansive application in *Carreras*. In *Penn State*, the Third Circuit distinguished *Maher* based on the fact that an FTC Act injunction employs "a different and more lenient standard" than a Section 16 injunction while "[s]uch differences were not evident" among the fee-shifting and non-fee-shifting claims in *Maher*. 914 F.3d at 199.[5] Although it did not meaningfully discuss *Maher*, *Staples* employed a substantially similar test, finding that the plaintiffs were not entitled to attorney's fees because the preliminary injunction was based on the FTC Act's more lenient injunction standards. 239 F. Supp. 3d at 4-5.[6]

That approach is quite different than the one articulated by the Ninth Circuit in *Carreras*. There, the Ninth Circuit found that fees may be awarded "[w]hen the plaintiff in a civil rights action prevails on a pendent state claim based on a common nucleus of operative fact with a substantial federal claim." 768 F.2d at 1050. It did not ask or even examine whether the claims applied a similar legal standard. Instead, it focused on the common nucleus of facts—an aspect *Maher* does not discuss. Following the Ninth

---

[5] The Third Circuit in *Penn State* also distinguished *Maher* on the basis that the statute's requirement that "a party must **substantially prevail '[i]n any action under** this section'" meant that a party must "**obtain relief under** that section." *Penn State*, 914 F.3d at 199 (emphasis added) (quoting 15 U.S.C. § 26). The court does not explain, and this Court cannot discern, how Section 16's language could compel such a conclusion, while substantially identical language in Section 1988 does not. *Compare* 15 U.S.C. § 26 ("In any action under this section. . ."), *with* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of [federal civil rights law]. . .").

[6] *Staples* is also factually distinguishable because the plaintiffs there argued "that the Court need not consider Section 16 of the Clayton Act in rendering its decision." and "at no point in their preliminary injunction submission did [the plaintiffs] assert, much less prove at the hearing, the elements of a preliminary injunction under Section 16." 239 F. Supp. 3d at 5. As discussed above, plaintiffs here pleaded the Clayton Act throughout their complaint and did include the required "irreparable harm" element as an alternative basis for their injunction. *See* Pls. Post-Hearing Br. 149.

Circuit's test from *Carreras*, which was applied in this District in *Davidson*, this Court reaches a different conclusion than in *Penn State* and *Staples*.

Defendants' frequent assertion that plaintiffs did not bring a Clayton Act claim—pendant or otherwise—is their primary basis to distinguish *Fitzgerald*, *ADT Security*, *Maher*, *Carreras*, and *Davidson*. *See* Defs. Resp. *Id.* at 23-25. But, as discussed above, it is belied by the record. Defendants are correct that plaintiffs' complaint does not specifically identify a distinct cause of action under the Clayton Act, but nor does the complaint specifically identify a cause of action under the FTC Act or any other authority. But, as discussed above, plaintiffs repeatedly cited the Clayton Act in their complaint, and the Court recognized that Plaintiff States were only able to prosecute this action under the Clayton Act in its preliminary injunction order. It cannot be said that plaintiffs did not bring a claim under Section 16.

Finally, in an extension of this standards-based approach, defendants argue that an award of attorney's fees here would effectively rewrite the fee-shifting framework. Defendants reasonably point out that the standards to secure an injunction under the FTC Act and the Clayton Act are different, as the *Penn State* and *Staples* courts emphasized. They then expand this finding to argue that allowing plaintiffs to recover attorney's fees based on an unadjudicated Clayton Act claim would have the effect of inserting a fee-shifting provision into the FTC Act that Congress did not put there. This argument fails for two reasons.

First, the preliminary injunction standards in the Ninth Circuit are not as dramatically different as defendants and *Penn State* suggest. Section 13(b) "places a lighter burden on the Commission than that imposed by private litigants" primarily because, under Section 13(b), "the Commission need not show irreparable harm to obtain a preliminary injunction." *FTC v. Microsoft Corp.*, 136 F.4th 954, 964 (9th Cir. 2025) (citation omitted). But "[a] lessening of competition constitutes an irreparable injury." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016). The Court found such lessening here. *See Kroger*, 2024 WL 5053016, at *16-17 (finding plaintiffs had shown "that the proposed merger would presumptively lessen competition in multiple markets"). And although the Court did not make an express finding of irreparable harm, it did discuss the "anticompetitive harm" that would occur under the merger. *Id.* at 25; *see also id.* at *28 (noting what would "be required to offset the competitive harm of the merger").

Although the standards are different, the difference here is not so vast as to render the Clayton Act claim entirely unlitigated.

Second, the lack of a fee-shifting provision under the FTC Act does not mean that fee-shifting is unavailable in any case involving the FTC Act. Congress's choice to not include a fee-shifting provision ensures that the FTC cannot seek a fee award; it does not mean that the fee-shifting provision that Congress *did* include in the Clayton Act loses its effect when states or private parties choose to coordinate litigation with the FTC, thereby saving both parties and courts considerable resources. Congress knows how to distinguish "action" and "claim." *See, e.g.*, 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction. . ." (emphasis added)). Congress chose to require an award of attorney's fees to a prevailing party in any *action* under the Clayton Act, and that choice should be given effect.

## B.     Whether State Plaintiffs Have Substantially Prevailed

The second major question is whether State Plaintiffs "substantially prevail[ed]" within the meaning of Section 16, particularly in light of the Supreme Court's recent interpretation of Section 1988. Courts have historically looked to Section 1988 in interpreting when a party prevails under Section 16. *See Southwest Marine, Inc. v. Campbell Indus.*, 732 F.2d 744, 747 (9th Cir. 1984) (applying "the standard for determining a 'prevailing party' developed under section 1988 [case law] to awards under section 16"). However, Section 1988 and Section 16 use different language to define when a party has prevailed for the purposes of attorney's fees. Section 1988 allows courts to award fees to the "prevailing party," U.S.C. § 1988(b), while Section 16 mandates fees when "the plaintiff substantially prevails," 15 U.S.C. § 26. In *Lackey v. Stinnie*, the Supreme Court recently emphasized the difference between statutes that award attorney's fees to "prevailing" parties from those that award fees to a party who "substantially prevails." 604 U.S. at 205 (comparing Section 1988 to the Freedom of Information Act ("FOIA")). In that same opinion, the Supreme Court determined that "a plaintiff 'prevails' under [Section 1988] when a court conclusively resolves a claim by granting enduring judicial relief on the merits that

materially alters the legal relationship between the parties." *Id.* at 203-04.  Preliminary injunctions do not qualify.  *Id.*

Whether State Plaintiffs have "substantially prevail[ed]" thus hinges primarily on whether the Supreme Court's recent interpretation of Section 1988's "prevailing party" standard in *Lackey* carries over to Section 16.  Because the operative language differs, and because the Supreme Court—in *Lackey* and elsewhere—has directed courts to distinguish among the various fee-shifting standards that Congress has put into statutes, the Court concludes that *Lackey*'s "prevailing party" standard does not control what it means to "substantially prevail[]" under Section 16.  Instead, the Supreme Court leaves undisturbed the Section 16 standard articulated by the Ninth Circuit in *Southwest Marine*, under which a preliminary injunction is sufficient to establish that State Plaintiffs substantially prevailed.

The history of fee-shifting doctrines under Section 1988 and Section 16 is illuminating.  In 1981, the Ninth Circuit drew on Section 1988 case law to interpret Section 16's "substantially prevails" standard. *Southwest Marine*, 732 F.2d at 746-47.  Case law at the time focused on how neither statute included a final judgment requirement "as a condition precedent for plaintiff's recovery of attorney's fees."  *Id.* at 746 (quoting *Grumman Corp v. LTV Corp.*, 533 F. Supp. 1385, 1387 (E.D.N.Y. 1982)).  Under this reasoning, the Ninth Circuit had previously held that "a plaintiff need not obtain formal relief to recover fees" to be hailed a "prevailing party" under Section 1988.  *Id.* at 747 (citing *Am. Constitutional Party v. Munro*, 650 F.2d 184, 187 (9th Cir. 1981)).  In *Southwest Marine*, the Ninth Circuit extended, for the first time, that standard "for determining a 'prevailing party' developed under section 1988 to awards under section 16." *Id.*  Ultimately, the Ninth Circuit concluded that a plaintiff is entitled to fees under the Clayton Act as long as there is "a causal relationship between the litigation brought and the practical outcome realized," and directed the district court to award fees to a plaintiff who had secured a voluntary change in conduct during the course of litigation.  *Id.* at 747 (citing *Munro*, 650 F.2d at 187).

In the forty years since *Southwest Marine*, the Supreme Court has worked tremendous change in the doctrine of fee-shifting under Section 1988.  In 2001, *Buckhannon Board & Care Home* held that to satisfy the "prevailing party" standard of Section 1988, a party must show not just a causal relationship, but

a "judicially sanctioned change in the legal relationship of the parties." 532 U.S. 598, 605 (2001). This abrogated what had been known as the "catalyst theory," under which plaintiffs could still be awarded fees when defendants voluntarily changed course. *Id.* at 604-05. Then, in 2007, the Supreme Court held in *Sole v. Wyner* that for a plaintiff to satisfy the "prevailing party" standard under Section 1988 there must also be an *enduring* change in the legal relationship between the parties; *i.e.*, they are not a "prevailing party" if they "gain[] a preliminary injunction . . . [but] the merits of the case are ultimately decided against" them. 551 U.S. 74, 86 (2007). Most recently, in 2025, the Supreme Court held in *Lackey* that these two requirements for fee-shifting under Section 1988 are linked: the enduring change in the relationship between the parties must itself be judicially sanctioned. 604 U.S. at 203-04.

There is no dispute that the *Southwest Marine* standard is satisfied here, but neither the Ninth Circuit nor the Supreme Court has squarely addressed whether the post-*Southwest Marine* case law reinterpreting the "prevailing party" standard of Section 1988 also apply to the "substantially prevailed" standard under Section 16. *Cf. Penn State*, 914 F.3d at 196 ("We . . . leav[e] for another day the questions of whether the Supreme Court's rejection of the catalyst theory controls claims for fees under Section 16 of the Clayton Act and whether a preliminary injunction entered pursuant to that section can constitute relief 'on the merits.'"). *But cf. Synagogue*, 482 F.3d at 1063 (suggesting that *Buckhannon*'s holding applies to the Civil Asset Forfeiture Reform Act of 2000's "substantially prevails" standard). Here, plaintiffs sued to enjoin defendants' merger, defendants will not be merging, and they point to this litigation as one of the causes for calling off the merger. *See* The Kroger Co. SEC Form 8-K, at 2 (Dec. 11, 2024). That satisfies *Southwest Marine*. A preliminary injunction is also a "judicially sanctioned change" and, because defendants have called off the merger, there is no chance for the merits of the case to be decided against plaintiffs. Therefore, to whatever extent that *Buckhannon* and *Sole* do abrogate *Southwest Marine*, they pose no barrier to the award of fees here. However, defendants argue that the Court should not apply the *Southwest Marine* standard because (1) the Section 1988 standard articulated in *Lackey* applies also to Section 16 and abrogates *Southwest Marine*'s substantive standard; and (2) *Southwest Marine*'s equating

14

of the Section 1988 and Section 16 standards is the one part of the case that is still good law. For the reasons described below, the Court disagrees.

The Supreme Court has repeatedly emphasized that courts "must give effect to every word that Congress use[s] in the statute." *Lowe v. SEC*, 472 U.S. 181, 207 n.53 (1983); *see also Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("[W]hen 'Congress includes particular language in one section of a statute but omits it in another'" courts must "'presume' that Congress intended a difference in meaning.'"). And it has repeated this guidance specifically in the fee-shifting context. In *Hardt v. Reliance Standard Life Insurance*, the Supreme Court made explicit that "[its] 'prevailing party' precedents . . . do not govern the availability of fee awards under" statutory provisions that "do[] not limit the availability of attorney's fees to the 'prevailing party.'" 560 U.S. 242, 253 (2010); *see Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684 (1983) (observing the "varying standards as to the precise degree of success necessary for an award of fees—such as whether the fee claimant was the 'prevailing party,' the 'substantially prevailing' party, or 'successful'"). Put simply, precedents that interpret and apply "prevailing party" fee-shifting language do not apply to fee-shifting statutes that use different language.

In *Lackey*, the Court again observed that "Congress has shown that it knows how to empower courts to award attorney's fees to plaintiffs who have enjoyed some success but have not prevailed in a judgment on the merits." 605 U.S. at 205. As an example, the Court cited FOIA's standard that allows "courts to assess attorney's fees when a complainant has 'substantially prevailed,' even if through 'a voluntary or unilateral change in position by the agency.'" 604 U.S. at 205 (quoting 5 U.S.C. § 552(a)(4)(E). Although FOIA's standard includes some additional language, the Court's analysis emphasizes the distinction between "prevailing party" and "substantially prevailed." *Id.* Given the Supreme Court's repeated direction to carefully distinguish among the fee-shifting standards created by Congress, and the express language of *Lackey* itself stating that its holding does not apply to statutes like FOIA, the Court concludes that *Lackey*'s interpretation of Section 1988 does not control here.

Defendants' counterarguments are not persuasive. First, they contend that the "substantially prevails" language of Section 16 is not analogous to the FOIA language that the Supreme Court distinguished in *Lackey*. Def. Resp. 13-14. FOIA states:

> (i)   The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.
> (ii)  For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either—
>> (I)   a judicial order, or an enforceable written agreement or consent decree; or
>> (II)  a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

5 U.S.C. § 552(a)(4)(E). Defendants contend that the operative language is not "substantially prevailed," but the second definition permitting attorney's fees if there is "a voluntary or unilateral change in position by the agency." *Id*. § 552(a)(4)(E)(ii)(II). As defendants correctly note, this language was added to the statute after some circuits interpreted *Buckhannon* as preventing fee-shifting when there is not a "judicially sanctioned" change in the relationship of the parties. *Lackey*, 604 U.S. at 213 (Jackson, J., dissenting) ("Congress had a much more targeted objective when it enacted § 552(a)(4)(E). It sought merely to repudiate this Court's decision in *Buckhannon*, which had held that a plaintiff must obtain some 'judicial relief' to be eligible for a fee award in FOIA cases." (citation omitted)). This change ensured that FOIA plaintiffs could take advantage of the catalyst theory rejected in *Buckhannon*. But State Plaintiffs do not rely on the catalyst theory—this Court judicially sanctioned the change in the relationship with its preliminary injunction. The question here is whether the Supreme Court's new interpretation of "prevailing party" in Section 1988, which requires that that judicially sanctioned change provide permanent relief, applies to statutes that only require plaintiffs to have "substantially prevailed." The Supreme Court's discussion in *Lackey*, along with its prior holdings in *Hardt* and *Ruckelshaus*, indicates that it does not.

That conclusion is further bolstered by the differences between preliminary injunction proceedings in civil rights cases and preliminary injunctions sought under Section 16. In *Lackey*, the Supreme Court observed that in civil rights cases, preliminary injunctions are "'customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" 604 U.S.

at 200 (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).  That is not the case here.  From the first scheduling conference, defendants emphasized that a preliminary injunction hearing "is likely the decision that decides whether this merger happens" and amounts to "the whole ballgame."  TSC Tr. 16:1-2, 18:1.  At defendants' insistence, the Court set the preliminary injunction hearing six months out to give the parties ample time to marshal their evidence.  *See* Minutes of Proceedings of March 11, 2024, ECF 74. The parties made good use of that time, deposing more than 100 potential witnesses and ultimately bringing 33 fact witnesses, 10 experts, and more than 200 exhibits to the 15-day preliminary injunction hearing. Nord Decl. ¶¶ 13-15.  Clayton Act proceedings, like this, are not well characterized as particularly informal or incomplete.  Considering the text of Section 16, the legal framework comparing Section 16 and Section 1988, and the realities of Section 16 proceedings, this Court finds that a final judgment on the merits is not required to substantially prevail under Section 16.

That leaves this Court with the Section 16 standard laid out in *Southwest Marine*.  Defendants argue, however, that the *Southwest Marine* standard cannot apply because it was overruled by *Lackey*.  In one way, defendants are right.  *Southwest Marine* addressed attorney's fees in two ways: first, it applied "the standard for determining a 'prevailing party' developed under section 1988 to awards under section 16."  732 F.2d at 722.  Second, it held that a plaintiff is entitled to attorney's fees under Section 16 when there is "a causal relationship between the litigation brought and the practical outcome realized."  *Id.* at 747.  After *Lackey*, one of these must give.  A close review of *Southwest Marine* makes clear that it is the first holding which no longer stands.

First, defendants overread *Southwest Marine*, which does not categorically state that the standards of the two statutes are for all purposes identical.[7]  Defendants' reliance on one word in *Southwest Marine*

---

[7] Defendants' reading of *Southwest Marine* is not unreasonable on its face.  *Southwest Marine* does describe Section 1988 and Section 16's attorney's fees provisions as "identical."  732 F.3d at 746.  However, *Grumman*, the case *Southwest Marine* cited on this point, expressly recognized the difference.  *Southwest Marine* cited the portion of Grumman identifying the "identical language found within the Section 16 and Section 1988 attorney's fees provisions."  *Id.* (citing *Grumman*, 533 F. Supp. at 1387).  But *Grumman* clarified immediately thereafter that the "presum[ption] that Congress intended identical language found within the Section 16 and Section 1988 attorney's fees provisions, which were enacted by the same Congress, would be identically construed" must be qualified "because the language utilized in the two

is misplaced in light of the underlying analysis and evolving legal framework. The Ninth Circuit states in *Southwest Marine* that it "find[s] the reasoning" of district court cases equating the Section 1988 and Section 16 standards "persuasive" and "choose[s] to apply the standard for determining a "prevailing party" developed under section 1988 to awards under section 16." 732 F.2d at 746-47. The fairest reading of *Southwest Marine* is that the Ninth Circuit found applicable to the Clayton Act the standards developed under Section 1988 case law at the time *Southwest Marine* was decided, not that it found the statutory provisions literally synonymous. *See also Synagogue*, 482 F.3d at 1063.

Additionally, in the years since *Southwest Marine* was issued, the Supreme Court substantially altered lower courts' understanding of Section 1988 and has three times emphasized that "[its] 'prevailing party' precedents . . . do not govern the availability of fee awards under" statutory provisions that "do[] not limit the availability of attorney's fees to the 'prevailing party.'" *Hardt*, 560 U.S. at 253; *see also Lackey*, 604 U.S. at 205 (distinguishing similar language in Section 1988 and FOIA); *Ruckelshaus*, 463 U.S. at 684 (noting the "varying standards as to the precise degree of success necessary for an award of fees—such as whether the fee claimant was the 'prevailing party,' the 'substantially prevailing' party, or 'successful'"). Defendants would have this Court conclude that *Lackey* overturned the Ninth Circuit's substantive Section 1988 standard but left unchanged *Southwest Marine*'s discussion equating Section 1988 and Section 16. But it is much more plausible that *Lackey* (and *Buckhannon* and *Sole* before it) abrogated the Ninth Circuit's interpretation of Section 1988 and, in doing so, also abrogated the Ninth Circuit's equating of the two provisions. Given the intentional distinction drawn by the Supreme Court between "prevailing party" and "substantially prevailed," the most reasonable reading of *Lackey* is that it overrules prior precedents

---

statutes, although similar, is not identical." 533 F. Supp. at 1387 (emphasis added). The *Grumman* court went on to explain how, "[b]y modifying the word 'prevails' with the word 'substantially,' Congress appears to have expressed an intent to reward plaintiffs who 'vindicate rights' through thwarting 'threatened loss or damage by a violation of the antitrust laws' either through obtaining a final judgment or something which is its functional equivalent." *Id.* It then compared Section 16 to FOIA, the "one other statute" it was aware of "which provides for attorney's fees to a plaintiff who has 'substantially prevailed.'" *Id.* at 1388. It held, based on the second Circuit's interpretation of FOIA and the realities of antitrust litigation, that Section 16 "did not require a final judgment as a prerequisite to an award of attorney's fees." *Id.*

equating those two phrases and its holding is only applicable to statutes that use the "prevailing party" term, leaving intact case law permitting fee-shifting where a party "substantially prevails" by securing a preliminary injunction. Because State Plaintiffs were "awarded some relief by the court," *Buckhannon*, 532 U.S. at 603, after a substantial hearing on the merits, and because that change is final, they "substantially prevail[ed]" within the meaning of Section 16.

## CONCLUSION

For the reasons stated herein, State Plaintiffs' motion for attorney's fees and costs, ECF 563, is GRANTED. By March 31, 2026, State Plaintiffs shall file a stipulation or petition for fees and costs with supporting affidavits. The parties are referred to the guidance contained in Local Rule 54 and the "Message from the Court Regarding Attorney Fee Petitions" found on the District's website.


IT IS SO ORDERED.

DATED this 27th day of February, 2026.


_____
Adrienne Nelson
United States District Judge