Timothy D. Smith, OSB#914374
Senior Assistant Attorney General
Christopher J. Kayser, OSB#984244
Special Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel: (503) 934-4400
Facsimile: (503) 378-5017
tim.smith@doj.oregon.gov
cjkayser@lvklaw.com

*Attorneys for Plaintiff State of Oregon*

[Additional counsel on signature pages]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING,<br><br>    Plaintiffs,<br><br>        v.<br><br>THE KROGER COMPANY and ALBERTSONS COMPANIES, INC.,<br><br>    Defendants. | Case No. 3:24-cv-00347<br><br>**PLAINTIFF STATES' PETITION FOR ATTORNEYS' FEES AND COSTS** |

## CERTIFICATION OF CONFERRAL

In compliance with LR 7-1, counsel for the Plaintiff States made a good-faith effort to confer with counsel for The Kroger Company ("Kroger") and Albertsons Companies, Inc. ("Albertsons" and, together, "Defendants") regarding the issues in this motion, but the parties were unable to stipulate to a reasonable fees and costs award.

## MOTION

Plaintiffs Arizona, California, Illinois, Maryland, Nevada, New Mexico, Oregon, Wyoming, and the District of Columbia (collectively, the "States") move this Court for an Order awarding attorneys' fees and reimbursement of litigation expenses. On February 27, 2026, this Court ruled that the States substantially prevailed and are entitled to attorneys' fees and costs under Section 16 of the Clayton Act. Op. & Order ("Fees Order") at 19, ECF 588. The States request $9,437,598.40 in attorneys' fees and $910,936.89 in litigation expenses.

The amount of the requested award is reasonable and a fraction of the more than $1 billion in merger-related fees and costs Defendants incurred.[1] The States' request is a little more than a third of the $28 million a Washington court awarded after the state successfully obtained a permanent injunction blocking the merger. Thus, even when factoring in the FTC's role in the proceedings, the States' request in this case is reasonable.

## I. BACKGROUND

On October 14, 2022, Kroger and Albertsons announced they had agreed to merge. *See* Op. & Order ("PI Order") at 6, ECF 521. The $24.6 billion merger would have been the largest

---

[1] https://www.grocerydive.com/news/kr0ger-albertsons-merger-costs-grocery-supermarkets/744860/

Page 2 - PLAINTIFF STATES' PETITION FOR ATTORNEYS' FEES AND COSTS

supermarket merger in U.S. history. The competitive impacts of the merger required a state-by-state evaluation of 2,537 distinct geographic markets. PI Order at 24.

Before filing this lawsuit, the States independently investigated the merger's in-state competitive impact for their residents. The States established a shared database with access to over 19 million documents that Defendants and third parties produced during the investigation. Decl. Tim Nord Supp. Pl. States' Mot. Award Att'y's Fees Costs ("Nord Decl.") ¶ 7, ECF 564. The States also issued their own investigative demands, interviewed witnesses in the industry, attended FTC investigative hearings, spoke to consumers and grocers, and conducted market research. *Id*. Some States hired their own economic experts to analyze the state-specific competitive effects from the proposed merger. *Id*. ¶ 10.

On February 26, 2024, the FTC commenced an administrative proceeding addressing the antitrust impacts of the merger. On the same day, the States and the FTC ("Plaintiffs") filed this action seeking to enjoin the merger. Plaintiffs engaged in extensive discovery, analyzing documents from the 28,988,497 produced in discovery and conducting 112 fact and expert depositions. Nord Decl. ¶ 13. Collectively, Plaintiffs issued 109 subpoenas. *Id.* The States significantly contributed to each phase of the litigation, including document review and analysis, depositions, and issuing and enforcing subpoenas. Fees Order at 3.

After this Court issued a preliminary injunction, the Washington court issued a permanent injunction, and Defendants abandoned the merger, the states in each case sought their attorneys' fees. This Court—which permitted the parties to first address the States' entitlement to fees before briefing the appropriate amount—held that the States were entitled to an award of attorneys' fees and expenses. *Id.* at 1–2. In the Washington case, the court ruled that Washington was entitled to its reasonable fees and expenses and approved a total of $28,373,132.61. Decl. Christopher J.

Page 3 - PLAINTIFF STATES' PETITION FOR ATTORNEYS' FEES AND COSTS

Kayser Supp. Pl. States' Pet. Att'ys' Fees Costs ("Kayser Decl.") ¶ 5, Ex. 1 at 49. There, the court concluded that the rates for the law firm Washington hired, Munger Tolles & Olson LLP, were reasonable "in both the local and national market for experienced antitrust litigation counsel." *Id.*, Ex. 1 at 25. Those hourly rates were between $475 and $1,190. *Id.* at 13–14. While the rates the court used for the attorneys in the Washington Attorney General's Office were lower—between $333 and $543—the court also concluded that the state was entitled to a lodestar multiplier of 2.0, effectively raising those rates to between $666 and $1,086, because of the quality of the work performed, the complexity of the antitrust issues, and the risk the state took in expending the resources necessary to prosecute the action. *Id.* at 10, 45–49.

The States applied the lodestar method of multiplying the hours worked by reasonable hourly rates to arrive at their fee request.[2] The lodestar method is the appropriate metric for determining reasonable attorneys' fees. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The "presumptively reasonable" lodestar figure may be adjusted based upon the factors outlined in *Kerr v. Screen Extras Guild*, 526 F.2d 67, 69–70 (9th Cir. 1975). Using the Oregon State Bar Economic Survey 95th percentile rates for Business/Corporate Litigation in Portland, the lodestar calculation for the States' attorneys' fees and expenses is as follows[3]:

---

[2] New Mexico and Wyoming did not contemporaneously record their time and thus seek only expenses. Illinois did not contemporaneously record its time during the investigation and thus seeks only fees for its time after the lawsuit was filed.

[3] The detail supporting these fees and expenses is documented in declarations from each state: Declaration of Jayme Weber ¶¶ 11–20, Ex. 1 (Arizona); Declaration of Nicole Gordon ¶¶ 21–27, Ex. A (California); Declaration of C. William Margrabe ¶¶ 17–22, Ex. 1 (District of Columbia); Declaration of Brian Yost ¶¶ 18–21, Ex. A (Illinois); Declaration of Schonette Walker ¶¶ 12–15, Ex. 1 (Maryland); Declaration of Lucas J. Tucker ¶¶ 16–20, Ex. A (Nevada); Declaration of Anthony Juzaitis ¶¶ 6–8, Ex. A (New Mexico); Declaration of Timothy Smith ¶¶ 20–25, Exs. 1–2 (Oregon); Declaration of William Young ¶¶ 10–11 (Wyoming).

| State | Fees | Expenses | Total |
|---|---|---|---|
| Arizona | $913,374.50 | $59,097.81 | $972,472.31 |
| California | $4,941,793.00 | $163,858.73 | $5,105,651.73 |
| District of Columbia | $489,407.60 | $34,661.71 | $524,069.31 |
| Illinois | $470,940.30 | $77,792.53 | $548,732.83 |
| Maryland | $597,915.00 | $52,502.62 | $650,417.62 |
| Nevada | $217,881.00 | $40,448.60 | $258,329.60 |
| New Mexico | $0 | $3,137.76 | $3,137.76 |
| Oregon | $1,806,287.00 | $445,088.02 | $2,251,375.02 |
| Wyoming | $0 | $34,349.11 | $34,349.11 |
| **Total** | $9,437,598.40 | $910,936.89 | $10,348,535.29 |

*Table 1 - Fees and Costs*

## II.  ARGUMENT

### A.  Plaintiff States' attorneys' fees and expenses are reasonable.

The States' attorneys' fees and expenses are reasonable in light of the significant amount of work required to investigate and ultimately block the $24 billion merger. The size, scope, and effort required to oppose Defendants' proposed merger is reflected in the significant fees and costs Defendants incurred to move the merger forward. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) ("[O]pposing counsel's billing records may be relevant to determining whether the prevailing party spent a reasonable number of hours on the case[.]"); *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 587 (3d Cir. 1984) (defendants' billing rates were "relevant" to "reasonable … hourly rates for comparable lawyers in complex litigation"). Defendants collectively employed at least 60 attorneys from eight law firms—including some of the most

prominent international firms in the U.S. Kayser Decl. ¶ 14. Kroger's and Albertsons' merger-related costs exceeded $1 billion and $490 million, respectively. *Id.* ¶ 13, Exs. 2 & 3. Although neither Kroger nor Albertsons identified what portion of their merger costs related specifically to legal fees, $998 million of those costs were incurred in 2024. *Id.* Even if legal fees comprised only one tenth of Defendants' $1.5 billion in merger-related costs, the $150 million in fees would still dwarf the States' request here. *See Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) ("[T]here is one particularly good indicator of how much time is necessary … and that is how much time the other side's lawyers spent" on the same task).

The States' fee request is also reasonable in relation to the fees awarded in the Washington state proceeding. One of the many factors in assessing the reasonableness of a fee award is the "awards in similar cases." *Kerr*, 526 F2d at 70. In Washington, the court awarded $28 million in attorneys' fees and expenses in a case seeking to block the same merger but considering only its effects in a single state. Here, the States' fee request is close to a third of the fees awarded in Washington. Thus, the States' request falls well within reason.

**1. The time spent on the investigation and litigation was reasonable.**

In evaluating the reasonableness of the time the States spent on the litigation, it is important to understand that each state could have filed its own separate proceeding, as did Washington and Colorado. But instead, the States' decision to bring a single suit alongside the FTC reduced their hours expended. Indeed, Defendants wanted the states to do exactly this. Kayser Decl., Ex. 5.

As the States' declarations establish, each of the States spent a significant amount of time investigating and prosecuting their opposition to the proposed merger. The hours for both investigating and prosecuting the States' antitrust claims for injunctive relief are recoverable. *See, e.g.*, *Arizona v. Maricopa Cnty. Med. Soc.*, 578 F. Supp. 1262, 1266 (D. Ariz. 1984)

Page 6 - PLAINTIFF STATES' PETITION FOR ATTORNEYS' FEES AND COSTS

(awarding fees for pre-complaint antitrust investigation by state attorney general); *New York v. Salton, Inc.*, 265 F. Supp. 2d 310, 314 (S.D.N.Y. 2003) (same); *Sierra Club v. E.P.A.*, 625 F. Supp. 2d 863, 869–71 (N.D. Cal. 2007) (plaintiff entitled to fees for pre-litigation activity).

The investigation and ensuing litigation required extensive attention to competitive impacts at the local, state, and national level. Litigation of this magnitude required substantial time and money. The States alone spent approximately 15,000 hours across 45 attorneys and 16 paralegals and other support staff. Kayser Decl. ¶ 20. As to costs, the States spent public dollars carefully. For instance, by using a shared document review platform, the States eliminated duplicate expenditures. To save on travel costs, the States requested remote attendance at hearings. Given the complexity of this litigation, deploying multiple attorneys—in collaboration with the FTC—was an "eminently reasonable tactic" that was necessary for the "[e]ffective preparation and presentation" of the case. *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001). As a result, the States have submitted only $859,935.18 in out-of-pocket costs. *See* Fees and Costs Table, *supra* at 5.

The hours here were justified as the parties sought to "admit many exhibits during the preliminary injunction hearing and created a large, comprehensive record that was sufficient for the Court to render an opinion on the motion for preliminary injunction." PI Order at 9. The review and analysis of a database hosting over 28 million documents related to 2,537 distinct geographic markets required thousands of hours and close coordination with the FTC. Kayser Decl. ¶ 15. Plaintiffs issued 109 subpoenas and took 112 depositions. Nord Decl. ¶ 13.  State attorneys negotiated third-party productions and ensured their compliance. State attorneys collaborated on the drafting of all Plaintiffs' briefing filed in the case. Kayser Decl. ¶ 15. While the FTC spearheaded most trial examinations and the opening and closing statements, the States actively

Page 7 - PLAINTIFF STATES' PETITION FOR ATTORNEYS' FEES AND COSTS

assisted with preparations for examinations, expert work, exhibits, all submissions (including the opening and closing), and litigation strategy. *Id.* ¶¶ 16–17.

### 2. The hourly rates applied were reasonable.

Courts award fees to government attorneys using hourly rates comparable to those billed by private practice attorneys. *Illinois v. Sangamo Const.*, 657 F.2d 855, 860 (7th Cir. 1981) (There is "no justifiable reason to distinguish between private parties and states for purposes of awarding successful plaintiffs reasonable attorneys' fees."); *Maricopa Cnty*, 578 F. Supp. at 1271 (same); *Covington v. D.C.*, 839 F. Supp. 894, 896 (D.D.C. 1993), *aff'd*, 57 F.3d 1101 (D.C. Cir. 1995) (same); *In re Coordinated Pretrial Proc. in Antibiotic Antitrust Actions*, 410 F. Supp. 706, 717 (D. Minn. 1975) (same). A "reasonable fee" is one that is "comparable to what is traditional with attorneys compensated by a fee-paying client" and is intended "to yield the same level of compensation that would be available from the market." *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989).

Ordinarily, the "prevailing market rate in the community is indicative of a reasonable hourly rate." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262–63 (9th Cir. 1987). However, "[t]he complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982) (applying New York and Washington, D.C. rates to action in South Bend, Indiana). In multistate litigation brought by State Attorneys General, courts often use standardized matrices, such as the U.S. Department of Justice's USAO Fitzpatrick Matrix or its predecessor the *Laffey* Matrix, to assess reasonable hourly rates. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 13209696, at *9 (N.D. Cal. Nov. 9, 2012) (cost-of-living adjusted matrix was reasonable and a "proxy for determining a market rate for government or nonprofit attorneys"), *rep. & rec. adopted*,

2013 WL 1365900, at *14 (N.D. Cal. Apr. 3, 2013); *In re Dynamic Random Access Memory Antitrust Litig.*, 2014 WL 12879521 (N.D. Cal. June 27, 2014); Order, *FTC v. Shkreli*, No. 20CV706 (S.D.N.Y. June 10, 2022), ECF No. 918 (approving State Attorneys General fee request based on the Fitzpatrick Matrix (ECF 877-1)).[4]

Pursuant to the November 21, 2024 Message from the Court Regarding Fee Petitions, the States used the Oregon State Bar ("OSB") economic survey 95th percentile rates for Business/ Corporate Litigation in downtown Portland to calculate their fees. Smith Decl., Ex. 3. Those rates are substantially similar to the Fitzpatrick Matrix rates, which are used for complex federal government litigation in Washington, D.C. *Id.*, Ex. 4. "Attorneys with specialized skills in a narrow area of law, such as admiralty law, patent law, or antitrust and other complex litigation, tend to be found in large cities, where an attorney may have a greater opportunity to focus on a narrow area of law." *Chrapliwy* 670 F.2d at 769. "[T]he use of national hourly rates in exceptional multiparty cases of national scope, where dozens of non-local counsel are involved, appears to be the best available method of ensuring adherence to the principles of the lodestar analysis." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F2d 226, 233 (2d Cir. 1987). Accordingly, the Fitzpatrick Matrix serves as a good benchmark for litigation of the size and scale of this case, which implicates the national market for attorneys specializing in merger litigation and

---

[4] Courts also apply these matrices outside D.C. for complex litigation or where the local market lacks attorneys with the required skill and expertise to handle the matter. *See Doe v. Diaz*, 2024 WL 3468748, at *1 (C.D. Cal. Apr. 2, 2024) (applying Fitzpatrick Matrix as "a reliable assessment of fees charged for complex federal litigation"); *Black Hills Clean Water All. v. U.S. Forest Serv.*, 733 F. Supp. 3d 801, 812 (D.S.D. 2024) (Fitzpatrick Matrix was an appropriate departure from local rates where counsel had specialized experience in complex area of the law and case could have been filed in D.C.); *Space Data Corp. v. Hosie Rice LLP*, 2021 WL 9762990, at *5 (N.D. Cal. Nov. 1, 2021) (USAO Matrix is "widely accepted by other jurisdictions").

justifies using the 95th percentile rates for Business/Corporate Litigation under the Oregon State Bar Economic Survey

That the 95th percentile establishes reasonable rates for this case is also evident when compared to the rates charged by Defendants' attorneys and those which were the basis of the attorneys' fee award in the companion Washington case. Defendants' attorneys have recently reported rates for partners between $1,625 and $1,975 an hour and for associates between $790 and $1,380 per hour. Kayser Decl. ¶ 14, Ex. 3. The Washington court approved rates for counsel hired by the state of between $475 and $1,190 and authorized a 2x multiplier for state attorneys that raised their effective rates to between $666 and $1,086. The 95th percentile rate ($774) is less than even Defendants' associate rates and well within the range of rates approved in Washington. Thus, the 95th percentile provides reasonable rates here.

## CONCLUSION

The proposed merger between Albertsons and Kroger represented a significant threat to the competitive market for grocery stores that is fundamental to maintaining low costs for food. Defendants were willing to spend $1.5 billion to see the merger through. The time and expense the States expended to effectively investigate, analyze, and ultimately block the merger alongside the FTC were reasonable, as are the Oregon State Bar Economic Survey 95th percentile rates the States are seeking. The States' request for attorneys' fees and expenses is reasonable in light of the complexity of the issues, the significant impact they had, and the resources required to succeed. The States request a total of $9,437,598.40 in attorneys' fees and $910,936.89 in litigation expenses.

Dated: March 31, 2026.

Respectfully submitted,

/s/ Christopher J. Kayser
Timothy D. Smith, OSB#914374
Senior Assistant Attorney General
Christopher J. Kayser, OSB#984244
Special Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel: (503) 934-4400
Facsimile: (503) 378-5017
tim.smith@doj.oregon.gov
cjkayser@lvklaw.com

Attorneys for Plaintiff State of Oregon

/s/ Brian M. Yost
Brian M. Yost, IL Bar No. 6334138
Paul J. Harper, IL Bar No. 6335001
Alice Riechers, IL Bar No. 6272933

Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
Tel: (872) 276-3598
Email: Brian.Yost@ilag.gov
Paul.Harper@ilag.gov
Alice.Riechers@ilag.gov

Attorneys for Plaintiff State of Illinois

/s/ Robert A. Bernheim
Robert A. Bernheim, AZ Bar No.
024664
Jayme L. Weber, AZ Bar No. 032608

Arizona Office of the Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
Tel: (602) 542-5025
Robert.Bernheim@azag.gov
Jayme.Weber@azag.gov

Attorneys for Plaintiff State of Arizona

/s/ Nicole Gordon
Nicole Gordon, CA Bar No. 224138
California Department of Justice
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Tel: (415) 510-4400
Facsimile: (415) 703-5480
Nicole.Gordon@doj.ca.gov

Attorney for Plaintiff State of California

/s/ Schonette J. Walker
Schonette J. Walker, MD Bar No.
0512290008
Gary Honick, MD Bar No. 7806010078
Byron Warren, MD Bar No. 1612140330

Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Tel: (410) 576-6470
swalker@oag.state.md.us
ghonick@oag.state.md.us
bwarren@oag.state.md.us

Attorneys for Plaintiff State of Maryland


/s/ C. William Margrabe
C. William Margrabe, DC Bar No.
90013916

Office of the Attorney General for the
District of Columbia
400 6th Street, N.W, 10th Floor
Washington, D.C. 20001
Tel: (202) 727-3400
Will.Margrabe@dc.gov

Attorney for Plaintiff District of Columbia


/s/ Lucas J. Tucker
Lucas J. Tucker, NV Bar No. 10252
Samantha B. Feeley, NV Bar No. 14034

Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100
ltucker@ag.nv.gov
sfeeley@ag.nv.gov

Attorneys for Plaintiff State of Nevada


/s/ Anthony R. Juzaitis
Anthony R. Juzaitis, NM Bar No. 164428

New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87501
Tel: (505) 651-7565
ajuzaitis@nmdoj.gov

Attorney for Plaintiff State of New Mexico


/s/ William Young
William Young, WY Bar No. 8-6746

Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-7847
William.Young@wyo.gov

Attorney for Plaintiff State of Wyoming

Certificate of Service

I certify that on the date noted below, I caused a true and correct copy of the

Plaintiff States' Memorandum in Support of Motion for Attorneys' Fees to be served

upon the parties of record through the Court's ECF system.

Dated: March 31, 2026.

CERTIFICATE OF COMPLIANCE

This brief complies with the applicable page-count limitation under LR 7-2(b),

26-3(b), 54-1(c), and 54-3(e) because it contains fewer than 10 pages, including

headings, footnotes, and quotations, but excluding the caption, table of contents, table

of cases and authorities, signature block, exhibits, and any certificates of counsel.