B. JOHN CASEY, OSB No. 120025
john.casey@stoel.com
RACHEL C. LEE, OSB No. 102944
rachel.lee@stoel.com
JACOB GOLDBERG, OSB No. 162565
jacob.goldberg@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380

MATTHEW M. WOLF (*Pro Hac Vice*)
matthew.wolf@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: 202.942.5000

*Attorneys for Defendant The Kroger Company*

(Additional counsel on signature page)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ARIZONA, STATE OF CALIFORNIA, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, and STATE OF WYOMING,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE KROGER COMPANY and ALBERTSONS COMPANIES, INC.,<br><br>    Defendants. | Case No.: 3:24-cv-00347-AN<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF STATES' PETITION FOR ATTORNEYS' FEES AND COSTS**<br><br>ORAL ARGUMENT REQUESTED |

**INTRODUCTION**

From start to finish, the FTC led this case on behalf of Plaintiffs. Plaintiff States (the "States") played a minimal role. Now, the States seek to recover over $10 million for a case they did not actively litigate. This amount is extraordinary: no state attorneys general have ever recovered fees in federal court after obtaining a preliminary injunction blocking a merger—much less the millions of dollars of fees requested here.

Plaintiff States' Petition for Attorneys' Fees and Costs (the "Petition") claims categories of fees to which the States are not entitled, fees that are insufficiently supported, and fees for work that was unnecessary, duplicative, or otherwise unreasonable. The Court should substantially reduce the fees and costs requested by the States to exclude categories to which they are not entitled and discount the remainder to account for the unreasonableness of the fees sought.

**BACKGROUND**

**States' role in the Oregon litigation**. The States did not play a significant role in this litigation. *Cf.* Kayser Decl. ¶ 16 (admitting the States' role was "largely in the background"). The States presented only two of 42 witnesses at trial. Decl. of Sonia K. Pfaffenroth in Support of Defs.' Opp. to Pl. States' Petition for Attys.' Fees and Costs ("SKP Decl.") ¶ 2. Those witnesses were presented by Oregon's outside counsel, not an attorney employed by any state attorney general, and were on the stand for less than two hours, or less than 2% of the total trial time. *Id.*

The States' role in the litigation pre-trial was similarly limited. The States took only 14 of the 112 depositions in the action. *Id.* ¶ 3. Only three of the witnesses deposed by Plaintiffs were presented at trial—all by the FTC. *Id.* The States attended at least 47 depositions at which they did not ask a single question. *Id.* All but six of the States' 68 third-party subpoenas were follow-on subpoenas requesting the documents submitted in response to the FTC's subpoenas. *Id.* The States briefed only one substantive motion—a motion argued by the FTC. *Id.*

Page 1 –    DEFS.' OPP. TO PL. STATES' PETITION FOR ATTORNEYS' FEES AND COSTS

**Fee award in the Washington litigation**. In the Washington action, where the Washington Attorney General ("Washington") and its outside counsel handled the litigation from start to finish, the court awarded Washington $28,373,132.61 in litigation fees, expenses, and costs. Kayser Decl. Ex. 1 ¶ 196. The Washington court did not award Washington attorneys' fees or expenses incurred before the month in which the action was filed (January 2024) and awarded very limited fees for work unrelated to Washington's fee petition after the month in which the court issued its permanent injunction ruling (December 2024). *See id.* ¶¶ 119, 127, 196.

Washington shared document review platform and certain expert expenses with other states, including the States, under multiple cost-sharing agreements. Pet. at 7; SKP Decl. Ex. 1 at 41-42. In the Washington action, the court awarded Washington the document review platform expenses incurred by all states that used the platform, including the States, and the expert expenses incurred by Washington, Colorado, and Oregon during 2024. *See* Kayser Decl. Ex. 1 ¶¶ 61, 160, 172, 174. Washington has agreed to reimburse the States for their portion of these expenses under these cost-sharing agreements. *See* SKP Decl. Ex. 1 at 41-42.

**Summary of fees and costs claimed by the States**. The States seek $9,437,598.40 in attorneys' fees: $4,445,514.00 for pre-complaint work, $4,067,489.50 for litigation work, and $924,594.90 for post-litigation work. *See* SKP Decl. Table 1. The States also seek $910,936.89 in "costs": $487,239.94 for document review platform expenses, $398,138.14 for Oregon's expert expenses, and $25,558.81 for other costs. *See id.* Table 3.

## LEGAL STANDARD

Under the "American Rule," prevailing litigants are not entitled to recover attorneys' fees absent "explicit statutory authority" allowing otherwise. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 608 (2001). A plaintiff that substantially

Page 2 –    DEFS.' OPP. TO PL. STATES' PETITION FOR ATTORNEYS' FEES AND COSTS

prevails in an action under the Clayton Act is allowed to recover "the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 26. The fee-seeker must support the reasonableness of its requested fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1077 (9th Cir. 2021). Courts deny in whole or part fee petitions that fail to show the requests are reasonable. *See McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009); *see also* U.S. Dist. Ct. of Or., Message from the Court Regarding Fee Petitions, https://biturl.top/MVbiqm ("D. Or. Message re: Fee Petitions").

The Court has an independent "*duty* to ensure that claims for attorneys' fees are reasonable." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (citation omitted); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1993). Courts exclude from fee awards "hours that were not 'reasonably expended,'" including but not limited to "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Courts may adjust fee awards to account for the fact that "the skill and experience of lawyers vary widely." *Id.*

"[F]aced with a massive fee application," the Court "has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application,'" *Gates*, 987 F.2d at 1399-1400 ("percentages indeed are acceptable, and perhaps necessary, tools for district courts fashioning reasonable fee awards").

## ARGUMENT

The States' fee requests are unreasonable and should be significantly discounted.

### I.    The States Are Not Entitled to Fees for their Pre-Litigation Efforts

The States seek fees not just for their litigation work but for more than 16 months of pre-suit investigation. Nearly half the $9,437,598.40 in fees the States request relate to pre-suit work. SKP Decl. Table 1. The Clayton Act and Ninth Circuit precedent do not permit a fee award for

Page 3 –    DEFS.' OPP. TO PL. STATES' PETITION FOR ATTORNEYS' FEES AND COSTS

those pre-suit efforts. The Court should limit any award to fees incurred after this action was filed.

The Clayton Act does not authorize the States to recover pre-suit fees.[1] In relevant part, the Clayton Act provides: "*In any action* under this section in which the plaintiff substantially prevails, the court shall award *the cost of suit*, including a reasonable attorney's fee, to such plaintiff." 15 U.S.C. § 26 (emphases added). By definition, fees incurred *before* filing suit are not part of the "cost of suit" or fees incurred "[i]n any action" under the Clayton Act. *Id.*; *see, e.g.*, *Enodis Corp. v. Emps. Ins. Co. of Wausau*, No. 03-cv-866, 2007 WL 5659050, at *7 (C.D. Cal. June 18, 2007) ("courts have determined that the word 'suit' means 'a civil action commenced by filing a complaint in court'"). The States themselves have defined the "action" here as "the *legal proceeding* for a preliminary injunction." Pl. States' Mot. for Award of Attorney's Fees and Costs at 17, ECF No. 563 (emphasis added). Based on its plain meaning, the Clayton Act only contemplates recovery of fees for work during the "suit" or "action," not pre-suit efforts.

The Ninth Circuit has interpreted similar statutory fee-shifting language to exclude nearly all pre-suit fees. For example, in interpreting ERISA's fee-shifting provision, it held that because the statute allowed only recovery of fees in the "action," any award was "limited to fees incurred in the litigation in court," plus a small window pre-complaint during which plaintiffs' counsel was drafting the complaint. *Cann v. Carpenters' Pension Tr. Fund for N. Cal.,* 989 F.2d 313, 315-316 (9th Cir. 1993). Similarly, in analyzing the fee-shifting provision under 42 U.S.C. § 1988, the Supreme Court noted "it is difficult to treat time spent years before the complaint was filed as having been 'expended on the litigation' or to be fairly comprehended as 'part of the costs' of the [suit]." *Webb v. Bd. of Educ. of Dyer Cnty.*, 471 U.S. 234, 242 (1985).

Even if the Court allows recovery of some limited pre-complaint fees, the States offer no

---

[1] Respectfully, Defendants continue to disagree that the States are entitled to any fees under the Clayton Act.

justification for recovery of their investigation-related costs back to 2022. *First*, allowing recovery for a 16-month pre-complaint investigation is facially unreasonable. No court in an antitrust case has allowed recovery of this magnitude for pre-complaint work. *Second*, the States investigated multiple theories of harm and areas of Defendants' businesses unrelated to the claims they ultimately brought. *See Hensley*, 461 U.S. at 434-435 (fees are not awarded for "unrelated claims"). Myriad fee entries have no clear nexus to the Clayton Act claim. *See* Section V. Indeed, the States explicitly seek recovery for spent time investigating claims under federal and state law that they never brought or under which they are not seeking recovery. *See* SKP Decl. ¶¶ 14-15, Exs. 6-7. Other time entries seek fees for political activity and public relations work, including drafting public remarks and media outreach. *See* SKP Decl. ¶ 16, Ex. 8. The States cannot recover for these types of fees. *See Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995) (district court abused discretion in "awarding plaintiffs attorneys' fees … for media contact"); *McKenzie Flyfishers v. McIntosh*, 158 F. Supp. 3d 1085, 1097 (D. Or. 2016) (federal fee-shifting provisions do not allow plaintiffs to recover fees "for the prosecution of [a] state claim").

The Clayton Act forecloses the States' claim for pre-suit fees. The States fail to justify their request for even limited pre-suit fees, much less the $4.4 million they claim for their 16-month pre-suit investigation.[2] In the Washington action, the court only allowed the recovery of limited pre-complaint fees. *See* Kayser Decl. Ex. 1 ¶ 127. Accordingly, the States' fees should be limited to those incurred on or after February 26, 2024, the date Plaintiffs filed the Complaint.[3]

---

[2] California's request for $3 million in pre-suit fees is especially unreasonable based on its size and because these fees are duplicative of California's filing fee for retail grocery mergers, which covers California's costs to "review[] and analyze" such transactions. Cal. Corp. Code § 14701(d).

[3] Alternatively, the Court should at least limit the States' recovery to fees incurred during or after the month in which this action was filed (February 2024). *See* SKP Decl. Table 2. In the Washington action, the court excluded from its award attorneys' fees and expert and document review platform expenses incurred before the month that action was filed (January 2024). Kayser Decl. Ex. 1 ¶¶ 119, 127. The Washington court allowed recovery of pre-suit fees only for tasks

## II.    The States Are Not Entitled to Fees Related to their Unsuccessful Labor Claim

Under the Clayton Act, a prevailing plaintiff is only allowed to recover attorneys' fees for a claim on which it substantially prevailed. 15 U.S.C. § 26. Where a plaintiff brings a lawsuit with two claims "based on different facts and legal theories" and wins on one claim but not the other, courts do not award fees for the unsuccessful claim. *Hensley*, 461 U.S. at 434-435.

Here, Plaintiffs won on their grocery competition claim but lost on their labor claim. These claims were based on different sets of facts and different theories of harm. As the States' billing records show, the States' work on their labor competition theory of harm was separate and distinct. *See* SKP Decl. ¶ 17, Ex. 9. In its opinion, the Court held that Plaintiffs failed to "establish a *prima facie* case that the proposed merger will substantially lessen competition for union grocery labor." Op. at 68, ECF No. 521. Thus, the States are not entitled to recover fees for their work on their labor claim. Based on Defendants' review of the States' billing records, the States seek over $470,000 in fees for their work on that claim. *See* SKP Decl. ¶ 17, Ex. 9. The Court should exclude from the award all fees related to Plaintiffs' unsuccessful labor claim.

## III.    The Court Should Use Lower Hourly Rates to Calculate the States' Fees

The States unreasonably calculate their attorneys' fees using the 95th percentile rate under the Oregon State Bar Economic Survey ("OSB Survey"). In effect, the States ask for a lodestar multiplier on the mean OSB Survey rate, but they fail to justify their request for a higher rate.

In this Circuit, courts determine the reasonable hourly rate for a fee award based on "the prevailing market rate" in the "forum in which the district court sits." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *Nat'l Family Farm Coal. v. EPA*, 29 F.4th 509, 512 (9th Cir. 2022). Under Local Rule 54, courts in this District use the OSB Survey as an "initial benchmark" to assess

---

such as "finalizing the complaint." *Id.* ¶ 127. Here, the States billed ~$105,000 for their work preparing the complaint in February 2024. *See* SKP Decl. ¶ 8, Ex. 2.

whether requested rates are reasonable. Where "the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate." *Bark v. Northrop*, 300 F.R.D. 486, 493 (D. Or. 2014). Even if a party's work justifies above-average rates, "the court usually limits the hourly rate to the 75th percentile" rate. *Brady Mktg. Co. v. Kai U.S.A. Ltd.*, 2018 WL 3377083, at *3 (D. Or. July 11, 2018).

The rates used also must account for differences in "experience, reputation, and ability of the attorneys." *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975). Courts reduce rates where an attorney's experience does not warrant the rate requested. *Hensley*, 461 U.S. at 438 n.13; *Powell v. Rasmussen*, 2024 WL 247183, at *2 (D. Or. Jan. 23, 2024). Where a party seeks the highest-percentile rates, courts require specific justifications tied to each attorney's experience level and role in the case. *See, e.g.*, *Doad v. C.R. England, Inc.*, 667 F. Supp. 3d 1096, 1100 (D. Or. 2023); *Cleavenger v. Univ. of Oregon*, 2016 WL 1065821, at *4 (D. Or. Mar. 16, 2016).

The States provide no basis for using the OSB Survey's 95th percentile rate across the board. The States do not even describe who certain attorneys or paralegals are. *See* SKP Decl. ¶ 11, Ex. 3. The States also inappropriately apply the same rate for all attorneys, regardless of their experience, abilities, or role in the litigation. The limited information the States' declarations provide does not establish that they should be compensated at anything other than the mean OSB rate. The States did little in this litigation and their declarations do nothing but prove that their efforts were largely duplicative and unnecessary. *See* Sections II, V.

The Court should use one of three alternative, lower rates as the benchmark to calculate the fee award: 1) the actual salaries of the States' timekeepers; 2) the mean OSB rate; or 3) the rates of Oregon's local outside counsel. Notably, the States do not explain why the rates actually charged by Oregon's outside counsel—the only counsel representing a State to examine a witness

at the hearing—are not a more appropriate benchmark. Any of these three benchmarks would apply more reasonable rates reflective of those actually used in this District and the States' limited role in this action. Using these alternate benchmarks would reduce the States' fee award by ~$3.1 to $7.8 million. *See* SKP Decl. ¶ 12, Exs. 4-5.[4]

## IV.    The States Cannot Recover Categories of Expenses Unrecoverable under the Clayton Act and Duplicative of the Parallel Litigations

The States cite no authority allowing them to recover document review platform or expert expenses under the Clayton Act. These expenses are also unsupported and duplicative of expenses awarded in the Washington action. The Court should exclude from its fee award the $487,239.94 the States seek for document review platform expenses and the $398,138.14 Oregon claims for expert expenses.

### A.    Document Review Platform and Expert Expenses Are Not Recoverable Under the Clayton Act

Unless the relevant statute specifies otherwise, the court is not authorized to "award litigation expenses beyond the six categories of 'costs'" laid out in the general costs statute, codified at 28 U.S.C. §§ 1821, 1920. *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 336, 338-339 (2019); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). E-discovery and expert expenses fall outside those categories. *See Rimini*, 586 U.S. at 336-337, 341 (reversing award for expert and e-discovery expenses where award not explicitly authorized by the statute).

The Clayton Act does not specifically allow for the recovery of e-discovery or expense

---

[4] The Court should ignore the States' handwaving at other benchmarks. Pet. at 9-10. Fitzpatrick or *Laffey* matrix rates are inapplicable, especially where there is evidence of actual market rates in this District. "[J]ust because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Rates applied in the Washington action are a red herring. Those rates were found reasonable based on the evidence presented in that action and varied based on attorneys' experience. *See* Kayser Decl. Ex. 1 ¶¶ 28, 38, 110. Rates for Defendants' East Coast-based counsel also are irrelevant: the benchmark is the prevailing market rate in this District. Pet. at 10.

expenses. *See* 12 U.S.C. § 26. Expert expenses are also not recoverable as a component of attorneys' fees under the Clayton Act. *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 89, 94-95 (1991). As such, the States' claimed document review platform expenses are not recoverable at all and the only "expert fee" theoretically available is the $40 per diem attendance fee under 28 U.S.C. § 1821(b). *See Crawford Fitting*, 482 U.S. at 439 ("when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary").

**B. The Document Review Platform and Expert Expenses Were Duplicative, Unnecessary, and/or Unsupported**

The States also should not be allowed to recover their document review platform or expert expenses because they are duplicative, unnecessary, and/or unsupported.

*First*, the States' document review platform and expert expenses are duplicative of expenses awarded in the Washington action. In that action, Washington was awarded fees for the document review platform expenses incurred in 2024 by a multistate group, including the States, and expert expenses incurred by a different multistate group, including Oregon, from January 2024 (the month the Washington action began) through the conclusion of the case. *See* Kayser Decl. Ex. 1 ¶¶ 160, 172. If Washington recovers fees for these document review platform and expert expenses, it will compensate the States for their share of the expenses. SKP Decl. Ex. 1 at 41-42.[5] The States should not be allowed duplicative recovery of these expenses and fees in this action.[6]

---

[5] Indeed, in awarding recovery of these expenses, the Washington court required Washington to inform the states with which it shared these expenses about the award "so as not to incur a double recovery from Defendants in any subsequently filed proceeding." Kayser Decl. Ex. ¶¶ 160, 174.

[6] If the Court allows the recovery of certain document review platform or expert expenses, the award should not cover pre-suit expenses. In the Washington action, the court did not allow the recovery of document review platform or expert expenses before the month the action was filed. *See* Kayser Decl. Ex. 1 ¶¶ 160, 172. The States do not break down their document review platform expenses by year, but they appear to cover pre-suit expenses. Similarly, over 90% of Oregon's expert expenses (at least $364,103.64) were incurred in 2023. Smith Decl. Ex. 1 at 81. If the Court

Page 9 –     DEFS.' OPP. TO PL. STATES' PETITION FOR ATTORNEYS' FEES AND COSTS

*Second*, the States provide no support for their document review platform or expert expenses: they simply state the claimed amounts without providing invoices or other supporting evidence. *See, e.g.*, Smith Decl. ¶ 25, Ex. 1 at 81; Young Decl. ¶ 11. As to expert expenses, Oregon provides no evidence identifying this expert, listing his qualifications, describing his work, or supporting the fees claimed.[7] Smith Decl. ¶ 25, Ex. 1 at 81. The economic expert Plaintiffs actually presented was Dr. Hill, so Oregon's work with its expert was duplicative of the FTC's work with Dr. Hill. Even if this unidentified expert's work helped Oregon decide whether to join this action, *id*. ¶ 25, the expert was not "critical" or necessary to anything in this litigation. The Court should exclude the States' document review platform and expert expenses from its award.

## V. The States Cannot Recover for Unnecessary, Duplicative, Insufficiently Supported, or Otherwise Unreasonable Fees

Plaintiffs seek a wide range of other fees that were unnecessary, duplicative, insufficiently supported, or otherwise unreasonable. "In determining the appropriate number of hours to be included in a lodestar calculation," courts exclude "excessive, redundant, or otherwise unnecessary" hours. *McCown*, 565 F.3d at 1102 (quoting *Hensley*, 461 U.S. at 434). Courts cut or halve fees for these types of hours where the billing entries lack detail and are unsupported by any persuasive justification. *See Caruso v. Wash. State Bar Ass'n*, 2017 WL 2634340, at *3 (W.D. Wash. June 19, 2017), *aff'd sub nom. Eugster v. Wash. State Bar Ass'n 1933*, 716 F. App'x 645 (9th Cir. 2018); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

As explained below, the Court should cut certain categories of fees entirely and otherwise

---

allows the recovery of any such expenses, they should be limited to expenses incurred after the filing of this action.

[7] Notwithstanding this lack of information, Defendants understand this expert is likely Dr. Dua, an economist jointly retained by a multi-state coalition that included Oregon. *See* SKP Decl. Ex. 1 at 41. While Dr. Dua testified in the Washington and Colorado actions, he was not disclosed and did not testify here.

reduce the requested fees by 50% to account for unnecessary, duplicative, insufficiently supported, or otherwise unreasonable fees.

### A. The States Cannot Recover for Insufficiently Supported Fee Entries

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. This District "specifically caution[s] against … providing vague or otherwise inadequate descriptions of tasks because these practices hinder a court's ability to assess the reasonableness of the time expended." *See Hood River Cnty. Sch. Dist. v. Student*, No. 3:20-cv-1690-SI, 2022 WL 1153986, at *3 (D. Or. Apr. 19, 2022); *see also* D. Or. Message re: Fee Petitions. If plaintiffs fail to show that the fees sought are "necessary and reasonable," including because work was block billed or inadequately explained, the court must deduct those hours from the fee request. *Atl. Recording Corp. v. Andersen*, No. CV 05-933 AC, 2008 WL 2536834, at *9 (D. Or. June 24, 2008); *see also Miller v. City of Portland*, No. 3:12-CV-1222-AC, 2018 WL 2771574, at *8 (D. Or. Apr. 27, 2018) (disallowing recovery for "any hours for which the task is unclear").

### 1. Vague Time Entries

The States' billing records have myriad vague time entries for tasks such as "document review" and "attending calls." *See* SKP Decl. ¶ 18, Ex. 10. Based on Defendants' review, the States' billing records show over $1.35 million for vague time entries. *See id*. These entries do not provide the Court with enough information to establish the reasonableness of the requests and the States provide no persuasive justification for them. *See Welch*, 480 F.3d at 948. Accordingly, the Court should strike the fees for these vague requests, *see Schultz v. Nw. Permanente P.C.*, No. 3:20-cv-00626-IM, 2022 WL 3909948, at *4 (D. Or. Aug. 31, 2022) (striking fees for unsupported "intra-office meetings" and billing "entries with no description or vague, generic descriptions"), or substantially reduce them, *see In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291,

1298 (9th Cir. 1994) (upholding reduction of "teleconference hours" without adequately documented support); *Caruso*, 2017 WL 2634340, at *3.

### 2. Block Billing

The States' billing records also are replete with multi-task entries with no breakdown of the time spent on each task. Based on Defendants' review, the States' billing records show over $1 million for multi-task entries over three hours without any breakdown of time by entry. *See* SKP Decl. ¶ 19, Ex. 11. This type of block billing "makes it nearly impossible to assess the reasonableness of the requested time." D. Or. Message re: Fee Petitions. Courts reduce all block-billed entries by 10-30% for time inflation. *Welch*, 480 F.3d at 948. Where more than three hours are billed for multiple tasks where one "could have taken anywhere from a small to a substantial amount of time," courts reduce the hours by 50%. *Magallon v. Robert Half Int'l Inc.*, No. 13-cv-01478, 2025 WL 1326740 at *2 (D. Or. May 7, 2025) (quotation omitted). The Court should reduce these block-billed time entries by 50% to reflect time inflation from block billing.

### B. The States Cannot Recover for Other Duplicative, Unnecessary, or Unreasonable Fees

The Court should further reduce the fee award to account for the many other duplicative, unnecessary, or unreasonable fees the States request. *See McCown*, 565 F.3d at 1102. A party seeking fees must make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The States made no such effort. Apart from excluding fees clearly unrelated to this action or otherwise unrecoverable, the States made no attempt to scrub their billing records of duplicative, unproductive, or clerical work; they just presented them as is.[8] The Court should substantially reduce the requested fees for other

---

[8] In contrast, Washington at least attempted to exclude fees for "unproductive," "clerical," and "duplicative" time, as well as time spent on "issues not advanced." Kayser Decl. Ex. 1 ¶ 48.

duplicative, excessive, and unnecessary billing.

### 1. Duplicative Work

Courts deny fees for "needless duplication," such as "when three lawyers appear for a hearing when one would do." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). When a party requests fees for multiple attorneys for the same task, they must show the "distinct contribution of each attorney." *Friends of Maha'ulepu, Inc. v. Hawai'i Dairy Farms, LLC*, No. 15-00205 KJM, 2017 WL 11683805, at *19 (D. Haw. Nov. 13, 2017) (reducing fees for multiple attorneys attending hearings where the second attorney's contribution was not explained). If the fee-seeker fails to do this, courts exclude fees for the duplicative attorneys, *see Excel Fortress Ltd. v. Wilhelm*, No. CV-17-04297-PHX-DWL, 2019 WL 5294837, at *5 (D. Ariz. Oct. 18, 2019), or apply a percentage reduction for duplicative tasks. *See Hash v. U.S.*, No. 1:99-cv-00324-MHW, 2012 WL 1252624, at *13 (D. Id. Apr. 13, 2012).

The States do not explain why they should recover for multiple attorneys from a State attending trial each day without speaking or attending weekly calls for over a year without describing each attorney's role at those hearings or on those calls. Based on examples in the States' billing records, these States billed over $400,000 for these duplicative tasks. *See* SKP Decl. ¶¶ 20-21, Exs. 12-13. Similarly, California fails to justify why it needed 23 timekeepers when the state took two depositions and made no visible contributions at trial. The Court should exclude the fees for the States' duplicative attorneys or substantially reduce their fees for duplicative tasks.

### 2. Clerical Work

The States cannot recover fees for clerical work performed by attorneys or non-attorneys. Generally, a party may not recover fees for tasks "clerical in nature," which "are not properly billed as attorney fees but are overhead expenses absorbed by counsel." *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1251 (D. Or. 2013); *Sterling Sav. Bank v. Sequoia*

Page 13 –    DEFS.' OPP. TO PL. STATES' PETITION FOR ATTORNEYS' FEES AND COSTS

*Crossing, LLC*, No. 09-555-AC, 2010 WL 3210855, at *7 (D. Or. Aug. 11, 2010) (similar). Clerical tasks "include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, [] sending documents," *Sterling Sav. Bank*, 2010 WL 3210855, at *7, and "reviewing, proofreading, and finalizing" documents to be filed. *Ferguson v. Smith*, No. 3:18-cv-00372-SB, 2024 WL 1070812 at *15 (D. Or. Mar. 12, 2024). Clerical work is excluded even if it was performed by a paralegal and billed at a paralegal rate. *See id.* Based on Defendants' review of the States' billing records, the States billed over $220,000 of fees for clerical work. *See* SKP Decl. ¶ 22, Ex. 14. The Court should exclude fees for clerical work from the award.

### 3. Fees-Related Work

The vast majority of the nearly $925,000 in fees that the States seek for their 1,330 hours of post-litigation work relate to their request for fees. *See* SKP Decl. ¶ 23, Ex. 15. Collectively, the States seek over $860,000 of fees for fees-related work, or nearly 10% of the total fees sought. *Id.* California alone claims to have spent nearly 775 hours on fees-related work. *Id.*

While time spent preparing fee applications is compensable, it must be reasonable. *Anderson v. Dir., Off. of Workers Comp. Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996). If a fee petition is "exorbitant" and the fees claimed for preparing the petition are "unnecessarily high," the court may deny the request for "fees on fees" in its entirety, *see Muscare v. Quinn*, 680 F.2d 42, 45 (7th Cir. 1982), or substantially reduce the award. *See Anderson*, 91 F.3d at 1325; *Arizona v. Maricopa Cnty. Med. Soc'y*, 578 F. Supp. 1262, 1277 (D. Ariz. 1984) (reducing fees claimed by Arizona attorney general and its special counsel for fee petition preparation by more than 50%). Courts also do not grant a multiplier for fee petition work. *See Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989).

By their size alone, the fees the States seek for their fees-related work are facially

Page 14 –     DEFS.' OPP. TO PL. STATES' PETITION FOR ATTORNEYS' FEES AND COSTS

unreasonable. That certain States seek no or limited fees related to the Petition further highlights the unreasonableness of this request. *See* Margrabe Decl. ¶ 10; Walker Decl. ¶ 11; Tucker Decl. ¶ 14. Further, the States inappropriately apply a multiplier to their request for fees on fees by using the same 95% OSB benchmark for their fees-related work.[9] The Court should recalculate the rates for the States' fees-related work using one of the three alternative benchmarks described in Section III, then cut the requested award for "fees on fees" by at least 50%.

### 4. Other Unreasonable Fees

Other categories of fees sought by the States are unreasonable and should be discounted.

**Billing in quarter-hour increments**. California billed its time in quarter-hour increments. Gordon Decl. ¶ 20. Courts reduce fees calculated based on quarter-hour increments because they are likely excessive and inflated; calls and e-mails that took a minute would be billed for 15 minutes. *See Welch*, 480 F.3d at 948. The fee inflation from this billing practice is apparent from looking at California's 0.25 hour time entries. *See* SKP Decl. ¶ 24, Ex. 16. The Court should reduce California's fees to account for its quarter-hour billing practice.

**Travel**. The States claim nearly $150,000 in fees for time spent traveling to and from Oregon for hearings. *See* SKP Decl. ¶ 25, Ex. 17. The States do not claim to have done any substantive work during their travel. Given the availability of remote attendance, Pet. at 7 ("To save on travel costs, the States requested remote attendance at hearings"), these unreasonable fees for travel should be cut. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1298-1299 (upholding 50% reduction of fees for attorneys' travel time).

### CONCLUSION

The Court should substantially reduce the fees and costs requested by the States.

---

[9] In the Washington action, Washington did not seek—and the court did not apply—a lodestar multiplier for Washington's fees-related work. *See* Kayser Decl. Ex. 1 ¶¶ 34, 45.

Date: May 1, 2026

STOEL RIVES LLP

/s/ B. John Casey
B. JOHN CASEY, OSB No. 120025
john.casey@stoel.com
RACHEL C. LEE, OSB No. 102944
rachel.lee@stoel.com
JACOB GOLDBERG, OSB No. 162565
jacob.goldberg@stoel.com

AND

ARNOLD & PORTER KAYE SCHOLER LLP

MATTHEW M. WOLF (Pro Hac Vice)
matthew.wolf@arnoldporter.com
SONIA K. PFAFFENROTH (Pro Hac Vice)
sonia.pfaffenroth@arnoldporter.com
Telephone: 202.942.5000

JOHN A. HOLLER (Pro Hac Vice)
john.holler@arnoldporter.com
300 N. LaSalle Dr.
Chicago, IL 60654

*Attorneys for Defendant The Kroger Company*

ANGELI LAW GROUP LLC

/s/ David H. Angeli
DAVID H. ANGELI, Bar No. 020244
david@angelilaw.com
PETER D. HAWKES, Bar No. 071986
peter@angelilaw.com
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: 503.954.2232

AND

WILLIAMS & CONNOLLY LLP

ENU A. MAINIGI (Pro Hac Vice)
emainigi@wc.com

Page 16 –    DEFS.' OPP. TO PL. STATES' PETITION FOR ATTORNEYS' FEES AND COSTS

JONATHAN B. PITT (Pro Hac Vice)
jpitt@wc.com
WILLIAM ASHWORTH (Pro Hac Vice)
washworth@wc.com
BETH A. STEWART
bstewart@wc.com
A. JOSHUA PODOLL (Pro Hac Vice)
apodoll@wc.com
THOMAS W. RYAN (Pro Hac Vice)
tryan@wc.com
TYLER INFINGER (Pro Hac Vice)
tinfinger@wc.com
680 Maine Avenue SW
Washington, DC 20024
Telephone: 202.434.5000

*Attorneys for Defendant Albertsons Companies, Inc.*